**E-FILED**
Monday, 15 December, 2014 03:32:55 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

NOAH DIETCHWEILER, by MICHAEL ) 
DIETCHWEILER, his father and next friend; and ) 
ANN DIETCHWEILER, ) 
 ) 
    Plaintiffs, ) 
 ) 
vs. ) No. 13 CV 2062
 ) JURY TRIAL DEMANDED
STEVE LUCAS, in his official and individual ) 
capacities; JAMES BUNTING, in his official ) 
and individual capacities; KENNETH LEE, ) 
in his official and  individual capacities; ) 
IROQUOIS  COUNTY COMMUNITY UNIT ) 
SCHOOL DISTRICT NO. 9, IROQUOIS ) 
COUNTY, ILLINOIS; JAMES BRUNS, in his ) 
official capacity DON BECKER, in his official ) 
capacity; BRENNA JOHNSON, in her official ) 
capacity; CRYSTAL BLAIR, in her official capacity; ) 
BOB BURD, in his official capacity; KIRK ) 
MCTAGGERT, in his official capacity; and ) 
DEE SCHIPPERT, in her official capacity, ) 
 ) 
    Defendants. ) 

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, STEVE LUCAS, in his official and individual capacities, ("LUCAS")

JAMES BUNTING, in his official and individual capacities, ("BUNTING") KENNETH LEE, in

his official and individual capacities, ("LEE"), IROQUOIS COUNTY COMMUNITY UNIT

SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, IL ("IROQUOIS") and  the following

solely in their official capacities:  JAMES BRUNS ("BRUNS"), DON BECKER ("BECKER"),

BRENNA JOHNSON ("JOHNSON"), CRYSTAL BLAIR ("BLAIR"), BOB BURD ("BURD"),

KIRK MCTAGGERT,  ("MCTAGGERT") AND DEE SCHIPPERT ("SCHIPPERT"), by and

through their attorneys, THE LAW OFFICES OF COZZI & GOGGIN-WARD,  respectfully

requests this Honorable Court to Dismiss Plaintiffs' Complaint, with prejudice, and to enter

summary judgment in their favor and against Plaintiffs, NOAH DIETCHWEILER, by MICHAEL DIETCHWEILER, his father and next friend, and ANN DIETCHWEILER, ("NOAH", "MICHAEL" and "ANN") pursuant to Federal Rule of Civil Procedure 12(b)(6), 56 and for the following reasons:

## I.    Introduction

On March 15, 2013, Plaintiffs, NOAH by MICHAEL and ANN brought a claim for damages against Defendants under 42 U.S.C. Section 1983, the Due Process Clause of the Fourteenth Amendment to the United States Constitution, a pendent State claim pursuant to 105 ILCS 5/10-22.6(b), and for the common law claims of the intentional infliction of emotional distress (against LUCAS, BUNTING and LEE only) and slander (against LUCAS and BUNTING only). Plaintiff NOAH alleges he was improperly given a 10 day suspension from school for taking and possessing drugs on school property, on January 25, 2013, which was subsequently upheld by the IROQUOIS School Board and its members acting in their official capacities. A true and correct copy of Plaintiffs' Complaint is attached hereto, incorporated herein and marked as Exhibit A.

Defendants timely filed their Answer denying the material allegations of Plaintiffs' Complaint. A true and correct copy of the Answer is attached hereto, incorporated by reference and marked as Exhibit B.

## II.    Undisputed Material Facts

The depositions of NOAH, MICHAEL and ANN have been conducted and are attached hereto, incorporated herein and marked as Exhibits C, D and E, respectively. The depositions of LUCAS, BUNTING, LEE, and the various IROQUOIS School Board members (with the exception of BLAIR) have also been conducted and are attached hereto as EXHIBITS F, G, H (respectively) and I-N.

i.   <u>January 25, 2013 Incident Date</u>.

1.   At all times relevant hereto, NOAH was a high school student at Watseka High School, a school within the Iroquois County Community Unit School District No. 9. Exhibit A.

2.   Shortly after the lunch periods at Watseka High School, on January 25, 2013, LUCAS, the Dean of Students, and BUNTING, the high school principal, received a report from a student that a student on the premises (who will be known as "MM") was selling and distributing prescription drugs, on school property during the lunch period. Exhibits F and G.

3.   LUCAS and BUNTING removed "MM," the student alleged to have been selling and distributing the drugs, from class and asked MM about the allegations. During this conversation, MM admitted that he had been distributing and selling prescription drugs to other students on school property. Id.

4.   During the conversation, LUCAS and BUNTING discovered 2 pills, when they had MM empty his pockets and socks, which MM identified as Ativan. Id.

5.   During this conversation, MM also provided to LUCAS and BUNTING a piece of paper identifying the students to whom he distributed the drugs and that listed how much money was owed to MM for the drugs, which included NOAH. Exhibit O, a copy of the piece of paper given by MM to BUNTING and LUCAS.

6.   MM additionally signed a statement listing the full names of the individuals to whom he distributed the drugs at school, which included NOAH. Exhibit P, a redacted copy of the written statement drafted by MM and tendered to LUCAS and BUNTING.

7. LUCAS and BUNTING then proceeded to remove from class and bring into their office all of the students on these lists, one by one, including NOAH.. Each student was questioned and based upon the students' answers and admissions, suspended 10 days from school for their conduct. Exhibits F and G.

8. NOAH was one of or was the last student to be brought into their office and questioned about taking and possessing drugs at school. Id.

9. During the questioning by LUCAS and BUNTING, NOAH confessed to taking and possessing drugs at school and volunteered without any question that he had done drugs before and thought he was getting a drug for ADHD to keep him awake. Id.

10. As with all of the other students, NOAH's parent/guardian (mother/ANN) was then immediately called. Exhibit E and F, G.

11. ANN was brought into the same room with NOAH, LUCAS and BUNTING. She was told what occurred, and she requested that NOAH's father, MICHAEL, be called. Id.

12. MICHAEL is an attorney who has practiced in several fields of law, including criminal law and school law. Exhibit D.

13. MICHAEL initially spoke with BUNTING first, but then he was placed on speaker phone to discuss what had occurred. Exhibits F, G.

14. While MICHAEL was on speaker phone, he never told NOAH not to talk to BUNTING and LUCAS further, never told NOAH not to sign any piece of paper or admission and never told ANN not to have NOAH sign or say anything further. Exhibits C-G.

15. NOAH testified that had his father MICHAEL (or even mother ANN) advised him and told him not to say anything further or sign anything, he would have followed their advice and he would not have done so. Exhibit C.

16. NOAH was presented with a piece of paper informing him of the suspension, acknowledging the violation and that he would have to make up the school work during the time of the 10 day suspension. Exhibit C, E and Q, a copy of the suspension notice given to NOAH and signed by NOAH on two separate lines.

17. NOAH signed this piece of paper after his father, MICHAEL, was no longer on the phone and before he left the room with his mother, ANN. Id.

ii.  Events after January 25, 2013 and the School Board Meeting of February 5, 2013.

18. On January 28, 2013 LEE was informed that MICHAEL had taken NOAH for a drug test the night of January 25, 2013 and that the results of that drug test were negative for any drugs. Exhibits D and H.

19. MICHAEL informed LEE that he wanted to appeal NOAH's suspension from school. Id.

20. In response, LEE drafted a letter to Plaintiffs informing them of the time and place of the hearing before the School Board in special session. Exhibit H, and Exhibit R, a copy of the letter drafted by LEE and sent to Plaintiffs giving them notice of the hearing on February 5, 2013.

21. A packet of materials, including the relevant portions of the IROQUOIS Student Handbook, was presented to the School Board members on February 5, 2013. Group Exhibit S, a copy of the materials presented at the School Board Hearing of February 5, 2013.

5

22. In addition to the packet of materials, Plaintiffs were allowed to and did present testimony, present evidence, cross examine witnesses (including LEE, BUNTING and LUCAS),be represented by counsel (Michael Tague), and make arguments to the School Board members. Exhibit I-N.

23. Following deliberations of the School Board members, the School Board voted to uphold the 10 day suspension of NOAH for possession of drugs.

## IV. Disputed Material Facts

1. LUCAS and BUNTING testified that MICHAEL attempted to "cut a deal" with them by asking them to not suspend NOAH in exchange for NOAH withdrawing from the high school and a promise to transfer to a school outside of the IROQUOIS district; LUCAS and BUNTING declined to cut any deal. Exhibits F and G.

## V. Legal Standard

Rule 56 (c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered if it is shown that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Summary judgment is not a discretionary remedy; it must be granted when warranted. Jones v. Johnson, 26 F.3d 727, 728 (7th Cir. 1994). Even though all reasonable inferences are drawn in favor of the party opposing the motion, the non-moving party may not rest on his pleadings to create a genuine issue. Pollard v. Azcon Corp., 904 F.Supp. 762,786 (N.D.Ill. 1995). In a motion for summary judgment, the moving party may demonstrate the absence of a genuine issue of material fact by pointing out an absence of evidence in support of the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986). If the non-movant fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted

6

to the moving party. <u>Ortiz v. John O. Butler Co</u>., 94 F.3d 1121, 1124 (7th Cir. 1996)., *cert. denied* 519 U.S. 1115, 117 S.Ct.957, 136 L.Ed.2d 843 (1997).

Where Plaintiffs have failed to state any cognizable action against any of the Defendants and have failed to assert any plausible violation of the United States Constitution or violation of any Illinois Statute or common law, Plaintiffs' Complaint against all Defendants must be dismissed, in its entirety, with prejudice and that Defendants be awarded all relief that this Court deems just and equitable.

**IV.     Argument**

**A.     Plaintiffs' Claims against Defendants for a denial of due process pursuant to 42 USC § 1983 must be dismissed where Plaintiffs failed to prove any violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.**

Plaintiffs' assert that NOAH suffered a procedural due process violation when he was given a 10 day suspension from school "without a hearing with the minimum   procedural requirements of the Fourteenth Amendment to the United States Constitution," and where Defendants did not provide "sufficient pre-hearing disclosures to allow for a meaningful presentation [of evidence at the School Board hearing upholding the suspension]." Exhibit A at 3-6. Plaintiffs' claims for a deprivation of procedural due process fail as a matter of law where the U.S. Supreme Court found that only minimal procedural safeguards are to be followed in connection with the suspension of students and they were clearly met in the case at bar. <u>Goss v. Lopez</u>, 419 U.S. 565, 581, 95 S.Ct. 729, 742 (1975).

Under <u>Goss</u>, students have a right to only minimal procedural due process: "[D]ue process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him, and if he denies them, an explanation of the

evidence the authorities have, and an opportunity to present his side of the story." Id. at 581, 95 S.Ct. at 742.

In this case, the undisputed evidence establishes that Defendants complied with the procedural mandates of Goss. Specifically, BUNTING and LUCAS informed NOAH of the charges against him—possession and taking of drugs at school. LUCAS and BUNTING then allowed NOAH an opportunity to present his side of the story, which he did, admitting that he took and possessed drugs at school and volunteered without any question that he had done drugs before and thought he was getting a drug for ADHD to keep him awake. He at no time denied the charges (nor could he, as he was told what the other students, including MM had indicated). Pursuant to the Goss case, that was the only procedural due process with which NOAH had to be provided prior to the 10 day suspension. Id. However, NOAH was actually provided even greater procedural due process in this matter than was required by the Fourteenth Amendment. Id.

NOAH was provided with *written* notice of the charges against him and his suspension, an explanation of the evidence against him, and an opportunity to present his side of the story by Defendants. See Exhibit C, D, E, F, G and Group S. Additionally, both of NOAH's parents were contacted by BUNTING and LUCAS *before* NOAH signed the suspension notice and the parents were provided the information surrounding NOAH's suspension. Exhibits C-E. It could also be argued that NOAH was represented by an attorney (his father MICHAEL) at the suspension hearing where MICHAEL was informed of the charges against NOAH, presented the evidence against NOAH, told that NOAH confessed and *never advised NOAH not to sign the suspension notice* or make any further statements. Even further, Plaintiffs, at the suspension review hearing, were represented by counsel, presented evidence, testimony, cross examined

8

witnesses, and made arguments to the School Board. As established by Goss, not only were the minimal procedural due process requirements met, they were far exceeded. The fact that the suspension was upheld does not violate Plaintiffs' constitutional rights. Id.

In Martin v. Shawano-Gresham Sch. Dist., 295 F.3d 701, 705 (7th Cir. 2002), the parents sued the school for violations of their daughter, T.M.'s rights, when she committed suicide after being suspended for possession of tobacco on school property. The facts of the case established that the school assistant principal had been informed that a student, T.R., had cigarettes in her locker. A search of T.R's locker turned up cigarettes. T.R. informed the assistant principal that her friend, T.M., also had cigarettes in her locker and told him specifically where the cigarettes were located. T.M. was questioned by the assistant principal regarding the allegation prior to a search of her locker. T.M. denied having any cigarettes. A search of her locker was conducted and the cigarettes were located. T.M. was informed she was being suspended for 3 days, at which point she began crying uncontrollably. The school contacted T.M.'s mother and left her a voicemail message regarding the suspension and T.M. was sent home on the bus. Once T.M. arrived home, she went into the basement and hung herself. The lawsuit followed alleging that the school failed to follow its own procedures and that T.M.'s due process rights had been violated. The defendants filed for summary judgment which was granted by the district court.

Plaintiffs' filed an appeal and the appellate court upheld the lower court ruling. The Appellate court stated that "due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him, and if he denies them, an explanation of the evidence the authorities have, and an opportunity to present his side of the story. Id. at 705 citing, Goss v. Lopez, 419 U.S. 565, 581. The Appellate Court found

Goss to be dispositive of the minimal requirements that were needed to meet the due process requirement.

As is identical to this case, Plaintiffs argued that the Defendants violated the Fourteenth Amendment where it is alleged they did not comply with a state statute (in that case Wisconsin) and a school procedure as outlined in a student handbook.    The Seventh Circuit Court of Appeals held that any procedural requirement of a state law does not constitute a violation of federal due process and dismissed the claim, with prejudice.    Martin, 295 F.3d at 707 (citing Pro-Eco, Inc. v. Board of Comm'rs of Jay County Ind., 57 F.3d 505, 514 (7th Cir. 1995)). Plaintiffs in the instant case make the identical argument, which must also be identically dismissed, with prejudice. Id.

Finally, it should also be pointed out that Plaintiffs have attempted to make a claim (although not specifically alleged in their Complaint) that their procedural due process rights were also somehow violated when they allege that the Defendant did not follow the Student Handbook in providing notice to Plaintiffs about the suspension and the reasons therefore. They allege that they received notice of the suspension review hearing, but not in the exact format as prescribed by the Student handbook. Exhibits C-E. However, as with Plaintiffs' procedural due process claim for a violation of Illinois Statute, the failure to comply with state procedural rules (including a student handbook) cannot form the basis for a federal constitutional claim. See Martin, 295 F.3d at 706-707.

WHEREFORE, Defendants, STEVE LUCAS, in his official and individual capacities, JAMES BUNTING, in his official and individual capacities, KENNETH LEE, in his official and individual capacities, IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, IL and the following solely in their official capacities: JAMES

BRUNS, DON BECKER, BRENNA JOHNSON, CRYSTAL BLAIR, BOB BURD, KIRK MCTAGGERT, AND DEE SCHIPPERT, respectfully requests this Honorable Court to enter summary judgment in their favor and against Plaintiffs, NOAH DIETCHWEILER by MICHAEL DIETCHWEILER, his father and next friend and ANN DIETCHWEILER, pursuant to Federal Rule of Civil Procedure 56 and for such other and further relief as this Honorable Court deems just and appropriate.

**B.      Plaintiffs' Claims against Defendants for a violation of Illinois Statute, cited as 105 ILCS 5/10-22.b(b)  must be dismissed where Plaintiffs failed to prove any violation of any Illinois Statute and where 105 ILCS 5/10-22.b(b) does not exist.**

As an initial matter, the statute cited by Plaintiff "105 ILCS 5/10-22.b(b)" is not a statute and does not exist. See Exhibit A at 9-15. A search for the language quoted by Plaintiffs in their Complaint on page 10, paragraph 6, that "any suspension shall be reported immediately to parents or guardian of such pupil along with a full statement of the reasons for such suspension and notice of their right to review" brings us to this statute, 105 ILCS 5/10-22.6(b) which states:

> (b) To suspend or by policy to authorize the superintendent of the district or the principal, assistant principal, or dean of students of any school to suspend pupils guilty of gross disobedience or misconduct, or to suspend pupils guilty of gross disobedience or misconduct on the school bus from riding the school bus, and no action shall lie against them for such suspension. The board may by policy authorize the superintendent of the district or the principal, assistant principal, or dean of students of any school to suspend pupils guilty of such acts for a period not to exceed 10 school days. If a pupil is suspended due to gross disobedience or misconduct on a school bus, the board may suspend the pupil in excess of 10 school days for safety reasons. *Any suspension shall be reported immediately to the parents or guardian of such pupil along with a full statement of the reasons for such suspension and a notice of their right to a review.* The school board must be given a summary of the notice, including the reason for the suspension and the suspension length. Upon request of the parents or guardian the school board or a hearing officer appointed by it shall review such action of the superintendent or principal, assistant principal, or dean of students. *At such review the parents or guardian of the pupil may appear and discuss the suspension with the*

> *board or its hearing officer.* If a hearing officer is appointed by the board
> he shall report to the board a written summary of the evidence heard at the
> meeting. After its hearing or upon receipt of the written report of its
> hearing officer, the board may take such action as it finds appropriate. A
> pupil who is suspended in excess of 20 school days may be immediately
> transferred to an alternative program in the manner provided in Article
> 13A or 13B of this Code. A pupil must not be denied transfer because of
> the suspension, except in cases in which such transfer is deemed to cause a
> threat to the safety of students or staff in the alternative program.
> (emphasis added).

In the case at bar, the Defendants completely complied with the statute's requirements. There is no denying that NOAH and his parents, MICHAEL and ANN were informed of the charges against NOSH *before* he signed the notice of the suspension. NOAH, ANN and MICHAEL do not deny that they knew of the exact charges against NOAH not only immediately after NOAH was suspended but even before he was suspended—NOAH was informed of charges against him by LUCAS and BUNTING and NOAH was given an opportunity to explain his side of the story. All Plaintiffs were told the exact reasons for the imposition of the suspension, and when they requested a review hearing, one was afforded with ample notice and ability to be heard.

Plaintiffs further cite, on page 15 of their Complaint to the case of Linwood v. Board of Education, 463 F.2d 763 (7th Cir. 1972) and appear to allege that the case gives this Honorable Court the right to review NOAH's suspension, although it is not altogether clear in the Complaint. However, as the Linwood ruling favors the defendants in our matter, we shall discuss its applicability hereto.

As a threshold matter the statute referenced in Linwood has been revised, and the current statutory language is cited above and now has language regarding suspensions greater than 10 days not the 7 days as discussed in Linwood. The Plaintiff in Linwood was suspended for 7 days

12

and filed suit. Defendants moved the suit to federal court and Plaintiff did not object. The
District Court upheld the ruling of the school board and found no constitutional violations. The
plaintiff appealed from the District court ruling and the Appeals Court affirmed the lower court
ruling. The Appeals court rejected Plaintiff's argument that "he was entitled to a hearing under
procedures which include rules providing that the student is to be furnished *within a reasonable
time prior to the hearing with a list of the names and addresses of the witnesses who are to
testify, and information with respect to the testimony each will give.*" Id. at 770 (emphasis
added). The Court found that these demands did not need to be met by the Defendants the
fundamental requisite of due process is the opportunity to be heard. Brannis v. Ordean, 234 U.S.
385, 394

Similarly, in the instant case, Plaintiffs claim they were not provided with "sufficient pre-
hearing disclosures" just as argued by the plaintiff in Linwood. However, it is clear, this is not
required by 105 ILCS 5/10-22.6(b) nor the Linwood case. NOAH's suspension was upheld by
the school board and as established above, met the statutory requirements of Illinois and as
established by case law. NOAH was not expelled from school, was allowed to make up all work,
his suspension was for only 10 days, he was given oral and written notice, and was given an
opportunity to provide his side of the story. The review hearing also provided all Plaintiffs the
right to be represented by an attorney, to present testimony and evidence, to cross examine
witnesses and to make arguments, all of which they did. There was no statutory requirement for
anything further. In fact, the defendants provided more than what was required by statute and the
Constitution.

It should also be pointed out that Plaintiffs have made a claim that their due process rights were somehow violated when they allege that the Defendant did not follow the Student Handbook in providing notice

WHEREFORE, Defendants, STEVE LUCAS, in his official and individual capacities, JAMES BUNTING, in his official and individual capacities, KENNETH LEE, in his official and individual capacities, IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, IL and the following solely in their official capacities: JAMES BRUNS, DON BECKER, BRENNA JOHNSON, CRYSTAL BLAIR, BOB BURD, KIRK MCTAGGERT, AND DEE SCHIPPERT, respectfully requests this Honorable Court to enter summary judgment in their favor and against Plaintiffs, NOAH DIETCHWEILER by MICHAEL DIETCHWEILER, his father and next friend and ANN DIETCHWEILER, pursuant to Federal Rule of Civil Procedure 56 and for such other and further relief as this Honorable Court deems just and appropriate.

**C.    Plaintiffs have failed to state a cause of action for the common law pendent state claims of the intentional infliction of emotional distress under the common law of the State of Illinois and these claims must also be dismissed, with prejudice.**

Counts III (NOAH v. LUCAS and BUNTING), V (NOAH v. LEE) and VI (ANN v. LUCAS and BUNTING) of Plaintiffs' Complaint allege the intentional infliction of emotional distress.    Under Illinois law, the 3 elements necessary to support the tort of the intentional infliction of emotional distress are 1) defendants' conduct must be extreme and outrageous 2) defendants either intended to inflict severe emotional distress or knew that there was a high probability that their conduct would do so; and 3) the defendants' actually caused severe emotional distress.   Thomas v Fuest, 345 Ill.App.3d 929, 803 N.E.2d 619 (2004) citing, Welsh v. Commonwealth Edison Co., 306 Ill.App.3d 148, 713 N.E.2d 679 (1999).   Counts III, V and

14

VI all fail to identify any *outrageous conduct* on the part of those Defendants which lead to this occurrence as required under the elements of this cause of action and fails to provide any evidence regarding the alleged *severe emotional distress,* that NOAH or ANN are alleging they suffered.

An objective standard, based on all of the facts and circumstances, determines whether conduct is 'extreme and outrageous'. Thomas v Fuest, 345 Ill.App.3d 929, 803 N.E.2d 619 (2004). Liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions or trivialities." Id at 936 citing, Public Finance Corp. v. Davis, 66 Ill.2d 85, 89-90, 360 N.E.2d 765 (1976). Liability is attached only in circumstances where the Defendant's conduct is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.'" Public Finance Corp. v. Davis, 66 Ill.2d 85, 89-90, 360 N.E.2d 765 , quoting Restatement (Second) of Torts § 46, Comment *d* (1965). None the statements provided in Plaintiffs' Complaint meet the standards identified by the court regarding 'extreme and outrageous conduct', however should the court determine that the vague and general statements made by Plaintiffs' are sufficient to meet the criteria of 'extreme and outrageous conduct', Plaintiffs' have still failed to meet all the  criteria necessary to establish a valid claim of intentional infliction of emotional distress.

A valid complaint for intentional infliction of emotional distress must show that Plaintiff suffered severe  and extreme emotional distress, the third element of the tort. "Emotional distress includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea." Feltmeier v Feltmeier, 207 Ill.2d 263, 798 N.E.2d 75 (2003). A complaint for  intentional infliction of emotional distress must be "specific, and detailed beyond what is normally considered permissible in pleading a tort

action." <u>McCaskill v. Barr,</u> 92 Ill.App.3d 157, 414 N.E.2d 1327 (1980). There is nothing in Plaintiffs' Complaint that identifies any severe and extreme emotional distress suffered by either of the Plaintiffs. Plaintiffs' Complaint is entirely void of any specific or detailed statements identifying any harm that was allegedly suffered. There are no allegations of any psychological or psychiatric injury suffered, no counseling required, no doctors were seen or severe outbreaks of emotion whatsoever by NOAH or ANN. Simply being nervous or even crying does not constitute "emotional distress." <u>Id</u>.

WHEREFORE, Defendants, STEVE LUCAS, in his official and individual capacities, JAMES BUNTING, in his official and individual capacities, KENNETH LEE, in his official and individual capacities, IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, IL and the following solely in their official capacities: JAMES BRUNS, DON BECKER, BRENNA JOHNSON, CRYSTAL BLAIR, BOB BURD, KIRK MCTAGGERT, AND DEE SCHIPPERT, respectfully requests this Honorable Court to enter summary judgment in their favor and against Plaintiffs, NOAH DIETCHWEILER by MICHAEL DIETCHWEILER, his father and next friend and ANN DIETCHWEILER, pursuant to Federal Rule of Civil Procedure 56 and for such other and further relief as this Honorable Court deems just and appropriate.

**D.    Plaintiffs have failed to state a cause of action for the common law pendent state claims of slander under the common law of the State of Illinois and this claims must also be dismissed, with prejudice.**

In Count IV of Plaintiffs' Complaint, NOAH alleges that LUCAS and BUNTING committed the tort of slander against him. Exhibit A at 19-24. The basic elements of a slander claim are 1) Defendant made a false statement about plaintiff; 2) an unprivileged publication to a third party with fault by the defendant; and 3) the publication damaged plaintiff. <u>Vickers v.</u>

Abbott Laboratories, 308 Ill.App.3d 393, 400, 719 N.E.2d 1101 (1999). "Under Illinois common law, there are five classes of words which give rise to a cause of action for slander if falsely communicated. The five classes of words are : 1)those imputing the commission of a criminal offense; 2) those imputing infection with a loathsome communicable disease of any kind which, if true, would tend to exclude one from society; 3) those imputing inability to perform or want of integrity in the discharge of duties of office or employment; 4) those prejudicing a particular party in his profession or trade; and 5) defamatory words, which though not in themselves actionable, occasion the party special damages." Whitby v. Associates Discount Corp., 59 Ill.App.2d 337, 207 N.E.2d 482. Count IV of Plaintiff's Complaint asserts that Defendants Lucas and Bunting made 'false statements' and that said statements were "malicious". The statements which Plaintiff alleges were 'false' are the statements made by LUCAS and BUNTING to the school board regarding the circumstances of NOAH's suspension and were made at a review hearing in the presence of the school board (the reviewing body). No where in Plaintiff's Complaint does he identify any unprivileged publication to a third party. The school board members are not 'third parties' and were ask by Plaintiffs to review the suspension. The plaintiffs have failed to make a prima facie case for slander. The 'false statements' regarding 'ingestion and possession of drugs' at school, for which NOAH was suspended does not fall within the five categories delineated above regarding slander *per se,* as school infractions are not crimes and the other 4 categories are not applicable to the case at bar. As slander *per se* is not applicable to the case at bar, Plaintiffs are left to meet the criteria for slander and have failed to do so. Not only have Plaintiffs failed to establish that any unprivileged third party disclosure occurred because of defendants, the only damages Plaintiffs have identified in the Complaint are "damage to his reputation which was stellar" which is clearly a matter of opinion not fact. In the

case at bar, Plaintiffs are asserting that NOAH never made any statements to LUCAS and BUNTING regarding possession or ingestion of drugs. Defendants statements to the board are the statements they report that NOAH made to them prior to MICHAEL being on the phone. The 'false statements' referenced by Plaintiffs were made to the school board as a recitation of how the situation occurred. The fact that NOAH, may or may not have changed his story after the suspension does not change the fact that the statements were made and led to his suspension.

WHEREFORE, Defendants, STEVE LUCAS, in his official and individual capacities, JAMES BUNTING, in his official and individual capacities, KENNETH LEE, in his official and individual capacities, IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, IL and the following solely in their official capacities: JAMES BRUNS, DON BECKER, BRENNA JOHNSON, CRYSTAL BLAIR, BOB BURD, KIRK MCTAGGERT, AND DEE SCHIPPERT, respectfully requests this Honorable Court to enter summary judgment in their favor and against Plaintiffs, NOAH DIETCHWEILER by MICHAEL DIETCHWEILER, his father and next friend and ANN DIETCHWEILER, pursuant to Federal Rule of Civil Procedure 56 and for such other and further relief as this Honorable Court deems just and appropriate.

## V.    CONCLUSION

WHEREFORE, Defendants, STEVE LUCAS, in his official and individual capacities, JAMES BUNTING, in his official and individual capacities, KENNETH LEE, in his official and individual capacities, IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, IL and the following solely in their official capacities: JAMES BRUNS, DON BECKER, BRENNA JOHNSON, CRYSTAL BLAIR, BOB BURD, KIRK MCTAGGERT, AND DEE SCHIPPERT, respectfully requests this Honorable Court to enter

summary judgment in their favor and against Plaintiffs, NOAH DIETCHWEILER by MICHAEL DIETCHWEILER, his father and next friend and ANN DIETCHWEILER, pursuant to Federal Rule of Civil Procedure 56 and for such other and further relief as this Honorable Court deems just and appropriate.

Respectfully submitted,

/s/ Shari D. Goggin-Ward
_____
Shari D. Goggin-Ward

Shari D. Goggin-Ward  # 06198703
LAW OFFICE OF COZZI & GOGGIN-WARD
Attorney for Defendants
27201 Bella Vista Parkway, Suite 410
Warrenville, IL 60555-1619
630-393-2145;  603-334-9765 (fax)
WarrenvilleLegal@LibertyMutual.com

CERTIFICATE OF COMPLIANCE

The undersigned certifies that this document contains 5721 words as counted by the word processing system, pursuant to U.S. District Court Rule 7.1 (B)(4)(c).

/s/ Shari D. Goggin-Ward

_____

Shari D. Goggin- Ward

Shari D. Goggin-Ward  # 06198703
LAW OFFICE OF COZZI & GOGGIN-WARD
Attorney for Defendants
27201 Bella Vista Parkway, Suite 410
Warrenville, IL 60555-1619
630-393-2145;  603-334-9765 (fax)
WarrenvilleLegal@LibertyMutual.com

## CERTIFICATE OF SERVICE

I, SHARI GOGGIN-WARD , (attorney) certify that I served the attached
<u>DEFENDANTS  MOTION FOR SUMMARY JUDGMENT,</u> by emailing a true and accurate
copy thereof on December 15, 2014,


Michael J. Tague
Flynn, Palmer, Tague, Lyke & Jacobson
fpt5law@aol.com

/s/ Shari D. Goggin-Ward

Shari D. Goggin-Ward

Shari D. Goggin-Ward  # 06198703
LAW OFFICE OF COZZI & GOGGIN-WARD
Attorney for Defendants
27201 Bella Vista Parkway, Suite 410
Warrenville, IL 60555-1619
630-393-2145;  603-334-9765 (fax)
WarrenvilleLegal@LibertyMutual.com