E-FILED
Monday, 15 December, 2014  03:32:57 PM
Clerk, U.S. District Court, ILCD

# In The Matter Of:

## *DIETCHWEILER v.*
## *STEVE LUCAS ET AL*

---

## *DEEANN SCHIPPERT*
### *October 24, 2014*

---

### *Area Wide Reporting and Video Conferencing*
### *www.areawide.net*
### *scheduling@areawide.net*
### *301 W. White Street*
### *Champaign, IL  61820*

Original File 1024schd.txt

Min-U-Script® with Word Index

1

```
 1            IN THE UNITED STATES DISTRICT COURT
         FOR THE CENTRAL DISTRICT OF ILLINOIS
 2                  STATE OF ILLINOIS

 3

    NOAH DIETCHWEILER, by          )
 4  Michael Dietchweiler, his      )
    father and next friend; and    )
 5  ANN DIETCHWEILER,              )
              Plaintiffs,          ) No. 2013-CV-2062
 6            vs.                   )
    STEVE LUCAS, in his            )
 7  official and individual        )
    capacities; JAMES BUNTING,     )
 8  in his official and            )
    individual capacities;         )
 9  KENNETH LEE, in his            )
    official and individual        )
10  capacities; IROQUOIS COUNTY    )
    COMMUNITY UNIT SCHOOL          )
11  DISTRICT NO. 9, IROQUOIS       )
    COUNTY, ILLINOIS; JAMES        )
12  BRUNS, in his official         )
    capacity; DON BECKER, in       )
13  his official capacity;         )
    BRENNA JOHNSON, in her         )
14  official capacity; CRYSTAL     )
    BLAIR, in her official         )
15  capacity; BOB BURD, in his     )
    official capacity; KIRK        )
16  McTAGGERT, in his official     )
    capacity; and DEE             )
17  SCHIPPERT, in her official     )
    capacity,                      )
18            Defendants.          )

19          DEPOSITION OF DEEANN SCHIPPERT
                October 24, 2014
20                  4:28 PM

21      Amy Prillaman Buhr:  CSR #084-003275
       Area Wide Reporting and Video Conferencing
22              301 West White Street
            Champaign, Illinois   61820
23              (800) 747-6789

24
```

2

1                              INDEX

2

       APPEARANCES:

3

              FLYNN, PALMER, TAGUE, LYKE & JACOBSON
4             BY: Mr. Michael J. Tague
              402 West Church Street
5             Champaign, Illinois 61824-1517
              (217) 352-5181
6             Appearing for the Plaintiffs

7             LAW OFFICES OF LAWRENCE COZZI
              BY:  Ms. Veronica Masaitis
8             27201 Bella Vista Parkway, Suite 410
              Warrenville, Illinois  60555
9             (630) 791-6407
              shari.goggin-ward@libertymutual.com
10            Appearing for the Defendants

11            ALSO PRESENT:
              Michael Dietchweiler
12

13

14

15

16

17

18

19

20

21

22

23

24

3

1                            INDEX, continued:

2

3    Examination                                              Page

4      BY: MR. MICHAEL J. TAGUE                                  5
       BY: MS. VERONICA MASAITIS                                31
5      BY: MR. MICHAEL J. TAGUE                                 33
       BY: MS. VERONICA MASAITIS                                35
6
                      (No exhibits marked.)
7
               QUESTIONS INSTRUCTED NOT TO ANSWER
8
                  Page                           Line
9
     Were any students on        16                    8
10   that list not suspended?
     Do you even know if         17                    3
11   these are students at
     Watseka High School?
12   Okay.    And those          18                   18
     results, based upon what
13   you know in your
     profession, would have
14   established with
     scientific certainty
15   that Noah did not have
     Ativan in his system at
16   the time of the action
     on January 25, 2013,
17   would it not?

18

19

20

21

22

23

24

4

1                            STIPULATION

2

3              IT IS HEREBY EXPRESSLY STIPULATED AND
      AGREED by and between the parties that the deposition
      of DEEANN SCHIPPERT may be taken on October 24, 2014,
4     at Iroquois County CUSD No. 9, 1411 West Lafayette,
      Watseka, Illinois, pursuant to the Rules of the
5     Federal Court and the Rules of Federal Procedure
      governing said depositions.
6              IT IS FURTHER STIPULATED that the
      necessity for calling the Court Reporter for
7     impeachment purposes is waived.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

5

1           (Commencing at 4:27 p.m.)

2                  DEE SCHIPPERT,

3    having been first duly sworn, testified as follows:

4    EXAMINATION,

5    BY: MR. MICHAEL J. TAGUE:

6         Q.    Could you please state your name and spell

7    your last name?

8         A.    My name is Deann Schippert and my last name

9    is spelled S-C-H-I-P-P-E-R-T.

10        Q.    Have you ever had your deposition taken

11   before?

12        A.    No.

13        Q.    Dee, I'm going to ask you questions, as I

14   did of the lady that preceded you, about Noah

15   Dietchweiler's case.  All of your responses need to

16   be verbal.  We can't talk at the same time so she can

17   take an accurate stenographic record.  If you don't

18   understand a question I ask, please tell me, we can

19   repeat it, read it back, rephrase it.  And if you

20   make gestures, we'll say does that mean yes or no.

21        A.    Okay.

22        Q.    Do you have any questions?

23        A.    No.

24        Q.    State your address and phone number.

6

1      A.   My address is 528 South Third Street,
2  Watseka, Illinois, 60970.  My home telephone number
3  is area code (815) 432-5087.
4      Q.   What is your trade or occupation?
5      A.   I'm the public health administrator for the
6  Iroquois County Public Health Department.
7      Q.   How long have you held that job?
8      A.   I was hired in February.
9      Q.   And you are a member of the school board?
10     A.   Yes.
11     Q.   When did you become a member of the school
12  board?
13     A.   I think I was elected in 2011.
14     Q.   And have you had to run for reelection yet?
15     A.   No.
16     Q.   When are you up for reelection?
17     A.   This spring.  This coming spring.
18     Q.   Have you declared your candidacy?
19     A.   No, I have not.
20     Q.   Are you going to?
21     A.   No, I'm not.
22     Q.   Had you had any training or classwork or
23  seminars about being a school board member before you
24  were elected to the school board?

1    A.   Yes.   I took, you know, Open Meetings Act

2   training.   I attended some Corn Belt meetings,

3   training, you know.   I spent some time with Scott

4   Watts, who was a past school board member/president

5   whose term was ending when I came on the school

6   board, going over things with him.

7        Q.   Did you ever have any training in student

8   disciplinary procedures?

9        A.   No.

10        Q.   Had you, prior to Noah Dietchweiler's

11   hearing on February 5, 2013, ever participated in a

12   suspension procedure for a student?

13        A.   I had participated in disciplinary

14   hearings, but I'm not sure if they ended up in a

15   suspension or not.

16        Q.   Prior to Noah Dietchweiler's hearing, had

17   you ever reviewed the district's policies and

18   procedures as to suspension of students?

19        A.   I had read the student handbook.

20        Q.   And do you remember whether or not the

21   student handbook contained policies and procedures

22   governing student suspensions?

23        A.   Yes, but I can't remember any details.

24             MS. MASAITIS:   Just answer the question he

8

1  asks.

2  BY MR. TAGUE:

3      Q.   How did you learn that there was going to

4  be a suspension hearing on February 5, 2013?

5      A.   The school board packet that we get on a

6  Friday before a school board meeting said that there

7  would be a hearing.

8      Q.   Okay.  And was it a special hearing, a

9  special meeting?

10     A.   I can't recall.

11     Q.   Did it identify how many hearings you were

12  going to have?

13     A.   I don't recall.

14     Q.   Did it indicate who the students were that

15  were involved in the hearing?

16     A.   No.  None of them ever do.

17     Q.   Did it identify the subject matter as to

18  what was involved, suspension, expulsion or anything

19  like that?

20     A.   They never do.

21     Q.   And did it reflect that this involved a

22  drug situation?

23     A.   I don't recall.

24     Q.   What else in the board package -- let me

9

1   ask you. Was this just a portion of the board

2   package on one piece of paper or was it a paragraph

3   on one piece of paper or was it a separate page item?

4       A.   I don't recall.

5       Q.   And you got the package before February 5,

6   2013, the board package that would have had this

7   notice in it?

8           MS. MASAITIS:  I'm going to object as to

9   form.

10      A.   Typically what happens is that when there

11  is a hearing, we're notified about the hearing, we

12  are given a board packet every Friday before a board

13  meeting. So typically we are notified of hearings on

14  nights that there is a board meeting. If the hearing

15  occurred on a night when there wasn't a board

16  meeting, then I wouldn't have gotten that.

17      Q.   Okay. So you -- you don't know whether you

18  received your notice by way of its inclusion in a

19  board package or some other fashion?

20      A.   I really don't.

21      Q.   Do you remember whether or not your

22  notification was in writing or orally?

23      A.   I can't recall.

24      Q.   Okay. You don't have any documents in your

10

1    possession -- well, let me ask you, do you keep all

2    your board packages?

3        A.   No.

4        Q.   What happens to them after the board

5    meeting?

6        A.   We either leave them here and Mr. Lee

7    shreds them or we can take them home and then bring

8    them back at a later board meeting and give them to

9    Mr. Lee.

10       Q.   Okay.  Do you know whether Mr. Lee keeps an

11   archive of board packages for each meeting?

12       A.   I don't know.

13       Q.   So you arrived -- well, on February 5,

14   2013, where was the hearing or hearings for that day?

15       A.   I think it was here at the unit office.

16       Q.   Okay.  What time did you arrive, do you

17   remember?

18       A.   I don't.

19       Q.   Was Noah's case the first matter on the

20   agenda for that night?

21       A.   I can't recall.

22       Q.   Were there any items on the agenda after

23   Noah's case?

24       A.   I can't recall.

11

1          Q.    Do you recall anything that happened prior

2     to the beginning of Noah's hearing?

3          A.    No.

4          Q.    So Noah had his hearing.  Do you remember

5     who was present during Noah's hearing?

6          A.    Noah was present.  Noah's parents were

7     present.  The school board members were present.

8     Mr. Lee.  Mr. Bunting.  Mr. Lucas.  I think Mr. Funk

9     was present.  That's all I can remember.

10         Q.    Do you remember a court reporter?

11         A.    I think there was a court reporter.

12         Q.    Do you remember whether the Dietchweilers

13    had an attorney present?

14         A.    I think it was you.

15         Q.    Was anyone else present during any portion

16    of Noah's proceedings?

17         A.    I can't recall.

18         Q.    Did a student appear and testify on Noah's

19    behalf?

20         A.    I don't recall.  You mean a student other

21    than Noah?

22         Q.    Yes.

23         A.    I don't recall.

24         Q.    Were there documents produced by the

12

1    administration at Noah's hearing?

2         A.    I don't remember seeing any documents.  The

3    only document I can remember seeing was from

4    Mr. Dietchweiler.

5         Q.    And that being the drug testing?

6         A.    Yes.

7         Q.    I want to show you what's been marked

8    Exhibit No. 1.  It was a package of materials put

9    together by the administration.  If you want to look

10   at that document, my question is do you remember a

11   package of materials similar to that at the hearing?

12             MS. MASAITIS:  Can you just show her how it

13   would have looked like in her form?  Wouldn't it have

14   looked like in that form over there?  Bound?  It

15   wouldn't have looked like in that form, right?  It

16   would have been bound in that form that he has over

17   there on the table there?

18             MR. TAGUE:  Yeah, I think it was probably

19   bound with a black spiral --

20             MS. MASAITIS:  Can you lift that up and

21   show that to her for that purpose?  See that?

22        A.    I -- I don't recall.

23             MS. MASAITIS:  Okay.

24        A.    I just don't remember.

13

1   BY MR. TAGUE:

2        Q.   Now, it had items, apparently six different

3   items, and a table of contents.  Do you remember any

4   of those documents discussed during Noah's hearing?

5        A.   I just can't -- I can't recall.

6        Q.   Okay.  Behind one of the tabs there was a

7   document, this one says Watseka High School, it says

8   Notice of Student Disciplinary Action.  Do you know

9   what this document is?

10       A.   This is the document that the students are

11  given at school, from the school.

12       Q.   So when a student is suspended, this is the

13  notice that they're given to tell them you've been

14  suspended?

15       A.   I think this is a notice for any

16  disciplinary action.

17       Q.   Okay.  So --

18       A.   So I've seen this blank form many times but

19  I've not ever -- I've not seen -- I don't recall

20  seeing this one.

21       Q.   Okay.  This one filled out specifically in

22  Noah's case, you don't remember seeing this?

23       A.   I don't.

24       Q.   And another document in that package was a

14

1   January 30, 2013 letter from Mr. Lee.  Have you ever

2   seen that document before?

3        A.   I don't recall.

4        Q.   Exhibit No. 3, the -- let me ask you.  Do

5   you remember who testified on behalf of the

6   administration relative to Noah's infraction?

7        A.   I think Mr. Lucas and Mr. Bunting.

8        Q.   And who testified first, do you remember?

9        A.   No, I don't remember.  I don't recall.

10        Q.   Do you remember what Mr. Lucas said?

11        A.   I don't recall specifics.

12        Q.   Do you recall what Mr. Bunting said?

13        A.   Not specifics.

14        Q.   Without trying to identify which one said

15   which, do you remember anything that the

16   administration presented, whether by Mr. Bunting or

17   Mr. Lucas, about what happened that implicated Noah?

18        A.   Not anything specific.  I would hate to try

19   to quote one of them and get it wrong.

20        Q.   Were you aware that there was a verbatim

21   transcript made of the proceedings?

22        A.   I assume that there was because there was a

23   reporter, you know, a recorder there.

24        Q.   Okay.  Have you ever seen that transcript?

15

1      A.   No, not until today.

2      Q.   Okay.  And have you reviewed the entire

3   transcript?

4      A.   No.  She just had it.

5      Q.   So other than seeing that one exists, like

6   I could hand it to you and say "you see that", "yes",

7   did you actually read any portions of it?

8      A.   No.

9      Q.   This document that is part of Exhibit No. 3

10   that says Response to Request For Production No. 1,

11   have you ever seen that document before?

12      A.   No.

13      Q.   Were you -- had you ever heard that there

14   existed a list of students with money owed on it?

15      A.   I heard that a list existed.

16      Q.   Where did you hear that at?

17      A.   I think I heard that during the hearing.

18      Q.   Okay.  And now that you remember that, do

19   you remember if it was stated what was on the list,

20   whose names and what the numbers were?

21      A.   I never saw the list.

22      Q.   And no one, to your knowledge, identified

23   what was on the list at Noah's hearing?

24      A.   No.

16

1     Q.    Now, also part of that Exhibit No. 3 is

2   Response For Production No. 2.  Have you ever seen

3   that document before?

4     A.    No.

5     Q.    It names seven students that the student

6   apparently signing that identified, does it not?

7     A.    Seven.

8     Q.    Were any students on that list not

9   suspended?

10          MS. MASAITIS:  I'm going to object.  I

11   think it calls for her to opine as to other students

12   and also give out information that would be protected

13   by HIPAA -- strike that.  Not HIPAA -- by the Student

14   Records Act, as well as confidential protected

15   information as to individual students.  So I'm going

16   to instruct her not to answer.

17          MR. TAGUE:  I didn't ask her who was

18   suspended.  I just asked her if there was anybody on

19   that list that was not suspended.

20          MS. MASAITIS:  And I'm going to maintain

21   the same objection.

22          MR. TAGUE:  And you're not going to answer

23   that question based upon her telling you not to?

24     A.    That's correct.

17

1          MR. TAGUE:  Certify that question.

2    BY MR. TAGUE:

3          Q.    Do you even know if these are students at

4    Watseka High School?

5          MS. MASAITIS:  I'm going to say the same

6    exact objection because I think that also calls for

7    her to give information with regard to student status

8    and information as to -- that would be protected

9    under the Student Records Act.

10         MR. TAGUE:  Well, I'm absolutely positive

11   the student directory information is not protected

12   under the Student Records Act.

13         MS. MASAITIS:  Well, then you can feel free

14   to look that up as public information for you under

15   the student directory and you don't need to ask that

16   of this witness.  And so I'm going to instruct her

17   not to answer because she is giving testimony as a

18   board representative and I don't want to be violating

19   any Student Records Act.  So I'm going to instruct

20   her not to answer.

21   BY MR. TAGUE:

22         Q.    Are you going to not answer that question?

23         A.    I'm going to follow the attorney's advice.

24         MR. TAGUE:  Certify that one also.

18

1   BY MR. TAGUE:

2       Q.  Okay.  You said you remembered the drug

3   testing information, correct?

4       A.  I remember that there was a drug test and

5   that he had -- that Mr. Dietchweiler had

6   documentation of it.  But I don't remember the

7   information.

8       Q.  It was a test on Noah, was it not?

9       A.  Yes.  It was a test on Noah.

10      Q.  It was taken after the disciplinary action

11  taken against him on February -- I'm sorry --

12  January 25, it was taken the evening of January 25,

13  2013, was it not?

14      A.  I do not recall the date.

15      Q.  It was negative, was it not?

16      A.  The results Mr. Dietchweiler gave us was

17  negative.

18      Q.  Okay.  And those results, based upon what

19  you know in your profession, would have established

20  with scientific certainty that Noah did not have

21  Ativan in his system at the time of the action on

22  January 25, 2013, would it not?

23          MS. MASAITIS:  I'm going to object as to

24  the form.  I think it also calls for a scientific

19

1    conclusion, 213(f) objection, and also foundation and

2    it calls for a medical conclusion.  I'm sorry.

3    Change it to 26(f).  If you can answer the question,

4    feel free to, but if you don't --

5         A.    I'm not qualified to determine whether

6    those laboratory tests are correct or not correct

7    or...

8    BY MR. TAGUE:

9         Q.    Did you consider -- do you believe the

10   evidence presented at Noah's hearing proved or did

11   not prove that he had consumed the drug Ativan on

12   either January 24, 2013, or January 25, 2013?

13              MS. MASAITIS:  And I'm going to object and

14   I'm going to instruct the witness not to answer

15   because I believe that goes to the deliberation and

16   the ultimate conclusions that were reached by the

17   board and I believe that's confidential pursuant to

18   the Open Meetings Act exception under 2(c), so I'm

19   going to instruct her not to answer.

20   BY MR. TAGUE:

21        Q.    Are you going to answer that question?

22        A.    I'm going to follow my attorney's advice.

23              MR. TAGUE:  Certify that question.

24   BY MR. TAGUE:

20

1       Q.   Did anyone other than you look at -- first,

2  let me ask you, prior to your deliberations, did

3  anyone -- let me ask you, did you even look at the

4  drug test?

5       MS. MASAITIS:  I'm going to object as to

6  form.  Vague.

7       MR. TAGUE:  I can't think of any question

8  that's not more direct than that.

9  BY MR. TAGUE:

10       Q.   Did you look at the drug test you told us

11  that Mr. Dietchweiler submitted at the hearing prior

12  to your deliberations?

13       A.   I don't recall.

14       Q.   Do you know if anybody looked at it prior

15  to your deliberations?

16       MS. MASAITIS:  I'm going to object.  It

17  calls for speculation and it calls for her to make a

18  conclusion as to other persons.

19  BY MR. TAGUE:

20       Q.   Did you see anyone else look at it?

21       MS. MASAITIS:  Same objection.  I think it

22  also calls for her to -- no, I'll withdraw the

23  objection as to that.

24  BY MR. TAGUE:

1          Q.   Did you see anyone else look at the drug

2     test report prior to the board's deliberations on

3     Noah's case?

4          A.   I don't recall.  I don't recall if --

5               MS. MASAITIS:  Just that was the answer.

6     You don't have to offer any more.

7     BY MR. TAGUE:

8          Q.   I think you indicated you're in the health

9     profession field or is that wrong?

10         A.   That's correct.

11         Q.   Are you an RN?

12         A.   Yes.

13         Q.   What type of specialty do you have, if any?

14         A.   I have a BSN, a Bachelor's in Science and

15    Nursing.

16         Q.   Is there a specialty -- any type of

17    specialty work that you've done as a nurse?

18         A.   I have been a surgical nurse, I've done

19    home care.  I have been a chemical disease

20    coordinator.  I have --

21         Q.   Have you ever supervised drug testing?

22         A.   No.

23         Q.   Have you ever been involved in your

24    profession in administering a drug test?

22

1          A.   No.

2          Q.   Is your current position administrative?

3          A.   Yes.

4          Q.   How long has it been since you've been in

5     the field actually working with patients?

6               MS. MASAITIS:  I'm going to object as to

7     relevancy.  You can go ahead and answer.

8          A.   I've been a registered nurse since 1987.

9          Q.   Okay.  Do you remember anything that Noah

10    said during his hearing?

11         A.   The only thing I can remember him saying

12    was asking about Christian camp.

13         Q.   Do you remember anything Mike Dietchweiler

14    said at the hearing?

15         A.   He looked at me and said "I'll see you in

16    federal court."

17         Q.   And that was after the hearing was over?

18         A.   I think so.

19         Q.   You don't remember any of his testimony

20    before that?

21         A.   I remember that he had a document with drug

22    test results on it.

23         Q.   Do you remember anything that

24    Ann Dietchweiler stated at the hearing?

23

```
1          A.    Not specifically.

2          Q.    Do you remember any other testimony or

3    evidence that we haven't talked about at Noah's

4    hearing?

5          MS. MASAITIS:   I'm just going to object as

6    to vague.  But if you have a specific question, but

7    if you can -- go ahead and answer to the best of your

8    ability.

9    BY MR. TAGUE:

10         Q.    Let me ask you, was there any other

11   testimony by anybody other than who we've talked

12   about so far in this deposition?

13         A.    There was testimony from Mr. Bunting,

14   Mr. Lucas, Noah, Noah's father.  And that's all I can

15   recall.

16         Q.    Okay.  And you don't recall the substance

17   of anybody's testimony other than what you've related

18   as to Mr. Bunting or Mr. Lucas?

19         A.    I would not want to try to quote anyone.

20   And I don't feel comfortable in -- in trying to

21   reiterate what someone else said.

22         Q.    So you would rely upon the verbatim

23   transcript as to what happened?

24         A.    I haven't read it.
```

24

1      Q.   Did you do anything to prepare for the
2  deposition today?
3      A.   No.
4      Q.   Have you spoken with anyone other than your
5  attorneys since February 5, 2013, relating to Noah
6  Dietchweiler?
7      A.   Not that I can recall.
8      Q.   Have you spoken with any board members
9  about this case in which an attorney was not present?
10     A.   No.
11     Q.   When did you --
12     A.   Well, I should say until we were sitting
13  out there today and we were talking about -- a little
14  bit about how long it was taking.
15     Q.   So you and board member Johnson discussed
16  the procedure of the depositions of today?
17     A.   We discussed that I was supposed to give my
18  deposition at 2:00, or, excuse me, she was supposed
19  to give her deposition at 2:00 and I was supposed to
20  give my deposition at 3:00 and that's what we
21  discussed.
22     Q.   And the only thing you discussed was the
23  timing of the deposition?
24     A.   Yes.

1    Q.    When did you learn that a lawsuit had been

2    filed?

3    A.    I can't recall.

4    Q.    Did you ever read the complaint?

5    A.    I don't recall.

6    Q.    I want you to turn to Exhibit 4.  That's

7    not Exhibit 4, this is Exhibit 4.  Do you remember

8    getting written questions to review prior to today?

9    A.    The questions that I signed?

10   Q.    Well, let me get more specific.  This

11   document from here to the end of this tab, this one's

12   entitled Defendant Dee Schippert's Answers to

13   Plaintiff's Interrogatories.  You've seen this before

14   today?

15   A.    Yes.

16   Q.    When did you receive that?

17   A.    I can't recall.

18   Q.    When you received it, did it have the

19   answers already in there?

20   A.    I think it did.

21   Q.    Okay.  You read it?

22   A.    Yes.

23   Q.    And then you signed a verification saying

24   that they were correct to the best of your knowledge

26

1    and belief, correct?

2          A.   Correct.

3          Q.   That's your signature there, Dee Schippert?

4          A.   That is my signature.

5          Q.   And the 28th day of February, is that your

6    handwriting?

7          A.   It is.

8          Q.   Okay.  Interrogatory No. 8, the question

9    was -- asked you to identify when the list of

10   students owing money for drugs was -- and the first

11   part of that is given to Noah Dietchweiler.  And the

12   answer to that starts out with an objection and then

13   the last sentence says "however, it was given to

14   Noah's counsel."  Did you see that happen?

15         A.   I don't recall.

16         Q.   The second part asked you was that list

17   referred to at the school board meeting concerning

18   Noah and the B part again starts out with a review of

19   the transcripts.  Did you actually review the

20   transcript?

21         A.   No.  You mean this document?  Or the entire

22   transcript that the court reporter -- no, I hadn't

23   seen that until today.

24         Q.   Okay.  Now, interrogatory No. 9 asks you to

27

1   identify when the letter of M. M. identifying
2   students to whom he had provided pills was given to
3   Noah.  And the answer, part of that starts out with
4   an objection again, but then it says "it was given to
5   Noah's counsel."  Did you see that happen?
6       A.   I don't recall.
7       Q.   Do you know if it happened?
8       A.   No, I do not know if that happened or not.
9       Q.   And the second part of that was was it
10  referred to at the school board meeting, and it says
11  it was not referred to in the school board meeting.
12          Now, the --
13      A.   I couldn't tell you if it was or wasn't to
14  be honest.  I just don't recall.
15          MS. MASAITIS:  Let him ask a question,
16  okay?
17      A.   Okay.
18  BY MR. TAGUE:
19      Q.   Do you know how the administration became
20  aware that Noah was involved in something on
21  January 25, 2013?
22      A.   No.
23      Q.   Do you know -- I've been saying that date
24  sometimes during the deposition.  Do you actually

1    know the day that Noah was accused of actually

2    possessing drugs at school?

3         A.   I do not.

4         Q.   Do you know what type of substance it was?

5         A.   I do not.

6         Q.   Do you know whether it was pills, a bag of

7    pot, a bag of cocaine?  Do you know what the type

8    of -- of -- or form of the drug Noah was accused of

9    taking was?

10        A.   I think that Noah was -- that he admitted

11   to being in possession of pills.

12        Q.   Okay.  And do you know what type of pills?

13        A.   I do not.

14        Q.   Do you know where the pills came from?

15        A.   I do not.

16        Q.   Do you remember Noah, during the

17   disciplinary proceedings, denying that he possessed

18   pills at school?

19        A.   I thought he denied consuming them.  I do

20   not know -- I do not recall whether he denied

21   possessing them or not.  But I think he denied

22   consuming them.

23        Q.   Okay.  Do you remember whether Noah

24   discussed what happened when he was called to

29

1    Mr. Lucas's office, what questions were asked of him

2    and what answers were given by him?

3          A.    I don't recall.

4          Q.    Do you remember whether or not anybody

5    testified to -- to an allegation that in that meeting

6    Noah admitted receiving a pill the day before the

7    meeting with the dean?

8          A.    I don't recall specifics.

9          Q.    Do you know how many pills Noah was accused

10   of receiving?

11         A.    I don't recall.

12         Q.    Do you know whether or not Noah was

13   searched on January 25, 2013, or any time prior to

14   that?

15         A.    I don't recall.

16         Q.    Do you know whether Noah's locker was

17   searched?

18         A.    I don't recall.

19         Q.    Do you know whether or not any pills

20   actually came into the possession of the

21   administration on January 25, 2013?

22         A.    I do not recall.

23         Q.    Were you aware that it was somebody's

24   prescription medication that ended up at school?

30

1          A.    I was not aware of that.

2                MR. TAGUE:  Let me just have a moment.

3                (Whereupon a break was taken and the

4     deposition continued as follows:)

5     BY MR. TAGUE:

6          Q.    Exhibit No. 5, it says Defendant's

7     Responses to Plaintiff's First Request to Admit.

8     Have you ever seen that document before?

9          A.    Is that the document that I signed?

10         Q.    You can look through it.

11         A.    If it's the document that I signed, I'm

12    sure that I have seen it.  But if it's not the

13    document I have signed, I haven't seen any documents.

14         Q.    We talked about one document you signed.

15    Do you remember signing more than one?

16         A.    No.  I have only signed the one that I can

17    recall.

18                MS. MASAITIS:  Keep looking.

19         A.    I did.

20    BY MR. TAGUE:

21         Q.    Is that your signature?

22         A.    That's my signature.

23         Q.    That is an attestation dated 31st day of

24    December, 2013?

1       A.    That is my signature.

2       Q.    And did you write the 31st day of

3   December in there?

4       A.    Yes.

5       Q.    Was anyone present when you signed that?

6       A.    Well, was it notarized?  If it was

7   notarized, then there was someone present.  But if it

8   wasn't, I don't --

9       Q.    You just don't remember?

10      A.    I don't recall.

11      Q.    Now, there's other people's attestations

12  too.  Have you ever seen the other people's

13  attestations?

14      A.    No.

15      Q.    Okay.  So you believe you saw this

16  document, read it and then signed the attestation?

17      A.    Yes.

18           MR. TAGUE:  I have no further questions.

19      EXAMINATION:

20      BY: MS. VERONICA MASAITIS:

21      Q.    Earlier, Dee, you had referred to that when

22  you get notification that there is a board meeting

23  coming up, you get a package.  Do you recall that

24  testimony?

32

1          A.    Yes.

2          Q.    And we had held up, I think it's referred

3    to as Exhibit 1.  Is that what that was called?  It's

4    in this binder as Exhibit 1?

5              MR. TAGUE:  Yes.

6          Q.    And it's shown in the binder there with

7    Exhibits 1 through 6, do you see that?  Is that the

8    package that you get?

9          A.    No.  No.

10         Q.    So can you tell us what you actually get

11   when you're notified that there is a board meeting?

12         A.    It's an agenda.  It's an agenda.  I should

13   called it an agenda.

14         Q.    So it's really just an agenda of what's

15   going to be going on at the meeting for that coming

16   week?

17         A.    Yes.

18         Q.    And it's not like a multi-packeted document

19   as to what's going on for any of the student

20   disciplinary meetings that coming week?

21         A.    No.  We get no documents before -- before a

22   hearing.  None.  Just notification to show up at this

23   time, at this place.  That's it.

24         Q.    So there is nothing that is given to any

33

1     board member prior to the student disciplinary

2     proceeding?

3          A.   No.

4          Q.   Whether it be suspension, expulsion,

5     whatever the case may be?

6          A.   No.

7          Q.   Whatever the issue is.  Okay.

8               And then just in terms of -- what was the

9     interrogatories?  What number was that?  I don't know

10    if you had a number.

11               MR. TAGUE:   Four.

12          Q.   The interrogatories you answered in terms

13    of No. 4, you were assisted with the advice of

14    counsel, were you not, with that?  The questions that

15    were answered under oath.

16          A.   Yes.

17          Q.   Okay.  And that was counsel for the school

18    district in your representative capacity for the

19    school; is that correct?

20          A.   That's correct.

21               MS. MASAITIS:   That's all I have.

22    RE-EXAMINATION,

23          BY: MR. MICHAEL J. TAGUE:

24          Q.   Were you assisted or did you receive the

34

1    documents with the answers on them and then signed

2    them?

3        A.   We were told to look over the answers and

4    see if that was correct.  And if it was correct, to

5    sign it.

6        Q.   So you thought the answers were correct?

7        A.   Yes.

8        Q.   And you signed it?

9        A.   I thought that the answers were correct

10   when I signed it, yes.

11       Q.   Did you do anything to or any research to

12   make sure that the answers were correct before you

13   signed it?

14       A.   I don't recall.

15       Q.   Did you review any documents after you

16   received the answers to interrogatories and before

17   you attested?

18       A.   No.

19       Q.   Did you speak with anyone, other than your

20   attorneys, to obtain any information after you

21   received the document but before you attested to it?

22       A.   No.

23            MR. TAGUE:  That's all I have.

24            MS. MASAITIS:  I have a few follow-up

35

1   questions.

2   RE-EXAMINATION,

3        BY: MS. VERONICA MASAITIS:

4        Q.   You were present at the suspension hearing

5   on February 5th, 2013, correct?

6        A.   Correct.

7        Q.   And Mr. Tague was there as well, correct?

8        A.   Yes.

9        Q.   So when it says the note that was discussed

10  when Mr. Tague was questioning Mr. Bunting that's

11  indicated there in your interrogatory response, do

12  you see that there?

13       A.   Yes.

14       Q.   Okay.  So Mr. Tague, who is here today and

15  is questioning you about that, do you find any irony

16  in that, that he is questioning you that he didn't

17  receive that note?

18       A.   Yes.

19       Q.   Okay.  All right.

20            MR. TAGUE:  I did not receive the note.  It

21  was not provided to us until after we tried to claw

22  it out of you in our production request.

23            MS. MASAITIS:  And it wouldn't be clawing

24  it out of me because I wasn't there at the time.  But

36

1    thank you.  Okay.

2              MR. TAGUE:  What's the irony of that,

3    counsel?

4    BY MS. MASAITIS:

5         Q.   And the letter that is indicated in here,

6    this letter of M. M. that's -- that's identified in

7    interrogatory No. 9, do you see that there?

8         A.   I see that.

9         Q.   Okay.  Well, actually, let's go back,

10   though, for a minute.  These were answered on

11   February 28th of 2014, correct?

12        A.   Correct.

13        Q.   Okay.  So this is almost a year after this

14   hearing, correct?

15        A.   Correct.

16        Q.   Okay.  All right.  In any event -- and that

17   would be a long time after the February 5th, 2013

18   hearing, correct?

19        A.   Yes.

20        Q.   Okay.  And that letter from M. M., that was

21   part of the exhibits that he showed you earlier, that

22   was the letter that you said you never had even seen,

23   right?

24        A.   I had not seen that until today.

37

```
 1         Q.    Okay.   Great.   And then actually in the
 2    interrogatory answers themselves it says that you
 3    discussed this with the paralegal in our office,
 4    isn't that correct?
 5         A.    Yes.
 6         Q.    Okay.
 7              MS. MASAITIS:   That's all I have.
 8              MR. TAGUE:   I don't have any further
 9    questions.
10              MS. MASAITIS:   We will waive signature.
11    (Concluding at 5:15 p.m.)
12    AND FURTHER THE DEPONENT SAITH NOT
13                        (Signature Waived)
14                        DEEANN SCHIPPERT
15
16
17
18
19
20
21
22
23
24
```

38

```
 1    STATE OF ILLINOIS  )
                         )
 2    COUNTY OF VERMILION)

 3
            I, Amy Prillaman Buhr, a Certified Shorthand
 4    Reporter, in and for the County of Vermilion, State
      of Illinois, do hereby certify that DEEANN SCHIPPERT,
 5    the deponent herein, was by me first duly sworn to
      tell the truth, the whole truth and nothing but the
 6    truth, in the aforementioned cause of action.
            That the foregoing deposition was taken on
 7    behalf of the Plaintiff, at the offices of Iroquois
      County CUSD No. 9, 1411 West Lafayette, Watseka,
 8    Illinois, on October 24, 2014;
            That said deposition is a true record of the
 9    testimony given by the deponent and was taken down in
      stenograph notes and afterwards reduced to
10    typewriting under my instruction; and that it was
      agreed by and between the witness and attorneys that
11    said signature on said deposition would be waived.
            I do hereby certify that I am a disinterested
12    person in this cause of action; that I am not a
      relative of any party or any attorney of record in
13    this cause, or an attorney for any party herein, or
      otherwise interested in the event of this action, and
14    am not in the employ of the attorneys for either
      party.
15          IN WITNESS WHEREOF, I have hereunto set my hand
      this 30th day of October, 2014.
16

17          _____
                AMY PRILLAMAN BUHR, CSR, FCRR
18

19

20

21

22

23

24
```

DIETCHWEILER v.
STEVE LUCAS ET AL

DEEANN SCHIPPERT
October 24, 2014

**A**

ability (1)
23:8
absolutely (1)
17:10
accurate (1)
5:17
accused (3)
28:1,8;29:9
Act (6)
7:1;16:14;17:9,12,
19;19:18
Action (4)
13:8,16;18:10,21
actually (8)
15:7;22:5;26:19;
27:24;28:1;29:20;
32:10;36:9
address (2)
5:24;6:1
administering (1)
21:24
administration (6)
12:1,9;14:6,16;
27:19;29:21
administrative (1)
22:2
administrator (1)
6:5
Admit (1)
30:7
admitted (2)
28:10;29:6
advice (3)
17:23;19:22;33:13
again (2)
26:18;27:4
against (1)
18:11
agenda (6)
10:20,22;32:12,12,
13,14
ahead (2)
22:7;23:7
allegation (1)
29:5
almost (1)
36:13
Ann (1)
22:24
answered (3)
33:12,15;36:10
apparently (2)
13:2;16:6
appear (1)
11:18
archive (1)
10:11
area (1)
6:3
arrive (1)

10:16
arrived (1)
10:13
assisted (2)
33:13,24
assume (1)
14:22
Ativan (2)
18:21;19:11
attended (1)
7:2
attestation (2)
30:23;31:16
attestations (2)
31:11,13
attested (2)
34:17,21
attorney (2)
11:13;24:9
attorneys (2)
24:5;34:20
attorney's (2)
17:23;19:22
aware (4)
14:20;27:20;29:23;
30:1

**B**

Bachelor's (1)
21:14
back (3)
5:19;10:8;36:9
bag (2)
28:6,7
based (2)
16:23;18:18
became (1)
27:19
become (1)
6:11
beginning (1)
11:2
behalf (2)
11:19;14:5
Behind (1)
13:6
belief (1)
26:1
Belt (1)
7:2
best (2)
23:7;25:24
binder (2)
32:4,6
bit (1)
24:14
black (1)
12:19
blank (1)
13:18
board (31)
6:9,12,23,24;7:4,6,

8:5,6,24;9:1,6,12,12,
14,15,19;10:2,4,8,11;
11:7;17:18;19:17;
24:8,15;26:17;27:10,
11;31:22;32:11;33:1
board's (1)
21:2
Bound (3)
12:14,16,19
break (1)
30:3
bring (1)
10:7
BSN (1)
21:14
Bunting (7)
11:8;14:7,12,16;
23:13,18;35:10

**C**

called (3)
28:24;32:3,13
calls (7)
16:11;17:6;18:24;
19:2;20:17,17,22
came (3)
7:5;28:14;29:20
camp (1)
22:12
can (17)
5:16,18;10:7;11:9;
12:3,12,20;17:13;
19:3;22:7,11;23:7,14;
24:7;30:10,16;32:10
candidacy (1)
6:18
capacity (1)
33:18
care (1)
21:19
case (7)
5:15;10:19,23;
13:22;21:3;24:9;33:5
certainty (1)
18:20
Certify (3)
17:1,24;19:23
Change (1)
19:3
chemical (1)
21:19
Christian (1)
22:12
classwork (1)
6:22
claw (1)
35:21
clawing (1)
35:23
cocaine (1)
28:7
code (1)

6:3
comfortable (1)
23:20
coming (4)
6:17;31:23;32:15,
20
Commencing (1)
5:1
complaint (1)
25:4
concerning (1)
26:17
conclusion (3)
19:1,2;20:18
conclusions (1)
19:16
confidential (2)
16:14;19:17
consider (1)
19:9
consumed (1)
19:11
consuming (2)
28:19,22
contained (1)
7:21
contents (1)
13:3
continued (1)
30:4
coordinator (1)
21:20
Corn (1)
7:2
counsel (5)
26:14;27:5;33:14,
17;36:3
County (1)
6:6
court (4)
11:10,11;22:16;
26:22
current (1)
22:2

**D**

date (2)
18:14;27:23
dated (1)
30:23
day (6)
10:14;26:5;28:1;
29:6;30:23;31:2
dean (1)
29:7
Deann (1)
5:8
December (2)
30:24;31:3
declared (1)
6:18
DEE (5)

5:2,13;25:12;26:3;
31:21
Defendant (1)
25:12
Defendant's (1)
30:6
deliberation (1)
19:15
deliberations (4)
20:2,12,15;21:2
denied (1)
28:19,20,21
denying (1)
28:17
Department (1)
6:6
deposition (9)
5:10;23:12;24:2,18,
19,20,23;27:24;30:4
depositions (1)
24:16
details (1)
7:23
determine (1)
19:5
Dietchweiler (8)
12:4;18:5,16;20:11;
22:13,24;24:6;26:11
Dietchweilers (1)
11:12
Dietchweiler's (3)
5:15;7:10,16
different (1)
13:2
direct (1)
20:8
directory (2)
17:11,15
disciplinary (8)
7:8,13;13:8,16;
18:10;28:17;32:20;
33:1
discussed (7)
13:4;24:15,17,21,
22;28:24;35:9
disease (1)
21:19
district (1)
33:18
district's (1)
7:17
document (21)
12:3,10;13:7,9,10,
24;14:2;15:9,11;16:3;
22:21;25:11;26:21;
30:8,9,11,13,14;
31:16;32:18;34:21
documentation (1)
18:6
documents (8)
9:24;11:24;12:2;
13:4;30:13;32:21;
34:1,15

done (2)
    21:17,18
drug (12)
    8:22;12:5;18:2,4;
    19:11;20:4,10;21:1,
    21,24;22:21;28:8
drugs (2)
    26:10;28:2
duly (1)
    5:3
during (7)
    11:5,15;13:4;15:17;
    22:10;27:24;28:16

**E**

Earlier (2)
    31:21;36:21
either (2)
    10:6;19:12
elected (2)
    6:13,24
else (5)
    8:24;11:15;20:20;
    21:1;23:21
end (1)
    25:11
ended (2)
    7:14;29:24
ending (1)
    7:5
entire (2)
    15:2;26:21
entitled (1)
    25:12
established (1)
    18:19
even (3)
    17:3;20:3;36:22
evening (1)
    18:12
event (1)
    36:16
evidence (2)
    19:10;23:3
exact (1)
    17:6
EXAMINATION (2)
    5:4;31:19
exception (1)
    19:18
excuse (1)
    24:18
Exhibit (10)
    12:8;14:4;15:9;
    16:1;25:6,7,7;30:6;
    32:3,4
Exhibits (2)
    32:7;36:21
existed (2)
    15:14,15
exists (1)
    15:5

expulsion (2)
    8:18;33:4

**F**

far (1)
    23:12
fashion (1)
    9:19
father (1)
    23:14
February (11)
    6:8;7:11;8:4;9:5;
    10:13;18:11;24:5;
    26:5;35:5;36:11,17
federal (1)
    22:16
feel (3)
    17:13;19:4;23:20
few (1)
    34:24
field (2)
    21:9;22:5
filed (1)
    25:2
filled (1)
    13:21
find (1)
    35:15
first (6)
    5:3;10:19;14:8;
    20:1;26:10;30:7
follow (2)
    17:23;19:22
follows (2)
    5:3;30:4
follow-up (1)
    34:24
form (9)
    9:9;12:13,14,15,16;
    13:18;18:24;20:6;
    28:8
foundation (1)
    19:1
Four (1)
    33:11
free (2)
    17:13;19:4
Friday (2)
    8:6;9:12
Funk (1)
    11:8
further (1)
    31:18

**G**

gave (1)
    18:16
gestures (1)
    5:20
given (9)
    9:12;13:11,13;

26:11,13;27:2,4;29:2;
    32:24
giving (1)
    17:17
goes (1)
    19:15
governing (1)
    7:22

**H**

hand (1)
    15:6
handbook (2)
    7:19,21
handwriting (1)
    26:6
happen (2)
    26:14;27:5
happened (6)
    11:1;14:17;23:23;
    27:7,8;28:24
happens (2)
    9:10;10:4
hate (1)
    14:18
health (3)
    6:5,6;21:8
hear (1)
    15:16
heard (3)
    15:13,15,17
hearing (29)
    7:11,16;8:4,7,8,15;
    9:11,11,14;10:14;
    11:2,4,5;12:1,11;
    13:4;15:17,23;19:10;
    20:11;22:10,14,17,24;
    23:4;32:22;35:4;
    36:14,18
hearings (4)
    7:14;8:11;9:13;
    10:14
held (2)
    6:7;32:2
High (2)
    13:7;17:4
HIPAA (2)
    16:13,13
hired (1)
    6:8
home (3)
    6:2;10:7;21:19
honest (1)
    27:14

**I**

identified (3)
    15:22;16:6;36:6
identify (5)
    8:11,17;14:14;26:9;
    27:1

identifying (1)
    27:1
Illinois (1)
    6:2
implicated (1)
    14:17
inclusion (1)
    9:18
indicate (1)
    8:14
indicated (3)
    21:8;35:11;36:5
individual (1)
    16:15
information (9)
    16:12,15;17:7,8,11,
    14;18:3,7;34:20
infraction (1)
    14:6
instruct (5)
    16:16;17:16,19;
    19:14,19
Interrogatories (4)
    25:13;33:9,12;
    34:16
Interrogatory (4)
    26:8,24;35:11;36:7
into (1)
    29:20
involved (5)
    8:15,18,21;21:23;
    27:20
irony (2)
    35:15;36:2
Iroquois (1)
    6:6
issue (1)
    33:7
item (1)
    9:3
items (3)
    10:22;13:2,3

**J**

January (9)
    14:1;18:12,12,22;
    19:12,12;27:21;
    29:13,21
job (1)
    6:7
Johnson (1)
    24:15

**K**

keep (2)
    10:1;30:18
keeps (1)
    10:10
knowledge (2)
    15:22;25:24

**L**

laboratory (1)
    19:6
lady (1)
    5:14
last (3)
    5:7,8;26:13
later (1)
    10:8
lawsuit (1)
    25:1
learn (2)
    8:3;25:1
leave (1)
    10:6
Lee (5)
    10:6,9,10;11:8;14:1
letter (6)
    14:1;27:1;36:5,6,
    20,22
lift (1)
    12:20
list (9)
    15:14,15,19,21,23;
    16:8,19;26:9,16
little (1)
    24:13
locker (1)
    29:16
long (4)
    6:7;22:4;24:14;
    36:17
look (9)
    12:9;17:14;20:1,3,
    10,20;21:1;30:10;
    34:3
looked (5)
    12:13,14,15;20:14;
    22:15
looking (1)
    30:18
Lucas (6)
    11:8;14:7,10,17;
    23:14,18
Lucas's (1)
    29:1

**M**

maintain (1)
    16:20
many (3)
    8:11;13:18;29:9
marked (1)
    12:7
MASAITIS (25)
    7:24;9:8;12:12,20,
    23;16:10,20;17:5,13;
    18:23;19:13;20:5,16,
    21;21:5;22:6;23:5;
    27:15;30:18;31:20;

33:21;34:24;35:3,23;
36:4
**materials (2)**
12:8,11
**matter (2)**
8:17;10:19
**may (1)**
33:5
**mean (3)**
5:20;11:20;26:21
**medical (1)**
19:2
**medication (1)**
29:24
**meeting (16)**
8:6,9;9:13,14,16;
10:5,8,11;26:17;
27:10,11;29:5,7;
31:22;32:11,15
**Meetings (4)**
7:1,2;19:18;32:20
**member (5)**
6:9,11,23;24:15;
33:1
**member/president (1)**
7:4
**members (2)**
11:7;24:8
**MICHAEL (2)**
5:5;33:23
**Mike (1)**
22:13
**minute (1)**
36:10
**moment (1)**
30:2
**money (2)**
15:14;26:10
**more (4)**
20:8;21:6;25:10;
30:15
**multi-packeted (1)**
32:18

**N**

**name (4)**
5:6,7,8,8
**names (2)**
15:20;16:5
**need (2)**
5:15;17:15
**negative (2)**
18:15,17
**night (2)**
9:15;10:20
**nights (1)**
9:14
**Noah (25)**
5:14;7:10,16;11:4,
6,21;14:17;18:8,9,20;
22:9;23:14;24:5;
26:11,18;27:3,20;

28:1,8,10,16,23;29:6,
9,12
**Noah's (19)**
10:19,23;11:2,5,6,
16,18;12:1;13:4,22;
14:6;15:23;19:10;
21:3;23:3,14;26:14;
27:5;29:16
**None (2)**
8:16;32:22
**notarized (2)**
31:6,7
**note (3)**
35:9,17,20
**notice (5)**
9:7,18;13:8,13,15
**notification (3)**
9:22;31:22;32:22
**notified (3)**
9:11,13;32:11
**number (4)**
5:24;6:2;33:9,10
**numbers (1)**
15:20
**nurse (3)**
21:17,18;22:8
**Nursing (1)**
21:15

**O**

**oath (1)**
33:15
**object (8)**
9:8;16:10;18:23;
19:13;20:5,16;22:6;
23:5
**objection (7)**
16:21;17:6;19:1;
20:21,23;26:12;27:4
**obtain (1)**
34:20
**occupation (1)**
6:4
**occurred (1)**
9:15
**offer (1)**
21:6
**office (2)**
10:15;29:1
**one (14)**
9:2,3;13:6,7,20,21;
14:14,19;15:5,22;
17:24;30:14,15,16
**one's (1)**
25:11
**only (4)**
12:3;22:11;24:22;
30:16
**Open (2)**
7:1;19:18
**opine (1)**
16:11

**orally (1)**
9:22
**out (8)**
13:21;16:12;24:13;
26:12,18;27:3;35:22,
24
**over (5)**
7:6;12:14,16;22:17;
34:3
**owed (1)**
15:14
**owing (1)**
26:10

**P**

**package (10)**
8:24;9:2,5,6,19;
12:8,11;13:24;31:23;
32:8
**packages (2)**
10:2,11
**packet (2)**
8:5;9:12
**page (1)**
9:3
**paper (2)**
9:2,3
**paragraph (1)**
9:2
**parents (1)**
11:6
**part (8)**
15:9;16:1;26:11,16,
18;27:3,9;36:21
**participated (2)**
7:11,13
**past (1)**
7:4
**patients (1)**
22:5
**people's (2)**
31:11,12
**persons (1)**
20:18
**phone (1)**
5:24
**piece (2)**
9:2,3
**pill (1)**
29:6
**pills (8)**
27:2;28:6,11,12,14,
18;29:9,19
**place (1)**
32:23
**Plaintiff's (2)**
25:13;30:7
**please (2)**
5:6,18
**pm (1)**
5:1
**policies (2)**

7:17,21
**portion (2)**
9:1;11:15
**portions (1)**
15:7
**position (1)**
22:2
**positive (1)**
17:10
**possessed (1)**
28:17
**possessing (2)**
28:2,21
**possession (3)**
10:1;28:11;29:20
**pot (1)**
28:7
**preceded (1)**
5:14
**prepare (1)**
24:1
**prescription (1)**
29:24
**present (11)**
11:5,6,7,7,9,13,15;
24:9;31:5,7;35:4
**presented (2)**
14:16;19:10
**prior (10)**
7:10,16;11:1;20:2,
11,14;21:2;25:8;
29:13;33:1
**probably (1)**
12:18
**procedure (2)**
7:12;24:16
**procedures (3)**
7:8,18,21
**proceeding (1)**
33:2
**proceedings (3)**
11:16;14:21;28:17
**produced (1)**
11:24
**Production (3)**
15:10;16:2;35:22
**profession (3)**
18:19;21:9,24
**protected (4)**
16:12,14;17:8,11
**prove (1)**
19:11
**proved (1)**
19:10
**provided (2)**
27:2;35:21
**public (3)**
6:5,6;17:14
**purpose (1)**
12:21
**pursuant (1)**
19:17
**put (1)**

12:8

**Q**

**qualified (1)**
19:5
**quote (2)**
14:19;23:19

**R**

**reached (1)**
19:16
**read (7)**
5:19;7:19;15:7;
23:24;25:4,21;31:16
**really (2)**
9:20;32:14
**recall (42)**
8:10,13,23;9:4,23;
10:21,24;11:1,17,20,
23;12:22;13:5,19;
14:3,9,11,12;18:14;
20:13;21:4,4;23:15,
16;24:7;25:3,5,17;
26:15;27:6,14;28:20;
29:3,8,11,15,18,22;
30:17;31:10,23;34:14
**receive (10)**
25:16;33:24;35:17,
20
**received (4)**
9:18;25:18;34:16,
21
**receiving (2)**
29:6,10
**record (1)**
5:17
**recorder (1)**
14:23
**Records (4)**
16:14;17:9,12,19
**reelection (2)**
6:14,16
**RE-EXAMINATION (2)**
33:22;35:2
**referred (5)**
26:17;27:10,11;
31:21;32:2
**reflect (1)**
8:21
**regard (1)**
17:7
**registered (1)**
22:8
**reiterate (1)**
23:21
**related (1)**
23:17
**relating (1)**
24:5
**relative (1)**
14:6

**DIETCHWEILER v.**
**STEVE LUCAS ET AL**

**DEEANN SCHIPPERT**
**October 24, 2014**

**relevancy (1)**
   22:7
**rely (1)**
   23:22
**remember (36)**
   7:20,23;9:21;10:17;
   11:4,9,10,12;12:2,3,
   10,24;13:3,22;14:5,8,
   9,10,15;15:18,19;
   18:4,6;22:9,11,13,19,
   21,23;23:2;25:7;
   28:16,23;29:4;30:15;
   31:9
**remembered (1)**
   18:2
**repeat (1)**
   5:19
**rephrase (1)**
   5:19
**report (1)**
   21:2
**reporter (4)**
   11:10,11;14:23;
   26:22
**representative (2)**
   17:18;33:18
**Request (3)**
   15:10;30:7;35:22
**research (1)**
   34:11
**Response (3)**
   15:10;16:2;35:11
**responses (2)**
   5:15;30:7
**results (3)**
   18:16,18;22:22
**review (4)**
   25:8;26:18,19;
   34:15
**reviewed (2)**
   7:17;15:2
**right (4)**
   12:15;35:19;36:16,
   23
**RN (1)**
   21:11
**run (1)**
   6:14

**S**

**same (4)**
   5:16;16:21;17:5;
   20:21
**saw (2)**
   15:21;31:15
**saying (3)**
   22:11;25:23;27:23
**SCHIPPERT (3)**
   5:2,8;26:3
**S-C-H-I-P-P-E-R-T (1)**
   5:9
**Schippert's (1)**

**25:12**
**school (21)**
   6:9,11,23,24;7:4,5;
   8:5,6;11:7;13:7,11,
   11;17:4;26:17;27:10,
   11;28:2,18;29:24;
   33:17,19
**Science (1)**
   21:14
**scientific (2)**
   18:20,24
**Scott (1)**
   7:3
**searched (2)**
   29:13,17
**second (2)**
   26:16;27:9
**seeing (5)**
   12:2,3;13:20,22;
   15:5
**seminars (1)**
   6:23
**sentence (1)**
   26:13
**separate (1)**
   9:3
**seven (2)**
   16:5,7
**show (4)**
   12:7,12,21;32:22
**showed (1)**
   36:21
**shown (1)**
   32:6
**shreds (1)**
   10:7
**sign (1)**
   34:5
**signature (5)**
   26:3,4;30:21,22;
   31:1
**signed (13)**
   25:9,23;30:9,11,13,
   14,16;31:5,16;34:1,8,
   10,13
**signing (2)**
   16:6;30:15
**similar (1)**
   12:11
**sitting (1)**
   24:12
**situation (1)**
   8:22
**six (1)**
   13:2
**somebody's (1)**
   29:23
**someone (2)**
   23:21;31:7
**sometimes (1)**
   27:24
**sorry (2)**
   18:11;19:2

**South (1)**
   6:1
**speak (1)**
   34:19
**special (2)**
   8:8,9
**specialty (3)**
   21:13,16,17
**specific (3)**
   14:18;23:6;25:10
**specifically (2)**
   13:21;23:1
**specifics (3)**
   14:11,13;29:8
**speculation (1)**
   20:17
**spell (1)**
   5:6
**spelled (1)**
   5:9
**spent (1)**
   7:3
**spiral (1)**
   12:19
**spoken (2)**
   24:4,8
**spring (2)**
   6:17,17
**starts (3)**
   26:12,18;27:3
**state (2)**
   5:6,24
**stated (2)**
   15:19;22:24
**status (1)**
   17:7
**stenographic (1)**
   5:17
**Street (1)**
   6:1
**strike (1)**
   16:13
**student (19)**
   7:7,12,19,21,22;
   11:18,20;13:8,12;
   16:5,13;17:7,9,11,12,
   15,19;32:19;33:1
**students (11)**
   7:18;8:14;13:10;
   15:14;16:5,8,11,15;
   17:3;26:10;27:2
**subject (1)**
   8:17
**submitted (1)**
   20:11
**substance (2)**
   23:16;28:4
**supervised (1)**
   21:21
**supposed (3)**
   24:17,18,19
**sure (3)**
   7:14;30:12;34:12

**surgical (1)**
   21:18
**suspended (5)**
   13:12,14;16:9,18,
   19
**suspension (7)**
   7:12,15,18;8:4,18;
   33:4;35:4
**suspensions (1)**
   7:22
**sworn (1)**
   5:3
**system (1)**
   18:21

**T**

**tab (1)**
   25:11
**table (2)**
   12:17;13:3
**tabs (1)**
   13:6
**TAGUE (36)**
   5:5;8:2;12:18;13:1;
   16:17,22;17:1,2,10,
   21,24;18:1;19:8,20,
   23,24;20:7,9,19,24;
   21:7;23:9;27:18;30:2,
   5,20;31:18;32:5;
   33:11,23;34:23;35:7,
   10,14,20;36:2
**talk (1)**
   5:16
**talked (3)**
   23:3,11;30:14
**talking (1)**
   24:13
**telephone (1)**
   6:2
**telling (1)**
   16:23
**term (1)**
   7:5
**terms (2)**
   33:8,12
**test (8)**
   18:4,8,9;20:4,10;
   21:2,24;22:22
**testified (4)**
   5:3;14:5,8;29:5
**testify (1)**
   11:18
**testimony (7)**
   17:17;22:19;23:2,
   11,13,17;31:24
**testing (3)**
   12:5;18:3;21:21
**tests (1)**
   19:6
**Third (1)**
   6:1
**though (1)**

**36:10**
**thought (3)**
   28:19;34:6,9
**times (1)**
   13:18
**timing (1)**
   24:23
**today (9)**
   15:1;24:2,13,16;
   25:8,14;26:23;35:14;
   36:24
**together (1)**
   12:9
**told (2)**
   20:10;34:3
**took (1)**
   7:1
**trade (1)**
   6:4
**training (4)**
   6:22;7:2,3,7
**transcript (6)**
   14:21,24;15:3;
   23:23;26:20,22
**transcripts (1)**
   26:19
**tried (1)**
   35:21
**try (2)**
   14:18;23:19
**trying (2)**
   14:14;23:20
**turn (1)**
   25:6
**type (5)**
   21:13,16;28:4,7,12
**Typically (2)**
   9:10,13

**U**

**ultimate (1)**
   19:16
**under (5)**
   17:9,12,14;19:18;
   33:15
**unit (1)**
   10:15
**up (8)**
   6:16;7:14;12:20;
   17:14;29:24;31:23;
   32:2,22
**upon (3)**
   16:23;18:18;23:22

**V**

**Vague (2)**
   20:6;23:6
**verbal (1)**
   5:16
**verbatim (2)**
   14:20;23:22

**Area Wide Reporting and Video Conferencing**
**1-800-747-6789**

**(4) relevancy - verbatim**

**verification (1)**
  25:23
**VERONICA (2)**
  31:20;35:3
**violating (1)**
  17:18

**W**

**Watseka (3)**
  6:2;13:7;17:4
**Watts (1)**
  7:4
**way (1)**
  9:18
**week (2)**
  32:16,20
**what's (4)**
  12:7;32:14,19;36:2
**Whereupon (1)**
  30:3
**whose (2)**
  7:5;15:20
**withdraw (1)**
  20:22
**Without (1)**
  14:14
**witness (2)**
  17:16;19:14
**work (1)**
  21:17
**working (1)**
  22:5
**write (1)**
  31:2
**writing (1)**
  9:22
**written (1)**
  25:8
**wrong (2)**
  14:19;21:9

**Y**

**year (1)**
  36:13

**1**

**1 (5)**
  12:8;15:10;32:3,4,7
**1987 (1)**
  22:8

**2**

**2 (1)**
  16:2
**2:00 (2)**
  24:18,19
**2011 (1)**
  6:13
**2013 (16)**
  7:11;8:4;9:6;10:14;
  14:1;18:13,22;19:12,
  12;24:5;27:21;29:13,
  21;30:24;35:5;36:17
**2014 (1)**
  36:11
**213f (1)**
  19:1
**24 (1)**
  19:12
**25 (7)**
  18:12,12,22;19:12;
  27:21;29:13,21
**26f (1)**
  19:3
**28th (2)**
  26:5;36:11
**2c (1)**
  19:18

**3**

**3 (3)**
  14:4;15:9;16:1
**3:00 (1)**
  24:20
**30 (1)**
  14:1
**31st (2)**
  30:23;31:2

**4**

**4 (4)**
  25:6,7,7;33:13
**4:27 (1)**
  5:1
**432-5087 (1)**
  6:3

**5**

**5 (6)**
  7:11;8:4;9:5;10:13;
  24:5;30:6
**528 (1)**
  6:1
**5th (2)**
  35:5;36:17

**6**

**6 (1)**
  32:7
**60970 (1)**
  6:2

**8**

**8 (1)**
  26:8
**815 (1)**
  6:3

**9**

**9 (2)**
  26:24;36:7

Min-U-Script®