E-FILED
Monday, 15 December, 2014  03:32:58 PM
Clerk, U.S. District Court, ILCD

1

```
 1            IN THE UNITED STATES DISTRICT COURT
            FOR THE CENTRAL DISTRICT OF ILLINOIS
 2                    STATE OF ILLINOIS

 3

    NOAH DIETCHWEILER, by MICHAEL    )
 4  DIETCHWEILER, his father and     )
    next friend, and ANN DIETCHWEILER)
 5       Plaintiffs,                  )
                                      ) No. 2013-CV-2062
 6            vs.                     )
                                      )
 7  STEVE LUCAS, in his official and )
    individual capacities;           )
 8  JAMES BUNTING, in his official   )
    and individual capacities;       )
 9  KENNETH LEE, in his official     )
    and individual capacities;       )
10  IROQUOIS COUNTY COMMUNITY UNIT   )
    SCHOOL DISTRICT NO. 9, IROQUOIS  )
11  COUNTY ILLINOIS; JAMES BRUNS,    )
    in his official capacity; DON    )
12  BECKER, in his official capacity;)
    BRENNA JOHNSON, in her official  )
13  capacity; CRYSTAL BLAIR, in her  )
    official capacity; BOB BURD, in  )
14  his official capacity; KIRK      )
    McTAGGART, in his official       )
15  capacity; and DEE SCHIPPERT,     )
    in her official capacity,        )
16       Defendants.                 )
    -------------------------------

17

18

                DEPOSITION OF KIRK McTAGGART
19                  October 17, 2014
                       3:25 PM
20

21

22

23       June Haeme:  RMR, CRR, CSR # 084-003038
         Area Wide Reporting and Video Conferencing
24              301 West White Street
              Champaign, Illinois  61820
25                 800.747.6789
```

2

```
 1                              INDEX

 2    APPEARANCES:

 3    For the Plaintiff:
                Michael Tague
 4              Attorney at Law
                Flynn, Palmer & Tague Law Offices
 5              402 West Church Street
                P.O. Box 1517
 6              Champaign, IL  61824-1517
                217.352.5181
 7              fpt5law@aol.com

 8    For the Defendant:
                Shari D. Goggin-Ward
 9              Attorney at Law
                Law Offices of Lawrence Cozzi
10              27201 Bella Vista Parkway, Suite 410
                Warrenville, IL  60555-1619
11              630.393.2145
                shari.goggin-ward@libertymutual.com
12
      Also Present:
13              Michael Dietchweiler

14
      EXAMINATION BY:
15              Mr. Tague.................  4, 33
                Ms. Goggin-Ward........... 32
16

17
      EXHIBITS:
18
                      (No exhibits marked.)
19

20

21

22

23

24

25
```

3

1                           STIPULATION

2

3               IT IS HEREBY EXPRESSLY STIPULATED AND

4       AGREED by and between the parties that the

5       deposition of KIRK McTAGGART may be taken on October

6       17, 2014, at the Iroquois County CUSD #9, 1411 West

7       Lafayette Street, Watseka, Illinois, pursuant to the

8       Rules of the Federal Court and the Rules of Federal

9       Procedure governing said depositions.

10

11

12               IT IS FURTHER STIPULATED that the

13       necessity for calling the Court Reporter for

14       impeachment purposes is waived.

15

16

17

18

19

20

21

22

23

24

25

4

```
 1                 (Commencing at 3:25 p.m.)

 2                       KIRK McTAGGART,

 3    having first been duly sworn, testified as follows:

 4                 EXAMINATION BY

 5                 MR. TAGUE:

 6        Q.    Would you please state your name?

 7        A.    Kirk McTaggart.

 8        Q.    Could you spell your last name?

 9        A.    Capital M-C-capital T-A-G-G-A-R-T.

10        Q.    Have you ever given a deposition before?

11        A.    No.

12        Q.    Have you ever testified in court before?

13        A.    No.

14        Q.    I'm going to ask you questions here today.

15    If you don't understand a question, you don't hear a

16    question, please tell me so.  We can have the court

17    reporter read it back or I can repeat it.  It's

18    important that you understand the question so that

19    the answer is accurate.  Everything we say needs to

20    be taken down for a verbatim transcript.  If you

21    shake your head or make a gesture or say uh-huh or

22    uh-uh, I may ask you to clarify so that we have an

23    accurate stenographic transcript.  And we can't talk

24    at the same time because it's difficult for her to

25    prepare a transcript if we're talking over each
```

5

1   other.

2        Do you have any questions about the

3   procedure?

4        A.   No.

5        Q.   Okay.  What is your date of birth?

6        A.   June 8th, 1970.

7        Q.   What's your address and phone number?

8        A.   My address is 2112 East 1730 North,

9   Watseka, Illinois.

10       Q.   And what's your phone number?

11       A.   Area code 815-383-1625.

12       Q.   What is your trade or occupation?

13       A.   I sell building materials.

14       Q.   You're currently a member of the school

15  board?

16       A.   Correct.

17       Q.   Do you have any -- have you ever run for

18  any different political office?

19       A.   No.

20       Q.   When were you -- when did you first become

21  a member of the Board of Education?

22       A.   I don't recall.

23       Q.   You were a member of the Board of

24  Education on January 25, 2013; is that correct?

25       A.   I don't know.

6

1          Q.   On February 5, 2013, were you a member of

2     the Board of Education?

3          A.   I don't know.  I don't recall when my term

4     began.

5          Q.   Were you elected?

6          A.   I was elected.

7          Q.   For a four year term?

8          A.   Correct.

9          Q.   When is your term up?

10          A.   I don't know.

11          Q.   There was a suspension review hearing for

12     Noah Dietchweiler.  Do you remember that?

13          A.   Yes.

14          Q.   And you were present at that suspension

15     review hearing?

16          A.   Yes.

17          Q.   As a member of the school board?

18          A.   Yes.

19          Q.   Okay.  You just can't tell me how long you

20     had been a school board member before that?

21          A.   Correct.

22          Q.   Had you ever participated in any previous

23     suspension review hearings?

24          A.   I don't recall.

25          Q.   What did you know about the -- let me back

7

1    up.  Somehow you learned that there was going to be

2    a school board meeting and that board members should

3    attend for February 5, 2013.  Is that a fair

4    statement?

5          A.   That's a fair statement.

6          Q.   Do you remember how you became aware of

7    the meeting and what it was going to be about?

8          A.   I do not.

9          Q.   When a school board special meeting --

10   well, let me ask you.  Do you remember if February

11   5, 2013, was a special meeting or a regular meeting

12   or a reconvened meeting?

13         A.   No.

14         Q.   You've attended special meetings in the

15   past though, have you not?

16         A.   I don't know.

17         Q.   Okay.  So if I ask you how you learned of

18   this meeting, you can't tell me who told you to come

19   to the meeting and what it was going to be about.

20   Is that a fair statement?

21         A.   Yes.

22         Q.   When you arrived here, had you in your

23   possession any documents pertaining to that meeting

24   date at all in your possession?

25         A.   I don't recall.

8

```
 1        Q.   Do you know whether or not there was more
 2   than one disciplinary hearing that evening?
 3        A.   I don't recall.
 4        Q.   Was Noah's the first or does that question
 5   make no sense since you don't remember if there were
 6   more than one?
 7        A.   I don't know.
 8        Q.   Okay.  You remember, though, that there
 9   was a suspension hearing involving Noah
10   Dietchweiler.  Is that a correct statement?
11        A.   Yes.
12        Q.   And do you remember who was present at
13   that meeting?
14        A.   Perhaps not completely.
15        Q.   Who do you remember was present?
16        A.   I remember Mr. Bunting and Mr. Lucas being
17   present and I remember Mr. and Mrs. Dietchweiler
18   being present.
19        Q.   Were all the school board members present?
20        A.   I don't recall.
21        Q.   Was Mr. Lee present?
22        A.   I believe so.
23        Q.   Anyone else present that you remember?
24        A.   I believe you were present.
25        Q.   Okay.  Was there a -- was Mr. Funk
```

9

1   present?

2       A.   I don't know.

3       Q.   Do you remember this lady to my right

4   there?  Was a court reporter making a record of the

5   proceedings?

6       A.   No.

7       Q.   Are you aware that a verbatim transcript

8   exists of the portion of the proceedings other than

9   your private deliberations?

10      A.   No.

11      Q.   Do you remember whether or not there were

12  any documents presented and discussed in the

13  meeting?

14      A.   No.

15      Q.   We have there in the pile Plaintiff's

16  Exhibit No. 1.  Do you remember whether or not that

17  was the package of documents that Mr. Funk handed

18  out to everyone at the hearing?

19      A.   I, I don't remember --

20      Q.   Now --

21      A.   -- that I was handed anything at the

22  meeting, so whether I can say that this document is

23  it or not, I cannot.

24      Q.   Okay.  So whether any documents were

25  handed out or by whom you simply cannot tell us

1    today.

2         A.   That's correct.

3         Q.   Is there anything that would refresh your

4    recollection?  Maybe you made notes or if you

5    reviewed something that you're aware of that would

6    allow you to answer that question?

7         A.   I don't know.

8         Q.   Okay, so just I want to make sure and --

9    if you remember something, tell us; if you don't,

10   that's fine too.  I just want to make sure that I'm

11   not overlooking something.  You don't remember the

12   school district's representatives, either the

13   president, Mr. Lee or Mr. Funk, handing out

14   documents.  That's a correct statement?  You don't

15   remember that?

16        A.   Correct.

17        Q.   And you don't remember Mr. Dietchweiler or

18   I handing out documents for review.  Is that a fair

19   statement?

20        A.   Correct.

21        Q.   Okay.  I'll show you Exhibit No. 3.  The

22   second page of that, do you know what that is?

23        A.   I do not.

24        Q.   Let me show you the page that starts out

25   on the front 2:13 CV, it says "I've given,"

11

1    purportedly signed by Michael McKay.  Have you ever

2    seen that document before?

3         A.   I don't recall.

4              MR. DIETCHWEILER:  Excuse us a second.

5              (Pause at 3:38 p.m. to 3:39 p.m.)

6    BY MR. TAGUE:

7         Q.   What do you remember about Noah

8    Dietchweiler's case?

9         A.   I remember that he admitted to having

10   possession of something he shouldn't have had

11   possession of.

12        Q.   And he -- and that admission was something

13   he said at the hearing?

14        A.   I don't recall.

15        Q.   So you don't remember the source of the

16   confession that he possessed drugs?

17        A.   Correct.

18        Q.   Mr. Bunting say that?

19        A.   I don't recall.

20        Q.   Mr. Lucas say that?

21        A.   I don't recall.

22        Q.   Do you remember Noah saying that?

23        A.   I don't recall.

24        Q.   Have you ever seen the complaint that is

25   filed in this case?

12

1        A.   I don't know.

2        Q.   You know you're a defendant, do you not?

3        A.   Yes.

4        Q.   A defendant in a lawsuit filed in federal

5   court, correct?

6        A.   I don't know.  I -- that's...

7        Q.   It's your testimony here today that you've

8   never read the complaint in which you're a defendant

9   in a federal lawsuit?

10            MS. GOGGIN-WARD:  Objection, he said he

11   doesn't know if he's read it.

12        Q.   Explain to me how you can say that answer

13   that you don't remember whether you've read a

14   complaint that's been filed against you.  Do you

15   have a physical or mental disability that you can't

16   remember anything?

17        A.   I don't know.

18        Q.   Did you ever get instructions to say I

19   don't know to every question you're asked in a

20   deposition?

21        A.   No.

22        Q.   Okay.  Do you remember receiving written

23   questions to look at that were directed to the

24   defendants in the lawsuit you never remember

25   reading?

13

```
 1       A.   No.

 2       Q.   Are you saying it didn't happen or you

 3   just don't remember it?

 4       A.   You asked me if I remembered.

 5       Q.   Right.

 6       A.   And I do not.

 7       Q.   Okay.  But you're not denying that it

 8   happened, are you?

 9       A.   I am not.

10       Q.   I'm going to show you a portion of

11   defendant -- I'm sorry, Plaintiff's Exhibit No. 4

12   which are all of the school board members' answers

13   to written interrogatories.  I want you to look at

14   that document carefully, including your attestation,

15   before you tell me you don't remember seeing it.

16            MS. GOGGIN-WARD:  Object to the form of

17   the question.

18       Q.   Do you need more time to look at it?

19       A.   I don't believe so.

20       Q.   Okay.  When is the first time you saw that

21   document?

22       A.   I don't know.

23       Q.   Have you ever seen it before today?

24       A.   Yes.

25       Q.   And there's a document dated 21 February
```

14

1    2014 indicating verification and looks like that's

2    your signature.  Did you sign that verification?

3        A.   Yes.

4        Q.   Is the 21 February 2014 your writing?

5        A.   Yes.

6        Q.   Sometime prior to February '14,

7    February --

8             MS. GOGGIN-WARD:  21.

9        Q.   -- 21, 2014, you had that document in your

10   possession and did you read it?

11       A.   Yes.

12       Q.   And did you understand the questions that

13   are designated interrogatories and they have

14   numbers?

15       A.   I believe so.

16       Q.   Okay.  Interrogatory No. 1, there's an

17   answer.  You provided that information for that

18   answer; is that correct?

19       A.   Yes.

20            THE WITNESS:  I have a question.

21            MS. GOGGIN-WARD:  Do you want to talk to

22   me?

23            THE WITNESS:  I do.

24            MS. GOGGIN-WARD:  Okay.  Take a break.

25            (Recess at 3:48 p.m. to 3:49 p.m.)

15

1          MS. GOGGIN-WARD:  He wanted to correct.

2     There was a typo in the spelling of his name.

3     BY MR. TAGUE:

4          Q.   Okay.  What's the correction?

5          A.   McTaggart is spelled A-R-T instead of

6     E-R-T.

7          Q.   Did you have an opportunity to read that

8     before you signed the verification and just simply

9     didn't notice that there was a spelling error?

10         A.   I don't recall.

11         Q.   Interrogatory No. 2 states a question:

12    What was the drug that Noah was accused of taking?

13    And there's an answer that it was identified as

14    Ativan.  How did you know that?

15         A.   I don't recall.

16         Q.   Is that something that you would have

17    known by your personal knowledge or would it be a

18    fair statement that the only way you would have

19    known would have been what somebody told you?

20         A.   Yes, that's a fair statement.

21         Q.   No. 3, there's a statement made in

22    response to the interrogatory.  Do you know where

23    that information came from?

24         A.   I do not.

25         Q.   Would it have to have been something

16

1   somebody told you?

2        A.   Yes.

3        Q.   You don't remember from whom or when it

4   was told to you.  Is that a correct statement?

5        A.   Correct.

6        Q.   No. 4 asks for certain information.  There

7   is a response to it and my question is is the

8   response to the question starting in the second

9   sentence and following something that you gleaned on

10  your own or is that something somebody told you?

11       A.   I would have been informed.

12       Q.   Was the information obtained during Noah

13  Dietchweiler's suspension hearing or from some other

14  source?

15       A.   I don't recall.

16       Q.   There's -- Interrogatory No. 5, there's a

17  statement and a response starting with the second

18  sentence.  Do you remember where you got that

19  information?

20       A.   No.

21       Q.   Would it have to have been from what

22  somebody told you and you don't remember who told

23  you, when you were told or where you were told; is

24  that correct?

25            MS. GOGGIN-WARD:  Objection, compound.

17

```
 1        Q.   Okay.  It's something that was told to
 2   you, correct?
 3        A.   I don't know.  I would have been informed
 4   somehow.  Whether it was verbally told to me, I
 5   don't know.
 6        Q.   And you don't know who would have been the
 7   source of the information, correct?
 8        A.   Correct.
 9        Q.   And you don't know when you received this
10   information, correct?
11        A.   Correct.
12        Q.   Interrogatory No. 6, there's a statement
13   and answer with the last sentence.  Where did you
14   get that information?
15        A.   I don't recall.
16        Q.   When you got the questions, did you write
17   what you thought were the answers to each of the
18   questions and then others assisted you in completing
19   the answers or did you have a full set of answers
20   provided to you to review and then sign the
21   attestation?
22             MS. GOGGIN-WARD:  Objection, calls for
23   attorney/client privilege and legal conclusion.
24        Q.   Well, let me ask the first question.  When
25   you got these written questions, did you write down
```

18

1    what you thought were answers to the questions?

2        A.   I don't recall.

3        Q.   Did you investigate any of the questions

4    to try to find the answer, you personally

5    investigate to find the answer to any question on

6    this list of interrogatories before you signed the

7    attestation?

8            MS. GOGGIN-WARD:  Object to the form of

9    the question as to investigate.

10       Q.   You don't know what I mean by investigate?

11   Did you ask anybody if they knew the answers to

12   these questions before you signed the attestation?

13       A.   I don't recall.

14       Q.   Well, No. 7, there's a statement and an

15   answer that refers back to a previous answer to

16   interrogatory.  Do you know where you got -- since

17   you don't know where you got the answer to

18   Interrogatory No. 4, I take it you don't know where

19   you got the answer to Interrogatory No. 7.

20       A.   I don't know.

21       Q.   No. 8, there is a request to identify a

22   date.  Answers were given to A and B.  Do you

23   remember where you got the information for those

24   answers?

25       A.   No.

19

1      Q.   No. 9, again there's a request to identify

2   times.   There's responses.   Do you remember where

3   you got the answer to those?

4      A.   No.

5      Q.   10, there's a question and an answer.

6   Where did you get that answer at?

7      A.   I don't know.

8      Q.   No. 12, it asks you about the list, and

9   you state, "Without waiving said objection, this

10   Defendant did not take the document into

11   consideration."  Why did you provide that answer?

12   Do you remember not taking it into consideration?

13      A.   No.

14      Q.   So you don't remember whether you had it

15   in your possession at the hearing or not.   Is that a

16   correct statement?

17      A.   Correct.

18      Q.   But on February 14 -- I'm sorry, February

19   21st, 2014, you stated that you did not take a

20   document into consideration that now you don't even

21   remember.  How do you explain that?

22      A.   I can't.

23      Q.   Can't or won't?

24           MS. GOGGIN-WARD:   Object to the form of

25   the question.

20

1      Q.   Did you understand the question?

2      A.   I can't explain why I don't remember.

3      Q.   You take -- you would agree with me that

4   suspending a child or expelling a child is a very

5   serious matter, wouldn't you?

6           MS. GOGGIN-WARD:  Objection, relevance.

7      Q.   Wouldn't you agree with me?

8      A.   Yes.

9      Q.   And in spite of that, you don't remember

10   anything about this suspension or expulsion hearing.

11           MS. GOGGIN-WARD:  Objection,

12   mischaracterizes his prior testimony.

13           MR. TAGUE:  Read the question back.

14           (Requested portion of the deposition was

15   read by the court reporter.)

16           MS. GOGGIN-WARD:  Same objection.

17      Q.   Unless she tells you not to answer, you

18   have to answer it.

19           MS. GOGGIN-WARD:  He previously testified

20   that he remembered evidence concerning your client

21   admitting that he possessed drugs.  You can tell him

22   again.

23      A.   Yes, I told you that I remembered some of

24   the people who were at that meeting and I remember

25   that he had admitted to having possession of

21

```
 1    something he wasn't supposed to.

 2         Q.    This interrogatory said did you rely upon

 3    the letter of Michael McKay identifying the students

 4    to whom he had provided pills.  And your answer is

 5    you did not take the document into consideration.

 6    And you testified you don't remember why you wrote

 7    that answer.  That's correct, is it not?

 8             MS. GOGGIN-WARD:  Object to the form of

 9    the question.  Go ahead if you understand it.

10         A.    I understand that I said I don't know why

11    I wrote that answer.

12         Q.    What --

13         A.    I said I don't remember why I wrote that

14    answer.

15         Q.    Do you remember whether or not Noah's

16    confession was a written confession or a verbal

17    confession?

18         A.    I don't know.

19         Q.    What's the extent of your education?

20         A.    I hold a bachelor's in science.

21         Q.    From what institution?

22         A.    University of Illinois.

23         Q.    What year did you graduate?

24         A.    1992.

25         Q.    And have you had any education after
```

22

1    receiving your bachelor's?

2        A.   No.

3        Q.   Plaintiff's Exhibit No. 5, have you seen

4    that document before?

5             MS. GOGGIN-WARD:  Do you want to show him

6    the attachments too?

7             MR. TAGUE:  I just asked him if he's seen

8    that document before.

9        A.   Yes, I've seen this document before.

10       Q.   When did you first see that document?

11       A.   I don't know.

12       Q.   Was it in the form where it had everyone's

13   attestations where everybody signed to that when you

14   first saw it?

15       A.   I don't recall.

16       Q.   Were you -- so you don't remember whether

17   or not everybody else signed and you were the last

18   one to sign, if you were the first one to sign or if

19   there were even attestations to the document when

20   you first saw it.

21       A.   Correct.

22       Q.   Did you read it?

23       A.   Yes.

24       Q.   And did you understand that there were

25   statements in that request to admit and you were

23

1   supposed to read it and write down whether you

2   believed the statement to be true or not true?  Is

3   that correct?

4       A.   I'm not sure I understand the question.

5       Q.   Okay.  You were asked to read that

6   document, correct?

7       A.   Correct.

8       Q.   Did you see -- where is No. 5 at?

9            MS. GOGGIN-WARD:  That's what I was

10  looking for before.  There it is.

11      Q.   You can look at that later, but what I

12  want you to look at, did you ever look at, did you

13  ever see Exhibit 5 in the exact form that it appears

14  before you now?

15           MS. GOGGIN-WARD:  5 or 5A?

16      Q.   I'm sorry, 5A.

17      A.   Will you read the question again please?

18      Q.   I can state it.  Did you ever see Exhibit

19  5A in the form that it appears before you now?

20      A.   I don't recall.

21      Q.   Did you ever see the medical reports that

22  are attached as exhibits to that document?

23      A.   I don't know.

24      Q.   Request -- No. 5, request to admit No. 1,

25  the statement is, "The laboratory report of Quest

24

```
 1    Diagnostics attached as Exhibit 1 is genuine, true
 2    and correct."  And Exhibit 1 is the Exhibit 1 to
 3    Exhibit 5A.  And the response that you attested to
 4    was that that was a true statement.
 5         A.   Okay.
 6         Q.   Do you agree with that?
 7         A.   Yes.
 8         Q.   And doesn't that mean that you actually
 9    looked at it before you would have attested that
10    that was a true statement?
11         A.   Yes.
12         Q.   So while previously you told me you didn't
13    remember seeing that document, it would be a true
14    statement, would it not, that you wouldn't have
15    admitted that that was a true statement unless you
16    had at least looked at it?
17              MS. GOGGIN-WARD:  Object to form.  If you
18    understand it, you can answer it.
19         A.   I'm not -- I recall a little bit ago
20    answering the question have you seen this before in
21    the exact form that it's in front of you and I can't
22    attest that I've seen this in the exact form that it
23    is in front of me.
24         Q.   Okay.  So you have seen a Quest Diagnostic
25    laboratory report previously?
```

25

1      A.   Yes.

2      Q.   And the one you saw before you read?

3      A.   Yes.

4      Q.   And unless we did a switcheroo, the -- you

5   looked at -- well, let me scratch that.

6           You looked at a Quest laboratory report.

7   The one you looked at you read and then you attested

8   to the fact that it was accurate, correct?

9      A.   Correct.

10     Q.   Now, Exhibit 2 is Dr. Olofsson's letter.

11   Statement 2 on the response that you attested to

12   said the letter of Dr. Olofsson is genuine, true and

13   correct.  You had seen a letter from Dr. Olofsson

14   prior to you attesting that that was a true

15   statement, correct?

16     A.   Correct.

17     Q.   No. 3 states that the letter from Dr.

18   Betlej attached as Exhibit 3 was genuine, true and

19   correct.  You had seen a letter from Dr. Betlej?

20     A.   Yes.

21     Q.   And the one you saw you attested to as

22   true and correct.  That's a correct statement?

23     A.   Correct.

24     Q.   Okay, No. 4 states that no written notice

25   was given to Noah Dietchweiler on January 25, '13,

26

1    of the charges which constituted the basis for the

2    proposed suspension prior to the decision to suspend

3    him.  You attest that that is a false statement.

4    What do you know that supports your claim that

5    that's a false statement?

6        A.   I don't know.

7        Q.   No. 5 states no written notice was given

8    to Noah Dietchweiler on January 25, 2013, of the

9    evidence which supported the charges prior to the

10   decision to suspend him and you attest that that's a

11   false statement.  What do you know that supports

12   that that's a false statement?

13       A.   I don't know.

14       Q.   No. 6 says no notice in the format

15   mandated by paragraph C of the school's suspension

16   procedure was given to Noah Dietchweiler's parents.

17   You attest that that statement is false.  What do

18   you base that denial on?

19       A.   I don't know.

20       Q.   Do you know what the correct format

21   mandated by paragraph C of the school's suspension

22   procedure was on January 25, 2013?

23       A.   No.

24       Q.   7 is a statement the school board members

25   used information not received or offered at Noah

1    Dietchweiler's suspension review hearing to decide

2    his appeal review.  You attest that that's a false

3    statement.  What do you remember that would support

4    that denial?

5         A.   Nothing.

6         Q.   No. 8, we -- No. 8 states the list of

7    students owing money for drugs was not introduced

8    into evidence at Noah Dietchweiler's school board

9    meeting/hearing, and we looked at a list in Exhibit

10   3 previously, and your answer is that the list of

11   students was used during the hearing that was held.

12   Where did you get that information?

13        A.   I don't recall.

14        Q.   Do you remember that happening or was that

15   somebody told you happened?

16        A.   I don't know.

17        Q.   No. 9 states the letter of Michael McKay

18   identifying the students to whom he had provided

19   pills was not introduced into evidence at

20   Dietchweiler's school board meeting/hearing, and you

21   state, "Without waiving said objection, Defendant

22   states the letter was utilized during the hearing

23   that was held."  Do you remember that happening?

24        A.   No.

25        Q.   Did somebody tell you that?

28

1         A.   I don't know.

2         Q.   No. 10, Noah Dietchweiler was not informed

3    of the list of students owing money for drugs until

4    defendant's initial disclosures on September 16,

5    2013.  And you say that is a false statement denying

6    it.  What do you know or what do you base that

7    denial on?

8         A.   I don't know.

9         Q.   11 states that Noah Dietchweiler's parents

10   were not informed of the list of students owing

11   money for drugs until defendant's initial disclosure

12   on September 16, 2013.  And you also deny that that

13   is a correct statement.  What information do you

14   have upon which you base that denial?

15        A.   I don't know.

16        Q.   Okay.  Then No. 12 states the transcript

17   of proceedings attached to plaintiff's initial

18   disclosures is genuine, true and correct.  Now, you

19   attest that that statement is true.  Did you have

20   the transcript of proceedings to look at before you

21   made that statement that that fact was true?

22        A.   I don't recall.  If we could get to a

23   stopping point, I could use a restroom break.

24             MS. GOGGIN-WARD:  Are you almost done?

25             MR. TAGUE:  Almost.  Go ahead.

29

1            MS. GOGGIN-WARD:  You keep looking at that

2    clock, but it doesn't work.

3         A.    Thank you.

4            (Recess at 4:20 p.m. to 4:23 p.m.)

5    BY MR. TAGUE:

6         Q.    You don't know how many children were

7    involved in the investigation on January 25, 2013,

8    do you?

9         A.    Correct.

10        Q.    You don't know how many -- well, let me

11   ask you.  Do you remember that this involved pills

12   of Ativan?

13        A.    Yes.

14        Q.    Do you know how many pills were involved?

15        A.    No.

16        Q.    Do you know the source of the pills?

17        A.    No.

18        Q.    Is it your understanding it was a

19   prescription medication?

20        A.    I don't know that I have any understanding

21   that it was prescription or nonprescription.

22        Q.    Do you know whether or not there was any

23   investigation to find a container in which the pills

24   originally came?

25        A.    I don't know.

30

1      Q.   Do you know how Noah got the pills that

2  you indicate he sold?

3           MS. GOGGIN-WARD:  Object to the form of

4  the question.  Mischaracterizes his prior testimony

5  as to Noah selling.  I think you're thinking of Mr.

6  Becker.

7      Q.   Okay.  Do you -- well, let me ask you.  Do

8  you believe that Noah received pills or distributed

9  pills?

10     A.   I believe he possessed pills.

11     Q.   Okay, and do you know whether he was

12 charged with possession with an intent to keep them

13 and ingest them or possession with intent to

14 distribute?

15     A.   I don't know.

16     Q.   Do you know whether or not Noah was

17 accused of actually ingesting the medication?

18     A.   I do not.

19     Q.   Do you know whether Noah was searched?

20     A.   I do not.

21     Q.   Do you know whether his locker was

22 searched?

23     A.   I do not.

24     Q.   There was a drug test taken though, you

25 know that, correct?

31

1        A.   Yes.

2        Q.   And the drug test indicated that there

3    were no drugs of this type, being Ativan, in his

4    system, correct?

5        A.   Correct.

6        Q.   So was it your conclusion that he

7    possessed the drug without ingesting or did you

8    disbelieve the medical reports?

9        A.   I don't know.  You're asking me to

10   remember at the time of this document which way I

11   leaned and I don't recall.

12       Q.   Have you looked at the document here

13   today?

14       A.   Yes.

15       Q.   Well, you've read it today.  Do you

16   believe that's accurate or not accurate?

17       A.   I believe it's accurate.

18       Q.   Several students were involved in the

19   investigation of January 25, 2013, were they not?

20       A.   More than one student was involved

21   certainly.

22       Q.   Was there more than one date of

23   infractions that was involved in the investigation

24   preceding Noah Dietchweiler's hearing?

25       A.   I don't know.

32

1            MR. TAGUE:  Okay, I don't have any other

2     questions.

3            MS. GOGGIN-WARD:  I have a couple.

4            EXAMINATION BY

5            MS. GOGGIN-WARD:

6        Q.   Did it matter to you in your decision to

7     uphold Noah's suspension whether or not he ingested

8     the pills?

9        A.   It did not.

10       Q.   Did it matter to you whether or not he

11    sold the pills?

12       A.   It did not.

13       Q.   Did it matter whether or not he received

14    the pills?

15       A.   It did not.

16       Q.   You indicated that you heard testimony

17    that Noah confessed or admitted to possessing pills;

18    is that correct?

19       A.   That's correct.

20       Q.   On school grounds; is that correct?

21       A.   That's correct.

22       Q.   Was that the basis for your upholding his

23    suspension?

24       A.   Yes.

25       Q.   Okay.  And looking at the request to admit

33

1    under 5A, that document specifically states "Now

2    come plaintiffs, Noah Dietchweiler, by Michael

3    Dietchweiler, his father and next friend, and Ann

4    Dietchweiler, by their attorney, Michael J. Tague,

5    and pursuant to Rule 36 of the Federal Rules of

6    Procedure, request that all the defendants to this

7    action admit the following matters."  Do you see

8    that?

9         A.   Yes.

10         Q.   Okay.  You were one of those defendants

11    who responded to these requests to admit; is that

12    correct?

13         A.   Yes.

14         Q.   And you have not seen perhaps before

15    today, maybe you have, the other defendants'

16    attestations.  Have you seen those before today?

17    Mr. Lucas's signature?

18         A.   I don't recall.

19         Q.   Okay.

20              MS. GOGGIN-WARD:  That's all I have.

21              REEXAMINATION BY

22              MR. TAGUE:

23         Q.   When you heard Noah Dietchweiler's

24    suspension hearing, was it important to you that the

25    district administration follow the prescribed

34

1    procedures in the Watseka High School student

2    handbook?

3         MS. GOGGIN-WARD:  Objection, vague.  What

4    procedures?

5         Q.   Relating to suspension -- well, let me ask

6    you.  Is there any procedure that you would have

7    expected the administration not to follow if it's in

8    the policy book handed out to students and families?

9         MS. GOGGIN-WARD:  Object to form.  If you

10   understand it, you can answer it.

11        A.   I don't know that I fully understand what

12   you're asking.

13        Q.   Okay.  You were aware that there is a

14   Watseka High School student handbook, are you not?

15        A.   Yes.

16        Q.   One existed on January 25, 2013, did it

17   not?

18        A.   Yes.

19        Q.   It had policies that it said the

20   administration and school district shall follow in

21   student suspension procedures and hearings, did it

22   not?

23        A.   Yes.

24        MS. GOGGIN-WARD:  Object to the form of

25   the question as to hearings.

35

1        Q.    Okay.  The -- you expected the

2    administration to follow the written procedures in

3    its handbook as it relates to disciplinary

4    procedures, did you not?

5        A.    Yes.

6        Q.    They did not follow those procedures, did

7    they?

8              MS. GOGGIN-WARD:   Object to the form of

9    the question, foundation.

10        A.    I don't know.

11        Q.    What was your understanding of the purpose

12    of the hearing on February 5, 2013?

13        A.    Which hearing specifically?

14        Q.    Okay.  Noah's.

15        A.    I believe it was a suspension hearing.

16        Q.    Okay.  He had already been suspended, had

17    he not?

18        A.    Well, then I -- then I don't know.

19        Q.    The administration put on evidence, did

20    they not?

21        A.    I don't know.

22        Q.    Is it your testimony that Noah

23    Dietchweiler and his family presented testimony that

24    Noah confessed to having drugs while in school?

25        A.    I don't recall.

36

1       Q.   What was your understanding of what needed

2   to be proved to uphold the suspension?

3       A.   I don't recall.

4       Q.   Would you agree that it would be necessary

5   for the student and his family to know the day that

6   Noah was accused of confessing to possessing drugs

7   on school to be able to provide a fair defense?

8            MS. GOGGIN-WARD:  Could I have that

9   question read back?  Thank you.

10           (Requested portion of the deposition was

11  read by the court reporter.)

12           MS. GOGGIN-WARD:  Objection, foundation.

13  If you know.

14      Q.   That's -- the question is don't you

15  believe it would be necessary for Noah and his

16  attorney to know that to bring evidence for you to

17  consider as to whether or not he was guilty of doing

18  it on that day?

19           MS. GOGGIN-WARD:  Same objection.

20           MR. DIETCHWEILER:  Are you instructing the

21  witness not to answer?

22           MS. GOGGIN-WARD:  Are you testifying or

23  acting as an attorney on your own behalf right now?

24           MR. DIETCHWEILER:  I'm asking you a

25  question.

1         MS. GOGGIN-WARD:  You're not allowed to

2    ask a question.  Could I have the question read back

3    please?

4              (Requested portion of the deposition was

5    read by the court reporter.)

6         MS. GOGGIN-WARD:  Object to form and

7    foundation.

8    BY MR. TAGUE:

9         Q.   Okay, now.

10        A.   I don't know.

11        Q.   Do you remember anything that happened at

12   the hearing that was evidence on Noah's behalf that

13   he wasn't guilty?

14        MS. GOGGIN-WARD:  Could I have that read

15   back please?

16             (Requested portion of the deposition was

17   read by the court reporter.)

18        MS. GOGGIN-WARD:  Object to form.  If you

19   understand, you can answer.

20        A.   I -- I don't recall.

21        Q.   Noah denied that he admitted to taking

22   drugs at any time on school property, did he not?

23        A.   I don't know.

24        Q.   How on earth can you remember that Mr.

25   Lucas or Mr. Bunting stated that he confessed to

38

1   having drugs and you can't remember Noah testifying

2   that he denied it?

3            MS. GOGGIN-WARD:  Objection, argumentative

4   in the form.

5            MR. TAGUE:  It's very argumentative.

6   Q.   How on earth can you answer that question?

7            MS. GOGGIN-WARD:  Objection,

8   argumentative.  Ask him not to answer.

9   Q.   Do you have a hearing problem?

10  A.   No.

11  Q.   You heard Mr. Bunting and you heard Mr.

12  Lucas at the hearing, correct?

13  A.   Correct.

14  Q.   And you remember what they said, correct?

15  A.   Correct.

16  Q.   Didn't you hear Noah?

17  A.   I don't remember Noah being at the

18  meeting.

19  Q.   It's your testimony no defense was put on

20  on his behalf?

21  A.   No.

22  Q.   Is there any document that you believe

23  would refresh your recollection as to what happened

24  at the hearing?

25  A.   I don't know.

39

1       Q.   Okay, so you don't remember Noah

2   testifying?

3           MS. GOGGIN-WARD:  Objection, asked and

4   answered.

5       Q.   Well, did you remember between when I

6   asked you now, when I asked you before, and now you

7   still don't remember; is that correct?

8           MS. GOGGIN-WARD:  Objection.  He doesn't

9   even remember Noah being there.

10      Q.   Okay.  Let me show you the second page of

11  the transcript that says he was there.  Does that

12  refresh your recollection?

13      A.   It does not.

14      Q.   Michael Dietchweiler was there and

15  testified on Noah's behalf, did he not?

16      A.   Yes.

17      Q.   Ann Dietchweiler was there and testified

18  on Noah's behalf, did he not?

19          MS. GOGGIN-WARD:  She not.

20      Q.   Was she not?

21      A.   I remember attendance.  I don't remember

22  if she testified.

23      Q.   It says right there in black and white she

24  did.  You still don't remember?

25      A.   No, I still don't remember.

40

1      Q.   Do you remember Mr. Bunting testifying

2   that Noah -- well, on page 35 of the transcript, do

3   you remember the following questions and answers?

4   Mr. Tague: Let me make sure I understand this.  When

5   the gentleman who brought the drugs to school, when

6   you were questioning him, did he tell you that Noah

7   actually consumed the medication in his presence?

8   Mr. Bunting:  No, Noah told us that he consumed the

9   medication.  Question:  So no one other than Noah

10  told you that he actually consumed pills; is that

11  correct?  Mr. Bunting:  I believe you're correct.

12          Do you remember those questions and

13  answers?

14      A.   No.

15      Q.   Do you give more credibility to the

16  statements of Mr. Bunting and Mr. Lucas than other

17  members of the community?

18          MS. GOGGIN-WARD:  Object to the form of

19  the question as to community, but you can answer.

20      A.   No.

21          MR. TAGUE:  I have no further questions.

22          MS. GOGGIN-WARD:  We'll reserve.

23          (Adjourned at 4:44 p.m.)

24

25

41

```
 1    STATE OF ILLINOIS    )
                           )SS
 2    COUNTY OF FORD       )

 3
              I, June Haeme, a Notary Public in and for
 4    the County of Ford, State of Illinois, do hereby
      certify that KIRK McTAGGART, the deponent herein,
 5    was by me first duly sworn to tell the truth, the
      whole truth and nothing but the truth, in the
 6    aforementioned cause of action.
              That the following deposition was taken on
 7    behalf of the Plaintiff at the Iroquois County CUSD
      #9, 1411 West Lafeyette Street, Watseka, Illinois,
 8    on October 17, 2014.
              That the said deposition was taken down in
 9    stenograph notes and afterwards reduced to
      typewriting under my instruction; that the
10    deposition is a true record of the testimony given
      by the deponent; and that it was agreed by and
11    between the witness and attorneys that said
      signature on said deposition would not be waived.
12            I do further certify that I am a
      disinterested person in this cause of action; that I
13    am not a relative, or otherwise interested in the
      event of this action, and am not in the employ of
14    the attorneys for either party.
              IN WITNESS WHEREOF, I have hereunto set my
15    hand and affixed my notarial seal this 23rd day of
      October, 2014.
16

17

18

19                        JUNE HAEME, CSR
                          NOTARY PUBLIC
20

21
      "OFFICIAL SEAL"
22    June Haeme
      Notary Public, State of Illinois
23    My Commission Expires:
      September 27, 2016
24

25
```

42

```
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE CENTRAL DISTRICT OF ILLINOIS
 2                       STATE OF ILLINOIS

 3
       NOAH DIETCHWEILER, by MICHAEL   )
 4     DIETCHWEILER, his father and    )
       next friend,and ANN DIETCHWEILER,)
 5                                     )
          Plaintiffs,                  ) No. 2013-CV-2062
 6                                     )
             vs.                       )
 7                                     )
       STEVE LUCAS, in his official and )
 8     individual capacities; et al.,  )
                                       )
 9        Defendants.                  )
       ------------------------------
10

11
              This is to certify that I have read the
12     transcript of my deposition taken by June Haeme,
       CSR, in the above-entitled cause, and that the
13     foregoing transcript taken on October 17, 2014,
       accurately states the questions asked and the
14     answers given by me, with the exception of the
       corrections noted, if any, on the attached errata
15     sheet(s).

16

17                           KIRK McTAGGART

18
       Subscribed and Sworn before
19
       me the    day of               , 2014.
20
                           , Notary Public
21

22

23
           Area Wide Reporting and Video Conferencing
24         301 West White Street, Champaign, IL 61820
                       800.747.6789
25
```