# In The Matter Of:

*DIETCHWEILER v.*
*STEVE LUCAS ET AL*

---

*BRENNA JOHNSON*
*October 24, 2014*

---

*Area Wide Reporting and Video Conferencing*
*www.areawide.net*
*scheduling@areawide.net*
*301 W. White Street*
*Champaign, IL  61820*

Original File 1024johb.txt

Min-U-Script® with Word Index

1

<pre>
 1          IN THE UNITED STATES DISTRICT COURT
          FOR THE CENTRAL DISTRICT OF ILLINOIS
 2                  STATE OF ILLINOIS

 3

 4   NOAH DIETCHWEILER, by        )
     Michael Dietchweiler, his    )
     father and next friend; and  )
 5   ANN DIETCHWEILER,            )
              Plaintiffs,         )  No. 2013-CV-2062
 6          vs.                   )
     STEVE LUCAS, in his          )
 7   official and individual      )
     capacities; JAMES BUNTING,   )
 8   in his official and          )
     individual capacities;       )
 9   KENNETH LEE, in his          )
     official and individual      )
10   capacities; IROQUOIS COUNTY  )
     COMMUNITY UNIT SCHOOL        )
11   DISTRICT NO. 9, IROQUOIS     )
     COUNTY, ILLINOIS; JAMES      )
12   BRUNS, in his official       )
     capacity; DON BECKER, in     )
13   his official capacity;       )
     BRENNA JOHNSON, in her       )
14   official capacity; CRYSTAL   )
     BLAIR, in her official       )
15   capacity; BOB BURD, in his   )
     official capacity; KIRK      )
16   McTAGGERT, in his official   )
     capacity; and DEE            )
17   SCHIPPERT, in her official   )
     capacity,                    )
18          Defendants.           )

19          DEPOSITION OF BRENNA JOHNSON
                 October 24, 2014
20                  3:37 PM

21      Amy Prillaman Buhr:  CSR #084-003275
     Area Wide Reporting and Video Conferencing
22              301 West White Street
             Champaign, Illinois  61820
23                (800) 747-6789

24
</pre>

2

1                          INDEX

2

            APPEARANCES:

3

                    FLYNN, PALMER, TAGUE, LYKE & JACOBSON
4                   BY: Mr. Michael J. Tague   .
                    402 West Church Street
5                   Champaign, Illinois 61824-1517
                    (217) 352-5181
6                   Appearing for the Plaintiffs

7                   LAW OFFICES OF LAWRENCE COZZI
                    BY:  Ms. Veronica Masaitis
8                   27201 Bella Vista Parkway, Suite 410
                    Warrenville, Illinois  60555
9                   (630) 791-6407
                    shari.goggin-ward@libertymutual.com
10                  Appearing for the Defendants

11                  ALSO PRESENT:
                    Michael Dietchweiler
12                  Dee Schippert

13   Examination                                   Page

14    BY: MR. MICHAEL J. TAGUE                        4
      BY: MS. VERONICA MASAITIS                       31
15
                (No exhibits marked.)
16

17

18

19

20

21

22

23

24

3

1                         STIPULATION

2

3              IT IS HEREBY EXPRESSLY STIPULATED AND
AGREED by and between the parties that the deposition
of BRENNA JOHNSON may be taken on October 24, 2014,
4 at Iroquois County CUSD No. 9, 1411 West Lafayette,
Watseka, Illinois, pursuant to the Rules of the
5 Federal Court and the Rules of Federal Procedure
governing said depositions.
6              IT IS FURTHER STIPULATED that the
necessity for calling the Court Reporter for
7 impeachment purposes is waived.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

4

1                    (Commencing at 3:37 p.m.)

2                         BRENNA JOHNSON,

3     having been first duly sworn, testified as follows:

4     EXAMINATION,

5     BY: MR. MICHAEL J. TAGUE:

6          Q.    Could you please state your name.

7          A.    Brenna Lee Johnson.

8          Q.    And have you ever had your deposition taken

9     before?

10         A.    Huh-uh.  No.

11         Q.    Have you ever testified in court before?

12         A.    No.

13         Q.    We're going to ask you questions about Noah

14    Dietchweiler's case.  The court reporter is going to

15    take down everything verbatim.  I'm going to ask you

16    questions, you're going to provide me with answers.

17    There may be objections, there may be other people

18    talking, but it's important that only one person

19    talks at a time so that she can get it all down and

20    it's important that all of your answers be verbal.

21    If you shake your head, we may know what you mean

22    here, but when we read it back she'll say shake of

23    the head.  What does that mean?  So we'll just remind

24    you to say yes or no.

5

1          If we need to break at any time, then go
2   ahead and just tell us, we can break, for the
3   restroom, convenience.  If something is making you
4   uncomfortable, tell us and we will try to eliminate
5   what that problem is.
6        A.   And what was your name again?
7        Q.   Mike Tague.  And I'm the attorney for the
8   Dietchweilers.
9        A.   Okay.
10        Q.   And will you show that the other lady is
11   here who is going to be a deponent later.  She is a
12   defendant.
13          What is your address and phone number?
14        A.   1545 North 2000 East Road, Watseka,
15   Illinois, 60970.  My home phone is (815) 432-4774.
16        Q.   And do you reside there with anyone else?
17        A.   My husband.
18        Q.   Okay.  What's his name?
19        A.   David Johnson.
20        Q.   Do you have any adult children?
21        A.   I have three adult children.  Two don't
22   live at home.  One is in college.
23        Q.   Do all those adult children have the last
24   name Johnson?

6

1      A.    Yes.

2      Q.    Do you have any adult relatives in the

3  Central District of Illinois that do not have the

4  last name Johnson, like siblings, brother and

5  sisters?

6      A.    Siblings of me?  No.  They live out of

7  state.

8      Q.    Okay.  You are currently a school board

9  member?

10      A.    Yes.

11      Q.    When did you become a school board member?

12      A.    Katie was in eighth grade.  So 2013, 2008.

13  I think I was appointed -- I recall I was appointed.

14  I think it was in the fall of 2008.  Yeah.

15      Q.    Who was the superintendent at that time?

16      A.    I believe Steve Bianchetta was still here

17  when I first went on.

18      Q.    And were you subsequently reelected?

19      A.    Then I was elected.  I'm not quite sure of

20  the year, but the next spring I was elected, yes.

21      Q.    Were you on the school board when Mr. Lee

22  was hired?

23      A.    Yes.

24      Q.    Did you support his hiring?

7

1      A.    Yes.

2      Q.    Were you on the school board when Mr. Lucas

3  was hired?

4      A.    Yes.

5      Q.    Did you support his hiring?

6      A.    Yes.

7      Q.    Have you ever held any positions as an

8  officer of the school board?

9      A.    No.

10     Q.    Prior to Noah Dietchweiler's suspension

11  hearing on February 5, 2013, had you ever

12  participated in any suspension proceedings prior to

13  that time?

14     A.    Repeat the question, please.

15     Q.    Sure.  Prior to Noah's suspension

16  hearing -- and I guess I should ask you, you were

17  present, were you not?

18     A.    Yes.

19     Q.    Had you ever attended or participated in

20  any suspension procedures prior to February 5, 2013?

21     A.    I would not recall if they were suspension

22  hearings.  I know we've had disciplinary hearings.

23  Whether they were specifically suspensions, I

24  wouldn't recall that.

8

1      Q.   And can you give me any estimation of how
2    many proceedings?
3      A.   I wouldn't remember.
4      Q.   Were there written procedures for those
5    previous disciplinary --
6      A.   I don't recall.
7      Q.   -- proceedings?
8           MS. MASAITIS:   You have to wait for him to
9    ask the entire question before you respond.   We can't
10   have two people talking at the same time because the
11   court reporter is taking everything down.
12   BY MR. TAGUE:
13     Q.   When did you learn that there was going to
14   be a suspension hearing for Noah?
15     A.   I don't recall the date.
16     Q.   Was -- how did you receive notice that
17   there would be a disciplinary proceeding involving
18   Noah?
19     A.   I don't recall that either.
20     Q.   Was it written or verbal?
21     A.   I don't recall.
22     Q.   What did you receive, to the best of your
23   recollection, when you received notice?   Did you just
24   receive notice that said be there or did you receive

1    any documents?

2         A.   I don't recall.

3         Q.   You ultimately came to the proceeding

4    involving Noah.  Were there any other proceedings

5    that same day involving other students?

6              MS. MASAITIS:  I'm just going to object.  I

7    believe that that would call for information that is

8    within the Student Records Act and the exception to

9    the Open Meetings Act as to other students.

10        A.   I don't recall anyway.

11   BY MR. TAGUE:

12        Q.   Okay.  So there was a hearing for Noah.  Do

13   you remember who was there?

14        A.   I'm sure all the board members.  Noah.  His

15   parents.  You, right?  Our attorney.  Mr. Bunting.

16   Mr. Lee for sure.  And Mr. Lucas.  That's all I

17   recall.

18        Q.   Okay.  And do you recall any documents that

19   were distributed at the hearing?

20        A.   I don't remember any specifics of that.

21        Q.   I'm going to show you this document that is

22   Exhibit 1, marked 10-17-14, and you can take as much

23   time as you need to --

24        A.   You're saying this whole --

1        Q.    My question is was that package handed out
2   at Noah's disciplinary hearing?
3        A.    I don't recall.
4              MS. MASAITIS:  Does that go up all the way
5   to the tab, is that what you're saying?
6              MR. TAGUE:  Right.
7        A.    It appears to be our handbook.
8              MS. MASAITIS:  Just answer his question.
9        A.    I don't recall getting this.  I don't
10  recall.
11  BY MR. TAGUE:
12       Q.    Okay.  Then if I asked you about the first
13  page, you couldn't say whether you've ever seen that
14  before or not?
15       A.    This page?
16       Q.    Yes.
17       A.    I don't recall.
18       Q.    Okay.  There were tabs with the original
19  and documents behind the tabs.  And there were six
20  things that were noticed in this package.  The first
21  one appeared to be, it says February 2011, it says
22  7190.  Do you know what this document is?
23       A.    I know what it is.  I don't recall getting
24  it that night, but it's from our student handbook.

11

1      Q.   Okay.  So this is a document that is an

2  excerpt from your student handbook?

3      A.   Or -- or our policy book.  I don't know for

4  sure.  I don't read the handbook on a daily basis.

5      Q.   And then the second one, it says

6  April 2003, 7.200.  It is --

7      A.   Looks like an excerpt from our policy book.

8      Q.   Okay.  And the next one is December 2008,

9  seven, two, ten.  It is several pages also.  Do you

10  know what that is?

11      A.   I am assuming it's from our policy

12  handbook.

13      Q.   So then there's -- the next tab has several

14  documents and pages?

15      A.   This looks like it's from our student

16  handbook.

17      Q.   Okay.  Now, behind another tab there was

18  this document.  The top says Watseka High School and

19  it's from -- is James Bunting, Steve Lucas, Kenneth

20  Lee's name.  It says Notice of Student Disciplinary

21  Action.  Have you ever seen this document before?

22      A.   I don't recall.

23      Q.   And then the last document in this package

24  is a letter, looks like from Kenneth Lee to the

12

1  Dietchweilers, dated January 30, 2013.  Have you ever

2  seen this document?

3       A.   Well, if it was passed out that night I

4  would have, but I don't recall it.

5       Q.   Do you know if any other documents were

6  passed out at the school board hearing on February 5,

7  2013, involving Noah?

8       A.   I don't recall.

9       Q.   Do you remember whether or not the family

10 submitted any documents for consideration by the

11 school board?

12      A.   If the family submitted some documents?

13      Q.   Correct.

14      A.   I think he had a lab test he may have

15 submitted.  That's really the only document I

16 remember.

17      Q.   What do you remember of significance to you

18 about --

19      A.   I don't remember much about it.  I just

20 remember he submitted it.

21      Q.   Do you know if it had drug testing results

22 positive or negative?

23      A.   I think it was negative.  That's what I

24 think.  I don't know.

13

1      Q.    Who testified at that proceeding?

2      A.    I would not remember.

3      Q.    Did -- do you remember if Mr. Bunting said

4  anything?

5      A.    Mr. Bunting did.

6      Q.    And can you tell me anything you remember

7  him saying?

8      A.    No.

9      Q.    Did Mr. Lucas testify?

10      A.    I think so.

11      Q.    Can you remember anything that he testified

12  to?

13      A.    No.

14      Q.    Were there any other witnesses presented by

15  the school district relative to the -- the claim that

16  Noah was guilty of a school infraction?

17      A.    I don't recall that.

18      Q.    Do you know what Noah was charged with?

19      A.    He was charged with possession.  I do know

20  that because that's what we found him -- that's why

21  we suspended him.  That's all I recall.

22      Q.    Do you remember whether he was also charged

23  with consumption?

24      A.    Well, according to this sheet that was

1  signed, I think it said consumption.  So I guess,

2  yes.

3       Q.   That document would seem to reflect that.

4       A.   Yes.

5       Q.   My question to you is do you remember that

6  that was one of the charges?

7       A.   I don't remember.  I remember the

8  possession for sure.

9       Q.   Okay.  So you can't say whether he was

10  charged and you found him innocent of that or if it

11  wasn't presented?

12       A.   I don't recall that.  I don't recall.

13       Q.   Do you remember any specifics about the

14  testimony presented by anybody?

15       A.   It's over a year and a half ago.  So no.

16       Q.   Did you ask any questions?

17       A.   I don't remember.

18       Q.   Were you aware that there was a

19  stenographer making a verbatim record?

20       A.   Yes.  She was there.

21       Q.   Did you ever review the verbatim record?

22       A.   Just -- we went through it briefly before

23  this.  I have never seen it before though.

24       Q.   Okay.  So until today you had never --

15

1      A.    No.

2      Q.    -- looked at it?

3      A.    Huh-uh.

4      Q.    Had you ever asked to see it?

5      A.    No.

6      Q.    What did you do before today, if anything,

7  to prepare for this deposition?

8      A.    Nothing.

9      Q.    Didn't review any documents?

10     A.    None.

11     Q.    Have you ever held a political office other

12  than a school board member?

13     A.    A political office, no.

14     Q.    Have you ever run for anything other than

15  school board?

16     A.    No.

17     Q.    What was your understanding of what the

18  school district policy or rules were for suspensions?

19     A.    Repeat it.

20           MS. MASAITIS:  I'm sorry.  Could you --

21     A.    I don't recall anyway.  I don't recall.  I

22  haven't reviewed it, so not right now I don't recall.

23  BY MR. TAGUE:

24     Q.    Did you have occasion to review what the

16

1    procedures were between the time you received notice

2    that there would be a hearing for Noah and the time

3    of the hearing itself?

4         A.    Okay.   Repeat that question again.

5         Q.    Sure.   Between the time you received notice

6    of Noah's hearing and the hearing itself, did you

7    review what the Watseka procedures were for --

8         A.    No.

9         Q.    And I'm going to say and just confirm this

10   again.   I appreciate you working to get us out of

11   here quicker, I think we all do because it's late in

12   the day, but my question was that the procedures for

13   suspension you did not review between the time you

14   heard of Noah's hearing being scheduled and the time

15   of the hearing itself; is that true?

16        A.    So you're saying I would have been reading

17   some documents or procedures or -- no, I -- not --

18        Q.    You did not or you don't remember?

19        A.    I don't remember.   I wouldn't remember.

20   But I don't think I would have.

21             MS. MASAITIS:   Listen to the question

22   because he's asking it in the positive as opposed to

23   the negative.   So he's asking to confirm that that's

24   true.   You had said, no, you didn't review the

1    documents, now he's asking if it's true that you did

2    not review documents.  So you have to listen to the

3    question.  He's phrasing it a different way.

4        A.   You're saying it's true that I did not

5    review documents?  That statement you just said is

6    true.

7    BY MR. TAGUE:

8        Q.   And you did not review what the suspension

9    procedures were prior to Noah's hearing?

10       A.   I did not review the suspension procedures,

11   no.

12       Q.   In Exhibit No. 3, there is a page that says

13   Response to Request For Production No. 1 and there's

14   a page that has some writing and some numbers.  Have

15   you ever seen this document before?

16       A.   No.

17       Q.   Then there is a document that says Response

18   to Request to Produce No. 2.

19       A.   I can't get that.

20       Q.   None of us could.

21       A.   Sorry.

22       Q.   There's a document that starts out, "I have

23   given the pills to" -- let's see.  I have that here

24   someplace.  Let me just read it.

1          MS. MASAITIS:   Well, I would just ask that
2    you refer to them by initials because I don't think
3    that we can read their names into the record.
4    BY MR. TAGUE:
5          Q.    Okay.   Well, you can read it then.   I don't
6    need to state the names.   But there's names of
7    students.   I think there are, what, seven of them?
8          A.    Seven.
9          Q.    And then it's signed by, some people refer
10   to him as M. M., although we know who it is.   Have
11   you ever seen this document before?
12         A.    No.
13         Q.    Are there any students on that list who
14   were not suspended?
15         A.    I wouldn't recall.
16         Q.    After Noah's hearing, I know the board
17   deliberated and came back into open session.   What do
18   you remember happening after the deliberations?
19         A.    What do I remember?
20         Q.    Uh-huh.
21         A.    Nothing.
22         Q.    Okay.   Do you remember if there was a vote
23   taken?
24         A.    I assume we did a vote.

1     Q.   Okay.

2     A.   But actually remembering it, nope.

3     Q.   And do you remember what the vote was?

4     A.   We -- we suspended him based on possession.

5 I think I remember that.

6     Q.   Do you know what the vote count was?

7     A.   No, I don't recall.

8     Q.   After Noah's hearing or subsequent to

9 February 5, 2013, did you speak with anyone other

10 than one of your attorneys about Noah Dietchweiler in

11 any fashion?

12       MS. MASAITIS:  I'm sorry.  Can you repeat

13 the question, just have it read back, please?

14 BY MR. TAGUE:

15     Q.   After February 5th, the day of the hearing,

16 did you speak with anyone other than your attorneys

17 about Noah Dietchweiler's matter at any time?

18     A.   Not that I recall.

19     Q.   Have you received any documents after

20 Noah's suspension hearing on February 5th from anyone

21 other than your attorneys?

22     A.   In reference to this?

23     Q.   In reference to Noah Dietchweiler.

24     A.   I don't recall.

20

1      Q.   Do you remember written questions that were
2   provided in this case?
3      A.   Yes.
4      Q.   Turn to the ones that --
5      A.   That's mine.
6      Q.   -- start yours.  And they were written
7   questions and there were answers.
8      A.   Uh-huh.
9      Q.   And then one of the pages at the very end
10  says verification and there's your signature.  Is
11  that correct?
12     A.   Yes.
13     Q.   Okay.  And you signed that verification on
14  or about February 20, 2014?
15     A.   February 20th.
16     Q.   Is that your handwriting, 20 February?
17     A.   I think so.
18     Q.   And prior to you signing that verification,
19  did you have the questions and answers available to
20  you?
21     A.   Repeat.  I'm not sure what you're asking.
22  I would have had the questions and had to answer
23  them, correct?
24     Q.   That's correct.  So my question is, the

21

1 first part of this document, before your

2 verification, has questions and answers.

3     A. Yes.

4     Q. You had the questions and answers, I take

5 it read them and then signed your name on

6 February 20, 2014?

7     A. I assume so, if that's what I dated -- I

8 don't recall if I had them a day ahead or on that

9 day. I don't recall that.

10     Q. Okay. But --

11     A. But I would have signed it on the 20th.

12     Q. And you read it before you signed it,

13 correct?

14     A. Well, of course.

15     Q. Okay. Interrogatory No. 8. There was a

16 question that asked you to identify when the list of

17 students owing money for drugs was given to Noah.

18 And there's objections, but the last sentence says,

19 "however, it was given to Noah's counsel."

20     Did you see that happen?

21     A. I don't recall.

22     Q. The second part of the question asked

23 the -- to identify when the list of students owing

24 money for drugs was referred to in the school board

1  hearing concerning Noah.  And again, the -- the

2  answer was the -- it was given to Noah's counsel.

3  Does that refresh your recollection as to whether or

4  not that list was handed to me during Noah's hearing?

5       A.   Okay.  The note was discussed, is that what

6  you're asking?  The note meaning the list of

7  students?

8       Q.   The list of students owing money.

9       A.   Uh-huh.  What about it?

10      Q.   Do you know what that means?

11      A.   The list was a list of students that owed a

12  certain student money, the one you showed back there.

13      Q.   Okay.  So the --

14      A.   What's the question though?

15      Q.   Well, we showed you in Exhibit 3 --

16      A.   Right.

17      Q.   -- a list --

18      A.   Right.  I hadn't seen that list.

19      Q.   So you hadn't seen that list on

20  February 20, 2014?

21      A.   No.  I have not seen that list.

22      Q.   Okay.  So the -- my specific question is

23  did you observe what you understood to be a list of

24  students owing money for drugs handed to Noah's

23

1   counsel at Noah's hearing?

2          A.    I don't remember.

3          Q.    Now, No. 9 asks about the letter of M. M.?

4          A.    Uh-huh.   That was the note from M. M., yep.

5          Q.    That was the one that we talked about in

6   No. 3.

7          A.    Right.

8          Q.    But you said you hadn't seen that until

9   today.

10         A.    Well, I don't recall.  I -- I don't

11  remember.

12         Q.    Okay.  And my question is, do you remember

13  that document being handed to Noah's counsel in the

14  hearing that Noah had on February 5, 2013?

15         A.    Do I remember them handing the document to

16  you?

17         Q.    Yes.

18         A.    No.

19         Q.    Do you remember anything that Noah said

20  during the hearing?

21         A.    No.

22         Q.    Do you remember whether he denied that he

23  was guilty or not?

24         A.    I don't recall specifics of what Noah said,

24

1   no.

2       Q.    Do you remember whether there was an issue

3   as to what day Noah received pills?

4       A.    I don't recall that.

5       Q.    Do you remember whether or not there was

6   discussion and a claim by Mr. Bunting that Noah

7   admitted having pills at school?

8       A.    All right.  Repeat that again.

9       Q.    Okay.  I'm first asking you as to

10  Mr. Bunting.  Do you remember Mr. Bunting testifying

11  that Noah admitted receiving pills at school?

12      A.    I believe yes to that.  I think.

13      Q.    Okay.  And do you remember if Mr. Lucas

14  spoke of that?

15      A.    I don't recall that.

16      Q.    You -- I want to ask you, because I think

17  you were trying to be truthful with me to give me how

18  certain you were of one of your answers, but when I

19  asked you whether or not you remember Mr. Bunting

20  talking about a claim that Noah admitted having

21  pills, you said yes, I think.  Are you uncertain?

22  Tell me how confident you are that that is a correct

23  answer.

24      A.    You mean that I recall it specifically?

25

1  Q. Yeah.  Do you recall it?

2  A. I don't recall specifics.  I recall

3 Mr. Bunting speaking and that as part of his -- I

4 think.  I don't -- I don't remember.

5  Q. Okay.

6  A. If you want to be specific, I don't

7 remember.

8  Q. Okay.  Have you ever seen -- I'm showing

9 you your answers to interrogatories, the questions

10 and answers that you verified.  Had you ever seen

11 anybody else's answers before today?

12  A. No.

13  Q. I asked you specifically about

14 interrogatory No. 8, I believe.  And obviously we've

15 talked about your response.  Do you know if

16 everybody -- do you know if all of the other school

17 board members had the same answer as you to that

18 question?

19  A. I wouldn't know that.

20   MS. MASAITIS:  Yeah.  Foundation.

21  A. I don't know what the --

22   MS. MASAITIS:  That's okay.  You can still

23 answer.

24  A. I wouldn't know what the other school

26

1    board's answers would be, members' would be.

2        Q.    And I asked you, I think, specifically

3    about nine.  Do you know what the other school board

4    members' answers were to that question?

5            MS. MASAITIS:  Foundation again.  You can

6    answer.

7        A.    Okay.  I would not know what the other

8    school board members' answers are.

9    BY MR. TAGUE:

10       Q.    And if I asked you the same question about

11   Mr. Lucas's answers to those questions and

12   Mr. Bunting's, you don't know what those are?

13       A.    I wouldn't know their answers, no.

14       Q.    Did you take any notes during the course of

15   Noah's hearing?

16       A.    I don't recall.  I'm one to write notes,

17   just for memory, but I don't recall specifically

18   about that night.

19       Q.    Do you know if anyone else was taking

20   notes?

21       A.    I don't know.

22       Q.    What do you do with notes that you make at

23   a school board hearing?

24       A.    Any notes I would have?

27

1      Q.   Right.

2      A.   I would rip them up or they'd get shredded.

3  They don't leave here.

4      Q.   Okay.  So I think what you are saying is

5  that had you made notes during the course of that

6  meeting, they would have been destroyed that same

7  evening?

8      A.   I don't know that, that they would be

9  destroyed that same evening.  I just wouldn't have

10  taken anything from here about that.

11      Q.   After Noah's hearing, did you ever write

12  notes to yourself at any time to try to make sure

13  that you could recollect what happened?

14      A.   No.

15      Q.   When did you learn that the lawsuit had

16  been filed?

17      A.   When did I learn it?

18      Q.   Uh-huh.

19      A.   I don't recall the date.

20      Q.   After the lawsuit was filed, did you

21  prepare any documents or memoranda other than things

22  requested by your attorney to try to preserve what

23  happened in case you were ever asked about it?

24      A.   No.

28

1     Q.   Have you ever had occasion to go to any

2  seminars or workshops in which suspension procedures

3  or suspension rules were the subject matter of the

4  instruction?

5     A.   I don't -- I don't think I have.  I don't

6  really recall though.

7     Q.   Are you aware of any Illinois statutes that

8  prescribe how disciplinary proceedings should take

9  place?

10    A.   Am I what?

11    Q.   Are you aware of any Illinois statutes?

12    A.   No.

13    Q.   Okay.

14    A.   I mean I wouldn't be aware of them.  I

15  would leave that to my administrators.

16    Q.   So you've never reviewed any specific

17  Illinois State statute that would govern how a

18  suspension procedure is to take place?

19    A.   Not that I recall.

20    Q.   Have you ever asked your administrators

21  what the proper procedures are in running a student

22  suspension hearing?

23    A.   Have I asked them specifically?

24    Q.   Yes.

29

1      A.    No.

2            MR. TAGUE:   Let me have a moment.

3            (Whereupon a break was taken and the

4      deposition continued as follows:)

5      BY MR. TAGUE:

6        Q.    I'm going to show you Deposition Exhibit

7      No. 10 and ask you to take a look at that.   Have you

8      ever seen that document before?

9        A.    No.

10        Q.    Does that refresh your recollection about

11     anything that we have talked about before as to what

12     happened in the hearing?

13       A.    Well, if this was somebody's testimony.   I

14     don't -- I don't recall.   I mean I'm not sure.   I

15     don't know what you want me to say about it.

16       Q.    My question is, now that you have read

17     that, is your -- you've told me in many of my

18     questions about what happened in the hearing, you

19     just don't recollect.

20       A.    I don't recollect, yeah, specifics.

21       Q.    After you've read that, do you still not

22     recollect?

23       A.    I don't recollect specifics.   This sounds

24     kind of familiar, but I don't remember specifically.

30

1      Q.   I want you to turn to 5.  Okay.  Exhibit
2   No. 5 is entitled Defendant's Responses to
3   Plaintiff's First Request to Admit.  Have you ever
4   seen that document before?
5      A.   This specific one?  I don't recall seeing
6   it before.
7      Q.   Okay.  After the body of the document there
8   are several attestations.
9      A.   Okay.
10     Q.   And --
11     A.   Oh, well, if I signed it then I've seen
12   that before, but I don't recall it.
13     Q.   Okay.  And the -- you signed that
14   attestation 28th December 2014?  I'm sorry.  2013.
15     A.   That's my writing, yes.
16     Q.   So you don't -- well, do you know whether
17   that attestation went with this document?
18     A.   If you say it did, I guess it did, but I
19   don't recall it.
20     Q.   I don't know.  That's why I'm asking.
21     A.   I don't know either.
22     Q.   Okay.  I want you to look at No. 9.  No. 9
23   says -- this is defendant's responses to
24   plaintiff's -- I'm sorry.  This one is Defendant's

1  Responses to Production Request.  Okay.  Have you

2  ever seen this document before?

3      A.   I don't remember.  I don't remember if I

4  have ever seen it.

5      Q.   Okay.

6          MR. TAGUE:  That's all I have.

7          MS. MASAITIS:  I have a few questions.

8      EXAMINATION:

9      BY: MS. VERONICA MASAITIS:

10      Q.   What did you label the Request to Admit?

11  What exhibit did you label it?

12          MR. TAGUE:  5A.  And the responses were

13  Exhibit 5.

14          MS. MASAITIS:  Okay.

15      Q.   Brenna, this request to admissions that he

16  had showed you, do you see this?

17      A.   Uh-huh.

18      Q.   This looks like it was answered back in

19  December of 2013.  Do you see that?

20      A.   Well, our signatures are there.

21      Q.   Right.

22      A.   Okay.

23      Q.   This was answered a while back, would you

24  agree?

1     A.   If it was December 2013, yes, that's a

2  while back.

3     Q.   Okay.  And you have no reason to dispute

4  that that was a collective answer on behalf of all of

5  the defendants in the case, do you?

6     A.   Say that again.

7     Q.   Do you have any reason to dispute that was

8  a collective answer on behalf of all the defendants

9  in the case?

10     A.   No.

11     Q.   You just don't recall the specific

12  document --

13     A.   No.

14     Q.   -- as you sit here today --

15     A.   No.

16     Q.   -- correct?

17     My next question is counsel had asked you

18  about whether you had done any type of reading or

19  research on suspensions or any type of independent

20  activity between getting any type of notification of

21  the hearing of the suspension and the actual date of

22  the suspension hearing on February 5th of 2013.  Do

23  you recall those lines of questioning?

24     A.   Uh-huh.

33

1          Q.    Is that a yes?

2          A.    Yes.  I'm sorry.

3          Q.    Okay.  When yourself in a capacity as a

4    board member gets notification of a student

5    disciplinary -- a hearing, are you with me so far?

6          A.    Yeah.

7          Q.    Do you get a notice that it's specific to a

8    student or is it just a generic notice that there's

9    going to be -- that there's going to be a

10   disciplinary proceeding?  Is it actually told to you

11   that it's going to be this specific student that day?

12         A.    I don't recall that.  It's been awhile

13   since we had one.  I don't recall.

14         Q.    Okay.  And to your knowledge, is

15   information regarding other minors brought out at a

16   specific student's suspension hearing?  In other

17   words, if one minor is being disciplined --

18         A.    Right.

19         Q.    -- are other minors' names brought up in

20   that disciplinary hearing?

21         A.    Not that I recall.

22         Q.    Okay.

23         A.    We're being specific towards that one

24   student.

34

1        Q.    Okay.

2              MS. MASAITIS:   That's all I have.

3              MR. TAGUE:   I don't have any questions.

4              MS. MASAITIS:   We will waive signature.

5    (Concluding at 4:25 p.m.)

6  AND FURTHER THE DEPONENT SAITH NOT

7                      (Signature Waived)

8                      _____
                       BRENNA JOHNSON

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

35

```
 1   STATE OF ILLINOIS  )
                        )
 2   COUNTY OF VERMILION)

 3
           I, Amy Prillaman Buhr, a Certified Shorthand
 4   Reporter, in and for the County of Vermilion, State
     of Illinois, do hereby certify that BRENNA JOHNSON,
 5   the deponent herein, was by me first duly sworn to
     tell the truth, the whole truth and nothing but the
 6   truth, in the aforementioned cause of action.
           That the foregoing deposition was taken on
 7   behalf of the Plaintiff, at the offices of Iroquois
     County CUSD No. 9, 1411 West Lafayette, Watseka,
 8   Illinois, on October 24, 2014;
           That said deposition is a true record of the
 9   testimony given by the deponent and was taken down in
     stenograph notes and afterwards reduced to
10   typewriting under my instruction; and that it was
     agreed by and between the witness and attorneys that
11   said signature on said deposition would be waived.
           I do hereby certify that I am a disinterested
12   person in this cause of action; that I am not a
     relative of any party or any attorney of record in
13   this cause, or an attorney for any party herein, or
     otherwise interested in the event of this action, and
14   am not in the employ of the attorneys for either
     party.
15         IN WITNESS WHEREOF, I have hereunto set my hand
     this 30th day of October, 2014.
16

17         _____

18         AMY PRILLAMAN BUHR, CSR, FCRR

19

20

21

22

23

24
```

**A**

according (1)
13:24
Act (2)
9:8,9
Action (1)
11:21
activity (1)
32:20
actual (1)
32:21
actually (2)
19:2;33:10
address (1)
5:13
administrators (2)
28:15,20
admissions (1)
31:15
Admit (2)
30:3;31:10
admitted (3)
24:7,11,20
adult (4)
5:20,21,23;6:2
again (7)
5:6;16:4,10;22:1;
24:8;26:5;32:6
ago (1)
14:15
agree (1)
31:24
ahead (2)
5:2;21:8
although (1)
18:10
answered (2)
31:18,23
appeared (1)
10:21
appears (1)
10:7
appointed (2)
6:13,13
appreciate (1)
16:10
April (1)
11:6
assume (2)
18:24;21:7
assuming (1)
11:11
attended (1)
7:19
attestation (2)
30:14,17
attestations (1)
30:8
attorney (3)
5:7;9:15;27:22
attorneys (3)

19:10,16,21
available (1)
20:19
aware (4)
14:18;28:7,11,14
awhile (1)
33:12

**B**

back (7)
4:22;18:17;19:13;
22:12;31:18,23;32:2
based (1)
19:4
basis (1)
11:4
become (1)
6:11
behalf (2)
32:4,8
behind (2)
10:19;11:17
best (1)
8:22
Bianchetta (1)
6:16
board (17)
6:8,11,21;7:2,8;
9:14;12:6,11;15:12,
15;18:16;21:24;
25:17;26:3,8,23;33:4
board's (1)
26:1
body (1)
30:7
book (1)
11:3,7
break (3)
5:1,2;29:3
BRENNA (3)
4:2,7;31:15
briefly (1)
14:22
brother (1)
6:4
brought (2)
33:15,19
Bunting (9)
9:15;11:19;13:3,5;
24:6,10,10,19;25:3
Bunting's (1)
26:12

**C**

call (1)
9:7
came (2)
9:3;18:17
can (11)
4:19;5:2;8:1;9:22;
13:6,11;18:3,5;19:12;

25:22;26:5
capacity (1)
33:3
case (5)
4:14;20:2;27:23;
32:5,9
Central (1)
6:3
certain (2)
22:12;24:18
charged (4)
13:18,19,22;14:10
charges (1)
14:6
children (3)
5:20,21,23
claim (3)
13:15;24:6,20
collective (2)
32:4,8
college (1)
5:22
Commencing (1)
4:1
concerning (1)
22:1
confident (1)
24:22
confirm (2)
16:9,23
consideration (1)
12:10
consumption (2)
13:23;14:1
continued (1)
29:4
convenience (1)
5:3
counsel (5)
21:19;22:2;23:1,13;
32:17
count (1)
19:6
course (3)
21:14;26:14;27:5
court (3)
4:11,14;8:11
currently (1)
6:8

**D**

daily (1)
11:4
date (3)
8:15;27:19;32:21
dated (2)
12:1;21:7
David (1)
5:19
day (7)
9:5;16:12;19:15;
21:8,9;24:3;33:11

December (4)
11:8;30:14;31:19;
32:1
defendant (1)
5:12
defendants (2)
32:5,8
Defendant's (3)
30:2,23,24
deliberated (1)
18:17
deliberations (1)
18:18
denied (1)
23:22
deponent (1)
5:11
deposition (4)
4:8;15:7;29:4,6
destroyed (2)
27:6,9
Dietchweiler (2)
19:10,23
Dietchweilers (2)
5:8;12:1
Dietchweiler's (3)
4:14;7:10;19:17
different (1)
17:3
disciplinary (9)
7:22;8:5,17;10:2;
11:20;28:8;33:5,10,
20
disciplined (1)
33:17
discussed (1)
22:5
discussion (1)
24:6
dispute (2)
32:3,7
distributed (1)
9:19
District (3)
6:3;13:15;15:18
document (22)
9:21;10:22;11:1,18,
21,23;12:2,15;14:3;
17:15,17,22;18:11;
21:1;23:13,15;29:8;
30:4,7,17;31:2;32:12
documents (14)
9:1,18;10:19;11:14;
12:5,10,12;15:9;
16:17;17:1,2,5;19:19;
27:21
done (1)
32:18
down (3)
4:15,19;8:11
drug (1)
12:21
drugs (3)

21:17,24;22:24
duly (1)
4:3
during (4)
22:4;23:20;26:14;
27:5

**E**

East (1)
5:14
eighth (1)
6:12
either (2)
8:19;30:21
elected (2)
6:19,20
eliminate (1)
5:4
else (2)
5:16;26:19
else's (1)
25:11
end (1)
20:9
entire (1)
8:9
entitled (1)
30:2
estimation (1)
8:1
evening (2)
27:7,9
everybody (1)
25:16
EXAMINATION (2)
4:4;31:8
exception (1)
9:8
excerpt (2)
11:2,7
Exhibit (7)
9:22;17:12;22:15;
29:6;30:1;31:11,13

**F**

fall (1)
6:14
familiar (1)
29:24
family (2)
12:9,12
far (1)
33:5
fashion (1)
19:11
February (14)
7:11,20;10:21;12:6;
19:9,15,20;20:14,15,
16;21:6;22:20;23:14;
32:22
few (1)

DIETCHWEILER v.
STEVE LUCAS ET AL

BRENNA JOHNSON
October 24, 2014

31:7
**filed (2)**
  27:16,20
**first (7)**
  4:3;6:17;10:12,20;
  21:1;24:9;30:3
**follows (2)**
  4:3;29:4
**found (2)**
  13:20;14:10
**Foundation (2)**
  25:20;26:5

**G**

**generic (1)**
  33:8
**gets (1)**
  33:4
**given (4)**
  17:23;21:17,19;
  22:2
**govern (1)**
  28:17
**grade (1)**
  6:12
**guess (3)**
  7:16;14:1;30:18
**guilty (2)**
  13:16;23:23

**H**

**half (1)**
  14:15
**handbook (6)**
  10:7,24;11:2,4,12,
  16
**handed (4)**
  10:1;22:4,24;23:13
**handing (1)**
  23:15
**handwriting (1)**
  20:16
**happen (1)**
  21:20
**happened (4)**
  27:13,23;29:12,18
**happening (1)**
  18:18
**head (2)**
  4:21,23
**heard (1)**
  16:14
**hearing (34)**
  7:11,16;8:14;9:12,
  19;10:2;12:6;16:2,3,
  6,6,14,15;17:9;18:16;
  19:8,15,20;22:1,4;
  23:1,14,20;26:15,23;
  27:11;28:22;29:12,
  18;32:21,22;33:5,16,
  20

**hearings (2)**
  7:22,22
**held (2)**
  7:7;15:11
**High (1)**
  11:18
**hired (2)**
  6:22;7:3
**hiring (2)**
  6:24;7:5
**home (2)**
  5:15,22
**Huh-uh (2)**
  4:10;15:3
**husband (1)**
  5:17

**I**

**identify (2)**
  21:16,23
**Illinois (5)**
  5:15;6:3;28:7,11,17
**important (2)**
  4:18,20
**independent (1)**
  32:19
**information (2)**
  9:7;33:15
**infraction (1)**
  13:16
**initials (1)**
  18:2
**innocent (1)**
  14:10
**instruction (1)**
  28:4
**interrogatories (1)**
  25:9
**Interrogatory (2)**
  21:15;25:14
**into (2)**
  18:3,17
**involving (4)**
  8:17;9:4,5;12:7
**issue (1)**
  24:2

**J**

**James (1)**
  11:19
**January (1)**
  12:1
**JOHNSON (5)**
  4:2,7,5:19,24;6:4

**K**

**Katie (1)**
  6:12
**Kenneth (2)**
  11:19,24

**kind (1)**
  29:24
**knowledge (1)**
  33:14

**L**

**lab (1)**
  12:14
**label (2)**
  31:10,11
**lady (1)**
  5:10
**last (4)**
  5:23;6:4;11:23;
  21:18
**late (1)**
  16:11
**later (1)**
  5:11
**lawsuit (2)**
  27:15,20
**learn (3)**
  8:13;27:15,17
**leave (2)**
  27:3;28:15
**Lee (4)**
  4:7;6:21;9:16;
  11:24
**Lee's (1)**
  11:20
**letter (2)**
  11:24;23:3
**lines (1)**
  32:23
**list (13)**
  18:13;21:16,23;
  22:4,6,8,11,11,17,18,
  19,21,23
**Listen (2)**
  16:21;17:2
**live (2)**
  5:22;6:6
**look (2)**
  29:7;30:22
**looked (1)**
  15:2
**Looks (4)**
  11:7,15,24;31:18
**Lucas (5)**
  7:2;9:16;11:19;
  13:9;24:13
**Lucas's (1)**
  26:11

**M**

**making (2)**
  5:3;14:19
**many (2)**
  8:2;29:17
**marked (1)**
  9:22

**MASAITIS (14)**
  8:8;9:6;10:4,8;
  15:20;16:21;18:1;
  19:12;25:20,22;26:5;
  31:7,9,14
**matter (2)**
  19:17;28:3
**may (4)**
  4:17,17,21;12:14
**mean (5)**
  4:21,23;24:24;
  28:14;29:14
**meaning (1)**
  22:6
**means (1)**
  22:10
**meeting (1)**
  27:6
**Meetings (1)**
  9:9
**member (4)**
  6:9,11;15:12;33:4
**members (2)**
  9:14;25:17
**members' (3)**
  26:1,4,8
**memoranda (1)**
  27:21
**memory (1)**
  26:17
**MICHAEL (1)**
  4:5
**Mike (1)**
  5:7
**mine (1)**
  20:5
**minor (1)**
  33:17
**minors (1)**
  33:15
**minors' (1)**
  33:19
**moment (1)**
  29:2
**money (5)**
  21:17,24;22:8,12,
  24
**much (2)**
  9:22;12:19

**N**

**name (7)**
  4:6;5:6,18,24;6:4;
  11:20;21:5
**names (4)**
  18:3,6,6;33:19
**need (3)**
  5:1;9:23;18:6
**negative (3)**
  12:22,23;16:23
**next (4)**
  6:20;11:8,13;32:17

**night (3)**
  10:24;12:3;26:18
**nine (1)**
  26:3
**Noah (23)**
  4:13;7:10;8:14,18;
  9:4,12,14;12:7;13:16,
  18;16:2;19:10,17,23;
  21:17;22:1;23:14,19,
  24;24:3,6,11,20
**Noah's (16)**
  7:15;10:2;16:6,14;
  17:9;18:16;19:8,20;
  21:19;22:2,4,24;23:1,
  13;26:15;27:11
**None (2)**
  15:10;17:20
**nope (1)**
  19:2
**North (1)**
  5:14
**note (3)**
  22:5,6;23:4
**notes (7)**
  26:14,16,20,22,24;
  27:5,12
**notice (8)**
  8:16,23,24;11:20;
  16:1,5;33:7,8
**noticed (1)**
  10:20
**notification (2)**
  32:20;33:4
**number (1)**
  5:13
**numbers (1)**
  17:14

**O**

**object (1)**
  9:6
**objections (2)**
  4:17;21:18
**observe (1)**
  22:23
**obviously (1)**
  25:14
**occasion (2)**
  15:24;28:1
**office (2)**
  15:11,13
**officer (1)**
  7:8
**one (17)**
  4:18;5:22;10:21;
  11:5,8;14:6;19:10;
  20:9;22:12;23:5;
  24:18;26:16;30:5,24;
  33:13,17,23
**ones (1)**
  20:4
**only (2)**

DIETCHWEILER v.
STEVE LUCAS ET AL

BRENNA JOHNSON
October 24, 2014

4:18;12:15
**Open (2)**
9:9;18:17
**opposed (1)**
16:22
**original (1)**
10:18
**out (7)**
6:6;10:1;12:3,6;
16:10;17:22;33:15
**over (1)**
14:15
**owed (1)**
22:11
**owing (4)**
21:17,23;22:8,24

**P**

**package (3)**
10:1,20;11:23
**page (4)**
10:13,15;17:12,14
**pages (3)**
11:9,14;20:9
**parents (1)**
9:15
**part (3)**
21:1,22;25:3
**participated (2)**
7:12,19
**passed (2)**
12:3,6
**people (3)**
4:17;8:10;18:9
**person (1)**
4:18
**phone (2)**
5:13,15
**phrasing (1)**
17:3
**pills (5)**
17:23;24:3,7,11,21
**place (2)**
28:9,18
**Plaintiff's (2)**
30:3,24
**please (3)**
4:6;7:14;19:13
**pm (1)**
4:1
**policy (4)**
11:3,7,11;15:18
**political (2)**
15:11,13
**positions (1)**
7:7
**positive (2)**
12:22;16:22
**possession (3)**
13:19;14:8;19:4
**prepare (2)**
15:7;27:21

prescribe (1)
28:8
**present (1)**
7:17
**presented (3)**
13:14;14:11,14
**preserve (1)**
27:22
**previous (1)**
8:5
**Prior (6)**
7:10,12,15,20;17:9;
20:18
**problem (1)**
5:5
**procedure (1)**
28:18
**procedures (10)**
7:20;8:4;16:1,7,12,
17;17:9,10;28:2,21
**proceeding (4)**
8:17;9:3;13:1;
33:10
**proceedings (5)**
7:12;8:2,7;9:4;28:8
**Produce (1)**
17:18
**Production (2)**
17:13;31:1
**proper (1)**
28:21
**provide (1)**
4:16
**provided (1)**
20:2

**Q**

**quicker (1)**
16:11
**quite (1)**
6:19

**R**

**read (10)**
4:22;11:4;17:24;
18:3,5;19:13;21:5,12;
29:16,21
**reading (2)**
16:16;32:18
**really (2)**
12:15;28:6
**reason (2)**
32:3,7
**recall (55)**
6:13;7:21,24;8:6,
15,19,21;9:2,10,17,
18;10:3,9,10,17,23;
11:22;12:4,8;13:17,
21;14:12,12;15:21,21,
22;18:15;19:7,18,24;
21:8,9,21;23:10,24;

24:4,15,24;25:1,2,2;
26:16,17;27:19;28:6,
19;29:14;30:5,12,19;
32:11,23;33:12,13,21
**receive (4)**
8:16,22,24,24
**received (5)**
8:23;16:1,5;19:19;
24:3
**receiving (1)**
24:11
**recollect (5)**
27:13;29:19,20,22,
23
**recollection (3)**
8:23;22:3;29:10
**record (3)**
14:19,21;18:3
**Records (1)**
9:8
**reelected (1)**
6:18
**refer (2)**
18:2,9
**reference (2)**
19:22,23
**referred (1)**
21:24
**reflect (1)**
14:3
**refresh (2)**
22:3;29:10
**regarding (1)**
33:15
**relative (1)**
13:15
**relatives (1)**
6:2
**remember (43)**
8:3;9:13,20;12:9,
16,17,19,20;13:2,3,6,
11,22;14:5,7,7,13,17;
16:18,19,19;18:18,19,
22;19:3,5;20:1;23:2,
11,12,15,19,22;24:2,
5,10,13,19;25:4,7;
29:24;31:3,3
**remembering (1)**
19:2
**remind (1)**
4:23
**Repeat (6)**
7:14;15:19;16:4;
19:12;20:21;24:8
**reporter (2)**
4:14;8:11
**Request (6)**
17:13,18;30:3;31:1,
10,15
**requested (1)**
27:22
**research (1)**
32:19

reside (1)
5:16
**respond (1)**
8:9
**Response (3)**
17:13,17;25:15
**Responses (4)**
30:2,23;31:1,12
**restroom (1)**
5:3
**results (1)**
12:21
**review (10)**
14:21;15:9,24;16:7,
13,24;17:2,5,8,10
**reviewed (2)**
15:22;28:16
**right (10)**
9:15;10:6;15:22;
22:16,18;23:7;24:8;
27:1;31:21;33:18
**rip (1)**
27:2
**Road (1)**
5:14
**rules (2)**
15:18;28:3
**run (1)**
15:14
**running (1)**
28:21

**S**

**same (6)**
8:10;9:5;25:17;
26:10;27:6,9
**saying (6)**
9:24;10:5;13:7;
16:16;17:4;27:4
**scheduled (1)**
16:14
**school (21)**
6:8,11,21;7:2,8;
11:18;12:6,11;13:15,
16;15:12,15,18;
21:24;24:7,11;25:16,
24;26:3,8,23
**second (2)**
11:5;21:22
**seeing (1)**
30:5
**seem (1)**
14:3
**seminars (1)**
28:2
**sentence (1)**
21:18
**session (1)**
18:17
**seven (3)**
11:9;18:7,8
**several (3)**

11:9,13;30:8
**shake (2)**
4:21,22
**sheet (1)**
13:24
**show (3)**
5:10;9:21;29:6
**showed (3)**
22:12,15;31:16
**showing (1)**
25:8
**shredded (1)**
27:2
**siblings (2)**
6:4,6
**signature (1)**
20:10
**signatures (1)**
31:20
**signed (8)**
14:1;18:9;20:13;
21:5,11,12;30:11,13
**significance (1)**
12:17
**signing (1)**
20:18
**sisters (1)**
6:5
**sit (1)**
32:14
**six (1)**
10:19
**somebody's (1)**
29:13
**someplace (1)**
17:24
**sorry (6)**
15:20;17:21;19:12;
30:14,24;33:2
**sounds (1)**
29:23
**speak (2)**
19:9,16
**speaking (1)**
25:3
**specific (9)**
22:22;25:6;28:16;
30:5;32:11;33:7,11,
16,23
**specifically (7)**
7:23;24:24;25:13;
26:2,17;28:23;29:24
**specifics (6)**
9:20;14:13;23:24;
25:2;29:20,23
**spoke (1)**
24:14
**spring (1)**
6:20
**start (1)**
20:6
**starts (1)**
17:22

DIETCHWEILER v.
STEVE LUCAS ET AL

BRENNA JOHNSON
October 24, 2014

state (4)
4:6;6:7;18:6;28:17
statement (1)
17:5
statute (1)
28:17
statutes (2)
28:7,11
stenographer (1)
14:19
Steve (2)
6:16;11:19
still (3)
6:16;25:22;29:21
Student (11)
9:8;10:24;11:2,15,
20;22:12;28:21;33:4,
8,11,24
students (10)
9:5,9;18:7,13;
21:17,23;22:7,8,11,24
student's (1)
33:16
subject (1)
28:3
submitted (4)
12:10,12,15,20
subsequent (1)
19:8
subsequently (1)
6:18
superintendent (1)
6:15
support (2)
6:24;7:5
sure (10)
6:19;7:15;9:14,16;
11:4;14:8;16:5;20:21;
27:12;29:14
suspended (3)
13:21;18:14;19:4
suspension (17)
7:10,12,15,20,21;
8:14;16:13;17:8,10;
19:20;28:2,3,18,22;
32:21,22;33:16
suspensions (3)
7:23;15:18;32:19
sworn (1)
4:3

**T**

tab (3)
10:5;11:13,17
tabs (2)
10:18,19
TAGUE (15)
4:5;5:7;8:12;9:11;
10:6,11;15:23;17:7;
18:4;19:14;26:9;29:2,
5;31:6,12
talked (3)

23:5;25:15;29:11
talking (3)
4:18;8:10;24:20
talks (1)
4:19
ten (1)
11:9
test (1)
12:14
testified (4)
4:3,11;13:1,11
testify (1)
13:9
testifying (1)
24:10
testimony (2)
14:14;29:13
testing (1)
12:21
though (3)
14:23;22:14;28:6
three (1)
5:21
today (5)
14:24;15:6;23:9;
25:11;32:14
told (2)
29:17;33:10
top (1)
11:18
towards (1)
33:23
true (5)
16:15,24;17:1,4,6
truthful (1)
24:17
try (3)
5:4;27:12,22
trying (1)
24:17
Turn (2)
20:4;30:1
Two (3)
5:21;8:10;11:9
type (3)
32:18,19,20

**U**

ultimately (1)
9:3
uncertain (1)
24:21
uncomfortable (1)
5:4
understood (1)
22:23
up (3)
10:4;27:2;33:19

**V**

verbal (2)

4:20;8:20
verbatim (3)
4:15;14:19,21
verification (4)
20:10,13,18;21:2
verified (1)
25:10
VERONICA (1)
31:9
vote (4)
18:22,24;19:3,6

**W**

wait (1)
8:8
Watseka (3)
5:14;11:18;16:7
way (2)
10:4;17:3
What's (2)
5:18;22:14
Whereupon (1)
29:3
whole (1)
9:24
within (1)
9:8
witnesses (1)
13:14
words (1)
33:17
working (1)
16:10
workshops (1)
28:2
write (2)
26:16;27:11
writing (2)
17:14;30:15
written (4)
8:4,20;20:1,6

**Y**

year (2)
6:20;14:15
yep (1)
23:4

**1**

1 (2)
9:22;17:13
10 (1)
29:7
10-17-14 (1)
9:22
1545 (1)
5:14

**2**

2 (1)
17:18
20 (4)
20:14,16;21:6;
22:20
2000 (1)
5:14
2003 (1)
11:6
2008 (3)
6:12,14;11:8
2011 (1)
10:21
2013 (11)
6:12;7:11,20;12:1,
7;19:9;23:14;30:14;
31:19;32:1,22
2014 (4)
20:14;21:6;22:20;
30:14
20th (2)
20:15;21:11
28th (1)
30:14

**3**

3 (3)
17:12;22:15;23:6
3:37 (1)
4:1
30 (1)
12:1

**4**

432-4774 (1)
5:15

**5**

5 (8)
7:11,20;12:6;19:9;
23:14;30:1,2;31:13
5A (1)
31:12
5th (2)
19:15,20;32:22

**6**

60970 (1)
5:15

**7**

7.200 (1)
11:6
7190 (1)
10:22

**8**

8 (2)
21:15;25:14
815 (1)
5:15

**9**

9 (3)
23:3;30:22,22