E-FILED
Monday, 15 December, 2014  03:32:58 PM
Clerk, U.S. District Court, ILCD

# IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9

## Noah Dietchweiler Suspension Review Hearing

## February 5, 2013
## 6:00 p.m.

EXHIBIT

*1*

*10-17-14   JH*

# Suspension Review Hearing Exhibits

**Tab No.**      **Title**

1                Board Policy 7:190 – Student Discipline
2                Board Policy 7:200 – Suspension Procedures
3                Board Policy 7:210 – Expulsion Procedures
4                Iroquois County High School Student Handbook
                 Pages 1, 27 – 31, 37 – 40, 44 – 54
5                Notice of Student Disciplinary Action, dated January 25, 2013
6                Notice of Suspension Review Hearing, dated January 30, 2013

# Students

## Student Discipline [1]

### Prohibited Student Conduct [2]

The school administration is authorized to discipline students for gross disobedience or misconduct, including but not limited to:

1. Using, possessing, distributing, purchasing, or selling tobacco materials. [3]

2. Using, possessing, distributing, purchasing, or selling alcoholic beverages. [4] Students who are under the influence of an alcoholic beverage are not permitted to attend school or school functions and are treated as though they had alcohol in their possession.

3. Using, possessing, distributing, purchasing, or selling:

   a. Any illegal drug, controlled substance, or cannabis (including marijuana and hashish). [5]

   b. Any anabolic steroid unless being administered in accordance with a physician's or licensed practitioner's prescription. [6]

   c. Any performance-enhancing substance on the Illinois High School Association's most current banned substance list unless administered in accordance with a physician's or licensed practitioner's prescription. [7]

   d. Any prescription drug when not prescribed for the student by a physician or licensed practitioner, or when used in a manner inconsistent with the prescription or prescribing physician's or licensed practitioner's instructions.

   e. Any inhalant, regardless of whether it contains an illegal drug or controlled substance: (a) that a student believes is, or represents to be capable of, causing intoxication, hallucination, excitement, or dulling of the brain or nervous system; or (b) about which the student engaged in behavior that would lead a reasonable person to believe that the student intended the inhalant to cause intoxication, hallucination, excitement, or dulling of the brain or nervous system.  The prohibition in this section does not apply to a student's use of asthma or other legally prescribed inhalant medications.

   f. "Look-alike" or counterfeit drugs, including a substance not containing an illegal drug or controlled substance, but one:  (a) that a student believes to be, or represents to be, an illegal drug or controlled substance; or (b) about which a student engaged in behavior that

---

1 All districts must have a policy on student discipline, including corporal punishment (105 ILCS 5/10-20.14; 23 Ill.Admin.Code §1.280). Teachers and other certificated employees must maintain discipline (105 ILCS 5/24-24). Given the unique concerns facing school officials, school disciplinary codes are not required to be drafted as narrowly or with the same precisions as criminal statutes. Bethel School Dist. v. Fraser, 106 S.Ct. 3159 (1986).

2 Boards for elementary districts may customize the items listed as *prohibited student conduct* that clearly will not apply to their students.

3 Federal law prohibits smoking within schools by anyone (Pro-Children Act of 1994, 20 U.S.C. §6081). Districts that fail to comply risk a civil penalty of up to $1,000 per violation per day. See policy 8:30, *Visitors to and Conduct on School Property*, for more information.

4 Alcoholic beverages are defined in 235 ILCS 5/1-3.01 to 3.05.

5 Controlled substance is defined in 720 ILCS 570/102; cannabis is defined in 720 ILCS 550/3. Either spelling. "marihuana" or "marijuana," is correct; however, "marijuana" is more common.

6 Anabolic steroid is defined in 720 ILCS 570/102.

7 105 ILCS 25/2, added by P.A. 96-132 and recodified by P.A. 96-1000, requires IHSA to prohibit a student from participating in an IHSA-sponsored athletic competition unless the student has agreed not to use any performance-enhancing substances on IHSA's current banned drug list and to submit to performance-enhancing substance testing. See policy 7:240, *Conduct Code for Participants in Extracurricular Activities*.

would lead a reasonable person to believe that the student expressly or impliedly represented to be an illegal drug or controlled substance. [8]

g. Drug paraphernalia, including devices that are or can be used to: (a) ingest, inhale, or inject cannabis or controlled substances into the body; and (b) grow, process, store, or conceal cannabis or controlled substances. [9]

Students who are under the influence of any prohibited substance are not permitted to attend school or school functions and are treated as though they had the prohibited substance, as applicable, in their possession.

4. Using, possessing, controlling, or transferring a "weapon" as that term is defined in the *Weapons* section of this policy, or violating the *Weapons* section of this policy. [10]

5. Using or possessing an electronic paging device. Using a cellular telephone, video recording device, personal digital assistant (PDA), or other electronic device in any manner that disrupts the educational environment or violates the rights of others, including using the device to take photographs in locker rooms or bathrooms, cheat, or otherwise violate student conduct rules. Prohibited conduct specifically includes, without limitation, creating, sending, sharing, viewing, receiving, or possessing an indecent visual depiction of oneself or another person through the use of a computer, electronic communication device, or cellular phone. Unless otherwise banned under this policy or by the Building Principal, all electronic devices must be kept powered-off and out-of-sight during the regular school day unless: (a) the supervising teacher grants permission; (b) use of the device is provided in a student's individualized education program (IEP); or (c) it is needed in an emergency that threatens the safety of students, staff, or other individuals. [11]

6. Using or possessing a laser pointer unless under a staff member's direct supervision and in the context of instruction.

7. Disobeying rules of student conduct or directives from staff members or school officials. Examples of disobeying staff directives include refusing a District staff member's request to stop, present school identification, or submit to a search.

8. Engaging in academic dishonesty, including cheating, intentionally plagiarizing, wrongfully giving or receiving help during an academic examination, and wrongfully obtaining test copies or scores.

---

[8] "Look-alike" and counterfeit substances are defined in 720 ILCS 570/102. "Look-alike" drugs should be defined; an unpublished Ill. Court of Appeals decision in 2000 found a board policy prohibiting possession of "look-alikes" to have vagueness problems.

[9] Drug paraphernalia is defined in 720 ILCS 600/2.

[10] This language is broader than the *Weapons* section of this policy. The *Weapons* section contains the statutorily required punishment for "a student who is determined to have brought" a weapon to school along with the statutory definition of *weapon* (105 ILCS 5/10-22.6, amended by P.A. 96-633). The language in item #4 is broader because it prohibits "using, possessing, controlling, or transferring" a weapon in addition to violating the *Weapons* section.

[11] 105 ILCS 5/10-21.10 prohibits student possession of electronic paging devices, but State law leaves to local boards the discretion whether to prohibit student possession of cellular phones (105 ILCS 5/10-20.28). Camera phones are now common and their misuse could seriously invade a student's privacy. A board wanting a sweeping prohibition may use the following alternative for item 5:

Using or possessing a cellular telephone, electronic signaling device, two-way radio, video recording device, and/or other telecommunication device, unless authorized and approved by the Building Principal.

Operating transmitters designed to jam or block wireless communications violates the federal Communications Act of 1934 (47 U.S.C. §§301, 302a, and 333). Fines for a first offense can range as high as $11,000 for each violation or imprisonment for up to one year, and the device may also be seized by the U.S. government. 47 U.S.C. §§501-510.

Making a video recording or live video transmission of another person without their consent in a restroom, locker room, or changing room is a felony (720 ILCS 5/26-4). A minor who distributes or disseminates an indecent visual depiction of another minor through the use of a computer or electronic communication device may be subject to adjudication as a minor in need of supervision (705 ILCS 405/3-40, added by P.A. 96-1087, eff. 1-1-11).

9.  Engaging in hazing or any kind of bullying or aggressive behavior that does physical or psychological harm to a staff person or another student, or urging other students to engage in such conduct. Prohibited conduct specifically includes, without limitation, any use of violence, intimidation, force, noise, coercion, threats, stalking, harassment, sexual harassment, public humiliation, theft or destruction of property, retaliation, hazing, bullying, bullying using a school computer or a school computer network, or other comparable conduct. 12

10. Causing or attempting to cause damage to, or stealing or attempting to steal, school property or another person's personal property. 13

11. Being absent without a recognized excuse; State law and School Board policy regarding truancy control will be used with chronic and habitual truants. 14

12. Being involved with any public school fraternity, sorority, or secret society, by: (a) being a member; (b) promising to join; (c) pledging to become a member; or (d) soliciting any other person to join, promise to join, or be pledged to become a member. 15

13. Being involved in gangs or gang-related activities, including displaying gang symbols or paraphernalia. 16

14. Violating any criminal law, including but not limited to, assault, battery, arson, theft, gambling, eavesdropping, and hazing.

---

12 All districts must have a policy on bullying (105 ILCS 5/27-23.7(d), amended by P.A. 96-952). Policy 7:180, *Preventing Bullying, Intimidation, and Harassment*, contains the statutory definition of *bullying*.

105 ILCS 5/10-20.14 requires boards, in consultation with their parent-teacher advisory committees and other community-based organizations, to include provisions in their student discipline policy to address aggressive behavior, including bullying. Implementing procedures must include a method for informing parents/guardians when their child or ward engaged in aggressive behavior as well as early intervention procedures based upon available community and district resources. See 7:190-E, *Aggressive Behavior Reporting Letter and Form*.

A trial court's order enjoining a student's expulsion for committing aggressive behavior was overturned in *Wilson ex rel. Geiger v. Hinsdale Elementary School Dist. 181*, 810 N.E.2d 637 (Ill.App.2, 2004). The board expelled an 11-year-old student for bringing 2 CDs to school containing a song entitled, "Gonna Kill Mrs. Cox's Baby." Mrs. Cox was the student's pregnant science teacher. The student was expelled for the remainder of the school year for violating the district's policy prohibiting aggressive behavior. The Court of Appeals reversed the trial court's temporary restraining order (that had stopped the penalty's imposition until after a trial) finding that the student had violated school rules subjecting him to exclusion and that the penalty was not unreasonable, arbitrary, capricious, or oppressive.

See also *Gendelman v. Glenbrook North High School and Northfield Township School District 225*, 2003 WL 21209880 (N.D.Ill., 2003)(student suspensions for hazing were upheld).

A person commits a felony hate crime when, by reason of the actual or perceived race, color, creed, religion, ancestry, sexual orientation, disability, or national origin of another person, he or she commits assault or battery (720 ILCS 5/12-7.1). The penalty is heightened when the offense is committed in a school or administrative facility.

720 ILCS 5/26-1, amended by P.A. 96-772, makes transmitting a threat of violence, death, or bodily harm directed against persons at a school, school function, or school event, whether or not school is in session, or causing such a threat to be transmitted, a Class 4 felony.

13 720 ILCS 5/26-1, amended by P.A. 96-772, makes threatening to destroy a school building or school property, whether or not school is in session, or causing such a threat to be transmitted, a Class 4 felony.

14 105 ILCS 5/26-2a, 5/26-9, and 5/26-12. See policy 6:110, *Programs for Students At Risk of Academic Failure and/or Dropping Out of School and Graduation Incentives Program*, and 7:70, *Attendance and Truancy*.

15 State law requires schools to suspend or expel any student who engages in this activity (105 ILCS 5/31-3).

16 See *Kelly v. Board of Educ. of McHenry Community High School Dist. 156*, 2007 WL 114300 (N.D.Ill., 2007)(upheld student's expulsion for drawing gang symbols while at school; testimony that the danger posed by gang signs and the presence of gangs at school supported the board's insistence on strict enforcement of board policy prohibiting gang related behavior and made expulsion a proper remedy). Significantly, the General Assembly recognized in 105 ILCS 5/27-23.7(a). that "[g]iven the higher rates of criminal offending among gang members, as well as the availability of increasingly lethal weapons, schools, the community, and prevention efforts."

740 ILCS 147/15 et seq. allows a school district to bring a civil suit against a gang, gang officers, or gang members for losses it suffers due to their criminal activity.

15. Engaging in any activity, on or off campus, that interferes with, disrupts, or adversely affects the school environment, school operations, or an educational function, including but not limited to, conduct that may reasonably be considered to: (a) be a threat or an attempted intimidation of a staff member; or (b) endanger the health or safety of students, staff, or school property. 17

For purposes of this policy, the term "possession" includes having control, custody, or care, currently or in the past, of an object or substance, including situations in which the item is: (a) on the student's person; (b) contained in another item belonging to, or under the control of, the student, such as in the student's clothing, backpack, or automobile; (c) in a school's student locker, desk, or other school property; or (d) at any location on school property or at a school-sponsored event. 18

Efforts, including the use of early intervention and progressive discipline, shall be made to deter students, while at school or a school-related event, from engaging in aggressive behavior that may reasonably produce physical or psychological harm to someone else. The Superintendent or designee shall ensure that the parent/guardian of a student who engages in aggressive behavior is notified of the incident. 19 The failure to provide such notification does not limit the Board's authority to impose discipline, including suspension or expulsion, for such behavior.

No disciplinary action shall be taken against any student that is based totally or in part on the refusal of the student's parent/guardian to administer or consent to the administration of psychotropic or psychostimulant medication to the student. 20

The grounds for disciplinary action, including those described more thoroughly later in this policy, apply whenever the student's conduct is reasonably related to school or school activities, including, but not limited to: 21

---

17 A catchall provision, e.g., this one, gives staff members authority to respond to unforeseen situations.

If the board adopts a mandatory uniform policy (see 7:165, *School Uniforms*), add the following item to the list as number 16: "Failing to comply with the mandatory uniform policy, but only after repeated attempts to secure compliance, such as conferences with parents/guardians, have been unsuccessful."

18 "Possession" should be defined to avoid vagueness problems.

19 See footnote 12.

20 Mandated by 105 ILCS 5/10-20.36.

21 A school's power over students does not cease when students leave the campus. However, Illinois statutes do not describe when a school may suspend or expel a student. Thus, board policy must provide a jurisdictional statement telling students and staff the circumstances under which the district will take disciplinary action. Rules taking jurisdiction of off-campus misconduct generally survive the test of reasonableness if they are limited to situations having a direct nexus to the school. Jurisdictional rules in board policy should generally be as broad as possible in order to give staff members authority to respond to unforeseen situations. However, a countervailing interest concerns liability for off-campus student injuries, i.e., the greater the jurisdiction a district is willing to impose, the greater the scope of liability it may be assuming. Ultimately, a decision whether to discipline for off-campus misconduct requires a factual inquiry to determine the degree of nexus and impact on the school. There are many decisions on disciplining a student for off-campus misconduct; for examples, see: Morse v. Frederick, 127 S.Ct. 2618 (2007) (held school's compelling interest in stopping student drug abuse allows schools to prohibit student speech that maybe reasonably regarded as promoting illegal drug use). Boucher v. School District of Greenfield, 134 F.3d 821 (7th Cir., 1998)(upheld expulsion for off-campus speech – an article explaining how to hack into the school's computers); Giles v. Brookville Area School District, 669 A.2d 1079 (Pa. Commw. 1995)(upheld expulsion for selling marijuana to another student off-campus where negotiations took place on campus); J.S. v. Bethlehem Area School District, 807 A.2d 847 (Pa. 2002)(suspension upheld for posting on a private web site derogatory, offensive, and threatening statements directed toward a teacher); Wisnieski v. Board of Education of Weedsport Cent. School District, 494 F3d 34 (2nd Cir. 2007), (upheld suspension for off-campus speech - an instant message icon illustrating a pistol firing a bullet at teacher's head with words "kill Mr. Vandermolen."); Doe v. Pulaski County Special School, 306 F.3d 616 (8th Cir., 2002) (vacated holding in Doe v. Pulaski County Special School, 263 F.3d 833 (8th Cir., 2001), holding that the school board did not violate the student's First Amendment rights when it expelled him for writing a letter at home referring to killing his girlfriend).

Note that the law is different regarding participants in athletics and extracurricular activities. See policy 7:240, *Conduct Code for Participants in Extracurricular Activities*.

1. On, or within sight of, school grounds before, during, or after school hours or at any time;

2. Off school grounds at a school-sponsored activity or event, or any activity or event that bears a reasonable relationship to school;

3. Traveling to or from school or a school activity, function, or event; or

4. Anywhere, if the conduct interferes with, disrupts, or adversely affects the school environment, school operations, or an educational function, including, but not limited to, conduct that may reasonably be considered to: (a) be a threat or an attempted intimidation of a staff member; or (b) endanger the health or safety of students, staff, or school property. 22

Disciplinary Measures 23

Disciplinary measures may include: 24

1. Disciplinary conference.

2. Withholding of privileges.

3. Seizure of contraband.

4. Suspension from school and all school activities for up to 10 days, provided that appropriate procedures are followed. 25 A suspended student is prohibited from being on school grounds.

5. Suspension of bus riding privileges, provided that appropriate procedures are followed. 26

6. Expulsion from school and all school-sponsored activities and events for a definite time period not to exceed 2 calendar years, provided that the appropriate procedures are followed. 27 An expelled student is prohibited from being on school grounds. 28

---

According to the Civil No Contact Order Act, a judge may order a student who has committed non-consensual sexual contact against another student, or who has aided and abetted such an act, to transfer to another school; the parents/guardians are responsible for transportation and other costs associated with the transfer (740 ILCS 22/213, added by P.A. 96-311). The school district is not a party to a petition for a Civil No Contact order, and will probably not be notified before it is issued. School officials should immediately seek the board attorney's advice on managing such the order.

22 Suspending or expelling a student for off-campus misconduct is problematic when the school's jurisdiction is premised on nothing more than "the student's presence at school may reasonably be considered to create an interference with school purposes or an educational function." If possible, other grounds for jurisdiction should be added. The factual context will determine jurisdiction. Even when there is no other jurisdictional ground, if the nature of the conduct is particularly troublesome, a detrimental impact on the school can be inferred. See Doe v. Superintendent of Schools of Stoughton, 767 N.E.2d 1054 (Mass., 2002)(suspension for off-campus commission of a felony was upheld).

23 Aside from procedural due process protection, students have a constitutional substantive due process right. This right protects them from an abuse of government power which "shocks the conscience." While the scope of substantive due process is very limited, it is available to students who believe they were subject to arbitrary and excessive discipline. Generally, however, school officials need not fear being found guilty of a substantive due process violation. Federal courts are loath to second-guess school officials.

An example of the judicial reluctance to interfere is Tun v. Whitticker, 398 F.3d 899 (7th Cir., 2005). A student named Brandon brought a substantive due process claim against the school for expelling him without evidence of wrongdoing. Brandon and three others were expelled for allowing nude pictures of themselves to be taken in the school shower. After Brandon appealed using the school's procedures, the expulsion was rescinded and his record expunged of any reference to the incident. Brandon, however, brought a federal court action alleging that his substantive due process rights were violated. While the Court believed that school officials overreacted to boys "just horsing around," it did not believe the expulsion amounted to a substantive due process violation - it fell short of the required "shocks the conscience" standard.

24 Most school attorneys advise against using a grade reduction as a disciplinary measure. One case upheld the application of such a policy. Knight v. Board of Education, 348 N.E.2d 299 (Ill.App. 4, 1976). Another case, however, found unconstitutional, a grade reduction policy requiring 9-week grades to be reduced 4% for each day of a suspension. Smith v. School City of Hobart, 811 F.Supp. 391 (N.D.Ind., 1993).

25 105 ILCS 5/10-22.6. The next sentence is optional.

26 Id.

27 105 ILCS 5/10-22.6. The Indiana Supreme Court upheld a policy to deny semester credit to a student expelled anytime during the semester. South Gibson School Board v. Sollman, 768 N.E.2d 437 (Ind. 2002). An optional provision, such as the following, should first be discussed with the board's attorney before adoption:

7. Notifying juvenile authorities or other law enforcement whenever the conduct involves illegal drugs (controlled substances), "look-alikes," alcohol, or weapons.

8. Notifying parents/guardians.

9. Temporary removal from the classroom.

10. In-school suspension for a period not to exceed 5 school days. The Building Principal or designee shall ensure that the student is properly supervised. [29]

11. After-school study or Saturday study [30] provided the student's parent/guardian has been notified. If transportation arrangements cannot be agreed upon, an alternative disciplinary measure must be used. The student must be supervised by the detaining teacher or the Building Principal or designee.

12. Community service with local public and nonprofit agencies that enhances community efforts to meet human, educational, environmental, or public safety needs. [31] The District will not provide transportation. School administration shall use this option only as an alternative to another disciplinary measure giving the student and/or parent/guardian the choice.

A student who is subject to suspension or expulsion may be eligible for transfer to an alternative school program. [32]

Corporal punishment is prohibited. Corporal punishment is defined as slapping, paddling, or prolonged maintenance of students in physically painful positions, or intentional infliction of bodily harm. Corporal punishment does not include reasonable force as needed to maintain safety for students, staff, or other persons, or for the purpose of self-defense or defense of property. [33]

Weapons [34]

A student who is determined to have brought one of the following objects to school, any school-sponsored activity or event, or any activity or event that bears a reasonable relationship to school shall be expelled for a period of at least one calendar year but not more than 2 calendar years:

1. A firearm, meaning any gun, rifle, shotgun, or weapon as defined by Section 921 of Title 18 of the United States Code (18 U.S.C. § 921), firearm as defined in Section 1.1 of the Firearm Owners Identification Card Act (430 ILCS 65/), or firearm as defined in Section 24-1 of the Criminal Code of 1961 (720 ILCS 5/24-1).

2. A knife, brass knuckles, or other knuckle weapon regardless of its composition, a billy club, or any other object if used or attempted to be used to cause bodily harm, including "look alikes" of any firearm as defined above.

---

Unless the Building Principal determines otherwise, a student expelled anytime during a semester will be denied credit for the semester regardless of whether the student had completed sufficient course work to earn a passing grade before being expelled.

28 Optional (105 ILCS 5/10-22.6).

29 State law does not cover in-school suspensions. Generally, an educational program must be included in an in-school suspension; otherwise, it may become a regular suspension with procedural requirements.

30 Teachers may not be required to teach on Saturdays (105 ILCS 5/24-2).

31 Optional. See Herndon v. Chapel Hill-Carrboro City Bd., 89 F.3d 174 (C.A. 4, 1996)(upheld policy requiring students to complete community service in order to graduate).

32 105 ILCS 5/10-22.6.

33 This paragraph paraphrases 105 ILCS 5/24-24.

34 This section restates 105 ILCS 5/10-22.6, amended by P.A. 96-633. See also the Gun-Free Schools Act, 20 U.S.C. §7151 et seq. This section contains the statutorily required punishment for bringing a weapon to school along with the statutory definition of weapon (105 ILCS 5/10-22.6, amended by P.A. 96-633). Item #4 in the Prohibited Student Conduct section is broader because it prohibits "using, possessing, controlling, or transferring" a weapon in addition to violating the Weapons section.

When preparing for a due process hearing, a principal needs to use the applicable State and federal law definitions of "firearm"— not just The School Code. Analyzing the student's circumstances on a case-by-case basis may avoid a judicial finding that an expulsion is too severe. See Washington v. Smith, 618 N.E.2d 561 (Ill.App., 1993).

The expulsion requirement under either paragraph 1 or 2 above may be modified by the Superintendent, and the Superintendent's determination may be modified by the Board on a case-by-case basis. The Superintendent or designee may grant an exception to this policy, upon the prior request of an adult supervisor, for students in theatre, cooking, ROTC, martial arts, and similar programs, whether or not school-sponsored, provided the item is not equipped, nor intended, to do bodily harm. 35

Required Notices

A school staff member shall immediately notify the office of the Building Principal in the event that he or she: (1) observes any person in possession of a firearm on or around school grounds; however, such action may be delayed if immediate notice would endanger students under his or her supervision, (2) observes or has reason to suspect that any person on school grounds is or was involved in a drug-related incident, or (3) observes a battery committed against any staff member. 36 Upon receiving such a report, the Building Principal or designee shall immediately notify the local law enforcement agency, State Police, and any involved student's parent/guardian. 37 "School grounds" includes modes of transportation to school activities and any public way within 1000 feet of the school, as well as school property itself.

Delegation of Authority

Each teacher, and any other school personnel when students are under his or her charge, is authorized to impose any disciplinary measure, other than suspension, expulsion, corporal punishment, or in-school suspension, that is appropriate and in accordance with the policies and rules on student discipline. Teachers, other certificated educational employees, and other persons providing a related service for or with respect to a student, may use reasonable force as needed to maintain safety for other students, school personnel, or other persons, or for the purpose of self-defense or defense of property. 38 Teachers may temporarily remove students from a classroom for disruptive behavior. 39

The Superintendent, Building Principal, Assistant Building Principal, or Dean of Students is authorized to impose the same disciplinary measures as teachers and may suspend students guilty of gross disobedience or misconduct from school (including all school functions) and from riding the school bus, up to 10 consecutive school days, provided the appropriate procedures are followed. 40 The Board may suspend a student from riding the bus in excess of 10 school days for safety reasons. 41

---

35 Optional.

36 105 ILCS 5/10-27.1A, 5/10-27.1B, and 5/10-21.7. "School grounds" includes the real property comprising any school, any conveyance used to transport students to school or a school-related activity, and any public way within 1,000 feet of any school ground. To satisfy the reporting requirement, ISBE created the School Incident Reporting System (SIRS), a web-based application on IWAS for schools to report incidents electronically. Reporting on SIRS does not satisfy the requirement to report incidents to local law enforcement authorities.

37 Id. State law imposes this duty to report firearm possession only on school officials; this duty may be also imposed on volunteers and community members. Only staff members, however, are vulnerable to committing a petty offense for their failure to report, and only staff members are protected from civil or criminal liability that might arise as a result of making a report (although the liability potential for anyone making a report is remote).

The building principal must notify the student's parents/guardians only when the alleged offense is firearm possession. The policy expands this notification duty; a board disinclined to do this should substitute the following sentence:

Upon receiving such a report, the Building Principal or designee shall immediately notify the applicable local law enforcement agency, State Police, and, if a student is reportedly in possession of a firearm, also the student's parents/guardians.

38 Required by 105 ILCS 5/24-24 and 23 Ill.Admin.Code §1.280.

39 Id.

40 Required by 105 ILCS 5/10-22.6, amended by P.A. 96-998.

41 Id.

Student Handbook

The Superintendent, with input from the parent-teacher advisory committee, [42] shall prepare disciplinary rules implementing the District's disciplinary policies. These disciplinary rules shall be presented annually to the Board for its review and approval.

A student handbook, including the District disciplinary policies and rules, shall be distributed to the students' parents/guardians within 15 days of the beginning of the school year or a student's enrollment.

LEGAL REF.:      Gun-Free Schools Act, 20 U.S.C. §7151 et seq.
                 Pro-Children Act of 1994, 20 U.S.C. §6081.
                 105 ILCS 5/10-20.5b, 5/10-20.14, 5/10-20.28, 5/10-20.36, 5/10-21.7, 5/10-21.10,
                     5/10-22.6, 5/10-27.1A, 5/10-27.1B, 5/24-24, 5/26-12, 5/27-23.7, and 5/31-3.
                 23 Ill.Admin.Code §1.280.

CROSS REF.:      2:240 (Board Policy Development), 5:230 (Maintaining Student Discipline),
                 6:110 (Programs for Students At Risk of Academic Failure and/or Dropping Out
                 of School and Graduation Incentives Program), 7:70 (Attendance and Truancy),
                 7:130 (Student Rights and Responsibilities), 7:140 (Search and Seizure), 7:150
                 (Agency and Police Interviews), 7:160 (Student Appearance), 7:170
                 (Vandalism), 7:180 (Preventing Bullying, Intimidation, and Harassment ), 7:200
                 (Suspension Procedures), 7:210 (Expulsion Procedures), 7:220 (Bus Conduct),
                 7:230 (Misconduct by Students with Disabilities), 7:240 (Conduct Code for
                 Participants in Extracurricular Activities), 7:270 (Administering Medicines to
                 Students), 7:310 (Restrictions on Publications and Written or Electronic
                 Material), 8:30 (Visitors to and Conduct on School Property)

---

[42] The board must establish and maintain a parent-teacher advisory committee to develop guidelines on student discipline. See policy 2:150, *Committees*. This policy's dissemination requirements are from 105 ILCS 5/10-20.14.

A comprehensive student handbook can provide notice of the school's conduct rules, extracurricular and athletic participation requirements, and other important information. The handbook can be developed by the building principal, but should be reviewed and approved by the superintendent and board.

## Students

### Suspension Procedures

The following are suspension procedures: [1]

1. Before suspension, the student shall be provided conference during which the charges will be explained and the student will be given an opportunity to respond to the charges.

2. A pre-suspension conference is not required and the student can be immediately suspended when the student's presence poses a continuing danger to persons or property or an ongoing threat of disruption to the educational process. In such cases, the notice and conference shall follow as soon as practicable.

3. Any suspension shall be reported as soon as possible to the student's parent(s)/guardian(s). A written notice of the suspension shall state the reasons for the suspension, including any school rule which was violated and a notice to the parent(s)/guardian(s) of their right to a review of the suspension. The Board shall be notified of the suspension.

4. Upon request of the parent(s)/guardian(s), a review of the suspension shall be conducted by the School Board or a hearing officer appointed by the Board. At the review, the parent(s)/guardian(s) may appear and discuss the suspension with the Board or its hearing officer and may be represented by counsel. After presentation of the evidence or receipt of the hearing officer's report, the Board shall take such action as it finds appropriate.

LEGAL REF.:   Goss v. Lopez, 95 S.Ct. 729 (1975).
              Sieck v. Oak Park River-Forest High School, 807 F.Supp. 73 (N.D. Ill., E.D., 1992).
              105 ILCS 5/10-22.6 (b)

CROSS REF.:   7.130, 7.190 (Student Displine)

---

[1] Districts must have a policy on student discipline (105 ILCS 5/10-20.14; 23 Ill. Admin. Code §§ 1.210 and 1.280). Suspension procedures are required by State law (105 ILCS 5/10-22.6(b). The right to attend school is a property right protected by the due process clause of the U.S. Constitution. Goss v. Lopez, 95 S.Ct. 729 (1975). Imposing a short deprivation of this property right by suspending a student for 10 or fewer days requires only minimal due process. The student must be generally informed of the reasons for the possible suspension, and be permitted to tell his/her version of the story. Making a decision to suspend before the hearing violates the basic due process requirement that the hearing be meaningful. Sieck v. Oak Park River-Forest High School, 807 F.Supp. 73 (N.D. Ill., E.D., 1992).

# **Students**

## **Expulsion Procedures** [1]

The Superintendent or designee shall implement expulsion procedures that provide, at a minimum, for the following: [2]

1.  Before a student may be expelled, the student and his or her parent(s)/guardian(s) shall be provided a written request to appear at a hearing to determine whether the student should be expelled. The request shall be sent by registered or certified mail, return receipt requested. [3] The request should include: [4]

    a.  The reasons for the proposed expulsion as well as the conduct rule the student is charged with violating.

    b.  The time, date, and place for the hearing.

    c.  A short description of what will happen during the hearing.

    d.  A statement indicating that The School Code allows the School Board to expel a student for a definite period of time not to exceed 2 calendar years, as determined on a case by case basis.

    e.  A request that the student or parent(s)/guardian(s) inform the District if the student will be represented by an attorney and, if so, the attorney's name.

2.  Unless the student and parent(s)/guardian(s) indicate that they do not want a hearing or fail to appear at the designated time and place, the hearing will proceed. It shall be conducted by the School Board or a hearing officer appointed by it. [5] If a hearing officer is appointed, he or she shall report to the Board the evidence presented at the hearing and the Board shall take such final action as it finds appropriate.

3.  During the expulsion hearing, the Board or hearing officer shall hear evidence concerning whether the student is guilty of the gross disobedience or misconduct as charged. The student and his or her parent(s)/guardian(s) may be represented by counsel, offer evidence, present witnesses, cross-examine witnesses who testified, and otherwise present reasons why the

---

1 State or federal law requires districts to have a policy on student discipline (105 ILCS 5/10-20.14; 23 Ill.Admin.Code §1.280). State or federal law controls this policy's content. The discipline of special education students must comply with the Individuals With Disabilities Education Improvement Act of 2004 and the Illinois State Board of Education's Special Education rules. See 7:230, *Misconduct by Students with Disabilities.*

2 Expulsion procedures are required by State law (105 ILCS 5/10-22.6(a). The right to attend school is a property right protected by the due process clause of the U.S. Constitution. *Goss v. Lopez*, 95 S.Ct. 729 (1975). Thus, an expulsion of more than 10 days requires due process including, but not limited to, notice of the charges, an opportunity to hear the evidence in support of the charges, an opportunity to refute them, and a decision by an impartial decision maker based on the evidence presented. The adequacy of an expulsion hearing is frequently challenged; the board attorney should be consulted as every due process analysis will be highly fact specific. See footnote 5, *infra.*

3 105 ILCS 5/1-3.5, added by P.A. 95-790, states that whenever the term "registered mail" is used in The School Code, it shall be deemed to authorize the use of either registered mail or certified mail, return receipt requested.

4 Due process includes the right to receive a notice with enough detail and with enough time to prepare a defense. Items d and e are optional.

5 A board may hear student disciplinary cases in a meeting closed to the public (5 ILCS 120/2(c)(9).

student should not be expelled. 6 After presentation of the evidence or receipt of the hearing officer's report, the Board shall decide the issue of guilt and take such action as it finds appropriate.

LEGAL REF.:    105 ILCS 5/10-22.6(a).
               Goss v. Lopez, 95 S.Ct. 729 (1975).

CROSS REF.:    7:130 (Student Rights and Responsibilities), 7:190 (Student Discipline), 7:200
               (Suspension Procedures), 7:230, (Misconduct by Students with Disabilities)

---

6 A student's opportunity to offer evidence, present witnesses, cross-examine witnesses, and otherwise present reasons why the student should not be expelled generally outweighs a district's interest in not providing the student these opportunities. See, Camlin v. Beecher Comm. Sch. Dist., 791 N.E.2d 127 (Ill.App. 3d Dist 2003) and Colquitt v. Rich Tsp H S Dist., 699 N.E.2d 1109 (Ill.App. 1st Dist. 1998). Determining whether denying these opportunities would violate a student's right to due process requires a careful analysis of the facts and federal case law. See Brown v. Plainfield Dist., 500 F. Supp. 996 (N.D. Ill. 2007) and Coronado v. Valleyview Sch. Dist., 2008 WL 3316022 (7th Cir. 2008).

*WCHS MISSION*

*THE PURPOSE OF WATSEKA COMMUNITY HIGH SCHOOL IS TO ENSURE LEARNING FOR ALL WCHS STUDENTS.*

*WCHS VISION*

*WATSEKA COMMUNITY HIGH SCHOOL WILL BECOME AN EXEMPLARY LEARNING COMMUNITY THAT SUPPORTS INNOVATION AND IS COMMITTED TO CONTINUOUS IMPROVEMENT. WCHS WILL ADDRESS THE ACADEMIC, SOCIAL, EMOTIONAL, AND PHYSICAL NEEDS OF ITS LEARNERS.*

*WATSEKA COMMUNITY HIGH SCHOOL WILL BE A PLACE WHERE A COLLABORATIVE COMMUNITY DEVELOPS CURRICULA, INSTRUCTIONAL STRATEGIES, AND ASSESSMENTS TO ENSURE ALL STUDENTS LEARN.*

## A MESSAGE FROM THE PRINCIPALS

This handbook has been prepared as a guide for you and your child. The rules, policies, and information contained within this handbook will help you and your child to become familiar with the expectations of the Board of Education, administration, and faculty of Watseka High School. We believe communication between home and school is vital in providing your child with a quality education. We encourage you to contact your child's teachers with any suggestions, comments or concerns. If at any time you have questions, please contact WCHS at 432-2486. We look forward, with your help, to a positive and productive school year.

Parents and students are reminded that the student handbook is a guide and cannot contain all school regulations regarding students at WCHS.

This Student Handbook is only a summary of policies and rules governing the District. More detailed Board of Education policies are available to the public at the District Office, 1411 West Lafayette, Watseka, IL.

This Student Handbook may be amended during the school year without notice.

Sincerely,

James Bunting, WCHS Principal

Steve Lucas, WCHS Dean of Students

### COPIES OF STUDENT HANDBOOK

Copies of this handbook shall be provided to the parents of each student within fifteen days after the beginning of each school year and to the parents of each transfer student within fifteen days after a student transfers into the District (Board Policy 7:190)

### NOTICE TO PARENTS REQUIRED BY THE "NO CHILD LEFT BEHIND ACT"

Professional Qualifications of Teachers – Unit #9 Schools

Federal regulations require school districts to notify parents annually that they may request information regarding the professional qualifications of their student's classroom teachers, including, at a minimum, the following:

  A. Whether the teacher has met the State qualifications and licensing criteria

1

ucational programs, including adult education programs, that lead to graduation or receipt of a GED diploma.  This section does not apply to students eligible for special education under the Individuals With Disabilities Act or accommodation plans under the Americans With Disabilities Act.

(Board Policy 7:50)

**RELEASE DURING SCHOOL HOURS**

Teachers may not release students from school other than at regular dismissal times without prior approval of the Building Principal.  No student will be released from school to any person other than the custodial parent or guardian without the written or verbal permission of the custodial parent or guardian.  (Board Policy 7:90)

**SEMESTER EXAM ATTENDANCE (WCHS)**

All absences on a semester or final exam date must be for a medical reason, with a written medical excuse by a physician, or be excused by the Principal.  All other absences will be unexcused and the student will receive a zero for the

**STUDENT TRANSFER - OUT**

For a student transferring from the District, the following procedures apply:

1.  Written notification by the student's parent or guardian to the school office;
2.  Payment of any outstanding fees or fines;
3.  Signature of parent or guardian on the release form;
4.  All school owned property returned.

Any student transferring to another public school in Illinois must secure a document entitled "Student in Good Standing Form" from the school office. This form is required by the school the student is transferring to if that school is another Illinois public school.  In addition, P.A. 89-329 provides that parents cannot challenge certain disciplinary information contained in a student's record at the time of transfer.

Parents or guardians shall be given the opportunity to review the student's temporary and permanent records.  Within ten (10) days of notification that the student will be leaving the District, the following information concerning the student shall be sent to the district to which the student will transfer:

1.  A Student in Good Standing Form.
2.  An unofficial record of the student's grades.
3.  The remainder of the student's school records.

Within 10 days after the student has paid all outstanding fines and fees, the school will mail an official transcript of the scholastic records.  (Board Policy 7:110)

# SECTION V
# STUDENT DISCIPLINE

The School Board believes that behavior of students attending public schools shall reflect standards of good citizenship demanded of members of a democratic society.  Self-discipline (responsibility for one's actions) is one of the important ultimate goals of education.  The School Board also believes that while education is the right of American youth, it is not an absolute right.  Our courts speak of education as a limited right or privilege, that is, students who fail to perform those duties required may be excluded from the school.

A.  Citizenship and moral responsibilities:

1. Students shall respect constituted authority.  This shall include conformity to school rules and regulations and those provisions of law, which apply to the conduct of students.

2. Citizenship in a democracy requires respect for the rights of others and demands cooperation with all members of the school community.  Student's conduct shall reflect consideration of the rights and privileges of others.

3. High personal standards of courtesy, decency, morality, clean language, honesty and wholesome relationships with others shall be maintained.  Respect for real and personal property, pride in one's work and achievement within one's ability shall be expected of all students.

4. Every student who gives evidence of a sincere desire to remain in school, to be diligent in studies and to profit by the educational experiences provided will be given every opportunity to do so and will be assisted in every way possible to achieve scholastic success to the limit of individual ability.

B. Rights:

1. To attend school.

2. To express his or her opinion verbally or in writing.

3. To expect that the school be a safe place for all students to gain an education.

4. To be represented, when appropriate, by an active student government selected by free school elections.

C. Responsibilities:

1. To become informed of and adhere to rules and regulations established by the School Board and implemented by District administrators and teachers.

2. To respect the rights and individuality of other students and school administrators, teachers, and *staff*.

3. To refrain from libel, slander and obscenity in verbal and written expression.

4. To dress and groom in a manner that meets District standards of decency, health, cleanliness and safety.

5. To be punctual and present in the regular or assigned school program to the best of one's ability.

6. To refrain from gross disobedience or misconduct of behavior that materially and substantially disrupts the educational process.

7. To maintain the best possible level of academic achievement.

8. To respect the exercise of authority by school administrators and teachers in maintaining discipline in the school and at school sponsored activities. (Board Policy 7:140)

Discipline is a means of fostering the growth of students toward maturity and responsibility.

Prior to receiving a disciplinary action, the student shall be given the opportunity to deny or explain his or her misconduct to the classroom teacher and/or building administrator.

Under the direction of the Superintendent, school personnel shall establish, regularly review and revise, if necessary, procedures for implementing the School Board's disciplinary policies.  The Superintendent, with input from the par-

ent-teacher advisory committee shall prepare disciplinary rules implementing the District's disciplinary policies.  These disciplinary rules shall be presented annually to the Board of Education for review and approval.

Within fifteen (15) days of the start of each school year, a copy of the District's discipline policy(s) in the form of the Student Handbook shall be distributed to the students' parents or guardians.  An explanation of the discipline policy(s) shall be given to the students by the Building Principal, and is being distributed in this Student Handbook. (Board Policy 5:230 and 7:190)

<u>Prohibited Student Conduct</u>

The school administration is authorized to discipline students for gross disobedience or misconduct, including, but not limited to:

1. Using, possessing, distributing, purchasing, or selling tobacco materials.

2. Using, possessing, distributing, purchasing, or selling alcoholic beverages. Students who are under the influence are not permitted to attend school or school functions and are treated as though they had alcohol in their possession.

3. Using, possessing, distributing, purchasing, or selling:

    a. Any illegal drug, controlled substance, or cannabis (including marihuana and hashish).

    b. Any anabolic steroid not administered under a physician's care and supervision.

    c. Any prescription drug when not prescribed for the student by a licensed physician or when used in a manner inconsistent with the prescription or prescribing physician's instructions.

    d. Any inhalant, regardless of whether it contains an illegal drug or controlled substance: (a) that a student believes is, or represents to be capable of, causing intoxication, hallucination, excitement, or dulling of the brain or nervous system; or (b) about which the student engaged in behavior that would lead a reasonable person to believe that the student intended the inhalant to cause intoxication, hallucination, excitement, or dulling of the brain or nervous system.  The prohibition in this section does not apply to a student's use of asthma or other legally prescribed inhalant medications.

    e. "Look-alike" or counterfeit drugs, including a substance not containing an illegal drug or controlled substance, but one:  (a) that a student believes to be, or represents to be, an illegal drug or controlled substance; or (b) about which a student engaged in behavior that would lead a reasonable person to believe that the student expressly or impliedly represented to be an illegal drug or controlled substance.

    f. Drug paraphernalia, including devices that are or can be used to: (a) ingest, inhale, or inject cannabis or controlled substances into the body; and (b) grow, process, store, or conceal cannabis or controlled substances.

    g. Students who are under the influence of any prohibited substance are not permitted to attend school or school functions and are treated as though they had the prohibited substance, as applicable, in their possession.

4. Using, possessing, controlling, or transferring a weapon in violation of the "weapons" section of this policy.

5. Using or possessing a cellular telephone, electronic signaling device, a two-way radio, and/or other telecommunication device, unless authorized and approved by the Building Principal.

6. Using a cellular telephone, pager, video recording device, personal digital assistant (PDA), or other Electronic device in any manner that disrupts the educational environment or violates the rights of others, including using the device to take photographs in locker rooms or bathrooms, cheat, signal others, or otherwise violate student conduct rules.  Unless otherwise banned under this policy or by the  Building Principal, all cellular telephones must be kept off and out of sight during the regular school day unless:  (a) the supervising teacher grants permission; (b) the Principal grants permission or (c) it is needed in an emergency that threatens the safety of students, staff, or other individuals.

    **Making video recordings or live video transmissions in a restroom or locker room of another person without their consent is a crime.**

7. Using or possessing a laser pointer unless under a staff member's supervision and in the context of instruction.

8. Disobeying rules of student conduct or directives from staff members or school officials.  Examples of disobeying staff directives include refusing a District staff member's request to stop, present school identification, or submit to a search.

9. Engaging in academic dishonesty, including cheating, intentionally plagiarizing, wrongfully giving or receiving help during an academic examination, and wrongfully obtaining test copies or scores.

10. Engaging in any kind of aggressive behavior that does physical or psychological harm to another or any urging of other students to engage in such conduct.  Prohibited conduct includes any use of violence, force, noise, coercion, threats, intimidation, fear, harassment, bullying, hazing, or other comparable conduct.

11. Causing or attempt to cause damage to, or stealing or attempting to steal, school property or another person's personal property

12. Being absent without a recognized excuse; State law and Board policy on truancy control will be used with chronic and habitual truants.

13. Being involved with any public school fraternity, sorority, or secret society, by:
    * Being a member;
    * Promising to join;
    * Pledging to become a member; or
    * Soliciting any other person to join, promise to join, or be pledged to become a member.

14. Being involved in gangs or gang-related activities, including displaying gang symbols or paraphernalia.

15. Violating any criminal law.

16. Engaging in any activity, on or off campus, that:  (a) has a direct relationship with school and poses a threat or danger to the safety of other students, staff, or school property; (b) endangers the health or safety of students, staff or school property (c) constitutes an interference with school purposes or an educational function; or  (d) is disruptive to the school environment.

For purposes of this policy, the term "possession" includes having control, custody, or care, currently or in the past, of an object or substance, including situations where the item is:  (a) on the student's person;  (b) contained in another item belonging to, or under the control of, the student, such as in the student's clothing, backpack, or automobile;  (c) in a school's student locker, desk, or oth-

er school property; or (d) at any location on school property or at a school-sponsored event.

No disciplinary action shall be taken against any student that is based totally or in part on the refusal of the student's parent/guardian to administer or consent to the administration of psychotropic or psychostimulant medication to the student.

1. The grounds for disciplinary action, including those described more thoroughly later in this policy, apply whenever the student's conduct is reasonably related to school or school activities, including but not limited to: On school grounds, before, during, or after school hours or at any other time when the school is being used by a school group;

2. Off school grounds at a school-sponsored activity, or event, or any activity or event which bears a reasonable relationship to school;

3. Traveling to or from school or a school activity, function, or event; or

4. Anywhere, if: (a) the conduct has a direct relationship with school and may reasonably be considered to be a threat or an attempted intimidation of a staff member; (b) the conduct may reasonably be considered to be an interference with school purposes or an educational function.

Disciplinary Measures

Disciplinary measures may include:

1. Disciplinary conference.

2. Withholding of privileges.

3. Seizure of contraband.

4. Suspension from school and all school activities for up to 10 days, provided that appropriate procedures are followed. A suspended student is prohibited from being on school grounds.

5. Suspension of bus riding privileges, provided that appropriate procedures are followed.

6. Expulsion from school and all school-sponsored activities and events for a definite time period not to exceed 2 calendar years, provided that the appropriate procedures are followed. An expelled student is prohibited from being on school grounds.

7. Notification of juvenile authorities whenever the conduct involves illegal drugs (controlled substances), "look-alikes", alcohol, or weapons.

8. Notifying parents/guardians.

9. Removal from classroom.

10. In-school suspension for a period not to exceed 5 school days. The Building Principal or designee shall ensure that the student is properly supervised.

11. Detention or AER, provided the student's parent(s)/guardian(s) have been notified. If transportation arrangements cannot be agreed upon, an alternative disciplinary measure must be used. The student must be supervised by the detaining teacher or the Building Principal or designee.

Corporal punishment shall not be used. Corporal punishment is defined as slapping, paddling, or prolonged maintenance of students in physically painful positions, or intentional infliction of bodily harm. Corporal punishment does not include reasonable force as needed to maintain safety for students, staff or other persons, or for the purpose of self defense or defense of property. (Board Policy 7:190)

31

## DETENTION/FRIDAY DETENTION

After school detentions may be used as a corrective discipline measure. The Principal or the Principal's designee will supervise students who are detained in detention. WCHS will use any of the following forms of notification: phone calls to the parent, mailed notifications to the parent or written notification to the student only. Students and parents are responsible for transportation home from after school detention.

## ALLTERNATIVE EDUCATION ROOM (AER)

AER may be used as a corrective disciplinary measure. The Building Principal will give regulations and rules pertaining to AER to the student.

## DRUGS: USE OR POSSESSION

The illicit use, possession or distribution of drugs, or look-alike drugs and drug paraphernalia is not permitted on school buses, in school buildings or on school grounds at any time. This policy extends to all school sponsored and related activities as well as field trips, extracurricular, athletic and music trips, whether held before or after school, evenings or weekends. Students shall not be permitted to attend school when they are under the influence of illicit drugs. For the purpose of this policy, students who are under such influence shall be treated in the same manner as though they had drugs in their possession.

Information concerning the effects and potential dangers involved in the illicit use of drugs shall be included in the curriculum in compliance with the law.

If a staff member finds a student to be illicitly using, possessing, or distributing drugs or look-alike drugs and drug paraphernalia in violation of this policy, the student shall be suspended and/or expelled. In addition, parents and juvenile authorities shall be notified promptly. In all cases, parents' cooperation shall be sought. When a substance is determined to be an illicit drug, law enforcement authorities will be contacted.

If there is reason to believe that a student is using drugs illicitly at any time on or off school premises, the health and counseling services of the school shall be made available to the student and his parents.

## ELECTRONIC SIGNALING DEVICES AND CELLULAR PHONES WCHS

UNLESS ELECTRONIC DEVICES ARE IN USE AS GRANTED BY A SPECIFIC TEACHER FOR EDUCATIONAL PURPOSES, ALL ELECTRONIC DEVICES(CELL PHONES, IPODS, MP3 PLAYER, KINDLE, ETC.) ARE TO BE TURNED OFF AND LOCKED IN THE STUDENT'S LOCKER. A STUDENT FOUND IN POSSESSION OF ANY ELECTRONIC DEVICE WILL HAVE THAT DEVICE TAKEN AWAY AND KEPT OVERNIGHT. THE STUDENT MAY PICK UP THE ELECTRONIC DEVICE THE NEXT DAY. A SECOND OFFENSE WILL RESULT IN THE STUDENT NOT BEING ALLOWED TO HAVE THE ELECTRONIC DEVICE IN THE SCHOOL BUILDING FOR A MONTH. A THIRD OFFENSE WILL RESULT IN THE STUDENT NOT BEING ALLOWED TO HAVE THE ELECTRONIC DEVICE IN THE SCHOOL BUILDING FOR THE REMAINDER OF THE SCHOOL YEAR.

## EXPULSION AUTHORITY

Upon a finding that the student has been guilty of gross disobedience or misconduct, the Board of Education may expel a student according to the provisions of the paragraph pertaining to expulsion procedures below.

## EXPULSION PROCEDURES

A. The Superintendent and/or Principal(s) shall recommend expulsion proceed-

ings for any student where there is evidence that the student has engaged in misconduct or acts of gross disobedience for which expulsion is the designated disciplinary measure.

B. In all other cases, the Superintendent and/or Principal(s) are authorized to initiate proceedings seeking the expulsion of a student. However, no such proceedings shall be initiated unless said person(s) determines:

1. That there is evidence that the student has been guilty of gross disobedience or misconduct, and

2. That suspension is not an adequate discipline.

C. The Superintendent or his designees, shall review the investigation of the student's conduct; and based upon his finding(s), the Superintendent shall recommend to the Board of Education whether formal expulsion proceedings should be initiated.

D. In the event the Board of Education authorizes formal expulsion proceedings, the Board may appoint a hearing officer, the President of the Board of Education shall fix a time and place for said proceedings and shall direct the Superintendent to prepare a written "request for appearance" to be sent to the student's parent(s).

E. The "request for appearance" shall be sent by registered or certified mail to the parent(s) and shall be in the following format:

"Pursuant to Section 10-22.6 of the Illinois School Code and the Student Discipline Policy of Iroquois County Community Unit School District No. 9, the Board of Education requests your appearance at a meeting called by the Board of Education to be held on (date) at (time) o'clock ___.m. for the purpose of determining whether there is sufficient reason to expel (name of student) from Iroquois County Community Unit School District No. 9. "The meeting will be held at (location)."

"You are advised that (name of student) is reported to have committed the following act(s) of gross disobedience or gross misconduct at the time(s) and date(s) specified."

(Describe behavior and name (or number) of policy or rule violated)

F. The expulsion hearing shall be closed to the public and shall be conducted by the Board of Education, or a hearing officer duly appointed by the Board.

G. The hearing shall conform to the following format:

1. A tape recording or verbatim transcript of the hearing shall be made by the District and a copy of the same shall be available to the student on request at the student's expense.

2. The formal rules of evidence shall not be applicable.

3. Both parties may have attorneys present to assist in the presentation of their cases if they so desire.

4. The administration/Board shall proceed first with an opening statement if it so chooses.

5. The student shall next present an opening statement if the student so chooses.

6. The administration/Board shall present all pertinent evidence in support of the allegations of gross misconduct or gross disobedience.

7. The student may confront the administration/Board's witnesses by cross-examination.

38

8. The student may present witnesses in his or her defense.

9. The administration/Board may confront the student's witnesses by cross-examination.

10. The administration/Board may present any rebuttal witnesses it so chooses, and said witnesses will be subject to cross-examination by the student.

11. The administration/Board shall present its closing statement.

12. The student shall present his or her closing statement.

H.  If a hearing officer is utilized, the hearing officer shall submit to the Board a written summary of the evidence adduced during the expulsion hearing, which shall be submitted to the Board not later than five (5) days after the hearing is concluded.

I.  If a hearing officer is utilized, upon receipt of the hearing officer's summary, the Board of Education, within ten (10) days, shall render a decision as to whether the finding(s) are supported by the evidence and whether to impose or deny the expulsion. If a hearing officer is not used, the Board shall render a decision within ten (10) days of the hearing.

J.  If no hearing officer is utilized, the Board will determine the issue of guilt, decide whether expulsion is appropriate and make a decision, including the length of the term of expulsion.

K.  If the Board's decision is to deny the expulsion, any and all notations or remarks in regard to the expulsion shall be expunged from all student records. All educational opportunities and services missed by the student to which the student would be otherwise entitled shall be afforded where practicable.

L.  A student may not be expelled for behavior which is or results from a handicap defined in Illinois Revised Statutes, 1987, Chapter 122, Sec. 14-1.01 through 14-1.07 (Board Policy 7:210)

## EXTRACURRICULAR ACTIVITIES DURING A SUSPENSION OR EXPULSION

No student shall participate in any extracurricular activity while serving a suspension or expulsion from school. A suspension or expulsion shall be deemed to begin at the time the student is notified of the same.

## FALSE FIRE ALARMS

If a student is found guilty of activating a false fire alarm, they will automatically be suspended from school for 5 days for the first offense and authorities may then be notified.   A second offense will result in a 10-day suspension and recommendation for expulsion.   The student will be reported to the legal authorities.

## GANGS AND GANG-RELATED ACTIVITIES

Gang activity is prohibited on or about school grounds, on school buses, or off school grounds at any school activity.   A "gang" is any group of 2 or more persons whose purpose includes the commission of illegal acts.

No student shall engage in any gang activity, including, but not limited to:

1. Wearing, using, distributing, displaying, or selling any clothing, jewelry, emblem, badge, symbol, sign or other thing that are evidence of membership or affiliation in any gang.

2. Committing any act or omission, or using any speech, either verbal or non-verbal (such as gestures or hand-shakes) showing membership or affiliation in a gang.

3. Using any speech or committing any act or omission in furtherance of the

interests of any gang or gang activity, including, but not limited to: (a) soliciting others for membership in any gangs, (b) requesting any person to pay protection or otherwise intimidating or threatening any person, (c) committing any other illegal act or other violation of school district policies, (d) inciting other students to act with physical violence upon any other person.

Students engaging in any gang-related activity will be subject to one or more of the following disciplinary actions:

Removal from extra-curricular and athletic activities

Conference with parent(s)/guardian(s)

Referral to appropriate law enforcement agency

Suspension for up to 10 days

Expulsion not to exceed 2 calendar years (Board Policy 7:190-AP2)

## EXTRACURRICULAR ELIGIBILITY

4 point system:   Students will have to maintain certain standard to be eligible for extracurricular activities at WCHS.   Student's grades will be looked at weekly throughout the year, regardless if they are in an extracurricular activity or not.   For a student to be eligible for extracurricular activities, the student must have a score under 4.

D = 1 pt, F = 2 pts

Students who have a score of 4 or higher will be ineligible for the following week.

If at the end of the semester the student has a point total of 5 or higher, they will be ineligible for the following semester.   If ineligible three (3) consecutive academic weeks the athlete will be dismissed from the team.

## HARASSMENT

No person, including a District employee or agent, or student, shall harass or intimidate another student based upon a student's sex, color, race, religion, creed, ancestry, national origin, physical or mental disability, sexual orientation, or other protected group status.   The District will not tolerate harassing or intimidating conduct, bullying, whether verbal, physical, or visual that affects tangible benefits of education, that unreasonably interferes with a student's educational performance, or that creates an intimidating, hostile, or offensive educational environment.

Complaints of harassment, intimidation, or bullying are handled according to the provisions on sexual harassment below.

Sexual harassment of students is prohibited.   Any person, including a District employee or agent, or student engages in sexual harassment whenever he/she makes sexual advances, requests sexual favors, and engages in other verbal or physical conduct of a sexual or sex-based nature, imposed on the basis of sex, that:

1. Denies or limits the provision of educational aid, benefits, services, or treatment; or that makes such a condition of a student's academic status; or has the purpose or effect of:

   a. Substantially interfering with a student's educational environment.

   b. Creating an intimidating, hostile, or offensive educational environment.

   c. Depriving a student of educational aid, benefits, services, or treatment.

40

## AUDIO PLAYING DEVICES

Students are not permitted to have audio playing devices in classes without teacher or administrative consent. This also includes study hall, and lunch periods.

## REFERRAL SYSTEM

In the case of uncooperative or disruptive behavior in the classroom, a referral system will be used for referring students to the Principal or Assistant Principal's office. Prior to issuing a referral to the Principal or Assistant Principal, the teacher will attempt to use alternative methods to help change the student's behavior. The teacher will involve the parent in regards to the student's misbehavior.

First referral: The student will leave class and report to the Principal's office. The student will be out of class that day and will serve a forty-five minute detention. Absence from class is unexcused. The teacher will attempt to contact the parent of the student and make them aware of the situation.

Second referral: The student will leave class and report to the Principal's office. The student will remain out of class until a parent/teacher conference is held. The absence from class is unexcused. The student will receive a AER and/or out of school suspension.

Third referral: The student will receive additional discipline including, but not limited to, suspension, removal from class without credit and/or AER.

In all cases, the Building Principal will make the final determination if the student will be removed from the class and receive an unexcused absence. Many factors will determine if the student is removed from the class permanently, such as; credit is needed for graduation, level of disruption in the class, etc. This referral system runs on a semester cycle, therefore, the administration reserves the right to place a student back into a specific class at the beginning of the second semester. The teacher will be a part of the decision-making process.

## SEARCH AND SEIZURE: CAR SEARCHES

Students should understand that the issuance and continued use of a WCHS parking permit is contingent on obeying all rules and regulations concerning operation of his/her automobile(s). Public Act 89-610 authorizes the District to perform searches of the parking lots and of any vehicle parked thereon, and that, by parking on school property, the student consents to the complete search of the vehicle, all of its compartments and contents by school officials or law enforcement personnel, including specially trained dogs, for any reason whatsoever. This applies to all vehicles, 24 hours a day. Students will be held responsible for the contents of their vehicles. (Board Policy: 7:140)

## SEARCH AND SEIZURE: RIGHTS AND RESPONSIBILITIES

To maintain order and security in the schools, school authorities are authorized to conduct reasonable searches of school property and equipment, as well as students and their personal effects. "School authorities" includes school liaison police officers.

School authorities may inspect and search school property and equipment owned or controlled by the school (such as lockers, desks, and parking lots), as well as personal effects left there by a student without notice to or the consent of the student. Students have no reasonable expectation of privacy in these places or areas or in their personal effects left there.

In addition, the Building Principal shall require each high school student, in return

for the privilege of parking on school property, to consent in writing to school searches of his or her vehicle, and personal effects therein, without notice and without suspicion of wrongdoing.

The Superintendent may request the assistance of law enforcement officials to conduct inspections and searches of lockers, desks, parking lots, and other school property and equipment for illegal drugs, weapons, or other illegal or dangerous substances or materials, including searches conducted through the use of specially trained dogs.

School authorities may search a student and/or the student's personal effects in the student's possession (such as purses, wallets, knapsacks, book bags, lunch boxes, etc.) when there is a reasonable ground for suspecting that the search will produce evidence the particular student has violated or is violating either the law or the District's student conduct rules. The search itself must be conducted in a manner that is reasonably related to its objectives and not excessively intrusive in light of the student's age and sex, and the nature of the infraction.

When feasible, the search should be conducted as follows:

- Outside the view of others, including students.
- In the presence of a school administrator or adult witness.
- By a certificated employee or liaison police officer of the same sex as the student.

Immediately following a search, a written report shall be made by the school authority that conducted the search, and given to the Superintendent. Following the search, the student's parent(s)/guardian(s) shall be notified of the search as soon as possible.

If a search produces evidence that the student has violated or is violating either the law or the District's policies or rules, such evidence may be seized and impounded by school authorities, and disciplinary action may be taken. When appropriate, such evidence may be transferred to law enforcement authorities. (Board Policy 7:140)

## SMOKING AND TOBACCO USE

Smoking tobacco, using tobacco products and/or possessing tobacco materials by students is not permitted on school buses, in school buildings or on school grounds at any time.

Students and parents or guardians shall be advised of this policy in a manner deemed appropriate by the Building Principal. In addition information about the hazards of smoking shall be included in the curriculum.

If a staff member finds a student possessing or using smoking materials and/or tobacco products in violation of this policy, the student shall be disciplined by the administration on an individual basis. Disciplinary measures may include personal counseling, withholding of privileges and/or suspension for a period of up to ten (10) days and in repeated cases possible expulsion. In all cases the parent or guardian shall be advised and their cooperation shall be sought.

Law prohibits the use of any tobacco product on any school grounds at any time. Given reasonable grounds for suspicion, school officials may search for and seize tobacco products brought onto buses or school property.

## SODA POP/DRINKS, SNACKS, REFRESHMENTS

Students are not to have snacks, open cans or bottles of any kind or other refreshments in the classrooms during school time. If students are caught with snacks or open cans of any drink outside of allowable areas, the snack or drink will be taken away. Repeated violations may result in detentions and a parent

conference.

## SPECIAL EDUCATION STUDENTS: DISCIPLINE

The District shall comply with the provisions of the Individuals With Disabilities Education Act (IDEA) when disciplining students. No special education student shall be expelled if the student's particular act of gross disobedience or misconduct is a manifestation of his or her disability. Any special education student whose gross disobedience or misconduct is not a manifestation of his or her disability may be expelled pursuant to the expulsion procedures, except that such disabled student shall continue to receive educational services as provided in the IDEA during such period of expulsion.

A special education student may be suspended for periods of no more than 10 consecutive school days each in response to separate incidents of misconduct, regardless of whether the student's gross disobedience or misconduct is a manifestation of his or her disabling condition, as long as the repeated removals do not constitute a pattern that amounts to a change in placement (considering factors such as the length of each removal, the total amount of time the student is removed, and the proximity of the removals to one another) and provided that such student receives educational services to the extent required by the IDEA during such removals.

Any special education student may be temporarily excluded from school by court order or by order of a duly appointed State of Illinois hearing officer changing the student's placement to an appropriate interim alternative educational setting for up to 45 days if the District demonstrates that maintaining the student in his or her current placement is substantially likely to result in injury to the student or others.

A special education student who has carried a weapon to school or to a school function or who knowingly possesses or uses illegal drugs or sells or solicits the sale of a controlled substance while at school or a school function may be removed from his or her current placement. Such a student shall be placed in an appropriate interim alternative educational setting for no more than 45 days in accordance with the IDEA. The length of time a student with a disability is placed in an alternative educational setting must be in the same amount of time that a student without a disability would be subject to discipline. (Board Policy 7:230)

### Behavioral Interventions

Behavioral interventions shall be used with students with disabilities to promote and strengthen desirable behaviors and reduce identified inappropriate behaviors. The Iroquois Special Education Association will establish and maintain a committee to develop, implement, and monitor procedures on the use of behavioral interventions for children with disabilities. The committee shall review the State Board of Education's guidelines on the use of behavioral interventions and use them as a non-binding reference. This policy and the behavioral intervention procedures shall be furnished to the parent(s)/guardian(s) of all students with individual education plans within 15 days after their adoption or amendment by, or presentation to, the Board or at the time an individual education plan is first implemented for a student; all students shall be informed annually of the existence of this policy and the procedures. At the annual individualized education plan review, a copy of this policy shall be given to the parent(s)/guardian(s). The policy and procedures shall be explained. A copy of the procedures shall be available, upon request of the parent(s)/guardian(s). (Board Policy 7:230)

## SUSPENSION

Suspension from school may be used as a corrective disciplinary measure. During a period of out of school suspension the student is prohibited from being on School

46

District property or attending District activities.

## OUT OF SCHOOL SUSPENSION/MAKE UP SESSION

School work missed during an out of school suspension can be made up for credit at a time and place designated by the Principal. The Principal will notify the student of the schedule of the make up session during the Suspension Hearing. At the Hearing, the student shall notify the Principal, in writing, of their intent to attend or not to attend the make up session. If the student chooses to not attend, he/she will receive "no credit" for the work missed during the out of school suspension. Make up sessions will be two hours and all missed work must be completed during this allotted time period. Students suspended for one to three days will be allowed one make up session and students suspended for more than three days will be allowed two sessions. Students are required to be on time to the make up session and late entry will not be permitted.

## SUSPENSION AUTHORITY

A. Suspension Authority

The Superintendent and/or Principal(s) shall suspend a student according to the provisions of the paragraph pertaining to suspension procedures below, upon a finding that the student has engaged in misconduct or acts of gross disobedience.

B. Emergency Suspension Authority

Subject to the provision of the preceding paragraph A, the Superintendent and/or Principal(s) may suspend a student according to the provisions of the paragraph pertaining to suspension procedures below when an emergency exists. The emergency suspension shall not exceed ten (10) school days or until a hearing on a suspension or expulsion is held, whichever is less.

C. Bus Suspension Authority

Subject to the provision of paragraph A above, the Superintendent and/or Principal(s) may suspend a student from riding a school bus according to the provisions of the paragraph pertaining to suspension procedures below for a period not to exceed ten (10) days. The Board of Education may expel a student from riding a school bus according to the provisions of the paragraph pertaining to expulsion procedures below for a period exceeding ten (10) days.

## SUSPENSION PROCEDURES

A. Except as set forth in paragraph B below, prior to the imposition of a suspension, the following procedures shall be observed:

1. The suspending official shall give the student verbal and written notice of the charges which constitute the basis for the proposed suspension and a summary of evidence which supports such charges.

2. The suspending official shall give the student an opportunity to explain the incident.

3. The suspending official shall make a finding, based upon the evidence as to whether the charges are supported by the evidence and a suspension is in order.

B. When an emergency suspension is imposed in accordance with paragraph B above, the requirements of paragraph A, sections 1, 2, and 3 above shall follow as soon as possible when practicable.

47

C. The Superintendent or Principal(s) shall notify the student's parent(s) of the suspension. The notification shall be in the form of verbal contact and a written letter to the parent(s) that shall be sent by registered or certified mail.

Said letter shall be in the following format:

"Pursuant to Section 10-22.6 of the Illinois School Code and the Student Discipline Policy of Iroquois County Community Unit School District No. 9, (name of student) is suspended from attendance at Iroquois County Community Unit School District No. 9 (or from riding a school bus) for a period of_____ day(s). The effective date of the suspension is (was)_____."

"You are advised that (name of student) is (was) suspended for the following specific reason(s):"

(Describe behavior and name (or number) of policy or rule violated)

"You are entitled to request that the Board of Education review the suspension. Upon your request, which must be in writing and received by the Superintendent not later than ten (10) days after the postmark of this notice, the President of the Board shall fix a time and place for the review and you will be notified accordingly."

"You will have the right to be present at the review and you may appear and discuss the suspension with the Board of Education."

"A copy of Board Policy entitled 'Student Discipline Policy' is enclosed."

D. Upon receipt of a timely written request for review of the suspension, the President of the Board of Education shall fix a time and place for the review and the student's parent(s) will be notified in writing thereof.

E. The suspension review shall be a closed meeting and shall be conducted by the Board of Education in substantially the following format:

   1. The Board shall first hear the statement(s) of the suspending official(s) and all other pertinent evidence.

   2. Members of the Board, the suspended student and/or the parent(s) may ask questions of the suspending official(s) or other witnesses concerning their statements and evidence.

   3. The Board shall then hear the statement(s) of the suspended student, parent(s), or witnesses on their behalf and other pertinent evidence.

   4. Members of the Board and/or suspending official(s) may ask questions of the suspended student, parent(s), guardian(s), or witnesses concerning their statements and evidence.

F. The Board shall render a decision either affirming, modifying or reversing the suspension.

G. If the Board's decision is to reverse the suspension, the student shall be immediately reinstated and any and all notations or remarks in regard to the suspension shall be expunged from all student records. All educational opportunities and services missed by the student to which the student would be otherwise entitled shall be afforded where practicable.

A student may not be suspended for behavior which is or results from a handicap defined in Illinois Revised Statutes, 1987, Chapter 112, Sec. 14-1.01. through 14-1.07 and the Rules and Regulations to Govern the Administration and Operation of Special Education. However, if the student is a direct physical danger to himself, other students, faculty or school property, the student may be temporarily excluded in a nondisciplinary action. If such exclusion is enacted, the Superintendent shall immediately contact the Director of Special

48

Education and legal counsel. Such exclusion shall not exceed 10 days unless there is mutual agreement between the School District and parents. (Board Policy 7:200)

## TEACHERS' LOUNGE AREA

Students are not allowed in the teachers' lounge without permission from office personnel and/or a faculty/staff member. Violation of the rule will result in disciplinary action.

## THROWING SNOWBALLS

Throwing snowballs on, adjacent to campus, to and from school or school related activities, or toward school buses will not be tolerated. Guilty students will be subject to disciplinary action.

## WEAPONS

A student who possesses, controls, or transfers a weapon, or any other object that can reasonably considered, or looks like, a weapon, shall be expelled for at least one calendar year, but no more than 2 calendar years. The Superintendent may modify the expulsion period and the Board. (policy 7:190)

## GUIDELINES FOR DISCIPLINARY ACTION

The chart set forth on the following pages presents recommended guidelines for disciplinary action for the types of misbehavior described therein. The types of misbehavior described in these guidelines are not intended to be all-inclusive and the disciplinary measures indicated are not intended to be exclusive. In addition to those instances shown in the following chart, the disciplinary measures of suspension or expulsion may be used in any instance in which there is gross disobedience or gross misconduct as defined in subparagraph 8 of the paragraph pertaining to definitions above. Primary responsibility for classroom discipline rests with the classroom teacher. Each classroom teacher is encouraged to establish rules for student conduct in his or her classroom. In all disciplinary action, staff members are encouraged to remember that they are dealing with individual personalities and that it is sometimes as important to discover the causes of misbehavior as to suppress it. Individual school buildings may also adopt additional rules for student conduct. **In addition to those instances in the following chart, the disciplinary measures of suspension or expulsion may be used in any instance in which there is gross disobedience or gross misconduct as defined earlier. The following should be considered only as a guideline and does not prevent a teacher or administrator from applying other disciplinary measures that are consistent with district policy and applicable law.**

## GUIDELINES FOR ACTION IN RESPONSE TO CERTAIN TYPES OF MISBEHAVIOR

**Attendance**

1. **Truancy/Leaving School Grounds**
   a) Truancy (hooky, leaving school grounds, and skipping; includes skipping class even if students remain in the building):
      1) First offense: AER. Parent notified. Unexcused absence.
      2) Second offense: AER or suspension. Parent notified. Unexcused absence. Guidance notified.
      3) Third offense: AER or Suspension. Mandatory parent meeting. Unexcused absence. Truant officer notified.

**Use or Possession Tobacco**

a) Smoking, use, and/or possession of tobacco products:

   1) First offense: Confiscation, suspension,   and parent conference.

   2) Second offense: Confiscation, suspension,   and parent conference.

   3) Third offense: Confiscation, suspension and/or possible expulsion, and parent conference.

## Use or Possession of Illegal Drugs

a) Drug use and/or possession, and/or attempting to purchase drugs:

   1) First offense: Confiscation. Suspension or possible expulsion and parent conference.  Notification of legal authorities. **If possession with intent to sell is suspected, expulsion is recommended.**

   2) Second offense: Confiscation, conference and notification of legal authorities.   Suspension and/or expulsion.

   3) Third offense: Possible Expulsion, parent conference and notification of legal authorities.

## Use or Possession of Alcohol

a) Being under the influence of/or possession of alcohol at a school function:

   1) First offense: Confiscation, Suspension, parent conference and notification of the legal authorities.

   2) Second offense: Confiscation, Suspension, parent conference and *notification* of legal authorities.

   3) Third offense: Confiscation, parent conference, suspension with possible expulsion, and notification of legal authorities.

## Driving Violations and/or Being in a Car Without Permission During School Hours

   1) First offense: Letter sent to parent(s), detention(s), possible loss of driving privileges.

   2) Second offense: Suspension or AER until parent conference and/or loss of driving privileges.

   3) Third offense: Possible loss of driving privileges. If, driver is allowed to drive, he or she must deposit keys in the office during school hours. Parent conference. Additional consequences are possible.

## Parking Violations

   1) First offense: Correction and detention.

   2) Second offense: Correction, parent notification, AER.

   3) Third offense:   Correction, parent notification, AER or suspension.

# OTHER INAPPROPRIATE BEHAVIOR

**Bringing nuisance items** - water guns, or other items, which disrupt the educational environment:

   1) First offense: Confiscation of item and possible detentions or AER. Item reclaimed only by parent.

   2) Second offense: Same as first offense, parent notification and possible suspension or AER.

   3) Third offense: Parent conference, possible suspension and/or AER.

**Vulgar language** (written or verbal), inappropriate language or gestures

towards a teacher or in classroom (if deemed malicious go to second or third offense):

1) First offense: Teacher reprimand, parent notification and possible detention and/or suspension.

2) Second offense:  Parent conference and detention or possible suspension.

**Possession of exploding fireworks on grounds or in buildings:**

1) First offense:  Up to 5 day suspension, parent conference and possible notification of legal authorities.

2) Second offense:  Up to 10-day suspension, parent conference and notification of legal authorities.

3) Third offense:  Parent conference, recommendation for expulsion and notification of legal authorities.

**The inappropriate use of cellular phones**

1) First offense- The device taken away and kept overnight.  The student may pick up the electronic device the next day.

2) Second offense- Will result in the student not being allowed to have the electronic device in the school building for a month.  One day in AER.

3) Third offense- Will result in the student not being allowed to have the electronic device in the school building for the remainder of the school year.

## DANGER TO OTHERS

**Fighting:**

1) First offense: Parents contacted, written notification to parents, conference and apology (if possible) between parties involved and a suspension of up to 5 days and notification of the police.  Under certain circumstances the administration may bypass step #1 and go directly to step #2.

2) Second offense: Parent contacted, letter to parents, suspension of up to 10 days and police notification.

3) Third offense: *Parent conference*, written notification to parents, notification of police, suspension and/or possible expulsion.

**Hazing:**

1) First offense:  Suspension up to 5 days, parent conference, written notification to parents, and possible notification of legal authorities.

2) Second offense:  Suspension up to 10 days, parent conference, written notification to parents, and possible notification of legal authorities.

3) Third offense:  Parent conference, written notification to parents, suspension and possible recommendation for expulsion and possible notification of legal authorities.

**Verbal Threats of Physical Harm to Teachers, Staff, or other Students:**

1) First offense:  Parent conference, written notification to parents, possible detention, possible notification of legal authorities and possible suspension and/or expulsion.

51

    2) Second offense:  Parent conference, written notification to parents, suspension and possible expulsion, and possible notification of legal authorities.

    3) Third offense:  Possible suspension or recommendation for expulsion, parent conference, written notification to parents, and possible notification of legal authorities.

**Involvement with gang related activities:**

    1) First offense: Parent conference, possible suspension and notification of legal authorities.  Possible expulsion

    2) Second offense: 5 day suspension, parent conference and notification of legal authorities.  Possible expulsion

    3) Third offense: 10 day suspension with recommendation for expulsion, parent conference and notification of legal authorities.

**Using or possessing a Laser beam pointer:**

    1) First offense: Parent notification and confiscation of pointer.  possible detention or AER

    2) Second offense: Confiscation of pointer, parent conference and suspension and/or possible expulsion.

    3) Third offense: Parent conference, 10-day suspension and/or possible recommendation for expulsion.

## OFFENSES INVOLVING PROPERTY

**Defacing school property by writing, scratching, carving, breaking, etc.:**

    1) First offense: Student pays all costs of repair, notification of parents, detention or possible suspension.  Possible notification of legal authorities

    2) Second offense: Parent conference and same as the first offense and possible notification of legal authorities.

    3) Third offense: Same as first plus possible expulsion and notification of legal authorities.

**Stealing:**

    1) First offense:  Return and/or reimbursement to victim with parental conference.  Possible suspension or expulsion and legal authorities may be notified.

    2) Second offense:  Suspension and/or possible recommendation for expulsion, parent conference and legal authorities may be notified.

    3) Third offense: Suspension and/or possible recommendation for expulsion, parent conference and legal authorities will be notified.

**Criminal damage to property:**

    1) First offense:  Student pays all costs of repair, parent conference, possible suspension and/or expulsion and possible notification of legal authorities.

    2) Second offense:  Possible suspension or expulsion, parent conference and legal authorities will be notified.

**Misbehavior during assembly**

    1) First offense: Sent to Principal, detention, and prohibited from next assembly.

2) Second offense: Parents contacted. AER Student loses privilege of attending assemblies.

**Misbehavior on regular bus routes:**

1) First offense: School bus driver or contractor notifies principal in writing. Verbal warning and/or loss of riding privileges. Possible detention or suspension.

2) Second offense: Repeat first offense and/or conference with parents. Detention and/or suspension.

3) Third offense: Bus suspension and mandatory conference with driver, principal and parents. Student will be suspended from the bus until the conference with the driver, principal, and parent is held.

**Misbehavior while on sponsored bus trips:**

1) First offense: Notification of parents and possible detention.

2) Second offense: Conference with all parties involved. Parent notified. AER

3) Third offense: Conference with parent(s) and other possible disciplinary action may be taken. AER or possible suspension, and loss of bus privileges.

**Boy-girl relationships (excessive show of affection) in building, on grounds, or on field trips:**

1) First offense: Teacher reprimand and Principal notified, possible detention and parent notification.

2) Second offense: Referred to Principal for conference, possible detention or possible AER. Parent notified of the problem.

3) Third offense: Parent conference and AER.

**Cheating:**

1) First offense: Conference with parents. Zero on work.

2) Second offense: Conference with parents. Zero on work and other disciplinary action may be taken.

**Violation of lunchroom rules:**

1) First offense: Removal from cafeteria for one week and parent notification.

2) Second offense: Removal from cafeteria for two weeks and parent notification.

3) Third offense: Removal from cafeteria for remainder of nine week and parent conference.

4) Fourth offense: Removal from the cafeteria for a semester and parent conference.

5) Fifth offense: Removal from the cafeteria for the remainder of the school year and parent conference.

**Dress code violations:**

1) First offense: Parent notification and student change to proper attire, if the proper attire is not available student will be provided new shirt.

2) Second offense: Parent notification, change to proper attire and/or possible detention(s) *or AER*. If the proper attire is not available

student will be provided new shirt.

**Sexual Harassment:**

1) First offense:  Principal conference, parent conference, possible suspension and possible notification of legal authorities.

2) Second offense:  Parent conference and suspension of up to 10 days and possible notification of legal authorities.

3) Third offense:  Parent conference, suspension or possible recommendation for expulsion and possible notification of legal authorities.

**Bullying**

1) First offense:  Written parent notification, possible detention, AER, or suspension.

2) Second offense: Written parent notification, parent conference, AER, or suspension.

3) Third offense: Written parent notification, parent conference, suspension, possible expulsion.

Disciplinary measures recommended for any prior offense may be used in addition to the measures recommended for the current offense.  For example, if a student has violated the same rule for the third time, the disciplinary measures recommended for the first and second offenses may (at the discretion of the administration) be imposed, in addition to those measures recommended for third offenses.  If a violation is particularly serious or offensive the penalties for second, or third offenses may be applied regardless of the number of previous offenses.  **The aforementioned chart should be considered only as a guideline and does not prevent a teacher or administrator from applying other disciplinary measures that are consistent with district policy and applicable law.**

# SECTION VI
# ACADEMIC INFORMATION

A detailed listing of class courses can be found in the Watseka High School Curriculum Guide.  This document is available in the WCHS Guidance Department and the WCHS office.

## ACADEMIC ACHIEVEMENT - GRADING AND REPORTING TO PARENTS

Every teacher shall maintain an evaluation record for each student receiving instruction in the teacher's classroom.

Once the teacher assigns a final grade to a student, a District administrator cannot change the grade without notification to the teacher.  A student's final grade may be changed for several reasons including, but not limited to the following reasons:

- A miscalculation of test scores.
- A technical error in assigning a particular grade or score to a particular student.
- The teacher agrees that the student may do an extra work assignment and the evaluation of the assignment impacts on a grade.
- An inappropriate grading system used to determine the grade.
- An inappropriate grade based on an appropriate grading system.

# WATSEKA HIGH SCHOOL

138 Belmont Ave.
Watseka, IL 60970
815-432-2486
FAX: 815-432-5578

James Bunting, Principal
Steven Lucas, Dean of Students

Kenneth Lee, Superintendent

## NOTICE OF STUDENT DISCIPLINARY ACTION

TO: _MR. + MRS. DIETCHWEILER_
FROM: Mr. Steven Lucas, Dean of Students
RE: Student Suspension Notice
DATE: _1-25-13_

This is to inform you that your child, _NOAH DIETCHWEILER_ has been suspended from Watseka High School for _10_ day(s). Specifically, your child has been suspended for _POSSESSION OF DRUGS_ _CONSUMPTION OF DRUGS_

_NOAH_ may return to school on _MON- FEB, 11, 2013_

As a result of this suspension _NOAH_ will not be permitted on any unit school grounds until the suspension is over.

Yes, I agree to stay late to make up any missed school work while I was on suspension X _Noah D. Dietchweiler_

No, I do not agree to stay late to make up missed school work and I understand I will receive zeros for that missed work while I was suspended _____

*(The suspension will be served out of school.)

A student suspension hearing was held on _1-25-13_ and attended by: Steven Lucas and _NOAH_

At this hearing, _NOAH_ was afforded his/her procedural due process student rights, I.E. the opportunity to present a defense, to explain the circumstances of the actions in question, and/or prove innocence.

Student Signature: X _Noah D. Dietchweiler_
Dean of Students: _Steven Lucas_

**Kenneth C. Lee**
Superintendent
leek@watseka-u9.k12.il.us

# Iroquois County CUSD #9
1411 W. Lafayette Street
Watseka, IL 60970

815-432-4931
815-432-6889 (fax)

January 30, 2013

Mr. and Mrs. Dietchweiler
1849 N 1800 East Rd.
Watseka, IL  60970

Dear Mr and Mrs. Dietchweiler:

Pursuant to the Student Discipline Policy of Iroquois County CUSD #9 (specifically Board Policy7:200), you have requested a review of the suspension of your son Noah Dietchweiler by the Iroquois County CUSD #9 Board of Education. This hearing is scheduled for February 5, 2012 at 6:00 PM.  The hearing will be conducted at the Iroquois County CUSD #9 Office, which is located at 1411 West Lafayette Street, Watseka, IL.

Noah is entitled to be represented by an advocate (including counsel) of his choosing at his own expense. Due to our prior conversation, I anticipate that you will exercise this right.

Please contact me at 815.432.4931 if you have questions.

Sincerely,

Kenneth C. Lee
Superintendent

Enclosure

*Iroquois County Community Unit School District No. 9 is an Equal Opportunity Employer which does not discriminate on the basis of race, color, sexual orientation, gender identity, homelessness, religion, marital status, citizenship providing the person is authorized to work in the United States, handicap (Sec. 504-Rehabilitation Act of 1973), gender, age between 18 and 65, national origin or disability (Americans with Disabilities Act of 1990), within the limitations required by law.*