**E-FILED**
Monday, 15 December, 2014  04:03:00 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

NOAH DIETCHWEILER, by Michael
Dietchweiler, his father and next friend;
and ANN DIETCHWEILER,

       Plaintiffs,

    vs.

STEVE LUCAS, in his official and
individual capacities; JAMES BUNTING,
in his official and individual capacities;
KENNETH LEE, in his official and
individual capacities; IROQUOIS
COUNTY COMMUNITY UNIT
SCHOOL DISTRICT NO. 9, IROQUOIS
COUNTY, ILLINOIS; JAMES BRUNS,
in his official capacity; DON BECKER, in
his official capacity; BRENNA
JOHNSON, in her official capacity;
CRYSTAL BLAIR, in her official
capacity; BOB BURD, in his official
capacity; KIRK McTAGGERT, in his
official capacity; and DEE SCHIPPERT,
in her official capacity,

       Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2013-CV- 2062

Equitable Relief Sought

## COMPLAINT AND DEMAND FOR JURY

### COUNT I

### (Violation of Constitutional Rights – Fourteenth Amendment, Due Process of Law, as to All Defendants)

NOW COMES Plaintiff, NOAH DIETCHWEILER, by Michael Dietchweiler, his father

and next friend, by his attorneys, Flynn, Palmer, Tague, Lyke & Jacobson, and for Count I of his

Complaint against Defendants, STEVE LUCAS, in his official and individual capacities; JAMES BUNTING, in his official and individual capacities; KENNETH LEE, in his official and individual capacities; IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS; JAMES BRUNS, in his official capacity; DON BECKER, in his official capacity; BRENNA JOHNSON, in her official capacity; CRYSTAL BLAIR, in her official capacity; BOB BURD, in his official capacity; KIRK McTAGGERT, in his official capacity; and DEE SCHIPPERT, in her official capacity, states as follows:

    1.    At all times relevant hereto, NOAH DIETCHWEILER was a resident of Iroquois County, Illinois.

    2.    At all times relevant hereto, STEVE LUCAS was employed as a Dean of Students at Watseka High School with Defendant, IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS.

    3.    At all times relevant hereto, JAMES BUNTING was employed as Principal of Watseka High School with Defendant, IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS.

    4.    At all times relevant hereto, KENNETH LEE was employed as the Superintendent of Watseka High School with Defendant, IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS.

    5.    At all times relevant hereto, Defendants, JAMES BRUNS, in his official capacity; DON BECKER, in his official capacity; BRENNA JOHNSON, in her official capacity; CRYSTAL BLAIR, in her official capacity; BOB BURD, in his official capacity; KIRK McTAGGERT, in his official capacity; and DEE SCHIPPERT, in her official capacity, were members of the Board of Education of IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS.

    6.    At all times set forth herein, the Defendants were operating and took action under color of state law; to-wit: purportedly under the Illinois School Code, 105 ILCS 5/10-22.6.

    7.    The jurisdiction of this Court is proper pursuant to 42 U.S.C. §1983 based upon the following allegations that Plaintiff was deprived of his constitutional right to due process of law under the Fourteenth Amendment to the United States Constitution when he was suspended

2

from school without a hearing complying with the minimum procedural requirements of the Fourteenth Amendment to the United States Constitution.

8.     On or about January 25, 2013, Defendants Bunting and Lucas began an investigation relating to a report that a student had brought prescription drugs to Watseka High School that day and was possibly distributing pills from such prescription medication to other students.

9.     During the course of the investigation by Defendants Lucas and Bunting, Defendants Lucas and Bunting purportedly interviewed the student suspected of bringing the prescription medication to school, and those Defendants claim that the student wrote the names of other students involved in an incident that occurred on January 25, 2013, and produced a piece of paper which contained Noah Dietchweiler's name, which such paper contained a list of students that purportedly owed him money.

10.     Defendants Lucas and Bunting concluded that Noah Dietchweiler's name on one or more of the lists was evidence that Noah Dietchweiler had been provided with prescription medication pills at school.

11.     Toward the end of the school day on January 25, 2013, Defendant Bunting and Lucas called Noah Dietchweiler to the office and interrogated Noah.  Neither Defendants Lucas nor Bunting told Noah Dietchweiler specifically the allegations that implicated him in the matter involving another student bringing prescription medication to school and providing such medication to other students and did not provide Noah Dietchweiler with a written statement of the charges against him.  They specifically withheld revealing the existence of the lists and circumstances related to them by the student they interviewed who brought the prescription drugs to school.

12.     At the aforesaid meeting, Defendant Lucas, in the presence of Defendant Bunting, told Noah Dietchweiler that he knew all of the facts and that if Noah Dietchweiler did not admit to possession and consumption of prescription medication not belonging to him that rather than being suspended (upon confession), Noah would be expelled (upon proclaiming innocence).

3

13.     Noah replied to the choice of being suspended or expelled with a simple statement of "whatever" and ultimately signed the document attached hereto as Exhibit "1" as he was led to believe that action was the only way he would not be expelled and be able to make up work.

14.     The only reason that Noah Dietchweiler signed Exhibit "1" was the combination of failure to advise Noah of all of the evidence against him and false and coercive threats of Defendants Lucas and Bunting.

15.     After Noah Dietchweiler signed Exhibit "1", Plaintiff, Ann Dietchweiler (Noah's mother), was summoned to the Watseka High School office and notified that Noah Dietchweiler was being suspended for 10 days. Plaintiff, Ann Dietchweiler, asked that her husband and father of Noah be called (Michael Dietchweiler), and ultimately, there was a telephone conference on the office speaker phone in which Defendants Lucas and Bunting were present, Plaintiffs, Noah Dietchweiler and Ann Dietchweiler, were present, and Michael Dietchweiler participated on the telephone. During that telephone conversation, no details of the alleged evidence against Noah Dietchweiler were disclosed, the existence of the lists were not disclosed, the claim that Noah confessed to consuming pills the day before was not disclosed and they were led to believe all of Noah's alleged acts occurred on January 25, 2013, the threat of expulsion in the event of a claim of innocence was not disclosed, and Defendants Lucas and Bunting only indicated that Noah had cooperated. The only purported written summary of evidence disclosed during the telephone conference was Exhibit "1".

16.     After the telephone conference aforesaid, Noah Dietchweiler returned home with his mother, and when confronted by his father as to the alleged basis for the suspension, Noah Dietchweiler revealed that he had not consumed drugs, had not been in possession of drugs, and at that time revealed that before he had an opportunity to tell his story and without being told of the facts that implicated him, he had been coerced into signing the suspension under a threat that if he did not sign for a suspension that he would be expelled.

17.     Noah Dietchweiler's father knew that if Noah in fact had been guilty of ingesting prescription medication that those drugs would still be in his system, and Noah was taken to a hospital where drug testing was done under Federal Aviation Administration chain of custody protocols, and those results revealed that Noah Dietchweiler had no drugs whatsoever in his

4

system, including but not limited to the claimed prescription medication that Noah allegedly possessed and ingested.

18.    The aforesaid results conclusively established that Noah Dietchweiler could not have been in possession of drugs through ingestion of the same on January 25, 2013, or for several days before that.

19.    When the results of the drug test were available, Noah Dietchweiler through his father supplied Defendant, KENNETH LEE, the Superintendent of Schools, with the results of the drug testing, and initially, Superintendent Lee offered to meet with the family, but then abruptly refused to meet. Between the time that Defendant Lee offered to meet and then refused to meet, on information and belief, Plaintiffs allege that Defendant Lee provided Defendants Bunting and Lucas with the results of the drug testing and Defendants Bunting and Lucas then fabricated an alleged confession by Noah for consumption of drugs the day previous to January 25, 2013, to support upholding the suspension at the anticipated review hearing before the Board of Education, all with the intent to prejudice and surprise Noah Dietchweiler.

20.    Noah Dietchweiler, by his father and next friend, requested a suspension review hearing and, to prepare for that hearing, requested certain information as delineated in the letter from Michael Dietchweiler attached hereto as Exhibit "2".

21.    Defendant Lee and Defendant, IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS, provided no information whatsoever in response to the letter from Michael Dietchweiler and ultimately sent a notice of scheduling a suspension review hearing before the Defendant, IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS, and a copy of that notice which contained no details of the evidence against Noah is attached hereto as Exhibit "3".

22.    Noah Dietchweiler retained counsel and through counsel received from attorney for the Defendant, IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS, a confirmation that Noah would not be provided with any pre-trial disclosures guaranteeing that Noah Dietchweiler's opportunity to respond to the allegations against him at the suspension review hearing could not be meaningful. The response

5

from counsel was simply to deny providing any information under a blanket assertion that pre-trial discovery is not required in suspension matters, contrary to the clear constitutional mandate that pre-hearing notice of the charges and evidence against the accused student must be provided in sufficient detail to allow a meaningful defense. The blanket denial letter is attached hereto as Exhibit "4".

23.     Counsel for Noah Dietchweiler reminded Defendant, IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS, of its obligation to provide sufficient pre-hearing disclosures to allow for a meaningful presentation in light of the fact that the Defendants Lee, Bunting and Lucas had in their possession conclusive scientific evidence that Noah Dietchweiler could not have been guilty of ingesting the alleged prescription medication on or about January 25, 2013, and pre-trial disclosure of the evidence against Noah needed to be revealed to allow a meaningful defense (Exhibit "5"). No information was provided except the previous letter that Defendants Bunting and Lee would testify.

24.     A hearing was had before the Board of Education of the IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS, on February 5, 2013, and attached hereto is a copy of the minutes of such meeting (the portion of the minutes relating to Noah is the portion relating to Student #10168) (Exhibit "6"). At the hearing, Defendants Bunting and Lucas acknowledged that the only written explanation of the evidence against Noah Dietchweiler provided to the family was the Notice of Student Disciplinary Action attached hereto as Exhibit "1", but for the first time known to Noah Dietchweiler and his representatives, testimony without supporting exhibits or documents was presented by both Defendant Bunting and Defendant Lucas that the basis for the suspension was that Noah Dietchweiler confessed to possession and consumption of drugs before school began the day previous to the date of the investigation on January 25, 2013, and that Noah indicated he had taken the drugs hoping that they would provide assistance in his concentration or alleviating an ADD condition but that he felt they were more indicative of some type of a narcotic.

25.     The Defendants Lee, Bunting and Lucas intentionally withheld information that Lucas and Bunting were going to both testify that the claimed infraction happened on a different day than January 25, 2013, the day which all of the documentation to date, Exhibit "1" and the

6

telephone conversation with the parents had revealed in spite of the request of Noah Dietchweiler's representatives for disclosure of information.

26.     Noah Dietchweiler and his representatives had brought witnesses to the suspension review hearing to testify at the hearing as to the events of January 25, 2013, to supplement the conclusive scientific evidence already provided to all Defendants that Noah could not have possessed the alleged prescription pills by ingestion, but they were prejudiced and prevented from providing evidence in defense of Noah as to the claims of January 24, 2013, by the fact that ultimately the claims by the administrators at the high school were that Noah Dietchweiler was guilty of an infraction on the previous day in one or more of the following manners: a) a family member of the student who allegedly brought pills to school has informed Michael Dietchweiler after the suspension review hearing that the prescription was not filled for the pills taken to school until after the time of the alleged consumption of Noah on January 24, 2013, and Noah could have presented that evidence; b) Noah could have produced independent witnesses as to his whereabouts on January 24, 2013, at the time of the alleged consumption; c) Noah could have produced teachers, other students, family members, and other witnesses that Noah exhibited no symptoms of the alleged narcotic effect claimed by Defendants Bunting and Lucas to have been caused by ingestion of pills on January 24, 2013.

27.     The Defendants, JAMES BRUNS, in his official capacity; DON BECKER, in his official capacity; BRENNA JOHNSON, in her official capacity; CRYSTAL BLAIR, in her official capacity; BOB BURD, in his official capacity; KIRK McTAGGERT, in his official capacity; and DEE SCHIPPERT, in her official capacity, and the IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS, in spite of the fact that Noah Dietchweiler denied taking drugs the previous day, denied confessing to taking drugs the previous day, and the Defendants having in their possession concrete scientific evidence that Noah Dietchweiler could not have ingested drugs on January 25, 2013, or January 24, 2013, and with knowledge that the Dietchweilers were not provided with the evidence against Noah relating to the alleged confession of ingesting drugs on January 24, 2013, until the hearing, the Defendant Board of Education upheld the suspension. After the hearing, the Board amended the charges to provide for mere possession rather than possession by consumption.

7

28.     As a direct and proximate result of the violation of Noah Dietchweiler's procedural due process rights, Noah Dietchweiler has been improperly suspended from school and deprived of his property and liberty interests relating to his suspension from school and further sustained emotional distress and will sustain expenses in ultimately repeating his sophomore year at a private school.

29.     As a direct and proximate result of violation of Noah Dietchweiler's procedural due process rights, Noah was unable to present evidence and witnesses to rebut the fabricated statements of Defendants Lucas and Bunting that Noah confessed to ingesting drugs on January 24, 2013.

30.     Defendants Lucas, Bunting and Lee were motivated to deny production of the claimed evidence against Noah until the hearing to prevent Noah from having an opportunity to present evidence to rebut the fabricated claim of Noah's confession.

WHEREFORE, Plaintiff, NOAH DIETCHWEILER, by Michael Dietchweiler, his father and next friend, prays for the following relief:

A.     That this Court order the suspension expunged.

B.     That the Plaintiff be awarded compensatory damages for his deprivation in excess of $75,000.00.

C.     That the Plaintiff receive additional compensatory damages for the violation of his constitutional rights in excess of $75,000.00.

D.     That the Plaintiff receive an award of his reasonable attorney's fees under 28 U.S.C.C. §1988.

E.     That punitive damages be allowed against Defendants Bunting, Lucas and Lee to be determined by a trier of fact.

F.     For such other relief as the Court deems just or proper to remedy the violation of Plaintiff's civil rights.

8

**COUNT II**

**(Pendent State Claim – Violation of Procedures and Standard Required
to Suspend as Required by 105 ILCS 5/10-22.b(b))**

NOW COMES Plaintiff, NOAH DIETCHWEILER, by Michael Dietchweiler, his father
and next friend, by his attorneys, Flynn, Palmer, Tague, Lyke & Jacobson, and for Count II of his
Complaint against Defendants, STEVE LUCAS, in his official and individual capacities; JAMES
BUNTING, in his official and individual capacities; KENNETH LEE, in his official and
individual capacities; IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9,
IROQUOIS COUNTY, ILLINOIS; JAMES BRUNS, in his official capacity; DON BECKER, in
his official capacity; BRENNA JOHNSON, in her official capacity; CRYSTAL BLAIR, in her
official capacity; BOB BURD, in his official capacity; KIRK McTAGGERT, in his official
capacity; and DEE SCHIPPERT, in her official capacity, states as follows:

1.      At all times relevant hereto, NOAH DIETCHWEILER was a resident of Iroquois
County, Illinois.

2.      At all times relevant hereto, STEVE LUCAS was employed as a Dean of Students
at Watseka High School with Defendant, IROQUOIS COUNTY COMMUNITY UNIT
SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS.

3.      At all times relevant hereto, JAMES BUNTING was employed as Principal of
Watseka High School with Defendant, IROQUOIS COUNTY COMMUNITY UNIT SCHOOL
DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS.

4.      At all times relevant hereto, KENNETH LEE was employed as the Superintendent
of Watseka High School with Defendant, IROQUOIS COUNTY COMMUNITY UNIT
SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS.

5.      At all times relevant hereto, Defendants, JAMES BRUNS, in his official capacity;
DON BECKER, in his official capacity; BRENNA JOHNSON, in her official capacity;
CRYSTAL BLAIR, in her official capacity; BOB BURD, in his official capacity; KIRK
McTAGGERT, in his official capacity; and DEE SCHIPPERT, in her official capacity, were

9

members of the Board of Education of IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS.

6.     At all times set forth herein, the Defendants purportedly took action resulting in suspension of Noah Dietchweiler under 105 ILCS 5/10.22(b) which provided in part: "Any suspension shall be reported immediately to the parents or guardian of such pupil along with a full statement of the reasons for such suspension and notice of their right to a review."

7.     On or about January 25, 2013, Defendants Bunting and Lucas began an investigation relating to a report that a student had brought prescription drugs to Watseka High School that day and was possibly distributing pills from such prescription medication to other students.

8.     During the course of the investigation by Defendants Lucas and Bunting, Defendants Lucas and Bunting purportedly interviewed the student suspected of bringing the prescription medication to school, and those Defendants claim that the student wrote the names of other students involved in an incident that occurred on January 25, 2013, and produced a piece of paper which contained Noah Dietchweiler's name, which such paper contained a list of students that purportedly owed him money for pills he took to school.

9.     Defendants Lucas and Bunting concluded that Noah Dietchweiler's name on one or more of the lists was evidence that Noah Dietchweiler had been provided with prescription medication pills at school.

10.    Toward the end of the school day on January 25, 2013, Defendant Bunting and Lucas called Noah Dietchweiler to the office and interrogated Noah. Neither Defendants Lucas nor Bunting told Noah Dietchweiler specifically the allegations that implicated him in the matter involving another student bringing prescription medication to school and providing such medication to other students and did not provide Noah Dietchweiler with a written statement of the charges against him. They specifically withheld revealing the existence of the lists and circumstances related to them by the student they interviewed who brought the prescription drugs to school.

11.    At the aforesaid meeting, Defendant Lucas, in the presence of Defendant Bunting, told Noah Dietchweiler that he knew all of the facts and that if Noah Dietchweiler did not admit

10

to possession and consumption of prescription medication not belonging to him that rather than being suspended (upon confession), Noah would be expelled (upon proclaiming innocence).

12.     Noah replied to the choice of being suspended or expelled with a simple statement of "whatever" and ultimately signed the document attached hereto as Exhibit "1" as he was led to believe that action was the only way he would not be expelled and be able to make up work.

13.     The only reason that Noah Dietchweiler signed Exhibit "1" was the combination of failure to advise Noah of all of the evidence against him and false and coercive threats of Defendants Lucas and Bunting.

14.     After Noah Dietchweiler signed Exhibit "1", Plaintiff, Ann Dietchweiler (Noah's mother), was summoned to the Watseka High School office and notified that Noah Dietchweiler was being suspended for 10 days.  Plaintiff, Ann Dietchweiler, asked that her husband and father of Noah be called (Michael Dietchweiler), and ultimately, there was a telephone conference on the office speaker phone in which Defendants Lucas and Bunting were present, Plaintiffs, Noah Dietchweiler and Ann Dietchweiler, were present, and Michael Dietchweiler participated on the telephone.  During that telephone conversation, no details of the alleged evidence against Noah Dietchweiler were disclosed, the existence of the lists were not disclosed, the claim that Noah confessed to consuming pills the day before was not disclosed and they were led to believe all of Noah's alleged acts occurred on January 25, 2013, the threat of expulsion in the event of a claim of innocence was not disclosed, and Defendants Lucas and Bunting only indicated that Noah had cooperated.  The only purported written summary of evidence disclosed during the telephone conference was Exhibit "1".

15.     After the telephone conference aforesaid, Noah Dietchweiler returned home with his mother, and when confronted by his father as to the alleged basis for the suspension, Noah Dietchweiler revealed that he had not consumed drugs, had not been in possession of drugs, and at that time revealed that before he had an opportunity to tell his story and without being told of the facts that implicated him, he had been coerced into signing the suspension under a threat that if he did not sign for a suspension that he would be expelled.

16.     Noah Dietchweiler's father knew that if Noah in fact had been guilty of ingesting prescription medication that those drugs would still be in his system, and Noah was taken to a

11

2:13-cv-02062-HAB   # 37-1   Page 12 of 57

hospital where drug testing was done under Federal Aviation Administration chain of custody protocols, and those results revealed that Noah Dietchweiler had no drugs whatsoever in his system, including but not limited to the claimed prescription medication that Noah allegedly possessed and ingested.

17.     The aforesaid results conclusively established that Noah Dietchweiler could not have been in possession of drugs through ingestion of the same on January 25, 2013, or for several days before that.

18.     When the results of the drug test were available, Noah Dietchweiler through his father supplied Defendant, KENNETH LEE, the Superintendent of Schools, with the results of the drug testing, and initially, Superintendent Lee offered to meet with the family, but then abruptly refused to meet.  Between the time that Defendant Lee offered to meet and then refused to meet, on information and belief, Plaintiffs allege that Defendant Lee provided Defendants Bunting and Lucas with the results of the drug testing and Defendants Bunting and Lucas then fabricated an alleged confession by Noah for consumption of drugs the day previous to January 25, 2013, to support upholding the suspension at the anticipated review hearing before the Board of Education with the intent to prejudice and surprise Noah Dietchweiler.

19.     Noah Dietchweiler, by his father and next friend, requested a suspension review hearing and, to prepare for that hearing, requested certain information as delineated in the letter from Michael Dietchweiler attached hereto as Exhibit "2".

20.     Defendant Lee and Defendant, IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS, provided no information whatsoever in response to the letter from Michael Dietchweiler and ultimately sent a notice of scheduling a suspension review hearing before the Defendant, IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS, and a copy of that notice which contained no details of the evidence against Noah is attached hereto as Exhibit "3".

21.     Noah Dietchweiler retained counsel and through counsel received from attorney for the Defendant, IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS, a confirmation that Noah would not be provided with any

pre-trial disclosures guaranteeing that Noah Dietchweiler's opportunity to respond to the allegations against him at the suspension review hearing could not be meaningful. The response from counsel was simply to deny providing any information under a blanket assertion that pre-trial discovery is not required in suspension matters, contrary to the clear constitutional mandate that pre-hearing notice of the charges and evidence against the accused student must be provided in sufficient detail to allow a meaningful defense. The blanket denial letter is attached hereto as Exhibit "4".

22.    Counsel for Noah Dietchweiler reminded Defendant, IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS, of its obligation to provide sufficient pre-hearing disclosures to allow for a meaningful presentation in light of the fact that the Defendants Lee, Bunting and Lucas had in their possession conclusive scientific evidence that Noah Dietchweiler could not have been guilty of ingesting the alleged prescription medication on or about January 25, 2013, and pre-trial disclosure of the evidence against Noah needed to be revealed to allow a meaningful defense (Exhibit "5"). No information was provided except the previous letter that Defendants Bunting and Lee would testify.

23.    A hearing was had before the Board of Education of the IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS, on February 5, 2013, and attached hereto is a copy of the minutes of such meeting (the portion of the minutes relating to Noah is the portion relating to Student #10168) (Exhibit "6"). At the hearing, Defendants Bunting and Lucas acknowledged that the only written explanation of the evidence against Noah Dietchweiler provided to the family was the Notice of Student Disciplinary Action attached hereto as Exhibit "1", but for the first time known to Noah Dietchweiler and his representatives, testimony without supporting exhibits or documents was presented by both Defendant Bunting and Defendant Lucas that the basis for the suspension was that Noah Dietchweiler confessed to possession and consumption of drugs before school began the day previous to the date of the investigation on January 25, 2013, and that Noah indicated he had taken the drugs hoping that they would provide assistance in his concentration or alleviating an ADD condition but that he felt they were more indicative of some type of a narcotic.

13

24.    The Defendants Lee, Bunting and Lucas intentionally withheld information that Lucas and Bunting were going to both testify that the claimed infraction happened on a different day than January 25, 2013, the day which all of the documentation to date, Exhibit "1" and the telephone conversation with the parents had revealed in spite of the request of Noah Dietchweiler's representatives for disclosure of information.

25.    Noah Dietchweiler and his representatives had brought witnesses to the suspension review hearing to testify at the hearing as to the events of January 25, 2013, to supplement the conclusive scientific evidence already provided to all Defendants that Noah could not have possessed the alleged prescription pills by ingestion, but they were prejudiced and prevented from providing evidence in defense of Noah as to the claims of January 24, 2013, by the fact that ultimately the claims by the administrators at the high school were that Noah Dietchweiler was guilty of an infraction on the previous day in one or more of the following manners: a) a family member of the student who allegedly brought pills to school has informed Michael Dietchweiler after the suspension review hearing that the prescription was not filled for the pills taken to school until after the time of the alleged consumption of Noah on January 24, 2013, and Noah could have presented that evidence; b) Noah could have produced independent witnesses as to his whereabouts on January 24, 2013, at the time of the alleged consumption; c) Noah could have produced teachers, other students, family members, and other witnesses that Noah exhibited no symptoms of the alleged narcotic effect claimed by Defendants Bunting and Lucas to have been caused by ingestion of pills on January 24, 2013.

26.    The Defendants, JAMES BRUNS, in his official capacity; DON BECKER, in his official capacity; BRENNA JOHNSON, in her official capacity; CRYSTAL BLAIR, in her official capacity; BOB BURD, in his official capacity; KIRK McTAGGERT, in his official capacity; and DEE SCHIPPERT, in her official capacity, and the IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS, in spite of the fact that Noah Dietchweiler denied taking drugs the previous day, denied confessing to taking drugs the previous day, and the Defendants having in their possession concrete scientific evidence that Noah Dietchweiler could not have ingested drugs on January 25, 2013, or January 24, 2013, and with knowledge that the Dietchweilers were not provided with the evidence against

14

Noah relating to the alleged confession of ingesting drugs on January 24, 2013, until the hearing, the Defendant Board of Education upheld the suspension. After the hearing, the Board amended the charges to provide for mere possession rather than possession by consumption.

27.    Noah Dietchweiler was not guilty of possession of drugs by ingestion on January 24, 2013, and had Defendants complied with 105 ILCS 5/10-22.6(b), Noah Dietchweiler and his representatives would have presented additional evidence in furtherance of the submitted clear and convincing evidence of his innocence.

28.    The decisions to suspend Noah Dietchweiler and uphold the suspension were arbitrary, capricious, unreasonable and oppressive, and are reviewable by the Court by common law certiorari (Linwood v. Board of Education, 463 F.2d 763 (7th Cir. 1972) and must be reversed.

WHEREFORE, Plaintiff, NOAH DIETCHWEILER, by Michael Dietchweiler, his father and next friend, prays that the Court reverse the suspension and order the suspension expunged, together with his costs.

## COUNT III

### (Pendent State Claim - Intentional Infliction of Emotional Distress Noah Dietchweiler, by Michael Dietchweiler, His Father and Next Friend – Defendants Lucas and Bunting)

NOW COMES Plaintiff, NOAH DIETCHWEILER, by Michael Dietchweiler, his father and next friend, by his attorneys, Flynn, Palmer, Tague, Lyke & Jacobson, and for Count III of his Complaint against Defendants, STEVE LUCAS, in his individual capacity, and JAMES BUNTING, in his individual capacity, states as follows:

1.    At all times relevant hereto, NOAH DIETCHWEILER was a resident of Iroquois County, Illinois.

2.    At all times relevant hereto, STEVE LUCAS was employed as a Dean of Students at Watseka High School with Defendant, IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS.

15

3.     At all times relevant hereto, JAMES BUNTING was employed as Principal of Watseka High School with Defendant, IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS.

4.     At all times relevant hereto, Defendants, JAMES BRUNS, in his official capacity; DON BECKER, in his official capacity; BRENNA JOHNSON, in her official capacity; CRYSTAL BLAIR, in her official capacity; BOB BURD, in his official capacity; KIRK McTAGGERT, in his official capacity; and DEE SCHIPPERT, in her official capacity, were members of the Board of Education of IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS.

5.     On or about January 25, 2013, Defendants Bunting and Lucas began an investigation relating to a report that a student had brought prescription drugs to Watseka High School that day and was possibly distributing pills from such prescription medication to other students.

6.     During the course of the investigation by Defendants Lucas and Bunting, Defendants Lucas and Bunting purportedly interviewed the student suspected of bringing the prescription medication to school, and those Defendants claim that the student wrote the names of other students involved in an incident that occurred on January 25, 2013, and produced a piece of paper which contained Noah Dietchweiler's name, which such paper contained a list of students that purportedly owed him money for pills he took to school.

7.     Defendants Lucas and Bunting concluded that Noah Dietchweiler's name on one or more of the lists was evidence that Noah Dietchweiler had been provided with prescription medication pills at school.

8.     Toward the end of the school day on January 25, 2013, Defendant Bunting and Lucas called Noah Dietchweiler to the office and interrogated Noah. Neither Defendants Lucas nor Bunting told Noah Dietchweiler specifically the allegations that implicated him in the matter involving another student bringing prescription medication to school and providing such medication to other students and did not provide Noah Dietchweiler with a written statement of the charges against him. They specifically withheld revealing the existence of the lists and

16

circumstances related to them by the student they interviewed who brought the prescription drugs to school.

9.     At the aforesaid meeting, Defendant Lucas, in the presence of Defendant Bunting, told Noah Dietchweiler that he knew all of the facts and that if Noah Dietchweiler did not admit to possession and consumption of prescription medication not belonging to him that rather than being suspended (upon confession), Noah would be expelled (upon proclaiming innocence).

10.     Noah replied to the choice of being suspended or expelled with a simple statement of "whatever" and ultimately signed the document attached hereto as Exhibit "1" as he was led to believe that action was the only way he would not be expelled and be able to make up work.

11.     The only reason that Noah Dietchweiler signed Exhibit "1" was the combination of failure to advise Noah of all of the evidence against him and false and coercive threats of Defendants Lucas and Bunting.

12.     After Noah Dietchweiler signed Exhibit "1", Plaintiff, Ann Dietchweiler (Noah's mother), was summoned to the Watseka High School office and notified that Noah Dietchweiler was being suspended for 10 days.  Plaintiff, Ann Dietchweiler, asked that her husband and father of Noah be called (Michael Dietchweiler), and ultimately, there was a telephone conference on the office speaker phone in which Defendants Lucas and Bunting were present, Plaintiffs, Noah Dietchweiler and Ann Dietchweiler, were present, and Michael Dietchweiler participated on the telephone.  During that telephone conversation, no details of the alleged evidence against Noah Dietchweiler were disclosed, the existence of the lists were not disclosed, the claim that Noah confessed to consuming pills the day before was not disclosed and they were led to believe all of Noah's alleged acts occurred on January 25, 2013, the threat of expulsion in the event of a claim of innocence was not disclosed, and Defendants Lucas and Bunting only indicated that Noah had cooperated.  The only purported written summary of evidence disclosed during the telephone conference was Exhibit "1".

13.     After the telephone conference aforesaid, Noah Dietchweiler returned home with his mother, and when confronted by his father as to the alleged basis for the suspension, Noah Dietchweiler revealed that he had not consumed drugs, had not been in possession of drugs, and at that time revealed that before he had an opportunity to tell his story and without being told of

17

the facts that implicated him, he had been coerced into signing the suspension under a threat that if he did not sign for a suspension that he would be expelled.

14.     Noah Dietchweiler's father knew that if Noah in fact had been guilty of ingesting prescription medication that those drugs would still be in his system, and Noah was taken to a hospital where drug testing was done under Federal Aviation Administration chain of custody protocols, and those results revealed that Noah Dietchweiler had no drugs whatsoever in his system, including but not limited to the claimed prescription medication that Noah allegedly possessed and ingested.

15.     The aforesaid results conclusively established that Noah Dietchweiler could not have been in possession of drugs through ingestion of the same on January 25, 2013, or for several days before that.

16.     When the results of the drug test were available, Noah Dietchweiler through his father supplied Defendant, KENNETH LEE, the Superintendent of Schools, with the results of the drug testing, and initially, Superintendent Lee offered to meet with the family, but then abruptly refused to meet.  Between the time that Defendant Lee offered to meet and then refused to meet, on information and belief, Plaintiff alleges that Defendant Lee provided Defendants Bunting and Lucas with the results of the drug testing and Defendants Bunting and Lucas then fabricated an alleged confession by Noah for consumption of drugs the day previous to January 25, 2013, to support upholding the suspension at the anticipated review hearing before the Board of Education all with the intent to prejudice and surprise Noah Dietchweiler.

17.     A hearing was had before the Board of Education of the IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS, on February 5, 2013, and attached hereto is a copy of the minutes of such meeting (the portion of the minutes relating to Noah is the portion relating to Student #10168) (Exhibit "6").  At the hearing, Defendants Bunting and Lucas acknowledged that the only written explanation of the evidence against Noah Dietchweiler provided to the family was the Notice of Student Disciplinary Action attached hereto as Exhibit "1", but for the first time known to Noah Dietchweiler and his representatives, testimony without supporting exhibits or documents was presented by both Defendant Bunting and Defendant Lucas that the basis for the suspension was that Noah

18

Dietchweiler confessed to possession and consumption of drugs before school began the day previous to the date of the investigation on January 25, 2013, and that Noah indicated he had taken the drugs hoping that they would provide assistance in his concentration or alleviating an ADD condition but that he felt they were more indicative of some type of a narcotic.

18.     The Defendants Bunting and Lucas intentionally withheld information that Lucas and Bunting were going to both testify that the claimed infraction happened on a different day than January 25, 2013, the day which all of the documentation to date, Exhibit "1" and the telephone conversation with the parents had revealed in spite of the request of Noah Dietchweiler's representatives for disclosure of information.

19.     Noah Dietchweiler did not possess or ingest prescription pills on January 24, 2013, nor on January 25, 2013, and did not state to Defendants Bunting and Lucas that he had done so.

20.     The actions of Defendants Bunting and Lucas in fabricating the alleged confession by Noah when they knew he had neither confessed or had ingested drugs on January 24 or 25, 2013, were intended to cause significant emotional distress to Noah Dietchweiler and did proximately cause substantial emotional distress to Noah Dietchweiler.

21.     Under the circumstances aforesaid, the actions of Defendants Bunting and Lucas were malicious and outrageous and warrant the imposition of punitive damages.

WHEREFORE, Plaintiff, NOAH DIETCHWEILER, by Michael Dietchweiler, his father and next friend, prays for judgment in his favor in an amount of compensatory damages in excess of $75,000.00 for his emotional distress and for punitive damages against Defendants Bunting and Lucas to be determined by a trier of fact.

## COUNT IV

### (Pendent State Claim - Slander as to Noah Dietchweiler against Defendants Bunting and Lucas)

NOW COMES Plaintiff, NOAH DIETCHWEILER, by Michael Dietchweiler, his father and next friend, by his attorneys, Flynn, Palmer, Tague, Lyke & Jacobson, and for Count IV of

his Complaint against Defendants, STEVE LUCAS, in his individual capacity, and JAMES BUNTING, in his individual capacity, states as follows:

1.      At all times relevant hereto, NOAH DIETCHWEILER was a resident of Iroquois County, Illinois.

2.      At all times relevant hereto, STEVE LUCAS was employed as a Dean of Students at Watseka High School with Defendant, IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS.

3.      At all times relevant hereto, JAMES BUNTING was employed as Principal of Watseka High School with Defendant, IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS.

4.      At all times relevant hereto, Defendants, JAMES BRUNS, in his official capacity; DON BECKER, in his official capacity; BRENNA JOHNSON, in her official capacity; CRYSTAL BLAIR, in her official capacity; BOB BURD, in his official capacity; KIRK McTAGGERT, in his official capacity; and DEE SCHIPPERT, in her official capacity, were members of the Board of Education of IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS.

5.      On or about January 25, 2013, Defendants Bunting and Lucas began an investigation relating to a report that a student had brought prescription drugs to Watseka High School that day and was possibly distributing pills from such prescription medication to other students.

6.      During the course of the investigation by Defendants Lucas and Bunting, Defendants Lucas and Bunting purportedly interviewed the student suspected of bringing the prescription medication to school, and those Defendants claim that the student wrote the names of other students involved in an incident that occurred on January 25, 2013, and produced a piece of paper which contained Noah Dietchweiler's name, which such paper contained a list of students that purportedly owed him money.

7.      Defendants Lucas and Bunting concluded that Noah Dietchweiler's name on one or more of the lists was evidence that Noah Dietchweiler had been provided with prescription medication pills at school.

8.     Toward the end of the school day on January 25, 2013, Defendant Bunting and Lucas called Noah Dietchweiler to the office and interrogated Noah.  Neither Defendants Lucas nor Bunting told Noah Dietchweiler specifically the allegations that implicated him in the matter involving another student bringing prescription medication to school and providing such medication to other students and did not provide Noah Dietchweiler with a written statement of the charges against him.  They specifically withheld revealing the existence of the lists and circumstances related to them by the student they interviewed who brought the prescription drugs to school.

9.     At the aforesaid meeting, Defendant Lucas, in the presence of Defendant Bunting, told Noah Dietchweiler that he knew all of the facts and that if Noah Dietchweiler did not admit to possession and consumption of prescription medication not belonging to him that rather than being suspended (upon confession), Noah would be expelled (upon proclaiming innocence).

10.    Noah replied to the choice of being suspended or expelled with a simple statement of "whatever" and ultimately signed the document attached hereto as Exhibit "1" as he was led to believe that action was the only way he would not be expelled and be able to make up work.

11.    The only reason that Noah Dietchweiler signed Exhibit "1" was the combination of failure to advise Noah of all of the evidence against him and false and coercive threats of Defendants Lucas and Bunting.

12.    After Noah Dietchweiler signed Exhibit "1", Plaintiff, Ann Dietchweiler (Noah's mother), was summoned to the Watseka High School office and notified that Noah Dietchweiler was being suspended for 10 days.  Plaintiff, Ann Dietchweiler, asked that her husband and father of Noah be called (Michael Dietchweiler), and ultimately, there was a telephone conference on the office speaker phone in which Defendants Lucas and Bunting were present, Plaintiffs, Noah Dietchweiler and Ann Dietchweiler, were present, and Michael Dietchweiler participated on the telephone.  During that telephone conversation, no details of the alleged evidence against Noah Dietchweiler were disclosed, the existence of the lists were not disclosed, the claim that Noah confessed to consuming pills the day before was not disclosed, the threat of expulsion in the event of a claim of innocence was not disclosed, and Defendants Lucas and Bunting led them to believe all alleged acts occurred on January 25, 2013, and only indicated that Noah had

21

cooperated.  The only purported written summary of evidence disclosed during the telephone conference was Exhibit "1".

13.     After the telephone conference aforesaid, Noah Dietchweiler returned home with his mother, and when confronted by his father as to the alleged basis for the suspension, Noah Dietchweiler revealed that he had not consumed drugs, had not been in possession of drugs, and at that time revealed that before he had an opportunity to tell his story and without being told of the facts that implicated him, he had been coerced into signing the suspension under a threat that if he did not sign for a suspension that he would be expelled.

14.     Noah Dietchweiler's father knew that if Noah in fact had been guilty of ingesting prescription medication that those drugs would still be in his system, and Noah was taken to a hospital where drug testing was done under Federal Aviation Administration chain of custody protocols, and those results revealed that Noah Dietchweiler had no drugs whatsoever in his system, including but not limited to the claimed prescription medication that Noah allegedly possessed and ingested.

15.     The aforesaid results conclusively established that Noah Dietchweiler could not have been in possession of drugs through ingestion of the same on January 25, 2013, or for several days before that.

16.     When the results of the drug test were available, Noah Dietchweiler through his father supplied Defendant, KENNETH LEE, the Superintendent of Schools, with the results of the drug testing, and initially, Superintendent Lee offered to meet with the family, but then abruptly refused to meet.  Between the time that Defendant Lee offered to meet and then refused to meet, on information and belief, Plaintiff alleges that Defendant Lee provided Defendants Bunting and Lucas with the results of the drug testing and Defendants Bunting and Lucas then fabricated an alleged confession by Noah for consumption of drugs the day previous to January 25, 2013, to support upholding the suspension at the anticipated review hearing before the Board of Education.

17.     A hearing was had before the Board of Education of the IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS, on February 5, 2013, and attached hereto is a copy of the minutes of such meeting (the portion of the

22

minutes relating to Noah is the portion relating to Student #10168) (Exhibit "6").  At the hearing, Defendants Bunting and Lucas acknowledged that the only written explanation of the evidence against Noah Dietchweiler provided to the family was the Notice of Student Disciplinary Action attached hereto as Exhibit "1", but for the first time known to Noah Dietchweiler and his representatives, testimony without supporting exhibits or documents was presented by both Defendant Bunting and Defendant Lucas that the basis for the suspension was that Noah Dietchweiler confessed to possession and consumption of drugs before school began the day previous to the date of the investigation on January 25, 2013, and that Noah indicated he had taken the drugs hoping that they would provide assistance in his concentration but that he felt they were more indicative of some type of a narcotic.

18.    The Defendants Bunting and Lucas intentionally withheld information that Lucas and Bunting were going to both testify that the claimed infraction happened on a different day than January 25, 2013, the day which all of the documentation to date, Exhibit "1" and the telephone conversation with the parents had revealed in spite of the request of Noah Dietchweiler's representatives for disclosure of information.

19.    Noah Dietchweiler did not possess or ingest prescription pills on January 24, 2013, nor on January 25, 2013, and did not state to Defendants Bunting and Lucas that he had done so.

20.    Defendants Lucas and Bunting knew the statements that they made against Noah Dietchweiler at the suspension review hearing that Noah ingested prescription pills on January 24, 2013, were false, were known to be false by Defendants Lucas and Bunting, and such statements were malicious.

23.    As a direct and proximate result of the false statements of Defendants Lucas and Bunting, Noah Dietchweiler's suspension from school was upheld and he will have expenses in ultimately repeating his sophomore year at a private school and has sustained damages to his reputation, which prior to the false statements was stellar.

WHEREFORE, Plaintiff, NOAH DIETCHWEILER, by Michael Dietchweiler, his father and next friend, prays for judgment in his favor against Defendants Bunting and Lucas in an

amount of compensatory damages in excess of $75,000.00 and for punitive damages against Defendants Bunting and Lucas to be determined by a trier of fact.

## COUNT V

### (Pendent State Claim – Intentional Emotional Distress – Defendant Kenneth Lee)

NOW COMES Plaintiff, NOAH DIETCHWEILER, by Michael Dietchweiler, his father and next friend, by his attorneys, Flynn, Palmer, Tague, Lyke & Jacobson, and for Count IV of his Complaint against Defendant, KENNETH LEE, in his individual capacity, states as follows:

1.     At all times relevant hereto, NOAH DIETCHWEILER was a resident of Iroquois County, Illinois.

2.     At all times relevant hereto, STEVE LUCAS was employed as a Dean of Students at Watseka High School with Defendant, IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS.

3.     At all times relevant hereto, JAMES BUNTING was employed as Principal of Watseka High School with Defendant, IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS.

4.     At all times relevant hereto, KENNETH LEE was employed as the Superintendent of Watseka High School with Defendant, IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS.

5.     At all times relevant hereto, Defendants, JAMES BRUNS, in his official capacity; DON BECKER, in his official capacity; BRENNA JOHNSON, in her official capacity; CRYSTAL BLAIR, in her official capacity; BOB BURD, in his official capacity; KIRK McTAGGERT, in his official capacity; and DEE SCHIPPERT, in her official capacity, were members of the Board of Education of IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS.

6.     On or about January 25, 2013, Defendants Bunting and Lucas began an investigation relating to a report that a student had brought prescription drugs to Watseka High

24

School that day and was possibly distributing pills from such prescription medication to other students.

7.    During the course of the investigation by Defendants Lucas and Bunting, Defendants Lucas and Bunting purportedly interviewed the student suspected of bringing the prescription medication to school, and those Defendants claim that the student wrote the names of other students involved in an incident that occurred on January 25, 2013, and produced a piece of paper which contained Noah Dietchweiler's name, which such paper contained a list of students that purportedly owed him money.

8.    Defendants Lucas and Bunting concluded that Noah Dietchweiler's name on one or more of the lists was evidence that Noah Dietchweiler had been provided with prescription medication pills at school.

9.    Toward the end of the school day on January 25, 2013, Defendant Bunting and Lucas called Noah Dietchweiler to the office and interrogated Noah. Neither Defendants Lucas nor Bunting told Noah Dietchweiler specifically the allegations that implicated him in the matter involving another student bringing prescription medication to school and providing such medication to other students and did not provide Noah Dietchweiler with a written statement of the charges against him. They specifically withheld revealing the existence of the lists and circumstances related to them by the student they interviewed who brought the prescription drugs to school.

10.    At the aforesaid meeting, Defendant Lucas, in the presence of Defendant Bunting, told Noah Dietchweiler that he knew all of the facts and that if Noah Dietchweiler did not admit to possession and consumption of prescription medication not belonging to him that rather than being suspended (upon confession), Noah would be expelled (upon proclaiming innocence).

11.    Noah replied to the choice of being suspended or expelled with a simple statement of "whatever" and ultimately signed the document attached hereto as Exhibit "1" as he was led to believe that action was the only way he would not be expelled and be able to make up work.

12.    The only reason that Noah Dietchweiler signed Exhibit "1" was the combination of failure to advise Noah of all of the evidence against him and false and coercive threats of Defendants Lucas and Bunting.

25

13.    After Noah Dietchweiler signed Exhibit "1"; Plaintiff, Ann Dietchweiler (Noah's mother), was summoned to the Watseka High School office and notified that Noah Dietchweiler was being suspended for 10 days. Plaintiff, Ann Dietchweiler, asked that her husband and father of Noah be called (Michael Dietchweiler), and ultimately, there was a telephone conference on the office speaker phone in which Defendants Lucas and Bunting were present, Plaintiffs, Noah Dietchweiler and Ann Dietchweiler, were present, and Michael Dietchweiler participated on the telephone. During that telephone conversation, no details of the alleged evidence against Noah Dietchweiler were disclosed, the existence of the lists were not disclosed, the claim that Noah confessed to consuming pills the day before was not disclosed, the threat of expulsion in the event of a claim of innocence was not disclosed, and Defendants Lucas and Bunting only indicated that Noah had cooperated. The only purported written summary of evidence disclosed during the telephone conference was Exhibit "1".

14.    After the telephone conference aforesaid, Noah Dietchweiler returned home with his mother, and when confronted by his father as to the alleged basis for the suspension, Noah Dietchweiler revealed that he had not consumed drugs, had not been in possession of drugs, and at that time revealed that before he had an opportunity to tell his story and without being told of the facts that implicated him, he had been coerced into signing the suspension under a threat that if he did not sign for a suspension that he would be expelled.

15.    Noah Dietchweiler's father knew that if Noah in fact had been guilty of ingesting prescription medication that those drugs would still be in his system, and Noah was taken to a hospital where drug testing was done under Federal Aviation Administration chain of custody protocols, and those results revealed that Noah Dietchweiler had no drugs whatsoever in his system, including but not limited to the claimed prescription medication that Noah allegedly possessed and ingested.

16.    The aforesaid results conclusively established that Noah Dietchweiler could not have been in possession of drugs through ingestion of the same on January 25, 2013, or for several days before that.

17.    When the results of the drug test were available, Noah Dietchweiler through his father supplied Defendant, KENNETH LEE, the Superintendent of Schools, with the results of

the drug testing, and initially, Superintendent Lee offered to meet with the family, but then abruptly refused to meet. Between the time that Defendant Lee offered to meet and then refused to meet, on information and belief, Plaintiff alleges that Defendant Lee provided Defendants Bunting and Lucas with the results of the drug testing and Defendants Bunting and Lucas then fabricated an alleged confession by Noah for consumption of drugs the day previous to January 25, 2013, to support upholding the suspension at the anticipated review hearing before the Board of Education.

18.    A hearing was had before the Board of Education of the IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS, on February 5, 2013, and attached hereto is a copy of the minutes of such meeting (the portion of the minutes relating to Noah is the portion relating to Student #10168) (Exhibit "6"). At the hearing, Defendants Bunting and Lucas acknowledged that the only written explanation of the evidence against Noah Dietchweiler provided to the family was the Notice of Student Disciplinary Action attached hereto as Exhibit "1", but for the first time known to Noah Dietchweiler and his representatives, testimony without supporting exhibits or documents was presented by both Defendant Bunting and Defendant Lucas that the basis for the suspension was that Noah Dietchweiler confessed to possession and consumption of drugs before school began the day previous to the date of the investigation on January 25, 2013, and that Noah indicated he had taken the drugs hoping that they would provide assistance in his concentration but that he felt they were more indicative of some type of a narcotic.

19.    The Defendants Bunting and Lucas intentionally withheld information that Lucas and Bunting were going to both testify that the claimed infraction happened on a different day than January 25, 2013, the day which all of the documentation to date, Exhibit "1" and the telephone conversation with the parents had revealed in spite of the request of Noah Dietchweiler's representatives for disclosure of information.

20.    Noah Dietchweiler did not possess or ingest prescription pills on January 24, 2013, nor on January 25, 2013, and did not state to Defendants Bunting and Lucas that he had done so.

21.     Defendant Lee knew the statements made by Defendants Lucas and Bunting were most probably false, but Defendant Lee wished to punish Noah Dietchweiler, because Noah Dietchweiler and his family previously informed the School District that due to Noah Dietchweiler's exceptional academic abilities, that Noah would not be attending the public schools the next year in favor of attending an elite private academy to pursue a career in military aviation.

22.     As a direct and proximate result of Defendant Lee's intent to retaliate against Noah for his expressed intent of withdrawing from Watseka High School, Defendant Lee advanced statements that he knew probably to be false, refused to overturn the suspension imposed by Defendants Lucas and Bunting in the face of concrete scientific facts in showing that the bases for the suspension by Defendants Lucas and Bunting were false and helped facilitate the actions of Defendants Lucas and Bunting in withholding information of evidence against Noah Dietchweiler, most specifically the date of the alleged infraction and the claim of an alleged confession, to assure that the Board of Education would confirm the suspension at the suspension review hearing.

23.     As a direct and proximate result of Defendant Lee's action, Noah Dietchweiler's suspension was upheld.

WHEREFORE, Plaintiff, NOAH DIETCHWEILER, by Michael Dietchweiler, his father and next friend, prays for judgment against Defendant, KENNETH LEE, in an amount of compensatory damages in excess of $75,000.00 and an amount of punitive damages to be determined by a trier of fact based upon his intentional conduct.

## COUNT VI

### (Pendent State Claim - Plaintiff, Ann Dietchweiler - Intentional Infliction of Emotional Distress - Defendants Lucas and Lee in Their Individual Capacities)

NOW COMES Plaintiff, NOAH DIETCHWEILER, by Michael Dietchweiler, his father and next friend, by his attorneys, Flynn, Palmer, Tague, Lyke & Jacobson, and for Count V of his

28

Complaint against Defendants, STEVE LUCAS, in his individual capacity, and JAMES BUNTING, in his individual capacity, states as follows:

1.      At all times relevant hereto, NOAH DIETCHWEILER and ANN DIETCHWEILER were a resident of Iroquois County, Illinois.

2.      At all times relevant hereto, STEVE LUCAS was employed as a Dean of Students at Watseka High School with Defendant, IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS.

3.      At all times relevant hereto, JAMES BUNTING was employed as Principal of Watseka High School with Defendant, IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS.

4.      At all times relevant hereto, Defendants, JAMES BRUNS, in his official capacity; DON BECKER, in his official capacity; BRENNA JOHNSON, in her official capacity; CRYSTAL BLAIR, in her official capacity; BOB BURD, in his official capacity; KIRK McTAGGERT, in his official capacity; and DEE SCHIPPERT, in her official capacity, were members of the Board of Education of IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS.

5.      On or about January 25, 2013, Defendants Bunting and Lucas began an investigation relating to a report that a student had brought prescription drugs to Watseka High School that day and was possibly distributing pills from such prescription medication to other students.

6.      During the course of the investigation by Defendants Lucas and Bunting, Defendants Lucas and Bunting purportedly interviewed the student suspected of bringing the prescription medication to school, and those Defendants claim that the student wrote the names of other students involved in an incident that occurred on January 25, 2013, and produced a piece of paper which contained Noah Dietchweiler's name, which such paper contained a list of students that purportedly owed him money for pills he took to school.

7.      Defendants Lucas and Bunting concluded that Noah Dietchweiler's name on one or more of the lists was evidence that Noah Dietchweiler had been provided with prescription medication pills at school.

8.      Toward the end of the school day on January 25, 2013, Defendant Bunting and Lucas called Noah Dietchweiler to the office and interrogated Noah. Neither Defendants Lucas nor Bunting told Noah Dietchweiler specifically the allegations that implicated him in the matter involving another student bringing prescription medication to school and providing such medication to other students and did not provide Noah Dietchweiler with a written statement of the charges against him. They specifically withheld revealing the existence of the lists and circumstances related to them by the student they interviewed who brought the prescription drugs to school.

9.      At the aforesaid meeting, Defendant Lucas, in the presence of Defendant Bunting, told Noah Dietchweiler that he knew all of the facts and that if Noah Dietchweiler did not admit to possession and consumption of prescription medication not belonging to him that rather than being suspended (upon confession), Noah would be expelled (upon proclaiming innocence).

10.     Noah replied to the choice of being suspended or expelled with a simple statement of "whatever" and ultimately signed the document attached hereto as Exhibit "1" as he was led to believe that action was the only way he would not be expelled and be able to make up work.

11.     The only reason that Noah Dietchweiler signed Exhibit "1" was the combination of failure to advise Noah of all of the evidence against him and false and coercive threats of Defendants Lucas and Bunting.

12.     After Noah Dietchweiler signed Exhibit "1", Plaintiff, Ann Dietchweiler (Noah's mother), was summoned to the Watseka High School office and notified that Noah Dietchweiler was being suspended for 10 days. Plaintiff, Ann Dietchweiler, asked that her husband and father of Noah be called (Michael Dietchweiler), and ultimately, there was a telephone conference on the office speaker phone in which Defendants Lucas and Bunting were present, Plaintiffs, Noah Dietchweiler and Ann Dietchweiler, were present, and Michael Dietchweiler participated on the telephone. During that telephone conversation, no details of the alleged evidence against Noah Dietchweiler were disclosed, the existence of the lists were not disclosed, the claim that Noah confessed to consuming pills the day before was not disclosed, the threat of expulsion in the event of a claim of innocence was not disclosed, and Defendants Lucas and Bunting led them to believe all alleged events occurred on January 25, 2013, and only indicated that Noah had

cooperated. The only purported written summary of evidence disclosed during the telephone conference was Exhibit "1".

13.    After the telephone conference aforesaid, Noah Dietchweiler returned home with his mother, and when confronted by his father as to the alleged basis for the suspension, Noah Dietchweiler revealed that he had not consumed drugs, had not been in possession of drugs, and at that time revealed that before he had an opportunity to tell his story and without being told of the facts that implicated him, he had been coerced into signing the suspension under a threat that if he did not sign for a suspension that he would be expelled.

14.    Noah Dietchweiler's father knew that if Noah in fact had been guilty of ingesting prescription medication that those drugs would still be in his system, and Noah was taken to a hospital where drug testing was done under Federal Aviation Administration chain of custody protocols, and those results revealed that Noah Dietchweiler had no drugs whatsoever in his system, including but not limited to the claimed prescription medication that Noah allegedly possessed and ingested.

15.    The aforesaid results conclusively established that Noah Dietchweiler could not have been in possession of drugs through ingestion of the same on January 25, 2013, or for several days before that.

16.    When the results of the drug test were available, Noah Dietchweiler through his father supplied Defendant, KENNETH LEE, the Superintendent of Schools, with the results of the drug testing, and initially, Superintendent Lee offered to meet with the family, but then abruptly refused to meet. Between the time that Defendant Lee offered to meet and then refused to meet, on information and belief, Plaintiff alleged Defendant Lee provided Defendants Bunting and Lucas with the results and Defendants Bunting and Lucas then fabricated an alleged confession by Noah for consumption of drugs the day previous to January 25, 2013, to support upholding the suspension at the anticipated review hearing before the Board of Education.

17.    A hearing was had before the Board of Education of the IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS, on February 5, 2013, and attached hereto is a copy of the minutes of such meeting (the portion of the minutes relating to Noah is the portion relating to Student #10168) (Exhibit "6"). At the hearing,

Defendants Bunting and Lucas acknowledged that the only written explanation of the evidence against Noah Dietchweiler provided to the family was the Notice of Student Disciplinary Action attached hereto as Exhibit "1", but for the first time known to Noah Dietchweiler and his representatives, testimony without supporting exhibits or documents was presented that the basis for the suspension was that Noah Dietchweiler confessed to possession and consumption of drugs before school began the day previous to the date of the investigation on January 25, 2013, and that Noah indicated he had taken the drugs hoping that they would provide assistance in his concentration but that he felt they were more indicative of some type of a narcotic.

18.     The Defendants Bunting and Lucas intentionally withheld information that they were going to both testify that the claimed infraction happened on a different day than January 25, 2013, which all of the documentation to date, Exhibit "1" and the telephone conversation with the parents had revealed and the request of Noah Dietchweiler's representatives for disclosure of information.

19.     Noah Dietchweiler did not possess or ingest prescription pills on January 24, 2013, nor on January 25, 2013, and did not state to Defendants Bunting and Lucas that he had done so.

20.     The actions of Defendants Bunting and Lucas were intended to cause significant emotional distress to Ann Dietchweiler and did proximately cause substantial emotional distress to Ann Dietchweiler.

21.     Under the circumstances aforesaid, the actions of Defendants Bunting and Lucas were outrageous and would warrant the imposition of punitive damages.

22.     Defendants Lucas and Bunting knew the allegations that they made against Noah Dietchweiler that he ingested prescription pills on January 24, 2013, were false, were known to be false by Defendants Lucas and Bunting, and such statements were malicious.

WHEREFORE, Plaintiff, ANN DIETCHWEILER, prays for judgment in his favor against Defendants Bunting and Lucas in an amount of compensatory damages in excess of $75,000.00 and for punitive damages against Defendants Bunting and Lucas to be determined by a trier of fact.

NOAH DIETCHWEILER, by Michael
Dietchweiler, his father and next friend; and ANN
DIETCHWEILER, Plaintiffs,

BY:   FLYNN, PALMER, TAGUE, LYKE &
      JACOBSON,


By:   s/ Michael J. Tague
      Michael J. Tague

Michael J. Tague
Flynn, Palmer, Tague, Lyke & Jacobson
402 West Church Street
P. O. Box 1517
Champaign, IL  61824-1517
Telephone:    217-352-5181
Fax:          217-352-7964
e-mail:       fpt5law@aol.com

33

# WATSEKA HIGH SCHOOL

138 Belmont Ave.
Watseka, IL 60970
815-432-2486
FAX: 815-432-5578

James Bunting, Principal
Steven Lucas, Dean of Students

Kenneth Lee, Superintendent

## NOTICE OF STUDENT DISCIPLINARY ACTION

TO: _MR. + MRS. DIETCHWEILER_
FROM: Mr. Steven Lucas, Dean of Students
RE: Student Suspension Notice
DATE: _1-25-13_

This is to inform you that your child, _NOAH DIETCHWEILER_ has been suspended from Watseka High School for _10_ day(s). Specifically, your child has been suspended for: _POSSESSION OF DRUGS_
_NOAH_ may return to school on _MON-FEB, 11, 2013_ _CONSUMPTION OF DRUGS_

As a result of this suspension _NOAH_ will not be permitted on any unit school grounds until the suspension is over.

⊘ Yes, I agree to stay late to make up any missed school work while I was on suspension ╳⎯⎯⎯⎯⎯⎯⎯⎯⎯ ▓▓▓▓▓▓▓▓▓▓▓▓
⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ S/NOAH Dietchweiler

No, I do not agree to stay late to make up missed school work and I understand I will receive zeros for that missed work while I was suspended ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

*(The suspension will be served out of school.)
----------------------------------------------------------------------------------------------------
A student suspension hearing was held on _1-25-13_ and attended by: Steven Lucas and _NOAH_ ⎯⎯⎯⎯⎯

At this hearing, _NOAH_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯ was afforded his/her procedural due process student rights, I.E. the opportunity to present a defense, to explain the circumstances of the actions in question, and/or prove innocence.

Student Signature: X ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ S/ NOAH Dietchweiler
Dean of Students: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
S/STEVEN LUCAS



EXHIBIT " _1_ "

# LaBeau, Dietchweiler & Associates, P.C.

### Attorneys and Counsellors at Law

### 200 East Court Street, Suite 700
### Kankakee, Illinois 60901

Robert LaBeau                                                                          815-933-6637
Michael L. Dietchweiler                                                                815-432-4999
    Of Counsel

January 30, 2013

Kenneth Lee, Superintendent
Iroquois County (USD #9)
1411 West Lafayette
Watseka, IL 60970

RE: Watseka High School
     Suspension of Noah Dietchweiler
     D/O/S 1-25-13

Dear Mr. Lee:

This correspondence is to give the School District Notice under Section 1 of the school's grievance procedure, paragraph #6, request review of the suspension of my son, Noah Dietchweiler, from Watseka High School on January 25, 2013, and Expungement of said Suspension Record(s), to advise you of the witnesses and evidence to be presented on behalf of Noah at the Review and to request the list of the School's witnesses and all other evidence to be introduced by the school at the requested procedure.

On January 25th, 2013 my wife was present at the High School parking lot to pick up our son. At approximately 3:30pm, she received a call requesting her presence at the Dean's office. Upon her arrival, she was told by Dean Lucas that Noah was being suspended because he didn't report known drug activity to the school. The Principal called me and connected the call to his speaker, I was told that Noah had taken drugs at school and he was being suspended for ten (10) days. A "Notice of Student Disciplinary Action" was then handed to Noah, a copy of which is attached hereto as Exhibit 1.

When Noah left the school with his mother he told her that he was called into the office and told that "some student" had accused him of buying and taking drugs at school and "he could either admit the accusation and receive a 10 day suspension or be expelled from school." Noah responded with one word "whatever". No summary of evidence was given to him, no chance for Noah to deny the charge was given and explained to him and no opportunity to explain his version of the events was offered. He wasn't told what day he supposedly engaged in wrongful activity, who his accusers were, or even where the alleged action took place.

When I returned home from Kankakee, Noah insisted he had not taken or possessed any drugs at school. He was extremely emotional but when I told him we would drug test him, he seemed to calm down. I called Dr. Brian Oloffson, the designated FAA representative in Kankakee, explained the situation and requested a drug test be done upon Noah all according to NIDA standards. The Doctor instructed me to bring Noah to

**EXHIBIT** "2"

the Emergency Room at Riverside Hospital. When we arrived at Riverside, Dr. Oloffson conducted a Drug Screening and a NIDA three (3) sample test all according to well established procedures. The drug screening conclusively indicated no drugs were taken by Noah on 1-25-13. Upon returning home from the hospital, I emailed Mr. Bunting a Request for Appeal of the Suspension based upon the results of the Drug Screening.

On Monday, I was informed the NIDA test came back with zero (0) metabolic evidence of Ativan which is a standard far in excess of determination of recent use. Further, I was informed that said drug shows up for 3 to 5 days on such tests. That same day, Monday, 1-28-13, I went to the school to talk to Mr. Bunting about the test and give him a copy of the test results. Mr. Bunting told me an "appeal" was pending and I would get a letter telling me the date and time of the procedure. He was totally disinterested in the results of the drug tests and refused copies of the reports which exonerate Noah.

I contacted a polygraph examiner to test Noah's statements made to me and was told that such tests are generally not accepted by school officials in such matters. I declined to go forward with the polygraph test based upon the examiner's opinion, the drug test results and the numerous flagrant violations of the school's published rules concerning suspensions, 14th Amendment due process violations, and violations of Illinois Statute 105 ILS 5/10-22.6

The request for review of Noah's suspension is based upon:

1) The fact that Noah passed an extensive drug test series confirming he took no drugs on 1-25-13 and had no drug metabolites in his system indicating he had not taken any drugs in the detectable past; &

2) My wife was told the suspension was for not informing school officials of wrongdoing by others, which is not a violation of Watseka's published rules; &

3) Noah's due process rights were violated by:
   a) He was not informed of who told school officials he was involved in drug activity; &
   b) Not giving Noah an opportunity to present his version of events in defense or mitigation of the accusation(s); &
   c) Not obtaining or informing Noah of any physical evidence or lack thereof; &
   d) Not having any credible evidence against Noah; &
   e) Not reviewing the drug test results exonerating Noah; &
   f) Deciding on punishment before hearing Noah's version of events; &
   g) Not following Watseka's published Rules of Discipline by:

      (i) Not giving Noah sufficient written Notice of When and Where alleged violations took place; &
      (ii) Not giving Noah's parent timely written Notice by Certified Mail of the suspension; &
      (iii) Not providing Noah with Notice of Review Rights or procedure therefore; &
      (iv) Not providing Noah's parents with Notice of Review Rights or Procedure therefore; &
      (v) Not providing the Notice to Noah and his parents in the format mandated by the Watseka Suspension Procedures paragraph (C) (page 43 of handbook)
      (vi) Not having the President of the School Board fix the time and place of the Review Hearing as per paragraph (D) of the Suspension Procedures (pages 43 of handbook); &

(vii) Not sending Noah and his parents current Student Disciplinary Rules as mandated by the Watseka published procedure; &

(viii) The Board of Education not delegating the power of suspension to the Principle or dean of Students by formal Resolution as mandated by 105 ILCS 5/10 – 22.6 et. seg.

Along with the Request for Review, please provide me with the following pre-review disclosures:

1) Any and all updates of Watseka's Disciplinary Procedures made since the publication of the Student Handbook; &

2) Any and all updates of Watseka's Suspension and Review procedures made since the publication of the Student Handbook; &

3) All records, written memoranda, magnetic media, emails, letters, correspondence and/or notes of correspondence concerning all drug related incidents and/or investigations at Watseka High School from 1-1-13 to the present; &

4) A list of all witnesses the school officials intend to call at the Review Hearing and a detailed statement of the anticipated testimony; &

5) A list of all evidence the school officials intend to introduce at the Review hearing; &

6) The enabling Resolution of the School Board/Board of Education allowing the Principal and or the Dean of Students to act on their behalf in suspension matters.

Noah's Attorney may introduce and/or present the following at the Review Hearing:

1) Noah's statement(s) concerning –
   (a) His noninvolvement in drugs at Watseka High School
   (b) He was not told who made statements against him; &
   (c) He was not given an opportunity to present his version of events; &
   (d) The timing, manner, and method he was threatened to either take a suspension or be expelled; &
   (e) His version of the facts concerning all event of 1-25-13 as set forth hereinabove; &
   (f) The facts and circumstances of his drug test.

2) Ann Dietchweiler's statements concerning
   (a) What was told her by school officials; &
   (b) As set forth hereinabove what Notices she received and when: &
   (c) All events of 1-25-13 as set forth hereinabove:

3) Michael Dietchweiler's statement concerning:
   (a) What he was told by school officials on 1-25-13 as set forth hereinabove; &
   (b) What notices he received and when; &
   (c) All events of 1-25-13 as set forth hereinabove:

4) The drug test results from samples taken from Noah on 1-25-13 as attached hereto; &

5) The correspondence from Dr. Oloffson attached hereto;

6) Statements of students to be identified in the School's pre-review production setting forth the manner in which they were questioned.

I have enclosed documents for the Board's Review only. The documents enclosed are confidential and may only be used for the purposes of conducting a Review Hearing by

the Board, its attorney and school administrators. If it is the Board's intent not to permit affidavits of students, the drug test results and doctor's letters into evidence at the hearing or to afford them less weight than live testimony, please inform me of same immediately so I can arrange for live testimony.

It is unfortunate that to the date of this correspondence, Notice, Production Request and Voluntary Production, the school will not accept the scientific testing and voluntarily reverse and expunge the suspension. The refusal of the school to recognize the scientific evidence has made this review necessary and may result in Title VII charges and a 28 USC §1983 suit being brought in Federal Court due to the violation of Noah's and our due process rights. Any such suit will seek treble damages, court costs and attorney's fees. This correspondence shall act as Notice under § 1 of your school's Grievance Procedure (paragraph 6).

I have retained Michael Tauge to represent Noah at the Review Procedure and any subsequent proceedings. Until the time of the hearing/meeting, please respond and/or have your attorney respond to the request made herein to the undersigned at my home address of 1849 N 1800 East Road, Watseka, Illinois, 60970. Telephone 815-432-4999 or cell phone 851-867-0314 I would likewise welcome any resolution oriented discussion from you and/or your attorney.

Thank you in advance for your cooperation. I await notice of the date, time and place of the Suspension Review and your response(s) to my requests herein made.

Yours truly,

s/ Michael L. Dietchweiler

Michael L. Dietchweiler

MLD/ad
enclosures

# Students

## Student Discipline [1]

### Prohibited Student Conduct [2]

The school administration is authorized to discipline students for gross disobedience or misconduct, including but not limited to:

1. Using, possessing, distributing, purchasing, or selling tobacco materials. [3]

2. Using, possessing, distributing, purchasing, or selling alcoholic beverages. [4] Students who are under the influence of an alcoholic beverage are not permitted to attend school or school functions and are treated as though they had alcohol in their possession.

3. Using, possessing, distributing, purchasing, or selling:

   a. Any illegal drug, controlled substance, or cannabis (including marijuana and hashish). [5]

   b. Any anabolic steroid unless being administered in accordance with a physician's or licensed practitioner's prescription. [6]

   c. Any performance-enhancing substance on the Illinois High School Association's most current banned substance list unless administered in accordance with a physician's or licensed practitioner's prescription. [7]

   d. Any prescription drug when not prescribed for the student by a physician or licensed practitioner, or when used in a manner inconsistent with the prescription or prescribing physician's or licensed practitioner's instructions.

   e. Any inhalant, regardless of whether it contains an illegal drug or controlled substance: (a) that a student believes is, or represents to be capable of, causing intoxication, hallucination, excitement, or dulling of the brain or nervous system; or (b) about which the student engaged in behavior that would lead a reasonable person to believe that the student intended the inhalant to cause intoxication, hallucination, excitement, or dulling of the brain or nervous system. The prohibition in this section does not apply to a student's use of asthma or other legally prescribed inhalant medications.

   f. "Look-alike" or counterfeit drugs, including a substance not containing an illegal drug or controlled substance, but one: (a) that a student believes to be, or represents to be, an illegal drug or controlled substance; or (b) about which a student engaged in behavior that

---

[1] All districts must have a policy on student discipline, including corporal punishment (105 ILCS 5/10-20.14; 23 Ill.Admin.Code §1.280). Teachers and other certificated employees must maintain discipline (105 ILCS 5/24-24). Given the unique concerns facing school officials, school disciplinary codes are not required to be drafted as narrowly or with the same precision as criminal statutes. Bethel School Dist. v. Fraser, 106 S.Ct. 3159 (1986).

[2] Boards for elementary districts may customize the items listed as *prohibited student conduct* that clearly will not apply to their students.

[3] Federal law prohibits smoking within schools by anyone (Pro-Children Act of 1994, 20 U.S.C. §6081). Districts that fail to comply risk a civil penalty of up to $1,000 per violation per day. See policy 8:30, *Visitors to and Conduct on School Property*, for more information.

[4] Alcoholic beverages are defined in 235 ILCS 5/1-3.01 to 3.05.

[5] Controlled substance is defined in 720 ILCS 570/102; cannabis is defined in 720 ILCS 550/3. Either spelling, "marihuana" or "marijuana," is correct; however, "marijuana" is more common.

[6] Anabolic steroid is defined in 720 ILCS 570/102.

[7] 105 ILCS 25/2, added by P.A. 96-132 and recodified by P.A. 96-1000, requires IHSA to prohibit a student from participating in an IHSA-sponsored athletic competition unless the student has agreed not to use any performance-enhancing substances on IHSA's current banned drug list and to submit to performance-enhancing substance testing. See policy 7:240, *Conduct Code for Participants in Extracurricular Activities*.

would lead a reasonable person to believe that the student expressly or impliedly represented to be an illegal drug or controlled substance. 8

    g.  Drug paraphernalia, including devices that are or can be used to: (a) ingest, inhale, or inject cannabis or controlled substances into the body; and (b) grow, process, store, or conceal cannabis or controlled substances. 9

Students who are under the influence of any prohibited substance are not permitted to attend school or school functions and are treated as though they had the prohibited substance, as applicable, in their possession.

4.  Using, possessing, controlling, or transferring a "weapon" as that term is defined in the *Weapons* section of this policy, or violating the *Weapons* section of this policy. 10

5.  Using or possessing an electronic paging device. Using a cellular telephone, video recording device, personal digital assistant (PDA), or other electronic device in any manner that disrupts the educational environment or violates the rights of others, including using the device to take photographs in locker rooms or bathrooms, cheat, or otherwise violate student conduct rules. Prohibited conduct specifically includes, without limitation, creating, sending, sharing, viewing, receiving, or possessing an indecent visual depiction of oneself or another person through the use of a computer, electronic communication device, or cellular phone. Unless otherwise banned under this policy or by the Building Principal, all electronic devices must be kept powered-off and out-of-sight during the regular school day unless: (a) the supervising teacher grants permission; (b) use of the device is provided in a student's individualized education program (IEP); or (c) it is needed in an emergency that threatens the safety of students, staff, or other individuals. 11

6.  Using or possessing a laser pointer unless under a staff member's direct supervision and in the context of instruction.

7.  Disobeying rules of student conduct or directives from staff members or school officials. Examples of disobeying staff directives include refusing a District staff member's request to stop, present school identification, or submit to a search.

8.  Engaging in academic dishonesty, including cheating, intentionally plagiarizing, wrongfully giving or receiving help during an academic examination, and wrongfully obtaining test copies or scores.

---

8 "Look-alike" and counterfeit substances are defined in 720 ILCS 570/102. "Look-alike" drugs should be defined; an unpublished Ill. Court of Appeals decision in 2000 found a board policy prohibiting possession of "look-alikes" to have vagueness problems.

9 Drug paraphernalia is defined in 720 ILCS 600/2.

10 This language is broader than the *Weapons* section of this policy. The *Weapons* section contains the statutorily required punishment for "a student who is determined to have brought" a weapon to school along with the statutory definition of *weapon* (105 ILCS 5/10-22.6, amended by P.A. 96-633). The language in item #4 is broader because it prohibits "using, possessing, controlling, or transferring" a weapon in addition to violating the *Weapons* section.

11 105 ILCS 5/10-21.10 prohibits student possession of electronic paging devices, but State law leaves to local boards the discretion whether to prohibit student possession of cellular phones (105 ILCS 5/10-20.28). Camera phones are now common and their misuse could seriously invade a student's privacy. A board wanting a sweeping prohibition may use the following alternative for item 5:

Using or possessing a cellular telephone, electronic signaling device, two-way radio, video recording device, and/or other telecommunication device, unless authorized and approved by the Building Principal.

Operating transmitters designed to jam or block wireless communications violates the federal Communications Act of 1934 (47 U.S.C. §§301, 302a, and 333). Fines for a first offense can range as high as $11,000 for each violation or imprisonment for up to one year, and the device may also be seized by the U.S. government. 47 U.S.C. §§501-510.

Making a video recording or live video transmission of another person without their consent in a restroom, locker room, or changing room is a felony (720 ILCS 5/26-4). A minor who distributes or disseminates an indecent visual depiction of another minor through the use of a computer or electronic communication device may be subject to adjudication as a minor in need of supervision (705 ILCS 405/3-40, added by P.A. 96-1087, eff. 1-1-11).

9.  Engaging in hazing or any kind of bullying or aggressive behavior that does physical or psychological harm to a staff person or another student, or urging other students to engage in such conduct. Prohibited conduct specifically includes, without limitation, any use of violence, intimidation, force, noise, coercion, threats, stalking, harassment, sexual harassment, public humiliation, theft or destruction of property, retaliation, hazing, bullying, bullying using a school computer or a school computer network, or other comparable conduct. 12

10. Causing or attempting to cause damage to, or stealing or attempting to steal, school property or another person's personal property. 13

11. Being absent without a recognized excuse; State law and School Board policy regarding truancy control will be used with chronic and habitual truants. 14

12. Being involved with any public school fraternity, sorority, or secret society, by: (a) being a member; (b) promising to join; (c) pledging to become a member; or (d) soliciting any other person to join, promise to join, or be pledged to become a member. 15

13. Being involved in gangs or gang-related activities, including displaying gang symbols or paraphernalia. 16

14. Violating any criminal law, including but not limited to, assault, battery, arson, theft, gambling, eavesdropping, and hazing.

---

12 All districts must have a policy on bullying (105 ILCS 5/27-23.7(d), amended by P.A. 96-952). Policy 7:180, *Preventing Bullying, Intimidation, and Harassment*, contains the statutory definition of *bullying*.

105 ILCS 5/10-20.14 requires boards, in consultation with their parent-teacher advisory committees and other community-based organizations, to include provisions in their student discipline policy to address aggressive behavior, including bullying. Implementing procedures must include a method for informing parents/guardians when their child or ward engaged in aggressive behavior as well as early intervention procedures based upon available community and district resources. See 7:190-E, *Aggressive Behavior Reporting Letter and Form*.

A trial court's order enjoining a student's expulsion for committing aggressive behavior was overturned in *Wilson ex rel. Geiger v. Hinsdale Elementary School Dist. 181*, 810 N.E.2d 637 (Ill.App.2. 2004). The board expelled an 11-year-old student for bringing 2 CDs to school containing a song entitled, "Gonna Kill Mrs. Cox's Baby." Mrs. Cox was the student's pregnant science teacher. The student was expelled for the remainder of the school year for violating the district's policy prohibiting aggressive behavior. The Court of Appeals reversed the trial court's temporary restraining order (that had stopped the penalty's imposition until after a trial) finding that the student had violated school rules subjecting him to exclusion and that the penalty was not unreasonable, arbitrary, capricious, or oppressive.

See also *Gendelman v. Glenbrook North High School and Northfield Township School District 225*, 2003 WL 21209880 (N.D.Ill., 2003)(student suspensions for hazing were upheld).

A person commits a felony hate crime when, by reason of the actual or perceived race, color, creed, religion, ancestry, sexual orientation, disability, or national origin of another person, he or she commits assault or battery (720 ILCS 5/12-7.1). The penalty is heightened when the offense is committed in a school or administrative facility.

720 ILCS 5/26-1, amended by P.A. 96-772, makes transmitting a threat of violence, death, or bodily harm directed against persons at a school, school function, or school event, whether or not school is in session, or causing such a threat to be transmitted, a Class 4 felony.

13 720 ILCS 5/26-1, amended by P.A. 96-772, makes threatening to destroy a school building or school property, whether or not school is in session, or causing such a threat to be transmitted, a Class 4 felony.

14 105 ILCS 5/26-2a, 5/26-9, and 5/26-12. See policy 6:110, *Programs for Students At Risk of Academic Failure and/or Dropping Out of School and Graduation Incentives Program*, and 7:70, *Attendance and Truancy*.

15 State law requires schools to suspend or expel any student who engages in this activity (105 ILCS 5/31-3).

16 See *Kelly v. Board of Educ. of McHenry Community High School Dist. 156*, 2007 WL 114300 (N.D.Ill., 2007)(upheld student's expulsion for drawing gang symbols while at school; testimony that the danger posed by gang signs and the presence of gangs at school supported the board's insistence on strict enforcement of board policy prohibiting gang related behavior and made expulsion a proper remedy). Significantly, the General Assembly recognized in 105 ILCS 5/27-23.7(a), that "[g]iven the higher rates of criminal offending among gang members, as well as the availability of increasingly lethal weapons, the level of criminal activity by gang members has taken on new importance for law enforcement agencies, schools, the community, and prevention efforts."

740 ILCS 147/15 *et seq*, allows a school district to bring a civil suit against a gang, gang officers, or gang members for losses it suffers due to their criminal activity.

15. Engaging in any activity, on or off campus, that interferes with, disrupts, or adversely affects the school environment, school operations, or an educational function, including but not limited to, conduct that may reasonably be considered to: (a) be a threat or an attempted intimidation of a staff member; or (b) endanger the health or safety of students, staff, or school property. [17]

For purposes of this policy, the term "possession" includes having control, custody, or care, currently or in the past, of an object or substance, including situations in which the item is: (a) on the student's person; (b) contained in another item belonging to, or under the control of, the student, such as in the student's clothing, backpack, or automobile; (c) in a school's student locker, desk, or other school property; or (d) at any location on school property or at a school-sponsored event. [18]

Efforts, including the use of early intervention and progressive discipline, shall be made to deter students, while at school or a school-related event, from engaging in aggressive behavior that may reasonably produce physical or psychological harm to someone else. The Superintendent or designee shall ensure that the parent/guardian of a student who engages in aggressive behavior is notified of the incident. [19] The failure to provide such notification does not limit the Board's authority to impose discipline, including suspension or expulsion, for such behavior.

No disciplinary action shall be taken against any student that is based totally or in part on the refusal of the student's parent/guardian to administer or consent to the administration of psychotropic or psychostimulant medication to the student. [20]

The grounds for disciplinary action, including those described more thoroughly later in this policy, apply whenever the student's conduct is reasonably related to school or school activities, including, but not limited to: [21]

---

[17] A catchall provision, e.g., this one, gives staff members authority to respond to unforeseen situations.

If the board adopts a mandatory uniform policy (see 7:165, *School Uniforms*), add the following item to the list as number 16: "Failing to comply with the mandatory uniform policy, but only after repeated attempts to secure compliance, such as conferences with parents/guardians, have been unsuccessful."

[18] "Possession" should be defined to avoid vagueness problems.

[19] See footnote 12.

[20] Mandated by 105 ILCS 5/10-20.36.

[21] A school's power over students does not cease when students leave the campus. However, Illinois statutes do not describe when a school may suspend or expel a student. Thus, board policy must provide a jurisdictional statement telling students and staff the circumstances under which the district will take disciplinary action. Rules taking jurisdiction of off-campus misconduct generally survive the test of reasonableness if they are limited to situations having a direct nexus to the school. Jurisdictional rules in board policy should generally be as broad as possible in order to give staff members authority to respond to unforeseen situations. However, a countervailing interest concerns liability for off-campus student injuries, i.e., the greater the jurisdiction a district is willing to impose, the greater the scope of liability it may be assuming. Ultimately, a decision whether to discipline for off-campus misconduct requires a factual inquiry to determine the degree of nexus and impact on the school. There are many decisions on disciplining a student for off-campus misconduct; for examples, see: *Morse v. Frederick*, 127 S.Ct. 2618 (2007) (held school's compelling interest in stopping student drug abuse allows schools to prohibit student speech that maybe reasonably regarded as promoting illegal drug use). *Boucher v. School District of Greenfield*, 134 F.3d 821 (7th Cir., 1998)(upheld expulsion for off-campus speech – an article explaining how to hack into the school's computers); *Giles v. Brookville Area School District*, 669 A.2d 1079 (Pa. Commw. 1995)(upheld expulsion for selling marijuana to another student off-campus where negotiations took place on campus); *J.S. v. Bethlehem Area School District*, 807 A.2d 847 (Pa. 2002)(suspension upheld for posting on a private web site derogatory, offensive, and threatening statements directed toward a teacher); *Wisniewski v. Board of Education of Weedsport Cent. School District*, 494 F.3d 34 (2nd Cir. 2007), (upheld suspension for off-campus speech - an instant message icon illustrating a pistol firing a bullet at teacher's head with words "kill Mr. Vandermolen."); *Doe v. Pulaski County Special School*, 306 F.3d 616 (8th Cir. 2002) (vacated holding in *Doe v. Pulaski County Special School*, 263 F.3d 833 (8th Cir., 2001), holding that the school board did not violate the student's First Amendment rights when it expelled him for writing a letter at home referring to killing his girlfriend).

Note that the law is different regarding participants in athletics and extracurricular activities. See policy 7:240, *Conduct Code for Participants in Extracurricular Activities*.

1. On, or within sight of, school grounds before, during, or after school hours or at any time;

2. Off school grounds at a school-sponsored activity or event, or any activity or event that bears a reasonable relationship to school;

3. Traveling to or from school or a school activity, function, or event; or

4. Anywhere, if the conduct interferes with, disrupts, or adversely affects the school environment, school operations, or an educational function, including, but not limited to, conduct that may reasonably be considered to:  (a) be a threat or an attempted intimidation of a staff member; or (b) endanger the health or safety of students, staff, or school property. 22

<u>Disciplinary Measures</u> 23

Disciplinary measures may include: 24

1. Disciplinary conference.

2. Withholding of privileges.

3. Seizure of contraband.

4. Suspension from school and all school activities for up to 10 days, provided that appropriate procedures are followed. 25 A suspended student is prohibited from being on school grounds.

5. Suspension of bus riding privileges, provided that appropriate procedures are followed. 26

6. Expulsion from school and all school-sponsored activities and events for a definite time period not to exceed 2 calendar years, provided that the appropriate procedures are followed. 27 An expelled student is prohibited from being on school grounds. 28

---

According to the Civil No Contact Order Act, a judge may order a student who has committed non-consensual sexual contact against another student, or who has aided and abetted such an act, to transfer to another school; the parents/guardians are responsible for transportation and other costs associated with the transfer (740 ILCS 22/213, added by P.A. 96-311). The school district is not a party to a petition for a Civil No Contact order, and will probably not be notified before it is issued. School officials should immediately seek the board attorney's advice on managing such the order.

22 Suspending or expelling a student for off-campus misconduct is problematic when the school's jurisdiction is premised on nothing more than "the student's presence at school may reasonably be considered to create an interference with school purposes or an educational function." If possible, other grounds for jurisdiction should be added. The factual context will determine jurisdiction. Even when there is no other jurisdictional ground, if the nature of the conduct is particularly troublesome, a detrimental impact on the school can be inferred. See <u>Doe v. Superintendent of Schools of Stoughton</u>, 767 N.E.2d 1054 (Mass., 2002)(suspension for off-campus commission of a felony was upheld).

23 Aside from procedural due process protection, students have a constitutional substantive due process right. This right protects them from an abuse of government power which "shocks the conscience." While the scope of substantive due process is very limited, it is available to students who believe they were subject to arbitrary and excessive discipline. Generally, however, school officials need not fear being found guilty of a substantive due process violation. Federal courts are loath to second-guess school officials.

An example of the judicial reluctance to interfere is <u>Tun v. Whitticker</u>, 398 F.3d 899 (7th Cir., 2005). A student named Brandon brought a substantive due process claim against the school for expelling him without evidence of wrongdoing. Brandon and three others were expelled for allowing nude pictures of themselves to be taken in the school shower. After Brandon appealed using the school's procedures, the expulsion was rescinded and his record expunged of any reference to the incident. Brandon, however, brought a federal court action alleging that his substantive due process rights were violated. While the Court believed that school officials overacted to boys "just horsing around," it did not believe the expulsion amounted to a substantive due process violation - it fell short of the required "shocks the conscience" standard.

24 Most school attorneys advise against using a grade reduction as a disciplinary measure. One case upheld the application of such a policy. <u>Knight v. Board of Education</u>, 348 N.E.2d 299 (Ill.App. 4, 1976). Another case, however, found unconstitutional, a grade reduction policy requiring 9-week grades to be reduced 4% for each day of a suspension. <u>Smith v. School City of Hobart</u>, 811 F.Supp. 391 (N.D.Ind., 1993).

25 105 ILCS 5/10-22.6. The next sentence is optional.

26 Id.

27 105 ILCS 5/10-22.6. The Indiana Supreme Court upheld a policy to deny semester credit to a student expelled anytime during the semester. <u>South Gibson School Board v. Sollman</u>, 768 N.E.2d 437 (Ind. 2002). An optional provision, such as the following, should first be discussed with the board's attorney before adoption:

7. Notifying juvenile authorities or other law enforcement whenever the conduct involves illegal drugs (controlled substances), "look-alikes," alcohol, or weapons.

8. Notifying parents/guardians.

9. Temporary removal from the classroom.

10. In-school suspension for a period not to exceed 5 school days.  The Building Principal or designee shall ensure that the student is properly supervised. 29

11. After-school study or Saturday study 30 provided the student's parent/guardian has been notified.  If transportation arrangements cannot be agreed upon, an alternative disciplinary measure must be used.  The student must be supervised by the detaining teacher or the Building Principal or designee.

12. Community service with local public and nonprofit agencies that enhances community efforts to meet human, educational, environmental, or public safety needs. 31 The District will not provide transportation. School administration shall use this option only as an alternative to another disciplinary measure giving the student and/or parent/guardian the choice.

A student who is subject to suspension or expulsion may be eligible for transfer to an alternative school program. 32

Corporal punishment is prohibited. Corporal punishment is defined as slapping, paddling, or prolonged maintenance of students in physically painful positions, or intentional infliction of bodily harm.  Corporal punishment does not include reasonable force as needed to maintain safety for students, staff, or other persons, or for the purpose of self-defense or defense of property. 33

Weapons 34

A student who is determined to have brought one of the following objects to school, any school-sponsored activity or event, or any activity or event that bears a reasonable relationship to school shall be expelled for a period of at least one calendar year but not more than 2 calendar years:

1. A firearm, meaning any gun, rifle, shotgun, or weapon as defined by Section 921 of Title 18 of the United States Code (18 U.S.C. § 921), firearm as defined in Section 1.1 of the Firearm Owners Identification Card Act (430 ILCS 65/), or firearm as defined in Section 24-1 of the Criminal Code of 1961 (720 ILCS 5/24-1).

2. A knife, brass knuckles, or other knuckle weapon regardless of its composition, a billy club, or any other object if used or attempted to be used to cause bodily harm, including "look alikes" of any firearm as defined above.

---

Unless the Building Principal determines otherwise, a student expelled anytime during a semester will be denied credit for the semester regardless of whether the student had completed sufficient course work to earn a passing grade before being expelled.

28 Optional (105 ILCS 5/10-22.6).

29 State law does not cover in-school suspensions. Generally, an educational program must be included in an in-school suspension; otherwise, it may become a regular suspension with procedural requirements.

30 Teachers may not be required to teach on Saturdays (105 ILCS 5/24-2).

31 Optional. See Herndon v. Chapel Hill-Carrboro City Bd., 89 F.3d 174 (C.A. 4, 1996)(upheld policy requiring students to complete community service in order to graduate).

32 105 ILCS 5/10-22.6.

33 This paragraph paraphrases 105 ILCS 5/24-24.

34 This section restates 105 ILCS 5/10-22.6, amended by P.A. 96-633. See also the Gun-Free Schools Act, 20 U.S.C. §7151 et seq. This section contains the statutorily required punishment for bringing a weapon to school along with the statutory definition of weapon (105 ILCS 5/10-22.6, amended by P.A. 96-633). Item #4 in the Prohibited Student Conduct section is broader because it prohibits "using, possessing, controlling, or transferring" a weapon in addition to violating the Weapons section.

When preparing for a due process hearing, a principal needs to use the applicable State and federal law definitions of "firearm"– not just The School Code. Analyzing the student's circumstances on a case-by-case basis may avoid a judicial finding that an expulsion is too severe. See Washington v. Smith, 618 N.E.2d 561 (Ill.App., 1993).

The expulsion requirement under either paragraph 1 or 2 above may be modified by the Superintendent, and the Superintendent's determination may be modified by the Board on a case-by-case basis. The Superintendent or designee may grant an exception to this policy, upon the prior request of an adult supervisor, for students in theatre, cooking, ROTC, martial arts, and similar programs, whether or not school-sponsored, provided the item is not equipped, nor intended, to do bodily harm. 35

Required Notices

A school staff member shall immediately notify the office of the Building Principal in the event that he or she: (1) observes any person in possession of a firearm on or around school grounds; however, such action may be delayed if immediate notice would endanger students under his or her supervision, (2) observes or has reason to suspect that any person on school grounds is or was involved in a drug-related incident, or (3) observes a battery committed against any staff member. 36 Upon receiving such a report, the Building Principal or designee shall immediately notify the local law enforcement agency, State Police, and any involved student's parent/guardian. 37 "School grounds" includes modes of transportation to school activities and any public way within 1000 feet of the school, as well as school property itself.

Delegation of Authority

Each teacher, and any other school personnel when students are under his or her charge, is authorized to impose any disciplinary measure, other than suspension, expulsion, corporal punishment, or in-school suspension, that is appropriate and in accordance with the policies and rules on student discipline. Teachers, other certificated educational employees, and other persons providing a related service for or with respect to a student, may use reasonable force as needed to maintain safety for other students, school personnel, or other persons, or for the purpose of self-defense or defense of property. 38 Teachers may temporarily remove students from a classroom for disruptive behavior. 39

The Superintendent, Building Principal, Assistant Building Principal, or Dean of Students is authorized to impose the same disciplinary measures as teachers and may suspend students guilty of gross disobedience or misconduct from school (including all school functions) and from riding the school bus, up to 10 consecutive school days, provided the appropriate procedures are followed. 40 The Board may suspend a student from riding the bus in excess of 10 school days for safety reasons. 41

---

35 Optional.

36 105 ILCS 5/10-27.1A, 5/10-27.1B, and 5/10-21.7. "School grounds" includes the real property comprising any school, any conveyance used to transport students to school or a school-related activity, and any public way within 1,000 feet of any school ground. To satisfy the reporting requirement, ISBE created the School Incident Reporting System (SIRS), a web-based application on IWAS for schools to report incidents electronically. Reporting on SIRS does not satisfy the requirement to report incidents to local law enforcement authorities.

37 Id. State law imposes this duty to report firearm possession only on school officials; this duty may be also imposed on volunteers and community members. Only staff members, however, are vulnerable to committing a petty offense for their failure to report, and only staff members are protected from civil or criminal liability that might arise as a result of making a report (although the liability potential for anyone making a report is remote).

The building principal must notify the student's parents/guardians only when the alleged offense is firearm possession. The policy expands this notification duty; a board disinclined to do this should substitute the following sentence:
   Upon receiving such a report, the Building Principal or designee shall immediately notify the applicable local law enforcement agency, State Police, and, if a student is reportedly in possession of a firearm, also the student's parents/guardians.

38 Required by 105 ILCS 5/24-24 and 23 Ill.Admin.Code §1.280.

39 Id.

40 Required by 105 ILCS 5/10-22.6, amended by P.A. 96-998.

41 Id.

Student Handbook

The Superintendent, with input from the parent-teacher advisory committee, 42 shall prepare disciplinary rules implementing the District's disciplinary policies. These disciplinary rules shall be presented annually to the Board for its review and approval.

A student handbook, including the District disciplinary policies and rules, shall be distributed to the students' parents/guardians within 15 days of the beginning of the school year or a student's enrollment.

LEGAL REF.:  Gun-Free Schools Act, 20 U.S.C. §7151 et seq.
Pro-Children Act of 1994, 20 U.S.C. §6081.
105 ILCS 5/10-20.5b, 5/10-20.14, 5/10-20.28, 5/10-20.36, 5/10-21.7, 5/10-21.10, 5/10-22.6, 5/10-27.1A, 5/10-27.1B, 5/24-24, 5/26-12, 5/27-23.7, and 5/31-3.
23 Ill.Admin.Code §1.280.

CROSS REF.:  2:240 (Board Policy Development), 5:230 (Maintaining Student Discipline), 6:110 (Programs for Students At Risk of Academic Failure and/or Dropping Out of School and Graduation Incentives Program), 7:70 (Attendance and Truancy), 7:130 (Student Rights and Responsibilities), 7:140 (Search and Seizure), 7:150 (Agency and Police Interviews), 7:160 (Student Appearance), 7:170 (Vandalism), 7:180 (Preventing Bullying, Intimidation, and Harassment), 7:200 (Suspension Procedures), 7:210 (Expulsion Procedures), 7:220 (Bus Conduct), 7:230 (Misconduct by Students with Disabilities), 7:240 (Conduct Code for Participants in Extracurricular Activities), 7:270 (Administering Medicines to Students), 7:310 (Restrictions on Publications and Written or Electronic Material), 8:30 (Visitors to and Conduct on School Property)

---

42 The board must establish and maintain a parent-teacher advisory committee to develop guidelines on student discipline. See policy 2:150, *Committees*. This policy's dissemination requirements are from 105 ILCS 5/10-20.14.

A comprehensive student handbook can provide notice of the school's conduct rules, extracurricular and athletic participation requirements, and other important information. The handbook can be developed by the building principal, but should be reviewed and approved by the superintendent and board.

7:190

## Students

### Suspension Procedures

The following are suspension procedures: 1

1.  Before suspension, the student shall be provided conference during which the charges will be explained and the student will be given an opportunity to respond to the charges.

2.  A pre-suspension conference is not required and the student can be immediately suspended when the student's presence poses a continuing danger to persons or property or an ongoing threat of disruption to the educational process. In such cases, the notice and conference shall follow as soon as practicable.

3.  Any suspension shall be reported as soon as possible to the student's parent(s)/guardian(s). A written notice of the suspension shall state the reasons for the suspension, including any school rule which was violated and a notice to the parent(s)/guardian(s) of their right to a review of the suspension. The Board shall be notified of the suspension.

4.  Upon request of the parent(s)/guardian(s), a review of the suspension shall be conducted by the School Board or a hearing officer appointed by the Board. At the review, the parent(s)/guardian(s) may appear and discuss the suspension with the Board or its hearing officer and may be represented by counsel. After presentation of the evidence or receipt of the hearing officer's report, the Board shall take such action as it finds appropriate.

LEGAL REF.:  Goss v. Lopez, 95 S.Ct. 729 (1975).
             Sieck v. Oak Park River-Forest High School, 807 F.Supp. 73 (N.D. Ill., E.D., 1992).
             105 ILCS 5/10-22.6 (b)


CROSS REF.:  7.130, 7.190 (Student Displine)

---

1 Districts must have a policy on student discipline (105 ILCS 5/10-20.14; 23 Ill. Admin. Code §§ 1.210 and 1.280). Suspension procedures are required by State law (105 ILCS 5/10-22.6(b). The right to attend school is a property right protected by the due process clause of the U.S. Constitution. Goss v. Lopez, 95 S.Ct. 729 (1975). Imposing a short deprivation of this property right by suspending a student for 10 or fewer days requires only minimal due process. The student must be generally informed of the reasons for the possible suspension, and be permitted to tell his/her version of the story. Making a decision to suspend before the hearing violates the basic due process requirement that the hearing be meaningful. Sieck v. Oak Park River-Forest High School, 807 F.Supp. 73 (N.D. Ill., E.D., 1992).

# Students

## Expulsion Procedures [1]

The Superintendent or designee shall implement expulsion procedures that provide, at a minimum, for the following: [2]

1. Before a student may be expelled, the student and his or her parent(s)/guardian(s) shall be provided a written request to appear at a hearing to determine whether the student should be expelled. The request shall be sent by registered or certified mail, return receipt requested. [3] The request should include: [4]

   a. The reasons for the proposed expulsion as well as the conduct rule the student is charged with violating.

   b. The time, date, and place for the hearing.

   c. A short description of what will happen during the hearing.

   d. A statement indicating that The School Code allows the School Board to expel a student for a definite period of time not to exceed 2 calendar years, as determined on a case by case basis.

   e. A request that the student or parent(s)/guardian(s) inform the District if the student will be represented by an attorney and, if so, the attorney's name.

2. Unless the student and parent(s)/guardian(s) indicate that they do not want a hearing or fail to appear at the designated time and place, the hearing will proceed. It shall be conducted by the School Board or a hearing officer appointed by it. [5] If a hearing officer is appointed, he or she shall report to the Board the evidence presented at the hearing and the Board shall take such final action as it finds appropriate.

3. During the expulsion hearing, the Board or hearing officer shall hear evidence concerning whether the student is guilty of the gross disobedience or misconduct as charged. The student and his or her parent(s)/guardian(s) may be represented by counsel, offer evidence, present witnesses, cross-examine witnesses who testified, and otherwise present reasons why the

---

[1] State or federal law requires districts to have a policy on student discipline (105 ILCS 5/10-20.14; 23 Ill.Admin.Code §1.280). State or federal law controls this policy's content. The discipline of special education students must comply with the Individuals With Disabilities Education Improvement Act of 2004 and the Illinois State Board of Education's Special Education rules. See 7:230, *Misconduct by Students with Disabilities*.

[2] Expulsion procedures are required by State law (105 ILCS 5/10-22.6(a). The right to attend school is a property right protected by the due process clause of the U.S. Constitution. Goss v. Lopez, 95 S.Ct. 729 (1975). Thus, an expulsion of more than 10 days requires due process including, but not limited to, notice of the charges, an opportunity to hear the evidence in support of the charges, an opportunity to refute them, and a decision by an impartial decision maker based on the evidence presented. The adequacy of an expulsion hearing is frequently challenged; the board attorney should be consulted as every due process analysis will be highly fact specific. See footnote 5, *infra*.

[3] 105 ILCS 5/1-3.5, added by P.A. 95-790, states that whenever the term "registered mail" is used in The School Code, it shall be deemed to authorize the use of either registered mail or certified mail, return receipt requested.

[4] Due process includes the right to receive a notice with enough detail and with enough time to prepare a defense. Items d and e are optional.

[5] A board may hear student disciplinary cases in a meeting closed to the public (5 ILCS 120/2(c)(9).

student should not be expelled. 6 After presentation of the evidence or receipt of the hearing officer's report, the Board shall decide the issue of guilt and take such action as it finds appropriate.

LEGAL REF.:    105 ILCS 5/10-22.6(a).

                  Goss v. Lopez, 95 S.Ct. 729 (1975).

CROSS REF.:    7:130 (Student Rights and Responsibilities), 7:190 (Student Discipline), 7:200 (Suspension Procedures), 7:230, (Misconduct by Students with Disabilities)

---

6 A student's opportunity to offer evidence, present witnesses, cross-examine witnesses, and otherwise present reasons why the student should not be expelled generally outweighs a district's interest in not providing the student these opportunities. See, Camlin v. Beecher Comm. Sch. Dist., 791 N.E.2d 127 (Ill.App. 3d Dist. 2003) and Colquitt v. Rich Twp. H S Dist., 699 N.E.2d 1109 (Ill.App. 1st Dist. 1998). Determining whether denying these opportunities would violate a student's right to due process requires a careful analysis of the facts and federal case law. See Brown v. Plainfield Dist., 500 F. Supp. 996 (N.D. Ill. 2007) and Coronado v. Valleyview Sch. Dist., 2008 WL 3316022 (7th Cir. 2008).

**Kenneth C. Lee**
Superintendent
leek@watseka-u9.k12.il.us

# Iroquois County CUSD #9
1411 W. Lafayette Street
Watseka, IL 60970

815-432-4931
815-432-6889 (fax)

January 30, 2013

Mr. and Mrs. Dietchweiler
1849 N 1800 East Rd.
Watseka, IL 60970

Dear Mr and Mrs. Dietchweiler:

Pursuant to the Student Discipline Policy of Iroquois County CUSD #9 (specifically Board Policy7:200), you have requested a review of the suspension of your son Noah Dietchweiler by the Iroquois County CUSD #9 Board of Education. This hearing is scheduled for February 5, 2012 at 6:00 PM. The hearing will be conducted at the Iroquois County CUSD #9 Office, which is located at 1411 West Lafayette Street, Watseka, IL.

Noah is entitled to be represented by an advocate (including counsel) of his choosing at his own expense. Due to our prior conversation, I anticipate that you will exercise this right.

Please contact me at 815.432.4931 if you have questions.

Sincerely,

▐▬▬▬▬▬▬  s/ KENNETH C. Lee
Kenneth C. Lee
Superintendent

Enclosure

**EXHIBIT 3**

Iroquois County Community Unit School District No. 9 is an Equal Opportunity Employer which does not discriminate on the basis of race, color, sexual orientation, gender identity, homelessness, religion, marital status, citizenship providing the person is authorized to work in the United States, handicap (Sec. 504-Rehabilitation Act of 1973), gender, age between 16 and 65, national origin or disability (Americans with Disabilities Act of 1990), within the limitations required by law.

# Miller, Tracy, Braun, Funk & Miller, Ltd.



Thomas R. Miller
William F. Tracy II
Brian A. Braun
S. Jeff Funk
J. Christian Miller
Brandon K. Wright
Luke M. Feeney

T.J. Wilson
David J. Braun

Of Counsel

Megan Guenther
John M. Collins, Jr.
(1946 – 2001)

Please respond to the Monticello Office

Writer's Direct Email: jfunk@millertracy.com

February 1, 2013
(Facsimile Transmission:
217-352-7964
and U.S. Mail)

316 South Charter
P.O. Box 80
Monticello, Illinois 61856

Telephone: 217-762-9416
Facsimile: 217-762-9713

P.O. Box 3703
Champaign, Illinois 61826

Telephone: 217-359-5012
Facsimile: 217-355-6246

www.millertracy.com

Mr. Michael Tague
Flynn, Palmer & Tague
402 W. Church
Champaign, IL 61824

Re:   Iroquois County C.U.S.D. No. 9/Noah Dietchweiler Suspension Review Hearing

Dear Mr. Tague:

Please be advised I represent the Board of Education of Iroquois County Community Unit School District No. 9. I understand that you have been retained by Michael Dietchweiler to represent his son in a suspension review hearing at 6:00 p.m. on Tuesday, February 5, 2013. As you may know, your client sent a letter dated January 30, 2013, to the Superintendent requesting certain information, a copy of which letter is attached. As he indicated in the letter that you were representing him, I am responding to you rather than to him. Please instruct your client not to directly contact the Superintendent, Board members or other representatives of the School District concerning this matter.

As you are aware, Section 10-22.6 of the School Code authorizes a board of education to suspend a student for up to 10 days for gross disobedience or misconduct. Further, the board "may by policy authorize the superintendent of the district or the principal, assistant principal or dean of students …to suspend pupils guilty of such acts for a period not to exceed 10 school days." Copies of Board of Education Policies 7:190, 7:200 and 7:210 are attached hereto. Please note Policy 7:190 (Page 7 of 8) specifically delegates such authority to administrators.

As you know, there is no right to pre-hearing discovery in a student discipline case; therefore, the District is not required to respond to Mr. Dietchweiler's requests for disclosure. At this time, the District contemplates calling Dean of Students Steven Lucas and High School Principal James Bunting as witnesses in the suspension review hearing. No written statements will be introduced at hearing.

EXHIBIT # 4

Mr. Michael Tague
February 1, 2013
Page 2


       Should you have any questions or wish to discuss this matter prior to the hearing, please
do not hesitate to contact me.

                           Sincerely,

                           MILLER, TRACY, BRAUN, FUNK &
                               MILLER, LTD.

                                           s/ S. Jeff Funk
                           By: S. Jeff Funk

SJF/sjg

Attachments

cc:    Kenneth Lee, Supt.

THE LAW FIRM OF

# FLYNN, PALMER, TAGUE, LYKE & JACOBSON

402 WEST CHURCH STREET

P.O. BOX 1517

CHAMPAIGN, ILLINOIS 61824-1517

JOHN L. FRANKLIN
(1907-1984)
LEONARD T. FLYNN
(1927-2003)
MICHAEL J. TAGUE
JEROME P. LYKE
ROBERT E. JACOBSON

TELEPHONE (217) 352-5181
FAX NO. (217) 352-7964

CHARLES L. PALMER
RETIRED

February 4, 2013

S. Jeff Funk
Miller, Tracy, Braun, Funk & Miller, Ltd.
316 South Charter
P. O. Box 80
Monticello, IL 61856

RE:  Noah Dietchweiler Suspension Review Hearing/
Iroquois County Community Unit School District No. 9

Dear Mr. Funk:

I have your letter of February 1, 2013, which I received around 2:00 p.m. on Friday, February 1,
2013. I have sent it along to Mr. Dietchweiler.

The Dietchweilers and I are disappointed that our rather comprehensive description of what we
intended to present and a request that the School District gather and share the results of their
internal investigation that culminated in accusations against Noah was met with a reply that since
you don't have to provide pre-hearing discovery that you simply will not disclose any evidence
other than Dean of Students Steven Lucas and High School Principal James Bunting will testify.
The details of their testimony, which would undoubtedly be hearsay or even hearsay upon
hearsay, has not been disclosed.

While in my work with Champaign Unit 4 District over the years I am certainly aware that some
"defense tactics" are to turn the proceedings into an attempt to trap the School District into a
procedural blunder, Mr. Dietchweiler's letter was an attempt to have both sides work to produce a
full review and hearing of all of the evidence to ultimately arrive at a correct result. An incorrect
result could have indirect negative consequences for Noah for some time to come.

Even if you are correct that there is no right to pre-hearing discovery, the accused still must be
provided with a sufficient and meaningful opportunity to provide a response so that ultimately
the Board of Education can make an objective determination as to whether or not the suspension
decision should be overturned. Each case obviously requires a different determination as to what
disclosure is required to provide that meaningful opportunity to respond. Whether you want to

**EXHIBIT** # _5_ #

February 4, 2013
Page 2

call it pre-hearing discovery or simply a request that the charges of misconduct be provided with sufficient specificity to allow a meaningful defense, failure to provide any written statements or a summary as to the hearsay that Mr. Lucas and Mr. Bunting are going to present deprives the student of a meaningful opportunity to respond to the charges. While you indicate no written statements will be submitted, the documents or confirmation of absence thereof are nevertheless probative of what type of evidence was available against Noah and whether conflict and credibility issues exist as to the presumed hearsay testimony from the Dean and Principal. The administration may not withhold potentially exculpatory evidence from the accused.

As I understand the charges against Noah, a student who brought prescription pills to school claims he sold Noah a pill and Noah ingested it. At the suspension review hearing, we will present concrete scientific evidence which you already have that Noah could not have ingested the drug; and unless the administration is holding some undisclosed alternative basis for culpability, based upon that scenario, Noah must win the suspension review, and one questions why we are even going through the formal process as we have provided you with the scientific evidence.

If Noah is being charged with something other than the above, we are going to learn about it presumably for the first time during the testimonies of Mr. Lucas and Mr. Bunting and be deprived of any meaningful opportunity to acquire evidence and present a response.

Please discuss this matter with your client, and we hope you would reconsider withholding the materials and substance of evidence that Mr. Lucas and Mr. Bunting had available to them when they formulated the accusations against Noah in the first instance.

Very truly yours,

FLYNN, PALMER, TAGUE, LYKE & JACOBSON

S/ Michael J. TAGUE

Michael J. Tague

MJT/st

EXHIBIT __5p3__

MINUTES OF THE SPECIAL MEETING OF THE BOARD OF EDUCATION OF
IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT #9 HELD
FEBRUARY 5, 2013 AT THE DISTRICT OFFICE

**PRESENT:** James Bruns, President, called the meeting to order at 4:59 p.m.
In attendance were Don Becker, Brenna Johnson, Crystal Blair, Bob
Burd, Kirk McTaggart, and Dee Schippert.

Also present: Kenny Lee, James Bunting, Steve Lucas, Student 10169
and representatives, and Jeff Funk.

**RECOGNITION OF GUESTS AND PUBLIC COMMENTS:** Mr. Bruns welcomed
everyone to the meeting.

**APPOINTMENT:** It was moved by Bob Burd and seconded by Crystal Blair to
appoint President James Bruns to preside over the student discipline
hearing. Roll call. Aye: 7. Nay: 0. Motion carried.

**EXECUTIVE SESSION:** It was moved by Crystal Blair and seconded by
Brenna Johnson to convene in closed session pursuant to the open
meetings act – 5 ILCS 120/2 (C) (9) to hear a student disciplinary case.
Roll call. Aye: 7. Nay: 0. Motion carried.

It was the consensus of the Board to return to open session at 5:29 p.m.

**DETERMINATION:** It was moved by Kirk McTaggart and seconded by Dee
Schippert that student #10169 be found to have violated school rules by
gross misconduct/distribution of drugs at WCHS under circumstances
so related to the school program as to warrant discipline. Roll call. Aye:
7. Nay: 0. Motion carried.

**EXECUTIVE SESSION:** It was moved by Bob Burd and seconded by Kirk
McTaggart to convene in closed session pursuant to the open meetings
act – 5 ILCS 120/2 (C) (9) to hear a student disciplinary case. Roll call.
Aye: 7. Nay: 0. Motion carried.

It was the consensus of the Board to return to open session.

**DISCIPLINARY ACTION:** It was moved by Crystal Blair and seconded by Dee
Schippert that student #10169 be expelled from school for the remainder
of the 2012-2013 school year and the first semester of the 2013-2014
school year. Roll call. Aye: 6 – Becker, Blair, Bruns, Burd, McTaggart,
Schippert. Nay: 1 – Johnson. Motion carried.


EXHIBIT " 6 "

**Board of Education Minutes**                    **2**                    **February 5, 2013**

Student 10169 and representatives exited.

**APPOINTMENT:** It was moved by Bob Burd and seconded by Kirk McTaggart to appoint President James Bruns to preside over the student discipline hearing. Roll call. Aye: 7. Nay: 0. Motion carried.

**EXECUTIVE SESSION:** It was moved by Kirk McTaggart and seconded by Crystal Blair to convene in closed session pursuant to the open meetings act – 5 ILCS 120/2 (C) (9) to hear a student disciplinary case. Roll call. Aye: 7. Nay: 0. Motion carried.

It was the consensus of the Board to return to open session.

**DETERMINATION:** It was moved by Crystal Blair and seconded by Dee Schippert that student #10085 be found to have violated school rules by gross misconduct/possession of drugs at WCHS under circumstances so related to the school program as to warrant discipline. Roll call. Aye: 7. Nay: 0. Motion carried.

**EXECUTIVE SESSION:** It was moved by Bob Burd and seconded by Don Becker to convene in closed session pursuant to the open meetings act – 5 ILCS 120/2 (C) (9) to hear a student disciplinary case. Roll call. Aye: 7. Nay: 0. Motion carried.

It was the consensus of the Board to return to open session at 6:48 p.m.

**DISCIPLINARY ACTION:** It was moved by Kirk McTaggart and seconded by Bob Burd that student #10085 be expelled from school for the remainder of the 2012-2013 school year and the first semester of the 2013-2014 school year. Roll call. Aye: 7. Nay: 0. Motion carried.

Student 10085 and representative exited.

Those present for the following hearing: Student 10168 and representatives, as well as Teri Sommer, court reporter.

**APPOINTMENT:** It was moved by Kirk McTaggart and seconded by Crystal Blair to appoint President James Bruns to preside over the student discipline hearing. Roll call. Aye: 7. Nay: 0. Motion carried.

**EXECUTIVE SESSION:** It was moved by Bob Burd and seconded by Dee Schippert to convene in closed session pursuant to the open meetings

**Board of Education Minutes**          **3**                    **February 5, 2013**

act – 5 ILCS 120/2 (C) (9) to hear a student disciplinary case.  Roll call.
Aye:  7.  Nay:  0.  Motion carried.

It was the consensus of the Board to return to open session.

**DETERMINATION:**  It was moved by Kirk McTaggart and seconded by Crystal
   Blair that student #10168 be found to have violated school rules by gross
   misconduct/possession of drugs at WCHS and that the student's
   suspension be ratified.  Roll call.  Aye:  7.  Nay:  0.  Motion carried.

**ADJOURNMENT:**   It was moved by Crystal Blair and seconded by Kirk
   McTaggart to adjourn the meeting at 10:04 p.m.  Roll call.  Aye:  7.  Nay:
   0.  Motion carried.

Respectfully submitted,

s/Don Becker

Don Becker
Secretary

s/James Bruns

President, Board of Education