**E-FILED**
Thursday, 08 January, 2015  03:55:17 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | | |
|---|---|---|
| **NOAH DIETCHWEILER, by Michael Dietchweiler, his father and next friend; and ANN DIETCHWEILER,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | **Case No. 2013-CV-2062** |
| **STEVE LUCAS, in his official and individual capacities; JAMES BUNTING, in his official and individual capacities; KENNETH LEE, in his official and individual capacities; IROQUOIS COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 9, IROQUOIS COUNTY, ILLINOIS; JAMES BRUNS, in his official capacity; DON BECKER, in his official capacity; BRENNA JOHNSON, in her official capacity; CRYSTAL BLAIR, in her official capacity; BOB BURD, in his official capacity; KIRK McTAGGERT, in his official capacity; and DEE SCHIPPERT, in her official capacity,** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) ) ) | |

## RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NOW COME Plaintiffs, NOAH DIETCHWEILER, by Michael Dietchweiler, his father and next friend; and ANN DIETCHWEILER, and for their Response to Defendants' Motion for Summary Judgment and Motion for Summary Disposition in their favor, state as follows:

I.      **Introduction**

The litigation arises out of actions taken as well as significant actions not taken by administrators of Iroquois County Community Unit School District No. 9, Iroquois County, Illinois, on January 25, 2013, through February 5, 2013.

In Defendants' section on undisputed facts, the Defendants break the chronology into one segment entitled "Incident of January 25, 2013" and a second segment categorized as "Events After January 25, 2013 and the School Board Meeting of February 5, 2013". In fact, there are seven segments of time relevant to the causes of action advanced by the Plaintiffs:

1.      **The lunchroom incident** in which a student reported to the high school administration that an exchange may have taken place involving drugs during a lunch period;

2.      **The investigation preceding the interrogation** of Noah Dietchweiler;

3.      **The interrogation** of Noah Dietchweiler;

4.      **The discussions** among building administrators, Noah Dietchweiler, and Noah Dietchweiler's parents on January 25, 2013, **following the interrogation** of Noah.

5.      **The intervening time between** the time beginning the next school week when Noah Dietchweiler's parents secured and attempted to present the results of a negative drug test for Noah and the suspension review hearing;

6.      **The suspension review hearing**;

7.      **The day before January 25, 2013.**

The Plaintiffs secured conclusive scientific evidence establishing that Noah Dietchweiler had not taken the prescription medication that he was accused of taking in January 2013, and

2

during the course of the efforts of the family to bring that information to the attention of the high school administration, the Plaintiffs discovered significant errors and omissions in the suspension process. Additionally, while attempting to prepare for the suspension review hearing to fully present the conclusive scientific evidence that Noah had not taken prescription medication on January 25, 2013, it became apparent that the procedures utilized by the agents and employees of Iroquois County Community Unit School District No. 9, Iroquois County, Illinois, were flawed and they failed to disclose fundamental facts and evidence required to inform the accused of the charges against him to allow presentation of a defense and make the suspension review due process meaningful.

Rather than recognize and apply the negative drug test results to a logical reversal of the suspension, a series of omissions of disclosure of relevant facts created a pattern of concealment thwarting the Dietchweilers' attempts at presenting evidence refuting the allegation that Noah took drugs at school.

As more fully set forth below, based upon the undisputed material facts, not only should the Motion for Summary Judgment of the Defendants be denied in its entirety, but summary judgment should be issued in favor of the Plaintiffs on Count I premised upon violation of 42 U.S.C. §1983 and the due process clause of the Fourteenth Amendment of the United States Constitution and Count II premised upon the violation of required State statutory procedure.

## II.    Response to Undisputed Material Facts

**Defendants' assertion:**

The depositions of NOAH, MICHAEL and ANN have been conducted and are attached hereto, incorporated herein and marked as Exhibits C, D and E, respectively. The depositions of

LUCAS, BUNTING, LEE, and the various IROQUOIS School Board members (with the exception of BLAIR) have also been conducted and are attached hereto as EXHIBITS F, G. H (respectively) and I-N.

**RESPONSE OF PLAINTIFFS:**

The depositions attached as Exhibits C, D, E, F, G, H, and I-N were taken, and copies of the transcripts are attached to the Defendants' Motion.  Plaintiffs are attaching or referencing relevant exhibits to the depositions in the appropriate sections of this pleading.  There were other depositions taken that are relevant to the Court's determination of the issue of whether or not the disciplinary proceedings afforded Noah Dietchweiler were adequate under procedural due process and State statutory standards.  Certain Answers to Interrogatories and Admissions of Defendants in Response to Requests to Admit were made.  A verbatim transcript of the suspension review hearing of February 5, 2013, exists.  Those materials are referenced as follows:

1.      The deposition of the grandmother and guardian of MM was taken and is attached hereto as Exhibit "1".

2.      Interrogatory Answers under oath were provided by Defendants, and they are attached hereto as Exhibit "2".

3.      A verbatim transcript of the suspension review hearing of February 5, 2013, is attached hereto as Exhibit "3".

4.      Responses to Request to Produce were made (Exhibit "4").

5.      Admissions were made in response to a Request to Admit (Exhibit "5").

4

**Defendants' assertion:**

i.      <u>January 25, 2013 Incident Date</u>.

1.      At all times relevant hereto, NOAH was a high school student at Watseka High

        School, a school within the Iroquois County Community Unit School District No.

        9.  Exhibit A.

        **<u>RESPONSE OF PLAINTIFFS</u>:**  The statement is accurate but incomplete.

Additional fact, Noah Dietchweiler was withdrawn from school subsequent to the

February 5, 2013, hearing and home-schooled before his entry to the Culver Military

Academy for the 2013-2014 academic year.  (Plaintiffs' Exhibit E, p. 107)

**Defendants' assertion:**

2.      Shortly after the lunch periods at Watseka High School, on January 25, 2013,

        LUCAS, the Dean of Students, and BUNTING, the high school principal,

        received a report from a student that a student on the premises (who will be

        known as "MM") was selling and distributing prescription drugs, on school

        property during the lunch period. Exhibits F and G.

        **<u>RESPONSE OF PLAINTIFFS</u>:**  This statement is not contradicted in the record,

but Plaintiffs learned of the details of what these Defendants discovered for the first time

at the depositions of Lucas and Bunting as reflected in Exhibits F and G as compared to

their testimony in the transcript of proceedings of the suspension review on February 5,

2013 (Exhibit "3").  The specific evidence and the information contained in this statement

of undisputed material fact was not provided to Noah Dietchweiler nor his parents in the

interrogation of Noah on January 25, 2013, nor in the discussions between school

administrators, Noah Dietchweiler, and Noah's parents on January 25, 2013, following the interrogation of Noah Dietchweiler.  (See Exhibit 2, Answers 8 and 9).

**Defendants' assertion:**

3.        LUCAS and BUNTING removed "MM," the student alleged to have been selling and distributing the drugs, from class and asked MM about the allegations. During this conversation, MM admitted that he had been distributing and selling prescription drugs to other students on school property. Id.

    **<u>RESPONSE OF PLAINTIFFS:</u>**        This statement is not contradicted in the record, but Plaintiffs learned of the details of what these Defendants discovered for the first time at the depositions of Lucas and Bunting as reflected in Exhibits F and G as compared to their testimony in the transcript of proceedings of the suspension review on February 5, 2013 (Exhibit "3").  The specific evidence and the information contained in this statement of undisputed material fact was not provided to Noah Dietchweiler nor his parents in the interrogation of Noah on January 25, 2013, nor in the discussions between school administrators, Noah Dietchweiler, and Noah's parents on January 25, 2013, following the interrogation of Noah Dietchweiler.  (See details in Plaintiffs' Additional Undisputed Material Facts).

**Defendants' assertion:**

4.        During the conversation, LUCAS and BUNTING discovered 2 pills, when they had MM empty his pockets and socks, which MM identified as Ativan. Id.

    **<u>RESPONSE OF PLAINTIFFS:</u>**  The discovery of pills is not contradicted in the record but the substance involved may have been identified later and not learned until

later (Exhibit F, p. 74; Exhibit G, p. 55).  The specific evidence and the information contained in this statement of undisputed material fact was not provided to Noah Dietchweiler nor his parents in the interrogation of Noah on January 25, 2013, nor in the discussions between school administrators, Noah Dietchweiler, and Noah's parents on January 25, 2013, following the interrogation of Noah Dietchweiler.

**Defendants' assertion:**

5.      During this conversation, MM also provided to LUCAS and BUNTING a piece of paper identifying students to whom he distributed the drugs and that listed how much money was owed to MM for the drugs, which included NOAH. Exhibit O, a copy of the piece of paper given by MM to BUNTING and LUCAS.

   **RESPONSE OF PLAINTIFFS:**  A piece of paper with names and numbers was obtained.  The existence of the document was mentioned at the suspension review hearing.  (Exhibit "3").  The specific evidence and the information contained in this statement of undisputed material fact was not provided to Noah Dietchweiler nor his parents in the interrogation of Noah on January 25, 2013, nor in the discussions between school administrators, Noah Dietchweiler, and Noah's parents on January 25, 2013, following the interrogation of Noah Dietchweiler.  It was actually provided for the first time to Plaintiffs in Defendants' Response to Request to Produce.  (Exhibit "4").  As more fully detailed in Plaintiffs' Additional Undisputed Facts, M.M. later provided an Affidavit under oath that Noah's name was not associated with a drug sale.  (Exhibit "6").

**Defendants' assertion:**

7

6.      MM additionally signed a statement listing the full names of the individuals to

whom he distributed the drugs at school, which included NOAH. Exhibit P, a

redacted copy of the written statement drafted by MM and tendered to LUCAS

and BUNTING.

**RESPONSE OF PLAINTIFFS:** A written statement was obtained. The

existence of the document was mentioned at the suspension review hearing. (Exhibit

"3"). The specific evidence and the information contained in this statement of undisputed

material fact was not provided to Noah Dietchweiler nor his parents in the interrogation

of Noah on January 25, 2013, nor in the discussions between school administrators, Noah

Dietchweiler, and Noah's parents on January 25, 2013, following the interrogation of

Noah Dietchweiler. It was actually provided for the first time to Plaintiffs in Defendants'

Response to Request to Produce. (Exhibit "4"). As more fully detailed in Plaintiffs'

Additional Undisputed Facts, M.M. later provided an Affidavit under oath that Noah's

name was not associated with a drug sale. (Exhibit "6").

**Defendants' assertion:**

7.      LUCAS and BUNTING then proceeded to remove from class and bring into their

office all of the students on these lists, one by one, including NOAH. Each

student was questioned and based upon the students' answers and admissions,

suspended 10 days from school for their conduct. Exhibits F and G.

**RESPONSE OF PLAINTIFFS:** This statement is not contradicted in the record

as to most of the students on the list; however, one student on both lists was not

suspended when he denied involvement. (Exhibit C, p. 42; Exhibit G, p. 21-22).

8

**Defendants' assertion:**

8.       NOAH was one of or was the last student to be brought into their office and

         questioned about taking and possessing chugs at school. Id.

         **RESPONSE OF PLAINTIFFS:**  Noah was brought to the office and a

discussion ensued.  As more fully set forth in the Plaintiffs' Additional Undisputed

Material Facts, Defendants Lucas and Bunting gave differing accounts as to what was

said, and Noah's account is dramatically different.  Noah's account is contained in Exhibit

C, pp. 68-72 of his deposition and Exhibit "3", pp. 55-64 in the suspension review

hearing.

**Defendants' assertion:**

9.       During the questioning by LUCAS and BUNTING, NOAH confessed to taking

         and possessing drugs at school and volunteered without any question that he had

         done drugs before and thought he was getting a drug for ADHD to keep him

         awake. Id.

         **RESPONSE OF PLAINTIFFS:**  The differing accounts of Defendants Lucas

and Bunting as more fully set forth in the Plaintiffs' Additional Undisputed Material Facts

could be reasonably read that they assert Noah volunteered that he ingested drugs at

school, but this fact is contested as Noah Dietchweiler unequivocally denies the same.

(See Deposition Testimony Exhibit C, pp. 68-72; Exhibit 3, pp. 55-59), and the drug

testing conclusively established he could not have ingested the prescription medication.

Response to RTA (Exhibit "4").

**Defendants' assertion:**

9

10.     As with all of the other students, NOAH's parent/guardian (mother/ANN) was

then immediately called. Exhibit E and F, G.

**RESPONSE OF PLAINTIFFS:**  Noah's mother learned of the interrogation of

Noah shortly after it occurred as she had been waiting to pick Noah up at school.

(Deposition Testimony Ann Dietchweiler Exhibit D, p. 8).

**Defendants' assertion:**

11.     ANN was brought into the same room with NOAH, LUCAS and BUNTING. She

was told what occurred, and she requested that NOAH's father, MICHAEL, be

called. Id.

**RESPONSE OF PLAINTIFFS:**  Plaintiffs dispute that Ann Dietchweiler was

told what had occurred.  Defendant Lucas' account (Exhibit F) and Defendant Bunting's

account (Exhibit G) are in contrast with the version of events of Ann Dietchweiler

(Exhibit D, p. 18) and Noah Dietchweiler (Exhibit C, pp. 68-72, 76).

**Defendants' assertion:**

12.     MICHAEL is an attorney who has practiced in several fields of law, including

criminal law and school law. Exhibit D.

**RESPONSE OF PLAINTIFFS:**  Undisputed.

**Defendants' assertion:**

13.     MICHAEL initially spoke with BUNTING first, but then he was placed on

speaker phone to discuss what had occurred. Exhibits F, G.

**RESPONSE OF PLAINTIFFS:**  Undisputed.

**Defendants' assertion:**

14.     While MICHAEL was on speaker phone, he never told NOAH not to talk to

        BUNTING and LUCAS further, never told NOAH not to sign any piece of paper

        or admission and never told ANN not to have NOAH sign or say anything further.

        Exhibits C-G.

        **RESPONSE OF PLAINTIFFS:**  Undisputed, but incomplete.  Why Michael

Dietchweiler would have had no occasion to address those issues is more fully explained

in the version of events described by Noah Dietchweiler (Exhibit C, pp. 68-72) and

Michael Dietchweiler (Exhibit E, p. 29).

**Defendants' assertion:**

15.     NOAH testified that had his father MICHAEL (or even mother ANN) advised

        him and told him not to say anything further or sign anything, he would have

        followed their advice and he would not have done so. Exhibit C.

        **RESPONSE OF PLAINTIFFS:**  Undisputed, but this fact is not material to any

of the issues as the document signed was the actual Notice of Suspension and a request to

make up work and cannot in any fashion be reasonably read as acknowledgment or

agreement with the statements set forth therein.

**Defendants' assertion:**

16.     NOAH was presented with a piece of paper informing him of the suspension,

        acknowledging the violation and that he would have to make up the school work

        during the time of the 10 day suspension. Exhibit C, E and Q, a copy of the

        suspension notice given to NOAH and signed by NOAH on two separate lines.

**RESPONSE OF PLAINTIFFS:**  It is undisputed that Noah signed the document, and the document speaks for itself.  In no fashion can the document be reasonably read to constitute a written guilty plea or acknowledgment of violation.

**Defendants' assertion:**

17.    NOAH signed this piece of paper after his father, MICHAEL, was no longer on the phone and before he left the room with his mother, ANN. Id.

   **RESPONSE OF PLAINTIFFS:**  Undisputed.

ii.    Events after January 25, 2013 and the School Board Meeting of February 5, 2013.

**Defendants' assertion:**

18.    On January 28, 2013 LEE was informed that MICHAEL had taken NOAH for a drug test the night of January 25, 2013 and that the results of that drag test were negative for any drugs. Exhibits D and H.

   **RESPONSE OF PLAINTIFFS:**  Undisputed.

**Defendants' assertion:**

19.    MICHAEL informed LEE that he wanted to appeal NOAH' s suspension from school.  Id.

   **RESPONSE OF PLAINTIFFS:**  Undisputed.

**Defendants' assertion:**

20.    In response, LEE drafted letter to Plaintiffs informing them of the time and place of the hearing before the School Board in special session. Exhibit H, and Exhibit R, a copy of the letter drafted by LEE and sent to Plaintiffs giving them notice of the hearing on February 5, 2013.

12

**RESPONSE OF PLAINTIFFS:**  Undisputed.

**Defendants' assertion:**

21.     A packet of materials, including the relevant portions of the IROQUOIS Student

       Handbook, was presented to the School Board members on February 5, 2013.

       Group Exhibit S, a copy of the materials presented at the School Board Hearing of

       February 5, 2013.

       **RESPONSE OF PLAINTIFFS:**  It is undisputed that a package of material was

provided in the form attached as Group Exhibit S.  No additional written materials were

presented by the administration or School District attorney.  The provisions relating to

policies and procedures in the package of material are different than the document itself.

(See Exhibit "8" attached hereto as to the actual handbook procedures).

**Defendants' assertion:**

22.     In addition to the packet of materials, Plaintiffs were allowed to and did present

       testimony, present evidence, cross examine witnesses (including LEE, BUNTING

       and LUCAS),be represented by counsel (Michael Tape), and make arguments to

       the School Board members. Exhibit I-N.

       **RESPONSE OF PLAINTIFFS:**  The verbatim transcript of the record is

attached as Exhibit "3".  Plaintiffs were unable to present evidence relative to 1) the list of

names and numbers, 2) incriminating statement of M.M., and 3) the allegation that Noah

represented in the Lucas and Bunting interrogation that he had ingested a pill from M.M.

the day before because such information had not previously been disclosed to Plaintiffs.

**Defendants' assertion:**

13

23.     Following deliberations of the School Board members, the School Board voted to

uphold the 10 day suspension of NOAH for possession of drugs.

**RESPONSE OF PLAINTIFFS:**  It is undisputed that the School Board decided

to continue Noah's 10 day suspension, but the original suspension was for possession and

consumption of drugs (see Notice of Suspension Exhibit Q), but the decision of February

5, 2013, was premised upon possession.  (See Exhibit "9" - School Board Minutes and

Exhibit "3", p. 104).

**IV.     Disputed Material Facts**

**Defendants' assertion:**

1.      LUCAS and BUNTING testified that MICHAEL attempted to "cut a deal" with

them by asking them to not suspend NOAH in exchange for NOAH withdrawing

from the high school and a promise to transfer to a school outside of the

IROQUOIS district; LUCAS and BUNTING declined to cut any deal. Exhibits F

and G.

**RESPONSE OF PLAINTIFFS:**      This is not material to any cause of action or

defense.

**V.     Additional Undisputed Material Facts**:

A.     **The lunchroom incident** in which a student reported to the high school

administration that an exchange may have taken place involving drugs

during a lunch period.

14

24.     Noah Dietchweiler was not identified by the one witness who reported the

        exchange of pills between M.M. and another student during the lunch period of

        January 25, 2013.  (Lucas Exhibit F, pp. 37-38; Bunting Exhibit G, p. 14).

25.     Neither Defendant Lucas nor Defendant Bunting were told by M.M. that the

        events in which Noah Dietchweiler allegedly received pills was during the lunch

        period of January 25, 2013; such was inferred by inclusion of his name on

        Exhibits O and P.  (Bunting Exhibit G, pp. 17, 29).

        B.      **The investigation preceding the interrogation** of Noah Dietchweiler.

26.     No person other than allegedly M.M. identified Noah Dietchweiler as a person

        who received or ingested pills at school.  (Bunting Exhibit G, p. 28).

        C.      **The interrogation** of Noah Dietchweiler.

27.     Even though in possession of a statement from M.M., neither Defendants Lucas

        nor Bunting told Noah Dietchweiler of the existence of the written statement

        implicating him.  (Bunting Exhibit G, p. 37; Noah Exhibit C; pp. 68-72).

28.     Although in possession of a list allegedly containing a ledger of monies owed to

        M.M. for sale of pills, neither Defendants Lucas nor Bunting revealed that list to

        Noah Dietchweiler.  (Bunting Exhibit G, p. 37; Exhibit "2", Answers to 8 and 9).

29.     Defendant Lucas could not remember the exchange during the interview of Noah

        (Exhibit "F", p. 57).

30.     While providing different accounts of the verbal exchange during the

        interrogation of Noah Dietchweiler, initially, Defendant Bunting indicated that

        rather than provide Noah with a written or verbal account of what M.M. had

15

disclosed about Noah Dietchweiler, including the written statement and list of indebtedness, Defendant Bunting instead provided an accusation couched in terms of the administration knew <u>what</u> had happened and Noah needed to be truthful or the punishment would be more severe.  (Bunting Hearing Version, Exhibit "3", p. 31).

31.    Neither Defendants Lucas nor Bunting prepared a written statement of charges or the basis for charges before the preparation of the actual Notice of Suspension, and no such document was ever provided to Noah Dietchweiler or his parents. (Exhibit S; Bunting Exhibit G, pp. 42-43).

32.    The actual Notice of Suspension was prepared before Noah Dietchweiler's mother arrived in the building to pick Noah up from school.  (Ann Dietchweiler Exhibit E, p. 24).

     D.    **The discussions** among building administrators, Noah Dietchweiler, and Noah Dietchweiler's parents on January 25, 2013, **following the interrogation** of Noah.

33.    The only written document provided to Noah Dietchweiler or his parents on January 25, 2013, was the actual Notice of Suspension.  (Exhibit S).

34.    Neither Defendants Lucas nor Bunting revealed to Noah or his parents the existence of the M.M. statement implicating Noah nor the existence of the list of indebtedness.  (Lucas Exhibit F; Bunting Exhibit G; Ann Dietchweiler Exhibit D; Michael Dietchweiler Exhibit E; Noah Dietchweiler Exhibit C).

35.     Neither Defendants Lucas nor Bunting identified that Noah Dietchweiler had
        confessed to receipt and ingestion of drugs the day before January 25, 2013.
        (Lucas Exhibit F; Bunting Exhibit G; Ann Dietchweiler Exhibit D).

        E.      **The intervening time between** the time beginning the next week (January
                25, 2013, was Friday) when Noah Dietchweiler's parents secured and
                attempted to present the results of a negative drug test for Noah and the
                suspension review hearing.

36.     Noah Dietchweiler explained the details of the interrogation to his parents upon
        returning home the evening of January 25, 2013, including the version of the
        interrogation set forth in Disputed Fact 1.  (Noah Exhibit C).

37.     On the evening of January 25, 2013, Noah Dietchweiler persisted in his claims to
        his parents that he had not received or ingested drugs at school culminating in a
        sophisticated drug testing.  (Drug Test Results - RTA 1-3, Exhibit "5").

38.     The drug testing on January 25, 2013, was negative for any drugs, including the
        active ingredient for the Ativan prescription medication ultimately identified as
        the pills distributed at school by M.M.  (Response to RTA 1-3, Exhibit 5).

39.     The scientific testing revealed that the time that the active ingredient for the
        prescription medication distributed by M.M. on January 25, 2013, would be in his
        system for several days which conclusively established that Noah Dietchweiler
        had not ingested the prescription medication on January 24, 2013, or for even a
        few days prior to that.  (Response to RTA 1-3, Exhibit 5).

17

40.     Noah Dietchweiler's father, Michael Dietchweiler, attempted to present the results

        of the drug test to the Principal and Superintendent for a reconsideration of Noah's

        suspension, but the response was that the opportunity to present the same would

        be afforded at a suspension review hearing.  (Michael Exhibit E; Bunting Exhibit

        G; Lee Exhibit H).

41.     Prior to the suspension review hearing, the representatives for Noah Dietchweiler

        requested details of the evidence against Noah.  (Complaint Exhibit 1-2, 1-5).

42.     No documents or recitation of evidence against Noah was provided, and Noah's

        representatives were provided with a specific correspondence refusing to provide

        any information under the guise that "pre-trial discovery" was not available in

        suspension matters.  (Complaint Exhibit 1-4).

43.     Upon learning that there would be a suspension review hearing, a memorandum

        was prepared.[1]  (Exhibit "10").

44.     The memorandum did not specifically identify that Noah had received pills on

        January 24, 2013.  (Exhibit "10").

45.     The memorandum was not provided to Noah Dietchweiler or his representatives

        prior to the suspension review hearing or at the suspension review hearing.

        (Exhibit "3" - Absence from Exhibit S).

        F.      **The suspension review hearing**.

---

[1] The author of the document is disputed as Defendant Lucas claims authorship and
provided the same to the Principal (Exhibit F, p. 70), but Principal Bunting claimed ownership
and provided it to Superintendent Lee.  (Exhibit G, p. 47).

18

46.     At the suspension review hearing, Defendant Lucas testified for the first time known to Noah Dietchweiler and his representatives that Noah Dietchweiler was suspended based upon a confession that he received and ingested the medication M.M. had brought to school the day before January 25, 2013.  (Exhibit "3", p. 13).

47.     The existence of the M.M. statement was revealed but not produced or provided at the suspension review hearing.  (Exhibit "3" - Absence from Exhibit "S").

48.     The existence of the list of indebtedness M.M. produced on January 25, 2013, was revealed at the suspension review hearing but not produced.  (Exhibit "3" - Absence from Exhibit "S").

49.     The scientific testing results were presented and not disputed.  (Exhibit "3", pp. 42-45).

50.     The Board of Education after deliberations upheld the suspension based upon possession only.  (Exhibit "3", p. 104; Exhibit "9", Minutes of Review Hearing).

G.     **The day before January 25, 2013.**

51.     The administration had no evidence that an event subject to discipline occurred on January 24, 2013, other than the alleged disputed statements of Noah Dietchweiler that M.M. brought pills to school on January 24, 2013, and delivered them to Noah Dietchweiler and that Noah ingested the same.  (Lucas Exhibit F; Bunting Exhibit G).

H.     **Additional Undisputed Facts.**

52.     M.M. and the grandmother of M.M. testified that the prescription medication that M.M. brought to school was not filled until later in the day on January 24, 2013,

establishing that M.M. did not have access to the prescription to support the claim

that he brought pills to school on January 24, 2013.  (McKay Exhibit 1, pp. 13-

14).  (McKay Affidavit, Exhibit 7, paragraphs 10, 11).  (MM Affidavit, Exhibit 6,

paragraph 4).

53.     The expulsion hearing of M.M. occurred on February 5, 2013, prior to Noah

Dietchweiler's suspension review hearing.  (Lee Exhibit H).

54.     Subsequent to the presentation of evidence against M.M. at his expulsion hearing,

Defendant Bunting attempted to convince M.M. to change his story to the effect

that Noah received pills on January 24, 2013, at which time M.M. refused and

affirmatively told Defendant Bunting that that was a lie; such facts were not

disclosed to Noah Dietchweiler or his representatives prior to Noah's hearing.

(M.M. Affidavit, paragraph 6, 7, Exhibit "6").  (Exhibit 7, paragraphs 8-9).

55.     M.M. recanted his accusations against Noah, explaining that he felt coerced into

providing information against Noah and in fact, stated under oath, that no pills

were given to Noah.  (M.M. Affidavit, paragraph 11, Exhibit "6").

56.     During depositions, no School Board member recalled the alleged confession by

Noah was for alleged ingestion of a pill on "the day before"; to-wit:  January 24,

2013.  (Exhibits I-N).

57.     Defendant Lucas will be impeached by a felony conviction for mail fraud.  Exhibit

"F", p. 25).

## VI.    Legal Standards

### Federal Claims

It is well established that since a public education is such an important fundamental right, that deprivation of that learning opportunity, even a ten day suspension, is afforded constitutional protection.  Goss v. Lopez, 419 U.S. 565 (1975).  The general legal proposition is well settled that while there is no set procedure required, the procedure must include a recitation of the charges and the evidence supporting the charges with sufficient detail to allow an opportunity to provide a meaningful response.

"Due process requires that a student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence and an opportunity to present his side of the story."  Smith v. Severn, 1996 WL 19455 (N.D. IL 1996).

The Court in Whitefield v. Simpson, 312 F.Supp. 889 (E.D. IL 1970) stated:

"The test of whether or not one has been afforded procedural due process is one of fundamental fairness in the light of the total circumstances.  No particular method of procedure is required for due process, but what is required is:  (1) Adequate notice of the charges; (2) Reasonable opportunity to prepare for and meet them; (3) An Orderly hearing adopted to the nature of the case; and (4) A fair and impartial decision.  Buttny v. Smiley, 281 F.Supp. 280 (D.C.D. Colo., 1968)."

### State Procedures

105 ILCS 5/10-22.6(b) provides that prior to a suspension, a student should be provided a written and verbal statement of the charges and the facts supporting the charges.

The statute itself states:  "Any suspension shall be reported immediately to the parents or guardian of such pupil along with a **full statement of the reasons** for the suspension and a notice of their right to a review."  (Emphasis ours).

21

The Illinois Supreme Court in <u>Stratton v. Wenona Community Unit School District No. 1</u>, 133 Ill.2d 413 (1990) in reviewing a case where there was actual knowledge of the student and parents of a pattern of disrespectful behavior, the Supreme Court stated:  "There must be an opportunity, at a meaningful time and in a meaningful manner, for a hearing appropriate to the nature of the case."

A claim of deviation from State mandated procedures may be brought by common law certiorari.  <u>Linwood v. Board of Education</u>, 463 F.2d 763 (7th Cir. 1972).

A State procedural due process violation is supported by proof a failure to follow State requirements.  <u>Killian v. Franklin Regional School District</u>, 136 F.Supp.2d 446 (W.D. PA 2001).

### State Pendent Claims

There was never any attack on the sufficiency of the allegations and the claims premised upon intentional infliction of emotional distress and defamation.  In light of the dramatically different version of what happened in the interview of Noah Dietchweiler, a jury could believe Noah's version as described in his deposition testimony and the allegations of the Complaint would support the basis that Defendants Lucas, Bunting and Lee made things up as they went to support a continuation of the suspension by concealing Noah's version.  The facts relating to non-disclosures, late disclosures, and concealment are undisputed.  The combination of such pattern of non-disclosure or concealment and the false statements of confession for the day before and apparently a disregard for the logical inferences to be drawn from the negative drug tests would support those pendent State claims.

22

**VII.     Argument**

**A.     Federal Claims of Violation of Constitutional Rights**

     **1.     Background**

Noah Dietchweiler's federal claims are straightforward.  On January 25, 2013, an incident that occurred during a lunch period involving M.M. was reported to school administrators.  An investigation ensued, and the person who was witnessed allegedly distributing pills (M.M.) was interrogated by Defendants Lucas and Bunting.  The exact questions and answers and what occurred during that interrogation could not be recounted by Defendants Bunting nor Lucas, but during the course of the investigation, they claim to have discovered a written list containing names and numbers.  The list contained Noah's name and a dollar number.  Defendants Lucas and Bunting claim that M.M. explained that the list was for money owed to him for sale of prescription pills to other students.  M.M. was then requested to write a statement incriminating the other students and that list include Noah Dietchweiler.  After interviewing several other students, Defendants Lucas and Bunting called Noah Dietchweiler to the office and spoke with him.  The accounts of what happened during that interrogation are starkly different, and the versions provided by Defendants Bunting and Lucas are substantially inconsistent with each other and what they said at the suspension review hearing.

Defendants Lucas or Bunting (see footnote 1) prepared a memorandum indicating that Noah Dietchweiler had confessed, but nowhere in that memorandum is there any recitation of a

later significant point not initially disclosed to the Dietchweilers that such events involving Noah happened the day before January 25, 2013.[2]

2.        **Inadequate Procedural Due Process During the Interview of Noah Dietchweiler**

The black letter law relating to student disciplinary matters provide that an accused must be apprised of the charges and evidence supporting the charges so that a meaningful response may be made and thus prevent erroneous decisions that would remove a child from school.  The State may not take away a student's property and liberty interests in attending public schools without a fundamentally fair procedure.  It would have been very simple for either Defendant Lucas or Defendant Bunting to have told Noah Dietchweiler that M.M. possessed a piece of paper that M.M. claimed was a list of students owing him money for drug sales and that M.M. had provided them with a written statement that he had provided Noah with pills.  Instead, according to the Defendants, the Defendants told Noah something to the effect that "we know what you did" or "we know everything that has gone on, and if you admit responsibility, things will go better."[3]  Since the recitations of what the administrators told Noah and later his parents

_____

[2] It is almost inconceivable that later in depositions no School Board member, Superintendent Lee or even Lucas and Bunting recalled that Lucas indicated that Noah stated he had received a pill and ingested it the day before.  (Board Members Exhibits I-N, Lucas Exhibit F; Bunting Exhibit G; Lee Exhibit H).  A quick review of the Reporter's Indices of words reveal every Board Member deposed could not recall or remember anything supporting their decision in the suspension review hearing with numbers ranging from 40s to 27 (recall) 65 (remember) for over 90 for Defendant McTaggart.

[3] According to Noah Dietchweiler, the recitation was that Noah "had a choice of a ten day suspension for admitting to taking drugs, or expulsion for denial of taking drugs".  (Exhibit C, p. 70), but even according to the Defendants, there was no specific recitation of even the bare bone general description of what actually happened.  (Lucas Version Exhibit F and Bunting Version Exhibit G).

24

was recalled differently at different times by Lucas and Bunting, a simple few written sentences would have resolved the questions of sufficient notice of the reasons for the suspension. The absence of a writing afforded Defendants Lucas and Lee an opportunity to fill in or change detail at a later hearing or court proceeding.

Lucas and Bunting later maintained in the suspension review hearing that Noah volunteered that he had taken pills the day before January 25, 2013. No written delineation of the events incriminating Noah was prepared or provided to him prior to the review hearing. Instead, the first written document or document actually disclosing to the Dietchweilers a disciplinary infraction was the Notice of Suspension itself (Tab 5 to Exhibit S). It would not have been an undue burden to provide a short paragraph summary similar to the third sentence in the preceding paragraph or even a redacted version of the M.M. written statement sometime before the review hearing when a specific request for detail to provide a meaningful response had been made.

At the very least, the difference in Noah's account and those of the administrators would create a triable fact for the jury as to whether or not he had a meaningful opportunity to respond to charges based upon M.M.'s incriminating statements and the two writings not identified nor shown to Noah, but in fact as a matter of law, the generalized statement to the effect that "we know everything, what do you want to do: (according to Noah after providing a false general statement that a number of students provided administrators with reason to believe he had been involved with drugs), admit and be suspended or deny and be expelled is not an adequate description of the events. The questioning by the administrators was not reasonably calculated to have Noah Dietchweiler provide a meaningful response to allegations that he had been involved

25

in the lunchroom incident or received pills on January 25, 2013, from M.M. when a generalized allegations that information had been brought to the administrators' knowledge that Noah had been involved with drugs and his response would be either:  1) admit involvement and be suspended, or 2) deny involvement and be expelled.

### 3.    Non-Disclosure of Significant Material Facts and Evidence and Concealment

Noah Dietchweiler's mother, Ann, had been waiting for Noah to pick him up after school when she was alerted that Noah had been detained for disciplinary interrogation.  After a brief verbal exchange between the administrators and Ann Dietchweiler, Noah's father, Michael Dietchweiler, was connected by a speaker phone to which a discussion ensued among Noah, Ann, Defendant Lucas, Defendant Bunting, and Michael Dietchweiler.  During that conversation, Defendant Bunting indicated that Noah Dietchweiler was being suspended from school for 10 days for taking drugs at school.  At no time was a summary description or any description provided as to the alleged event that resulted in Noah taking drugs at school.  The existence of the M.M. statement, the M.M. list of students with numbers, and the allegation advanced at the suspension review hearing (albeit later forgotten by all of the Defendants) that Noah confessed to taking drugs at school the day before January 25, 2013, were not disclosed to the Dietchweilers during that conversation, nor did the administrators indicate that they had told Noah that the punishment would be worse if he did not admit culpability.

### 4.    Efforts of Dietchweiler to Secure Meaningful Responsive Material in Support of a Reversal of the 10 Day Suspension upon Review

When Noah Dietchweiler and the rest of the family members arrived at their home the evening of January 25, 2013, not surprisingly, Noah's parents wished to continue the discussion

relating to the allegation that their son had taken drugs at school.  At that time, additional information became known to Noah's parents as Noah related to them his version of what had occurred during the interrogation and the explanation for his potentially ambiguous response of "whatever" to their generalized claim that they had information already in hand proving Noah guilty of an unspecified event of taking drugs at school and that denial would change a suspension to an expulsion.  Noah also persisted in his claims of innocence of taking drugs at school.

Fortunately, Michael Dietchweiler knew that the truthfulness of Noah's assertions that he did not take drugs at school on January 25, 2013, could be conclusively determined by a comprehensive and sophisticated Federal Aviation Administration drug test.  Such drug testing was done and confirmed the truthfulness of Noah's claims of innocence.

Thereafter, at first, Noah's parents attempted to informally present the scientifically conclusive drug tests confirming that Noah truthfully stated he did not take drugs at school, but the response to those overtures was that there would be a suspension review hearing and they could present the evidence at that time.

Since there was going to be a formal suspension review hearing, Noah Dietchweiler's parents secured assistance of counsel and began to accumulate the evidence necessary to disprove that Noah was in possession of drugs at school by consuming pills on January 25, 2013.  They learned from discussions amongst other students that the alleged incident on January 25, 2013, was an allegation that M.M. distributed pills during lunch period on January 25, 2013.  Based upon that information, the parents arranged witnesses and secured Affidavits of numerous

students who were present at the lunchroom, including some that were also charged with receiving pills at school and suspended.  (Exhibit 3, p. 37.  Group Exhibit "1".)

To make sure that a response would be made to all incriminating evidence that may be presented at the suspension review hearing, a request for material information bearing upon Noah's guilt was requested.  The response was that the accused was not entitled to pre-trial discovery, and accordingly, no information would be provided before the hearing, and none was provided.  The School District and its experienced school attorney, Jeff Funk, while technically correct that suspension procedures did not require any formal pre-trial discovery process, completely ignored the fact that there must be adequate disclosure of the substance of the charges and evidence supporting the charges sufficient to allow a **meaningful response**.  The administration, including Defendants Bunting, Lucas and Lee, had in their possession (and supposedly such information was provided to attorney Funk) the M.M. list of students and numbers, the M.M. written statement, and allegations that Noah spontaneously admitted taking drugs at school the day before.  It is significant that at the deposition of Superintendent Lee, and in the pre-trial discovery Answers to Interrogatories, the Defendants all claimed that they thought the M.M. documents were part of the document package.  Additionally, there was a memorandum prepared summarizing the information prepared by Lucas or Bunting and provided to Lee and Lee apparently provided to Funk for inclusion in the document package for the suspension review hearing that was withheld from the Dietchweilers.

###    5.    Suspension Review Hearing

Before the suspension review hearing, the Dietchweilers prepared as best they could to provide information that no one witnessed Noah Dietchweiler receiving pills or being under the

28

influence of any pills on January 25, 2013, and that the conclusive scientific testing established that he could not have been guilty of possession of drugs by consumption on January 25, 2013. Had the charge not changed to taking drugs the day before pursuant to the undisclosed spontaneous admission, presumably Noah's suspension would have been reversed, just like the student who denied involvement, in spite of the M.M. writings, was not suspended.

For the first time disclosed to the Dietchweilers at the suspension review hearing, the administrators interviewing Noah on January 25, 2013, stated that the basis of their "knowing everything that went on" included a writing of M.M. with names and numbers and a written statement by M.M.  Additionally, the apparent proximate cause for the suspension was the claim that Noah admitted taking drugs the day before January 25, 2013.  This was another fact not previously disclosed to the Dietchweilers and, more significantly, not included in the memorandum prepared and delivered to Lee prior to the hearing.  Arguably, that document was withheld as inconsistent with the later testimony at the suspension review hearing that the confession was for the day before.

With the revelation first provided at the suspension review hearing that Noah consumed drugs the day before, all of the Affidavits and witnesses secured to establish that nobody witnessed Noah receiving drugs at school on January 25, 2013, were worthless.  The family was not afforded an adequate opportunity to develop evidence that the explanation for Noah's name and number on the list was that he had borrowed money from M.M. to pay for lunch (M.M. Affidavit Exhibit 6, paragraph 11), nor more significantly, to present evidence that M.M. did not have access to the pills to bring to school since the prescription for the medication was not filled until January 24, 2013, after M.M. had left for school.

29

Pursuant to M.M.'s Affidavit, M.M. specifically refused to implicate Noah for a January 24, 2013, offense, confirmed that Noah's name on the list was for lunch money, and recanted the inclusion of Noah on the list of students having pills distributed to them explaining that he was afraid not to reconcile the list of names and numbers with the statement of students implicated. It is significant that the administrators did not rely exclusively on M.M.'s list of names and numbers and inculpating statement for all suspensions as one student who was on M.M.'s list vehemently denied involvement, apparently refused to sign the Notice of Suspension and make-up work, and was not suspended.

Apparently, School Board members accepted the scientific testing as the original suspension for possession and consumption of pills was upheld for "possession", in spite of the fact that Noah's alleged admission of possession by acquiring and taking a drug the day before January 25, 2013, could not have been accurate as the conclusive scientific testing showed the absence of the Ativan drug in Noah's system and residuals of that drug would have been present for several days, scientifically irrefutably establishing that Noah could not have ingested pills during the days preceding January 25, 2013.

Plaintiffs' inability to present evidence that the pills were not available for distribution to Noah or anyone else until after school on January 24, 2013, and the proposition apparently accepted by School Board members that Noah did not consume drugs would have left no basis for a suspension for even naked possession of pills.

6.     **State Procedures**

Specifically, the statute states: "Any suspension shall be reported immediately to the parents or guardian of such pupil along with a full statement of the reason for such suspension

30

and a notice of their right to a review."  Not surprisingly, the School District established based upon standard recommended policies and procedure that such full statement should be in writing. (Exhibit 8).

For the same reasons advanced above that the Federal due process requirements were not met, the State requirement of a full statement of the reason for suspension was not met.

### 7.    State Pendent Claims

As set forth in the applicable legal standards section, the questions of:  1) whether the alleged confession was concocted, and 2) subsequent non-disclosures and concealment were willful should be decided by the trier of fact.

### VIII.   Conclusion

In conclusion, in light of the total circumstances of a blatant and repeated pattern of non-disclosures and concealment of documents and material facts that could have easily been placed in several written sentences or, at most, a few paragraphs; the Dietchweilers were not afforded procedural due process as they did not receive timely notice of the basis for the charges for a reasonable opportunity to prepare for and meet them either on January 25, 2013, or at the review hearing.  It is undisputed that they had the defense that inclusion of Noah on the "debtor's" list of M.M. (based upon what M.M. later stated under oath in his Affidavit) that the debt was borrowed lunch money.  They had the defense that they were able to develop after the decision at the suspension review hearing that would have established that the pills in question could not have been present at school the day before.  There was irrefutable scientific evidence that no pills were ingested on January 25, 2013, or any of the several days preceding that, including January 24, 2013.

31

Overwhelming evidence exists that the hearing process was developed by Defendants to confirm a predetermined outcome that the suspension be affirmed.  Accordingly, as a matter of law, the entirety of the disciplinary procedure was unfair and abundant evidence was procedurally suppressed that the suspension should have been reversed, and accordingly, Defendants' Motion for Summary Judgment should be denied in its entirety, and summary judgment should be entered in favor of the Plaintiffs on the issue that the process violated Noah Dietchweiler's procedural due process rights, and accordingly, the suspension should be reversed and the matter tried only on the issue of damages proximately caused by the procedural due process violations, the violations of State law relating to required procedures and the pendent State claims.

NOAH DIETCHWEILER, by Michael Dietchweiler, his father and next friend; and ANN DIETCHWEILER, Plaintiffs,

BY:   FLYNN, PALMER, TAGUE & JACOBSON,


By:   s/ Michael J. Tague
      Michael J. Tague


Michael J. Tague
Flynn, Palmer, Tague & Jacobson
402 West Church Street
P. O. Box 1517
Champaign, IL  61824-1517
Telephone:    217-352-5181
Fax:          217-352-7964
e-mail:       fpt5law@aol.com

## INDEX TO EXHIBITS

**DEFENDANTS' EXHIBITS:**

| Exhibit Reference and Defendants' Summary Judgment Motion | Official Pleading Number | Description |
|---|---|---|
| A | 1 | Plaintiffs' Complaint |
| B | 2 | Defendants' Answer to Complaint |
| C | 3 | Deposition Transcript of Noah Dietchweiler |
| D | 4 | Deposition Transcript of Noah Dietchweiler's mother, Ann Dietchweiler |
| E | 5 | Deposition Transcript of Noah Dietchweiler's father, Michael Dietchweiler |
| F | 6 | Deposition Transcript of Defendant Lucas |
| G | 7 | Deposition Transcript of Defendant Bunting |
| H | 8 | Deposition Transcript of Defendant Lee |
| I | 9 | Deposition Transcript of Board Member Schippert |
| J | 10 | Deposition Transcript of Board Member Bob Burd |
| K | 11 | Deposition Transcript of Board Member James Bruns |
| L | 12 | Deposition Transcript of Board Member Don Becker |
| M | 13 | Deposition Transcript of Board Member Kirk McTaggart |
| N | 14 | Deposition Transcript of Board Member Brenna Johnson |
| O | 15 | Redacted List of Names and Numbers |
| P | 16 | Redacted Written Statement of M.M. |
| Q | 17 | Notice of Student Disciplinary Action |
| R | 18 | Notice of Suspension Review Hearing |
| S | 19 | Suspension Review Hearing Package |

**PLAINTIFFS' EXHIBITS:**

| Exhibit Reference and Defendants' Summary Judgment Motion | Official Pleading Number | Description |
|---|---|---|
| 1 | 1 | Deposition Transcript of M.M.'s Grandmother and Guardian, Denise McKay |
| 2 | 2 | Interrogatory Answers of Defendants Lucas, Bunting and Lee |
| 3 | 3 | Verbatim Transcript of Suspension Review Hearing |
| 4 | 4 | Responses to Request to Produce Requests of Defendants |
| 5 | 5 | Responses to Request to Admit of Defendants |
| 6 | 6 | M.M. Affidavit |
| 7 | 7 | Denise McKay Affidavit |
| 8 | 8 | Actual Hard Book Suspension Procedures |
| 9 | 9 | School Board Minutes |
| 10 | 10 | Memorandum |
| 11 | 11 | |
| 12 | 12 | |