E-FILED
Friday, 06 February, 2015  04:05:34 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| NOAH DIETCHWEILER, by MICHAEL DIETCHWEILER, his father and next friend; and ANN DIETCHWEILER, | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| STEVE LUCAS, et al., | ) |
| | ) |
| Defendants. | ) |

13-2062

ORDER

  Plaintiffs Noah Dietchweiler ("Noah"), by his father and next friend Michael Dietchweiler, and his mother, Ann Dietchweiler, commenced this action against defendants Iroquois County Community Unit School District No. 9, school officials Steve Lucas, James Bunting, and Kenneth Lee, and school board members James Bruns, Don Becker, Brenna Johnson, Crystal Blair, Bob Burd, Kirk McTaggert, and Dee Schippert.  The plaintiffs proceed pursuant to 42 U.S.C. § 1983.  Noah alleges that the defendants violated his right to due process of law under the Fourteenth Amendment to the United States Constitution (Count I).  He also alleges state claims under the Illinois School Code, 105 ILCS 5/10-22.6 (Count II), intentional infliction of emotional distress (Count III), and slander (Counts IV-V).  Noah's mother asserts a separate claim of intentional infliction of emotional distress under state law (Count VI).

  The defendants have filed a motion for summary judgment as to all claims.  The plaintiffs have responded,[1] and the defendants have filed a reply.

---

[1] The response does not comply with this court's Local Rule 7.1(D)(2).  The facts are not placed in the proper categories specified by the Local Rule.  For example, the plaintiffs dispute some of the defendants' undisputed facts but do not place them in the proper section. *See*, e.g., the defendants' undisputed fact #11, which the plaintiffs dispute.  Some of the defendants' other undisputed facts, such as undisputed fact 1, are "accurate but incomplete," with an explanatory paragraph as to why it is incomplete.  The additional facts belong in a section labeled "additional material facts."  *See* Local Rule 7.1(D)(2)(b)(5).  Consequently, the court is presented with the plaintiffs' assertions of jumbled and disorganized facts and disputes.  Local Rule 7.1(D) warns of the consequences of failing to adhere to the Local Rules.  The court will not hesitate to strike documents that do not comply with the Local Rules.  However, the court favors a ruling on the merits. In this case, the court is able to distill the relevant facts from the record and rule accordingly.

For the following reasons, the motion [36] is granted as to the federal claim. The state claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## BACKGROUND

In January 2013, Noah was a sophomore at Watseka Community High School ("WCHS"). On January 25, 2013, defendants Steve Lucas (the dean of students) and James Bunting (the principal) received a report from a student that another student, identified herein as M.M., was observed selling and distributing prescription drugs on school property during the lunch period. M.M. was brought to the school office and was questioned about the allegations. M.M. denied the allegations, but he eventually admitted that he had brought pills of a prescription drug onto school property and sold the pills to others at school. M.M. had two pills of Ativan, a controlled substance, hidden in his sock. M.M. provided Lucas and Bunting with a signed statement identifying seven students to whom he had given pills.[2] *See* d/e 36-16. M.M. also produced a handwritten list of four students who owed him money. The amounts shown by each student's name ranged from $4 to $10. *See* d/e 36-15. Noah was identified as one of the seven students who was given pills. The handwritten list showed that Noah owed $10 to M.M.

Lucas and Bunting brought each of those students to the office and questioned them one by one. Noah was the last, or one of the last, to be questioned. At that time, Noah's mother was waiting in the school parking lot to drive him home. She received a cell phone call asking her to come into the building. Noah's mother was taken to the office where Noah sat, and she was told that Noah was being suspended for drug activity on school property. Noah's mother asked that his father be called. (Noah's father is an attorney.) Through a conversation via speaker phone, Noah's father discussed the matter with Lucas and Bunting. Noah and his mother listened and did not say anything. At the end of the conversation, Noah signed a paper acknowledging a ten-day suspension for consumption of drugs and/or possession of drugs and left the building with his mother.

At home that night, Noah denied having possessed or consumed drugs at school. His father arranged for a drug test, the results of which were negative for the presence of any drugs. Noah's father presented the negative drug test to school administrators early the next week and attempted to have the suspension rescinded, to no avail. On February 5, 2013, the school board held a special meeting to deal with the disciplinary actions relating to several of the students. The school board upheld Noah's ten-day suspension. Noah's parents withdrew him from WCHS. This lawsuit followed. Noah completed his sophomore year through online home-schooling and enrolled at Culver Academy the following fall, as a sophomore.

## ANALYSIS

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

[2] The plaintiffs submit the affidavit of M.M., d/e 39-6, in which he admits he brought ten pills to school on January 25, 2013. Only two were found in his sock that afternoon.

R. Civ. P. 56(a). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

### Procedural due process

The plaintiffs and defendants cite *Goss v. Lopez*, 419 U.S. 565 (1975), in support of their respective arguments. "In *Goss*, the Supreme Court held that public school students have a property interest in public education, and thus a right to procedural safeguards. However, under *Goss* students have a right only to minimal process: 'Due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him, and if he denies them, an explanation of the evidence the authorities have, and an opportunity to present his side of the story.'" *Martin v. Shawano-Gresham School Dist.*, 295 F.3d 701, 705-06 (7th Cir. 2002) (quoting *Goss*, 495 U.S. at 581). The requirement is satisfied by "an informal give-and-take between student and disciplinarian, preferably prior to the suspension[.]" *Goss*, 419 U.S. at 584. Due process does not require a formal hearing or an opportunity to appear with counsel, confront witnesses, or call exculpatory witnesses. *Goss*, 419 U.S. at 583.

To determine whether Noah was provided with due process commensurate with his discipline, the court turns to Noah's deposition testimony. Noah testified that when he was removed from class, he was placed in an office where he sat for some time. Lucas and Bunting walked into and out of different offices. Then Lucas and Bunting entered the office where Noah was sitting. Lucas said to Noah "something along the lines of, 'I believe you know why you're here.' Or 'I'm sure that you know why you're here.'" Noah responded that he didn't know, and asked what was going on. Lucas told Noah that "a number of students" provided Lucas and Bunting with reason to believe that Noah had been involved with drugs at WCHS. Noah responded "something along the lines of 'whoa, what? What's going on here. I don't, like, I didn't have anything to do with the drugs.'" Noah Dep. 69. Noah told them he didn't know who had drugs at school that day. Bunting told Noah that he had a choice to take a ten-day suspension for admitting to taking the drugs, or expulsion for denial of taking the drugs. Noah stated, "I sat back in my chair and it had just been all so overwhelming and I was still like getting the situation so I just sat back in my chair and I just said, 'whatever.' That's the exact and only word I used." Noah Dep. 70.

Noah's mother was called, and she went from the parking lot into the school building. When she heard that Noah was being suspended for possessing or consuming drugs at school, she asked that her husband be called. Noah's father was placed on the speaker phone, and Lucas and Bunting spoke to him. Noah and his mother said nothing. When the speaker phone call ended, Noah was asked to sign a notice of student disciplinary action stating that he was

receiving a ten-day suspension for possession of drugs and/or consumption of drugs, and that Noah acknowledged that he'd been provided the opportunity to present a defense, explain the circumstances, and/or prove innocence.  Noah shook hands with Lucas and Bunting, and he and his mother went home.

At that point, the due process hearing concluded.

The plaintiffs claim that they were not told that M.M. had a piece of paper showing that Noah owed money to M.M., nor were they told that M.M. had written a statement listing other students who had been given drugs.  However, as *Goss* makes clear, the due process hearing is meant to apprise the *disciplinarian* about the possibility of disputed facts.  *See Goss*, 419 U.S. at 583-84.  The goal is to allow the disciplinarian to make a more informed decision and reduce – but not eliminate – the risk of error.  *Goss*, 419 U.S. at 584. The due process clause does not ensure an outcome in the student's favor.

Under *Goss*, the hearing was sufficient for a 10-day suspension.  Noah was notified, orally and in writing, of the charges against him.  He was told that the suspension was based on what "a number of students" said.[3] Noah denied the charges.  In his defense, he uttered one word: "Whatever."  In this case, parental involvement was an additional safeguard not mandated under federal law.  *See, e.g., Martin*, 295 F.3d at 707.  At his hearing, Noah's mother said nothing.  His father apparently did not ask about the evidence supporting the suspension.  Noah and his parents failed to inquire into the details supporting his alleged involvement with drugs at school.

Consequently, the court dismisses Count I of the complaint.

---

[3] It is the plaintiffs' contention that school officials threatened M.M. into implicating Noah, and that the $10 Noah owed to M.M. was for lunch money.  M.M.'s affidavit reflects the statement of one student; it is insufficient to show what "a number of students" might have told administrators.  When initially questioned by Lucas and/or Bunting, M.M. denied that he had provided drugs to other students. Then administrators found two pills in his sock and he changed his story.  Assuming that M.M. did not implicate Noah, school officials could easily have questioned M.M.'s veracity.

The plaintiffs may have meritorious claims under state law,[4] but the court declines to exercise supplemental jurisdiction over those claims. *See* 28 U.S.C. § 1367(c)(3).

## CONCLUSION

For the foregoing reasons, the court grants the defendants' motion for summary judgment [36] as to Count I, and dismisses the remaining claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3). This case is terminated. The parties shall bear their own costs.

Entered this 6th day of February.

**s/Harold A. Baker**
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE

---

[4] Failure to conform to state procedural due process requirements is not a violation of federal due process rights. *Martin*, 295 F.3d at 706 (citing *Pro-Eco, Inc. v. Board of Comm'rs of Jay County, Ind.*, 57 F.3d 505, 514 (7th Cir. 1995)). If the court *were* to exercise jurisdiction over the state claims, summary judgment would be granted to the defendants on the claims of intentional infliction of emotional distress and slander, without further analysis. The defendants have moved for summary judgment on those claims and the plaintiffs have not even discussed the elements of a prima facie case, let alone set forth the evidence supporting those elements.